IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| SIMPLIFICATION, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | C.A. No. 03-355 (JJF) |
| v. | ) | C.A. No. 04-114 (JJF) |
| | ) | CONSOLIDATED |
| BLOCK FINANCIAL CORPORATION, and | ) | JURY TRIAL DEMANDED |
| H&R BLOCK DIGITAL TAX SOLUTIONS, | ) | |
| INC., | ) | |
| | ) | |
| Defendants. | ) | |

## DEFENDANTS BLOCK FINANCIAL CORPORATION'S AND H&R BLOCK DIGITAL TAX SOLUTIONS, INC.'S <u>OPENING BRIEF ON CLAIM CONSTRUCTION</u>

YOUNG CONAWAY STARGATT & TAYLOR, LLP
John W. Shaw (No. 3362)
Karen E. Keller (No. 4489)
Jeffrey T. Castellano (No. 4837)
The Brandywine Building
1000 West Street, 17th Floor
Wilmington, Delaware 19801
jcastellano@ycst.com
(302) 571-6600

-and-

STANDLEY LAW GROUP LLP
Jeffrey S. Standley (Ohio Bar #0047248)
F. Michael Speed, Jr. (Ohio Bar #0067541)
Standley Law Group LLP
495 Metro Place South, Suite 210
Dublin, Ohio 43017
(614) 792-5555

*Attorneys for Defendants*

**Table of Contents**

I.    INTRODUCTION ................................................................................1

II.   NATURE AND STAGE OF PROCEEDINGS ............................................1

III.  SUMMARY OF THE ARGUMENT .......................................................2

IV.   STATEMENT OF FACTS ....................................................................2

    A. The Patents-In-Suit Share a Common Specification................................2

    B. The Problem Addressed by the Patents-In-Suit .....................................2

    C. The Invention Described in the Patents-In-Suit ......................................3

    D. Re-examination of the Patents-In-Suit..................................................4

    E. Agreement as to Certain Definitions .....................................................5

V.    ARGUMENT.....................................................................................5

    A. Claim Construction Principles .............................................................5

    B. Construction of Disputed Patent Terms .................................................9

        1. Automatic tax reporting ...............................................................10

        2. Electronically ............................................................................14

        3. Connecting electronically ............................................................21

        4. Collecting electronically ..............................................................22

        5. Processing electronically .............................................................24

        6. Preparing electronically ..............................................................25

        7. Filing electronically ....................................................................28

        8. Electronic tax return....................................................................29

    C. Means Plus Function Limitations.........................................................30

        1. Means for connecting electronically...............................................31

i

2. Means for collecting electronically...........................................................32

3. Means for processing electronically .........................................................32

4. Means for preparing electronically ...........................................................33

5. Means for filing electronically..................................................................34

VI.    CONCLUSION..................................................................................................35

DB01:2551743.1

062255.1001

## Table of Authorities

### Cases

*Aristocrat Techs. Austl. Pty Ltd. v. Int'l Game Tech.*,
521 F.3d 1328, 1333 (Fed. Cir. 2008)................................................................31, 33

*C. R. Bard, Inc. v. US. Surgical Corp.*,
388 F.3d 858 (Fed. Cir. 2004)..................................................................................6

*Cybor Corp. v. FAS Techs., Inc.*,
138 F.3d 1448 (Fed. Cir. 1998)...............................................................................6

*E.I. du Pont de Nemours & Co. v. Phillips Petroleum Co.*,
849 F.2d 1430 (Fed. Cir. 1988)...............................................................................8

*Housey Pharms., Inc. v. AstraZeneca UK Ltd.*,
366 F.3d 1348 (Fed. Cir. 2004)...............................................................................7

*In re Dossel*,
115 F.3d 942 (Fed. Cir. 1997)..................................................................................7

*In re Paulsen*,
30 F.3d 1475 (Fed. Cir. 1994)..................................................................................8

*Innova/Pure Water, Inc. v. Safari Water Filtration Sys., Inc.*,
381 F.3d 11 11 (Fed. Cir. 2004).............................................................................6, 7

*Jack Guttman, Inc. v. Kopykake Enters., Inc.*,
302 F.3d 1352 (Fed. Cir. 2002)...............................................................................8

*Markman v. Westview Instrs., Inc.*,
52 F.3d 967 (Fed. Cir. 1995)............................................................................5, 7, 8

DB01:2551743.1
062255.1001

*Ormco Corp. v. Align Technology, Inc.,*

498 F.3d 1307 (Fed. Cir. 2007).................................................................8, 13, 17

*Phillips v. AWH Corp.,*

415 F.3d 1303 (Fed. Cir. 2005)..................................................................6, 7, 8, 9

*Phonometrics, Inc. v. N Telecom Inc.,*

133 F.3d 1459 (Fed. Cir. 1998).................................................................7

*Pitney Bowes, Inc. v. Hewlett-Packard Co.,*

182 F.3d 1298 (Fed. Cir. 1999).................................................................11

*Teleflex, Inc. v. Ficosa N. Am. Corp.,*

299 F.3d 1313 (Fed. Cir. 2002).................................................................8

*Vitronics Corp. v. Conceptronic, Inc.,*

90 F.3d 1576 (Fed. Cir. 1996)...................................................................6, 7, 9

*W.E. Hall Co. v. Atlanta Corrugating, LLC,*

370 F.3d 1343 (Fed. Cir. 2004).................................................................8

*Wenger Mfg., Inc . v . Coating Mach. Sys., Inc.,*

239 F.3d 1225 (Fed. Cir. 2001) .................................................................7

**Statutes**

35 U.S.C. § 112 ¶¶ 1, 2, and 6 .................................................................7, 30

35 U.S.C. § 134.........................................................................................5

35 U.S.C. § 306.........................................................................................5

DB01:2551743.1

062255.1001

**Table of Exhibits**

A.   United States Patent No. 6,202,052

B.   United States Patent No. 6,697,787

C.   *Ex parte Simplification, LLC*, Appeal No. 2007-0712 (July 31, 2007)

D.   *Ex parte Simplification, LLC*, Appeal No. 2007-0518 (July 31, 2007)

E.   Table of the Parties' Proposed Constructions for the Terms in Dispute

F.   Record of Oral Hearing before the Board of Patent Appeals and Interferences

v

## I.   INTRODUCTION

Defendants Digital Tax Solutions LLC and Block Financial Corporation ("Block") submit this brief on the proper interpretation of disputed claim terms of United States Patent No. 6,202,052 ("the '052 patent") (Ex. A) and United States Patent No. 6,697,787 ("the '787 patent") (Ex. B).  Block respectfully submits that the legal interpretations set forth in this brief represent the accurate scope of the claimed invention as described in the '052 patent and the '787 patent (collectively the "patents-in-suit").

## II.   NATURE AND STAGE OF THE PROCEEDINGS

This is a consolidated action for patent infringement brought by Simplification, LLC ("Simplification") against Block for the alleged infringement of asserted claims 1 – 2 and 6 – 20 of the '052 patent and asserted claims 1-18 of the '787 patent.

On May 7, 2004, this Court ordered that this action would be stayed pending reexamination proceedings (D.I. 21).  Upon the completion of those proceedings, the Court issued a new Scheduling Order on December 7, 2007 (D.I. 49).

The case is currently in the late stages of fact discovery.  The parties have exchanged document requests and interrogatories and have served their respective responses.  A Markman hearing has been scheduled for June 5, 2008 and all dispositive motions must be filed by October 31, 2008.  To accommodate private settlement negotiations between the parties, the Court recently set the due date for Opening Claim Construction Briefs and Responsive Claim Construction Briefs at May 13, 2008 and May 27, 2008, respectively (D.I. 75).  In accordance with the Order, Block now submits its Opening Claim Construction Brief.

### III.   SUMMARY OF THE ARGUMENT

A patent's claims serve an important notice function and define the patentee's right to exclude. This Court should construe the claim terms at issue to determine their legally operative meaning and scope. As set forth in detail below, the plain language of the claims, the written description, and the prosecution history of the patents-in-suit, informed by and consistent with dictionaries, treatises, and the knowledge of the person of ordinary skill in the art, compel the constructions proposed by Block. Read in light of the specification and the prosecution history, Block submits the claims in the patents-in-suit should be construed consistently with the *fully-automated* system described as the invention. Accordingly, the Court should adopt Block's claim constructions.

### IV.   STATEMENT OF FACTS

#### A.   The Patents-In-Suit Share a Common Specification

U.S. Pat. App. No. 09/776,707, the application giving rise to the '787 patent, is a direct continuation of the parent application, U.S. Pat. App. No. 09/073,027, that gave rise to the '052 patent. Accordingly, aside from their respective claims, both patents-in-suit share a common specification.

#### B.   The Problem Addressed by the Patents-In-Suit

In the specification section entitled, "Background of the Invention," the patents-in-suit acknowledge the extent to which automation already existed in the tax filing process. First, an increasing amount of data and other information necessary to compute the federal, state, local, and foreign income tax liability was available electronically. *See* Col. 1, ll. 16-38. Second, tax return preparation had become increasingly automated. For example, several computer programs (such as TurboTax) were already available for

2

individuals to compute their federal tax liability and generate completed tax returns. *See* Col. 1, ll. 39-49. Third, there are few legal interpretational issues with regard to determining tax liability for most taxpayers. *See* Col. 1, ll. 50-63. Finally, taxing authorities like the IRS had already begun accepting electronic returns. Col. 1, l. 64 – Col. 2, l. 7.

While acknowledging the increasing level of automation, the patents describe the problem addressed by the invention as the failure of the prior art to *fully-automate* the tax filing process, reciting:

> *Accordingly, few technological, legal, or practical obstacles exist for the fully automated preparation and filing of federal and state tax returns for many individuals and other taxpayers, and further for the payment or refund of taxes.*
> *However, despite these technological advances, the potential for fully-automated tax reporting has not yet been realized for several reasons.*

Col. 2, ll. 10-17. (emphasis added).

### C.    The Invention Described in the Patents-In-Suit

The patents-in-suit are directed to "a method, an apparatus, and an article of manufacture for fully-automated tax reporting, payment, and refund." Col 3, ll. 21-24. According to the specification, "Fig. 1 illustrates the procedure of the invention." Col. 4, l. 23. The various steps of the invention are discussed individually beginning at Column 4. After an initiation procedure, termed Step 11, wherein the user manually inputs information on the tax data providers, the automated portion of the process begins at Step 12.

In Step 12, the electronic intermediary, described as a data processing system comprising a general purpose computer and a computer program (Col. 4, ll. 39-41),

3

electronically collects tax data from each of the tax data providers by connecting electronically to and collecting electronically from each tax data provider that has tax data pertaining to the taxpayer. *See* Col. 5, ll. 50-65. With the electronic collection of tax data in Step 12, "the invention eliminates the current requirement that a taxpayer manually collect the tax data, eliminates the current requirement that a taxpayer manually enter such tax data onto a tax return or into a computer, and eliminates the need for all, or virtually all, intermediate hard copies of tax data, thereby saving paper, time, and cost." Col. 6, ll. 24-30.

In Step 13, the electronic intermediary processes the tax data obtained electronically from the tax data providers in Step 12. Col. 6, ll. 31-33. The information processed in Step 13 is obtained by way of Step 11 and Step 12. Col. 6, ll. 31-33.

In Step 14, the electronic intermediary prepares electronic tax returns using the processed tax data from Step 13. *See* Col. 6, ll. 53-24. In Step 15, the electronic intermediary may electronically file the electronic tax return prepared in Step 14. *See* Col. 6, ll. 62-64.

### D.    Re-examination of the Patents-In-Suit

On July 11, 2003 Block filed a petition for ex parte reexamination of the '052 patent. Reexamination was granted on October 2, 2003. The civil case related to the '052 patent was stayed pending the reexamination (D.I. 21). During the stay, the '787 patent, a continuation of the parent application, issued to Simplification. On March 15, 2004, Block requested ex parte reexamination of the '787 patent as well. The reexaminations were consolidated by the PTO and the Examiner assigned to the

4

reexamination rejected claims 1-20 and 29-36 of the '052 patent and claim 1-18 and 31-40 of the '787 patent.

Simplification appealed the rejections under 35 U.S.C. §§ 134 and 306. Sections 134 and 306 permit a patent owner to "appeal from the final rejection of any claims by the primary examiner to the Board of Patent Appeals and Interferences." 35 U.S.C. § 134. After conducting an Oral Hearing held May 2, 2007, the Board reversed all of the Examiner's rejections in concurrently mailed opinions entered July 31, 2007. *Ex parte Simplification, LLC*, Appeal No. 2007-0712 (July 31, 2007) (Ex. C) and *Ex parte Simplification, LLC*, Appeal No. 2007-0518 (July 31, 2007) (Ex. D).

### E.   Agreement as to Certain Definitions

Simplification and Block are in agreement that the following definitions should be adopted.

| Claim Term | Agreed Construction |
|---|---|
| electronic intermediary | a data processing system comprising a general purpose computer and a computer program |
| tax data | tax information relevant to a taxpayer's tax liability or tax reporting obligations |
| tax data provider | a party with tax information relevant to a taxpayer's tax liability or tax reporting obligations |
| electronic link | an electronic means of communicating digital information bidirectionally |
| processed tax data | tax data which has been processed electronically |

## V.   ARGUMENT

### A. Claim Construction Principles

Because patent claims define the invention and delimit a patentee's right to exclude, a district court construes patent claims as a matter of law to determine their meaning and scope. *Markman v. Westview Instrs., Inc.*, 52 F.3d 967, 976, 980 (Fed. Cir. 1995) (en

banc), *aff'd*, 517 U.S. 370 (1996); *Cybor Corp. v. FAS Techs., Inc.*, 138 F.3d 1448, 1455 (Fed. Cir. 1998) (en banc).

In *Phillips v. AWH Corp.*, 415 F.3d 1303 (Fed. Cir. 2005), the Federal Circuit, sitting en banc, discussed claim construction principles in detail and provided guidance for district courts to follow when construing claims. *Phillips* noted that there is no "magic formula" for conducting claim construction and instead identified a hierarchy for using intrinsic and extrinsic evidence to discern the meaning of claim language. *Id.* at 1324. The Court said that "the claims themselves provide substantial guidance. . . ." *Id.* at 1314. It then stated that a court may "rely heavily on the written description for guidance as to the meaning of the claims." *Id.* at 1317. The Court later indicated that the prosecution history may be "less useful" for claim construction purposes than the written description. *Id.* It then explained that extrinsic evidence is "less significant than the intrinsic record for determining 'the legally operative meaning of claim language.'" *Id.* (quoting *C. R. Bard, Inc. v. US. Surgical Corp.*, 388 F.3d 858, 862 (Fed. Cir. 2004)).

A district court should construe claim language to discern the meaning it would have to a person of ordinary skill in the art at the time of the invention. *Innova/Pure Water, Inc. v. Safari Water Filtration Sys., Inc.*, 381 F.3d 1111, 1116 (Fed. Cir. 2004). Broadly speaking, guidance as to the meaning of claim language comes from two sources: intrinsic evidence and extrinsic evidence. *Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1581-83 (Fed. Cir. 1996). The intrinsic evidence consists of two components: the patent and its prosecution history. *Id.* at 1582. A patent contains two parts: first, the drawings (if any) and the text forming the patent's body, called the written

description; second, the claims.[1]  The prosecution history—the rest of the intrinsic

evidence—contains the record of the proceedings before the Patent Office and includes

the prior art cited during examination and arguments, amendments, and explanations

made by the applicants to obtain allowance of the patent. *Phillips*, 415 F.3d at 1317;

*Vitronics*, 90 F.3d at 1582.  Extrinsic evidence consists of all evidence external to the

patent and its prosecution history, such as dictionaries, treatises, inventor testimony, and

expert testimony. *Markman*, 52 F.3d at 980.

   A patent's claims define the invention and the patentee's right to exclude. *Innova*,

381 F.3d at 1115.  Accordingly, a district court should look to the words of the claims

themselves to ascertain the scope of the patented invention. *Vitronics*, 90 F.3d at 1582.

A court should generally assign claim language the ordinary and customary meaning it

would have to a person of ordinary skill in the art at the time of the invention, *i.e.*, as of

the effective filing date of the patent application. *Phillips*, 415 F.3d at 1313; *see Housey

Pharms., Inc. v. AstraZeneca UK Ltd.*, 366 F.3d 1348, 1352 (Fed. Cir. 2004).

Claim construction requires examination of the patent's written description.

*Phonometrics, Inc. v. N. Telecom Inc.*, 133 F.3d 1459, 1464 (Fed. Cir. 1998).  The

ordinary meaning of claim language is the meaning it would have to those skilled in the

art after reading the entire patent, including the written description. *Phillips*, 415 F.3d at

1313. While the written description should be considered, "it is improper to read

limitations from the written description into a claim." *Wenger Mfg., Inc. v. Coating

Mach. Sys., Inc.*, 239 F.3d 1225, 1237 (Fed. Cir. 2001).  Even so, to attribute to the

---

[1] Although a patent's specification includes both the written description and the claims,
the word "specification" often—used colloquially—refers to the patent's body other than
the claims. *See In re Dossel*, 115 F.3d 942, 944-45 (Fed. Cir. 1997); 35 U.S.C. § 112, ¶¶
1-2.

claims a meaning broader than any indicated in the patent or its prosecution history "would be to ignore the totality of the facts of the case and exalt slogans over real meaning." *Ormco Corp. v. Align Technology, Inc.*, 498 F.3d 1307, 1316 (Fed. Cir. 2007).

A patentee may, however, act as a lexicographer by clearly setting forth in the written description an explicit definition for a claim term. *See, e.g., Jack Guttman, Inc. v. Kopykake Enters., Inc.*, 302 F.3d 1352, 1360 (Fed. Cir. 2002). But the patentee must demonstrate intent to deviate from a term's ordinary and customary meaning by expressing a different meaning in the written description "with reasonable clarity, deliberateness, and precision." *Teleflex, Inc. v. Ficosa N. Am. Corp.*, 299 F.3d 1313, 1325, 1327 (Fed. Cir. 2002) (quoting *In re Paulsen*, 30 F.3d 1475, 1480 (Fed. Cir. 1994)). Vague or ambiguous statements in the written description do not suffice to alter a term's ordinary meaning. *W.E. Hall Co. v. Atlanta Corrugating, LLC*, 370 F.3d 1343, 1353 (Fed. Cir. 2004).

Claim construction also requires consideration of the patent's prosecution history. *Markman*, 52 F.3d at 980. "[T]he prosecution history can often inform *the meaning of the claim language* by demonstrating how the inventor understood the invention and whether the inventor limited the invention in the course of prosecution, making the claim scope narrower than it would otherwise be." *Phillips,* 415 F.3d at 1317 (emphasis added). Statements made by the applicant during prosecution in support of patentability may supply evidence of the meaning of disputed claim language. *See E.I. du Pont de Nemours & Co. v. Phillips Petroleum Co.*, 849 F.2d 1430, 1438 (Fed. Cir. 1988).

A district court may consider extrinsic evidence to assist it in understanding scientific principles and the technology at the time of the invention. *See Markman*, 52

F.3d at 980.  Furthermore, a court may employ extrinsic evidence for claim-construction

purposes.  *Phillips*, 415 F.3d at 1317.  But a court should not use extrinsic evidence to

vary or contradict the meaning of claim language where the intrinsic evidence determines

the meaning.  *Vitronics*, 90 F.3d at 1583-85.

Because dictionaries and treatises-although categorized as extrinsic evidence-

provide insight into the ordinary and customary meaning of claim language, the Federal

Circuit noted that they are "often useful" in claim interpretation.  *Phillips*, 415 F.3d at

1322.  In *Phillips*, the Federal Circuit confirmed that a district court may freely consult a

dictionary "at any time" in order to understand the technology or construe claim language

as long as the dictionary definition does not contradict the definition derived from the

intrinsic evidence.  *Id.*

### B.     Construction of Disputed Patent Terms

Block believes that construction of the following terms is necessary to determine

the scope of the claims of the patents-in-suit.  Other claim terms are not disputed based

upon the claim construction contentions between the parties.[2]  A table of the parties'

proposed constructions for the various disputed terms is presented in Exhibit E ("Ex. E").

In construing the claim terms below, Block submits that the Court should pay

special attention to the transcript of the Record of Oral Hearing before the Board of

Patent Appeals and Interferences ("BPAI") held May 2, 2007 (Ex. F).[3]  Although the

---

[2] In the event that any presently non-disputed claim terms become disputed, Block
reserves the right to further brief and argue those claim terms and their definitions.

[3] The transcript of the Record of Oral Hearing is identical for both patents-in-suit and
appears in the prosecution history of both patents.  Accordingly, only one of the
transcripts is presented in the Exhibits.

entire prosecution history is relevant, the transcript of the Record of Oral Hearing is particularly relevant for several reasons.

First, the context of the Oral Hearing is significant.  Prior to the hearing, the Patent Examiner assigned to reexamine both patents-in-suit rejected all pending claims. On the basis of Simplification's Appeal Brief and the testimony at the Oral Hearing, the Board overturned the Examiner's rejections.

Second, the Record of Oral Hearing is directed specifically to claim interpretation.  The transcript of the hearing highlights and addresses many of the key claim interpretation issues that now face this Court.   As the Oral Hearing developed, Block contends Simplification was forced to make several important and specific concessions in order to navigate around the prior art discussed by the Board.  Many of those statements are unambiguous admissions which pertain directly to the constructions of the terms now before the Court.

Finally, and most significantly, many of the definitions now proposed by Simplification are antithetical to clear assertions that it made on the record before the Board.  Simplification should not be allowed to backpedal from the clear concessions it made on the record to avoid the prior art in the reexamination.

### 1.  Automatic tax reporting

| automatic tax reporting | preparing a tax return on a computer automatically without manual intervention from the user |
|---|---|

Both of the patents-in-suit describe an invention for a *fully-automated* system for tax reporting, payment, and refund.[4]  Accordingly, the term "automatic tax reporting" is present in the preamble of every claim in the parent '052 patent.  Generally, a preamble will be limiting if it is "necessary to give life, meaning, and vitality" to the claim.  *Pitney Bowes, Inc. v. Hewlett Packard Co.*, 182 F.3d 1298, 1305 (Fed. Cir. 1999).  Based on the specification and the prosecution history, Block contends that the above preamble term is limiting.  Given their proposed definition, Simplification apparently agrees.  Even so, the parties sharply dispute the degree to which "automatic tax reporting" limits the scope of the claims that contain it.

The procedure of the invention is illustrated in Fig. 1 of the specification.  Col. 4, l. 23.  During their Oral Hearing, Simplification analogized the invention of the patents-in-suit to an automatic dishwasher.  Ex. F, pg. 16.  According to Simplification, any manual steps are confined to steps that initiate the process, for example, providing the electronic intermediary with information on the tax data providers such as "Hey, I have an account with Fidelity and here's my account number." *Id.* at 23; *see also id.* at 17 ("But once you start the dishwasher or that washing machine, it's going to town."). Under Simplification's scheme, the initiation step is analogous to loading the dishes or adding detergent prior to engaging the machine. *Id.* at 16-17; *see also id.* at 21 ("Step 11 talks about the manual part of it.  It's the engaging part, it's the initiation, the starting of it.").

---

[4] Indeed, the title of the '052 patent, the original patent in the family, is "Fully-Automated System for Tax Reporting, Payment and Refund."  Although it shares a common specification with the '052 patent, the later filed '787 patent adopted the title "System for Collecting Tax Data."

According to Simplification, "Step 12 is where the 'automatic' kicks in." *Id.* at 23. In other words, Step 12 begins the automated process which culminates in the completed electronic tax return. *See id.* at 21. Simplification explains, "[a]nd then once it receives the [initiation information from Step 11], it automatically goes through all the steps in the process. It goes out to the tax data provider, collects the tax data, processes the tax data and prepares the electronic tax return." *Id.* According to Simplification, at the point that Step 12 "kicks in" any manual input by the user is forbidden under the patent because it is inconsistent with the attribute that "the invention eliminates the current requirement that a taxpayer manually collect the tax data and eliminates the current requirement that a taxpayer manually enters such tax data onto a tax return." *See id.* at 9-10.

Simplification has repeatedly cited this "automatic" limitation to distinguish the invention over the prior art. *See* Ex. F, pg. 28, l. 7—29, l. 5. Based on assertions made during the reexamination, Block asserts that the term "automatic tax reporting" means "preparing a tax return on a computer automatically without manual intervention from the user." This definition is consistent with the specification of the patents-in-suit and with the clear statements that Simplification made before the Board of Patent Appeals and Interferences.

During their Oral Hearing the following exchange occurred between the administrative Judge on the BPAI and Simplification's Counsel, Mr. Sartori.

> JUDGE MEDLEY: So "automatic," what does that what is your position? What does that mean?
> MR. SARTORI: It should mean acting or operating in a manner that is essentially independent of external input or control.
> JUDGE MEDLEY: So not manual.
> MR. SARTORI: *Not manual, yes.*

> JUDGE MEDLEY: So if you have any kind of manual input from start to end, then, it's no good.
>
> MR. SARTORI: It's no good in the sense of the comprising language, and no good in the sense of the limitations we have in the claims must be performed automatically.

Ex. F, pg. 15 (emphasis added).

Block concedes that the patent does allow for limited manual input prior to initiating the automated process which is the subject matter of the claims. For example, the user may provide the electronic intermediary with information on tax data providers. Col. 5, ll. 3-5. However, this initiation step, Step 11, is unclaimed. Instead, the claimed elements begin at Step 12, an automated step involving the electronic collection of tax data from tax data providers. That, as Simplification attested before the BPAI "is where the 'automatic' kicks in." Ex. F, pg. 23, ll. 16-17.

Furthermore, with almost any automatic apparatus or process there is always *some* initiatory manual step (e.g., engaging an automated machine by depressing a switch, pressing the return key to start some computer software, etc.). Therefore, the Court's construction need not, as Simplification proposes, include the phrase "once initiated" in its construction for the above captioned term since *some* initiatory manual step is an inherent part of almost any automated machine. *See Ormco Corp. v. Align Technology, Inc.* 498 F.3d 1307, 1313 (Fed. Cir. 2007) ("Statements in the specification cited by Ormco to support human participation in the process are limited to input from the orthodontist and/or computer operator at the *start* of the process . . .").

Simplification proposes that the Court construe "automatic tax reporting" as:

> "determining and/or reporting tax liability, or satisfying tax reporting obligations, via a process in which *one or more functions*, once initiated, are completed electronically without manual input from the user."

13

Ex. E (emphasis added).  However, Simplification's proposed definition would emasculate one of the very terms that Simplification clung to like a lifeboat when navigating around damaging prior art during the Oral Hearing before the Board.

Further, with its "one or more functions" qualifier, Simplification's definition is so broad that, if adopted, the term would read on systems having any degree of automation whatsoever.  For example, a tax accountant using a calculator may be considered to be automatic tax reporting since *one or more functions* in the process would be completed electronically without manual input from the user.  As such, Simplification's definition improperly attempts to recapture claim scope that was ceded on the record before the Board.  Accordingly, this Court should reject Simplification's definitions on the basis that they are antithetical to the prosecution history.

### 2.  Electronically

| electronically | performed on a computer automatically without manual intervention from the user |
|---|---|

In construing the claim terms, Block requests this Court be mindful that Simplification's invention was not developed in a vacuum.  The specification admits extensive automation, including such aspects as tax preparation software (e.g., TurboTax) and electronic filing of tax returns with the IRS, already existed in the tax processing and tax return industry.  *See* Col. 1 – Col. 3, l. 6 ("Background of the Invention").  Accordingly, Simplification's alleged inventive step was to realize a *fully*-automated system using extant components that already partially automated the process.  *See* Col. 2, ll. 10-15 ("Accordingly, few technological, legal, or practical obstacles exist for the fully

14

automated preparation and filing of federal and state tax returns for many individuals and other taxpayers, and further for the payment or refund of taxes").

The term "electronically" appears in every claim in both patents-in-suit, either directly or through dependency.  Block asserts that, based on unambiguous statements clearly made on the record in the prosecution history, an appropriate definition of the term "electronically" must include the fact that any step performed "electronically" in the patents-in-suit is also performed automatically without manual input from the user.

In the patents-in-suit, the term "automatic" and "electronically" have almost identical meanings (see exchange below); the difference seems to lie in the fact that the term "automatic" is used in the claims when describing the process or apparatus as a whole, whereas the term "electronically" is used in limiting individual steps or structure in the process.

The case for Block's proposed construction for the term "electronically" was made most fervently by Simplification's Patent Counsel during his testimony before the BPAI at the Oral Hearing.  *See* Ex. F.  During the Oral Hearing, the following exchange occurred between the Board and Simplification's counsel, Mr. Sartori.

> JUDGE MEDLEY: But you don't claim automatic everywhere.
> MR. SARTORI: We do not claim -- that's right. We do not claim--
> I'm sorry. I'm sorry.
> JUDGE MEDLEY: So electronic -- see, that's why I'm kind of having a problem.
> Because I read your brief—
> MR. SARTORI: I thought you were on the '052 for a second. You're on the '787.
> I'm sorry.
> JUDGE MEDLEY: But you do. You sort of mix the issues. I read what you say,
> and it seems like you're saying automatic is electronic, is not entering manually
> information. *You're equating all three.*
> MR. SARTORI: *That's right.* In the context of the '052 patent, which recites
> "automatic" in all the claims, "automatic" needs to be given its ordinary meaning
> and weight. In those ones, I think it's clear with regard to the Beamer reference.

15

In the '787, we have two independent claims, 1 and 10, which do not recite "automatic." The rest of the independent claims recite "automatic." And so those ones, I think it's clear that the Beamer doesn't teach it. We're focusing on Claims 1 and 10.

And there are two reasons that I said previously that the Beamer article does not teach it. One is they're connecting electronically. *And yes, we are saying electronically means that there's no manual input. You have to -- we're saying you need to read it in light of the specification.*

Ex. F, pg. 28-29 (emphasis added).[5]

Unsatisfied with that exchange, Judge Lee pressed Mr. Sartori farther on this issue

in the following exchange:

JUDGE LEE: Isn't the way you're interpreting it contrary to just logic or common sense? You know, simply saying this is made of wool doesn't mean it doesn't have other components.
MR. SARTORI: I'm sorry. You lost me, sir.
JUDGE LEE: Saying something is electronic doesn't necessarily exclude any kind of manual contribution.
MR. SARTORI: The claim recites connecting electronically to a tax data provider, and then collecting electronically from a tax data provider. And that needs to be done electronically. The—
JUDGE LEE: Yeah. But why does that exclude any kind of manual input? I mean, that's crux to the issue.
MR. SARTORI: Yes, for Claims 1 and 10 of the '787 patent.
JUDGE LEE: *You just say that it does, but I don't get it.*
MR. SARTORI: In the context of the step which refers to -- that recitation of collecting electronically refers to step 12 of the patent. And there it talks about, as I said before, the invention eliminates the current requirement that a taxpayer manually collect the tax data, and that the taxpayer -- it eliminates the current requirement that the taxpayer manually enter the tax data onto the tax return or into the computer. And by collecting electronically, you're eliminating those requirements. *And to the extent that Beamer makes you do those things, or the system requires you do those things, it doesn't anticipate the claim.*
JUDGE LEE: All right. [Judge Lee then moves on to other issues.]

---

[5] To understand the significance of this concession, it is important to read it in the context of the entire discussion that precedes this exchange. The administrative judges were clearly troubled that Simplification repeatedly distinguished the prior art on the basis that the prior art required some manual entry. The Judges didn't understand why the claim term "electronically," in the absence of the term automatic, necessarily excluded manual input. However, in the passage above, Simplification's counsel, Mr. Sartori concedes that, *read in light of the specification*, the term electronically needs to include a "no manual input" limitation.

16

Ex. F, pg. 29-30 (emphasis added).[6]

In all of the claims in the patents-in-suit, including independent claims 1 and 10

of the '787 patent, any manual entry by the user is initiatory only and is performed before

any of the claimed elements. Simplification emphasized this point in the following

exchange before the Board:

> JUDGE LEE: All right. What about how does the tax preparer make sure that information is collected to determine whether the taxpayer has a special tax case?
> MR. SARTORI: I'm sorry. Could you repeat that again?
> JUDGE LEE: The tax preparer ensures that information is collected to determine whether the taxpayer has a special tax case.
> MR. SARTORI: Oh, on column 5. Okay, I got you. I'm sorry.
> JUDGE LEE: Can you explain that?
> MR. SARTORI: Sure.
> JUDGE LEE: That sounds like manual intervention.
> MR. SARTORI: That is manual intervention. And that has to do with step 11, which is the manual step required to initiate it, to initiate the automatic process. That's taken from column 5, line 45, what you've been focusing on, sir, Your Honor. And that has to do with step 11, which is the manual stuff.
> JUDGE LEE: I see. So you're allocating all of these manual input to the category of initiating the process.
> MR. SARTORI: *Yes, yes.*
> JUDGE LEE: If there's any manual input outside of initiation, then it's not covered by the claim.
> MR. SARTORI: *It's not covered by the claim and it does not anticipate the claim* [In context, the subject matter of the discussion was claims 1 and 10 of the '787].

Ex. F, pg. 29-30 (emphasis added).[7]

Because of its factual similarity, the *Ormco Corp. v. Align Tech.* case should

inform this Court's construction of the term electronically. 498 F.3d 1307. The patents

---

[6] Simplification distinguished its patents from other prior art software on the market on the basis that the prior art software included some, even if limited, manual input by the user. *See* Ex. F, pg. 27.

Simplification's statements with regard to the terms electronically and automatic negate the "Purple Heart" interjection discussed above. Furthermore, none of the embodiments in the specification disclose manual input of tax data outside of initiation.

in that case related to the computer-aided design of custom orthodontic appliances. *Id.* at 1311. As in this case, the Federal Circuit was similarly confronted with determining the degree to which statements by the patentee in the specification and the prosecution history implicitly limited human intervention.   In deciding the case, the Court stated:

> Although their claim language does not expressly recite automatic control of the finish tooth positioning, that is what they mean, and that is all that the specification describes; the specification does not support operator positioning. Moreover, the prosecution of the '562 patent, with the same specification, makes clear that the inventors understood their invention to encompass only automatic positioning because they so argued in order to distinguish their claims over Lemchen. We are mindful of the precaution that we must not incorporate into the claims limitations only found in the specification. We are not doing so here, nor did the district court. We are interpreting the claims in light of the specification. The situation here involves specifications that in all respects tell us what the claims mean, buttressed by statements made during prosecution in order to overcome a rejection over prior art. Accordingly, to attribute to the claims a meaning broader than any indicated in the patents and their prosecution history would be to ignore the totality of the facts of the case and exalt slogans over real meaning. We thus agree with the district court that in light of the specification of the Ormco patents and statements from the prosecution history of the parent '562 patent, the claims specified above require automatic computer determination of the finish positions of the teeth without human adjustment of the final results.

*Id.* at 1316.  Block's proposed construction for "electronically" admittedly contains a negative limitation, the "without manual input" limitation.  However, Block contends that that such a limitation is necessitated by clear statements in the specification and the prosecution history.

Read in light of the prosecution history, Block's proposed definition is consistent with common usage.  For example, Merriam-Webster's Online Dictionary provides the following definition for the adjective electronic (equating it to the adverb at issue):

*2. b: implemented on or by means of a computer : involving a computer*

*<electronic banking>*

18

*Merriam-Webster's Online Dictionary, at*

http://www.merriam-webster.com/dictionary/electronic. Simplification's system not only

processes all the data electronically, but also collects all the tax data electronically. *See*

Col. 6, ll. 39-41 ("With the present invention, this information is obtained as described

above in steps 11 and 12."). Accordingly, Block's proposed definition accords well with

that found in Merriam-Webster's Online Dictionary.

Simplification now proposes the following definition for the term

"electronically":

*Electronically: By way of devices, circuits, or systems, utilizing electron devices.*

*See* Ex. E. However, Block contends that Simplification's proposed definition tramples

on the prosecution history record. Recall that when Simplification was navigating

around prior art before the BPAI, Simplification's counsel argued the following:

> MR. SARTORI: . . . . *And yes, we are saying electronically means that there's no manual input. You have to -- we're saying you need to read it in light of the specification.*

Ex. F, pg. 29 (emphasis added). Now, having escaped reexamination on the basis of such

arguments, Simplification now asks this Court to forget that record entirely.

Simplification's definition for "electronically" lends unjustifiable breadth to the

claims. Before the Court is tempted to abandon the prosecution history in favor of

Simplification's definition for "electronically", this Court should consider the impact that

such a construction would have on the asserted claims. For example, using

Simplification's definition, a taxpayer using a prior art tax program (e.g., TurboTax; Col.

1, ll. 38-48) who calls his employer to get data from a W-2 tax form emailed to her in

order to complete a tax return on a computer would almost certainly infringe claim 20 of

19

the '052 patent. To emphasize the point, a scenario is presented in brackets below the relevant claim element.[8]

20. *A method for automatic tax reporting by an electronic intermediary comprising:*

[In considering the following scenario Block respectfully reminds the Court Simplification's definition for automatic only requires that <u>one</u> or more functions, once initiated, are completed electronically without manual intervention.]

*connecting electronically said electronic intermediary to a tax data provider;*

[A taxpayer, in the midst of beginning his tax return, calls his employer (a tax data provider) to request a W-2. The telephone would surely qualify as a device using electrons – Check!]

*collecting electronically tax data from said tax data provider, wherein said tax data is reported on an Internal Revenue Service ("IRS"), state, local, or foreign tax form;*

[In response, the taxpayer's employer emails W-2 data to the taxpayer – Check, another device using electrons!]

*processing electronically said tax data collected electronically from said tax data provider to obtain processed tax data; and*

[The taxpayer enters the information from the email into a standard tax program like TurboTax which performs the appropriate calculations on the data – Check!]

*preparing electronically an electronic tax return using said processed tax data.*

---

[8] Example claim 20 from the '052 patent is presented below and separated into its constituent parts. Commentary in brackets is provided to demonstrate the result of adopting Plaintiff's proposals.

20

[After the user enters the data manually, the tax software generates the tax return on the computer—Check!].

Col. 9, l. 5 – Col. 10, l. 5 (with commentary by Block in the brackets). Indeed, faced with a somewhat similar line of inquiry before the BPAI, this Court will quickly recognize exactly why Simplification was forced to steer clear of any manual entry. *See* Ex. F, pg. 30, ll. 14-24. Allowing for post-initiation manual entry causes the claims to read onto partially automated prior art systems.

Thus, for the foregoing reasons and based upon the prosecution history, Block respectfully requests that the Court adopt its proposed definition for the term "electronically".

### 3.  Connecting electronically

| Connecting electronically | the act of establishing communication between computerized devices automatically without manual intervention from the user. |
|---|---|

Block asserts the term "connecting electronically," like the other steps which include the term "electronically," must be performed automatically without manual intervention from the user. In this regard, Block fully incorporates the discussion of the term "electronically" above.

In the patents, the connecting step is described as the first procedure of the electronic collection step (Step 12) of tax data from the tax providers. The electronic intermediary connects electronically to each tax data provider that has tax data pertaining to the taxpayer. *See* Col 5, ll. 50-62. As Simplification stated on the record, "Step 12 is where the 'automatic' kicks in." Ex. F, pg. 23, ll. 16-17. From the point at which the

21

electronic intermediary connects to the tax data provider to the point that an electronic tax return is prepared, any manual entry by the user would be inconsistent with the specification. *See* Ex. F, pg. 30.

In the world of computers, the term connecting refers to the act of establishing communication between computerized devices. *See* The Bluetooth Technology Glossary *at* http://www.bluetooth.com/Bluetooth/Technology/Glossary/ ("A phase in the communication between devices when a connection between them is being established."). In this context, Merriam-Webster's Online Dictionary provides the following definition for the verb connect:

*5: to establish a communications connection <connect to the Internet>*

*Merriam-Webster's Online Dictionary, at*

http://www.merriam-webster.com/dictionary/connect. Because the term connecting is modified by the term "electronically," Block's proposed definition is consistent with the dictionary definition.

Thus, for the foregoing reasons and based upon the prosecution history, Block respectfully requests that the Court adopt its definition of "connecting electronically"

### 4. Collecting electronically

| collecting electronically | the act of gathering data automatically without manual intervention from the user |
|---|---|

Block asserts the term "collecting electronically," like the other steps which include the term "electronically," must be performed automatically without manual intervention from the user.

In the patents-in-suit, the collecting step, like the connecting step, is part of Step 12, the first step in which the electronic intermediary electronically collects tax data from the tax data providers using electronic links. Col 5, l. 50-Col. 6, l. 30; *see also* Fig. 1. As Simplification stated on the record, "Step 12 is where the 'automatic' kicks in." Ex. F, pg. 23, ll. 16-17. Well past initiation of the system and method, any manual entry during the "collecting electronically" step is inconsistent with the specification and Simplification's testimony.[9] In this regard, Block fully incorporates the discussion of the term "electronically" above.

Thus, for the foregoing reasons and based upon the prosecution history, Block respectfully requests that the Court adopt its definition of "collecting electronically."

---

[9] Early in the Oral Hearing, Simplification did make one attempt to hedge on the "no manual entry" limitation by surreptitiously interjecting an example in which a charity relevant to the taxpayer does not possess means for electronic transmission of tax data. Ex. F, pg. 8. However, this example and its substance should be rejected by the Court for the following reasons. First and foremost, it was later negated by Simplification's affirmations to the USPTO that any manual input outside of initiation is not covered by the claims and would not anticipate the claims. *See Id.* at 30. ll. 18-24. Second, manual entry of tax data is inconsistent with a "method, an apparaus, and an article of manufacture for *fully*-automated tax reporting, payment, and refund." *See* Col. 3, ll. 21-24 (emphasis added). Third, outside of initiation, the specification discloses no such examples of manual data entry. In fact, in the only examples involving a charity, the specification is clear that "the electronic intermediary then notes that these charities need to be *electronically* contacted for collection of tax data." Col. 5, ll.1-2 (emphasis added). Furthermore, the specification also recites "[w]ith the present invention, this information [tax data] is obtained as described above in steps 11 and 12 [initiation followed by electronic collection]." Col. 6, ll. 39-41 (emphasis added). Finally, such manual data entry would be inconsistent with the recitation at Col.6, ll. 23-30. It is clear from the response the comment received at the Oral Hearing that the judges considered Simplification's interjection to be tangential to the question they were asking. *See* Ex. F, pg. 8. ll. 16-17 ("JUDGE LEE: Okay, your talking about two different limitations. I'm only talking about electronically collecting.")

23

### 5.  Processing electronically

| processing electronically | the act of performing the appropriate computations (e.g., addition, subtraction, multiplication, and division) automatically without manual intervention from the user. |
|---|---|

Block asserts the term "processing electronically," like the other steps which include the term "electronically" must be performed automatically without manual intervention from the user.  This definition is consistent with the fully-automated invention described in the specification.  It is also consistent with the statements Simplification made before the BPAI.

Block's proposed definition is primarily based on recitations in the specification of the patents-in-suit.  The specification provides a detailed description of what processing means in the patents.  The specification recites:

> *Further, in step 13, the electronic intermediary processes the tax data by performing the appropriate tax computations. Non-limiting examples of appropriate tax computations include: addition, subtraction, multiplication, and division to determine the taxpayer's gross income, relevant deductions, net taxable income, and tax liability.*

Col. 6, ll. 42-47 (emphasis added)

The specification clearly indicates that all tax data which is processed is obtained by electronic means.  Like the other electronic steps in this patent, the specification informs us that this step is automated.  The specification describes this processing step, labeled Step 13, reciting:

> In step 13, the electronic intermediary processes the tax data obtained electronically from the tax data providers in step 12. In the present invention, step 13 can be implemented using a computer program similar to the

24

> computer programs currently available in the market place,
> such as TurboTax, which is a registered trademark of Intuit,
> Inc. Although step 13 can be implemented with current
> technology, the current technology requires that the tax
> data and other information relevant to the taxpayer be
> inputted manually. *With the present invention, this
> information is obtained as described above in steps 11 and
> 12.*

Col. 6, ll. 31-41 (emphasis added). Accordingly, this language, along with the language

that "the invention . . . eliminates the current requirement that a taxpayer manually enter

such tax data onto a tax return or into a computer" (Col 6, ll. 24-27), demonstrate that the

step is devoid of manual entry. In this regard, Block incorporates its discussion regarding

the term "electronically" and its impact on the steps of the claimed invention, above.

In further support of Block's definition, the paragraph above distinguishes the

processing performed by prior art tax programs such as TurboTax on the basis that

"[w]ith the present invention, this information *is* obtained as described above in steps 11

and 12." Col. 6, ll. 36-41. As is clear in the specification, Steps 11 and 12 describe a

process whereby tax data is collected electronically from tax data providers (Step 12)

after some initiation information is input manually by the user (Step 11). There is no

indication or teaching that Step 12 may be anything short of fully-automated.

Thus, for the foregoing reasons and based upon the prosecution history, Block

respectfully requests that the Court adopt its definition of "processing electronically."

### 6. Preparing electronically

| preparing electronically | the act of completing automatically without manual intervention from the user |
|---|---|

25

Block asserts the term "preparing electronically," like the other steps which include the term "electronically," must be performed automatically without manual intervention from the user. Accordingly, Block submits that the term "preparing electronically" means "the act of completing automatically without manual intervention from the user." This definition is consistent with the claim language, specification, dictionaries, and with assertions made by Simplification during the prosecution history.

In the context of the claim element in which it appears, preparing means completing. The claim term "preparing electronically" is recited repeatedly in the claims within the following claim limitation:

*preparing electronically an electronic tax return using said processed tax data.*

*See, e.g.*, Exhibit B, Claim 10, Col. 8, ll. 61-62. From the entire phrase, it is clear that the item prepared is an electronic tax return.[10] In the tax return context, the term "preparing" as in the phrase "preparing a tax return" implies completeness. For example, if one asks an accountant to *prepare* a tax return, then the accountant understands that the tax form (e.g., IRS Form 1040) is to be completed.

This understanding is also consistent with the specification. Significantly, it is the electronic tax return completed in Step 14 which may be electronically filed in Step 15. *See* Col. 6, ll. 63-64 ("In step 15, the electronic intermediary electronically files the electronic tax returns prepared in step 14 with the taxing authorities."). The fact that the same electronic tax return prepared in Step 14 may be electronically filed in Step 15 further confirms that electronic tax return is completed during the "preparing electronically" step.

---

[10] It is significant that in the claims the item prepared electronically is "an electronic tax return" and *not* something less, for example, a section of an electronic tax form.

26

Finally, Block's proposal is consistent with the ordinary meaning of the term "preparing." Merriam-Webster's Online Dictionary defines the verb "prepare" as

*1 a: to make ready beforehand for some purpose, use, or activity <prepare food for dinner>*

*Merriam-Webster's Online Dictionary, at*

http://www.merriam-webster.com/dictionary/prepare.  Consistent with the definition above, the electronic tax return is made ready or completed beforehand for the purpose of filing with a tax authority.  The electronic tax return is the completed product which is ready to file with the relevant taxing authority.

Block respectfully submits that it was only by assuring the BPAI that prior art systems and methods requiring any manual input, outside of initiation, did not anticipate (or were not covered by) the claims that enabled Simplification to save their patents from the prior art on record in the reexamination.  *See* Ex. F, pg. 30, ll. 18-24.  Like other claim elements using the term "electronically," the function "preparing electronically" must be performed without manual input from the user.  *See id.* at 29, ll. 3-5 Accordingly, this element should not be construed in a way that causes it to read onto systems and methods where the preparation of the electronic tax return requires any manual input (outside of initiation entries) from the user (e.g., manual entry of tax data). Doing so would unjustly allow Simplification to recapture claim scope that was specifically surrendered during the reexamination.

Thus, for the foregoing reasons and based upon the prosecution history, Block respectfully requests that the Court adopt its definition of "preparing electronically."

### 7. Filing electronically

| filing electronically | the act of entering a legal document into the public record by means of a computer automatically without manual intervention from the user. |
|---|---|

Block asserts the term "filing electronically," like the other steps that include the term "electronically," must be performed automatically without manual intervention from the user. Accordingly, Block incorporates its discussion of the term electronically above. Block's proposed definition is consistent with the specification and the prosecution history of the patents-in-suit.

The filing electronically step is labeled as Step 15 in the patent. *See* Col 6, l. 52— Col. 7, l. 2. In that step, "the electronic intermediary electronically files the electronic tax returns prepared in Step 14 with the taxing authorities." *Id*. Accordingly, Block contends that the appropriate construction for the term filing electronically is "the act of entering a legal document into the public record by means of a computer automatically without manual intervention from the user."

In the tax return context, the phrase "filing a tax return" has a meaning well understood by nearly every taxpayer. With respect to tax returns, filing refers to the step of entering a tax return (or other legal document such as an extension) with the IRS or other state or local taxing authority. In the context of the specification, the filing electronically step is performed electronically by an electronic intermediary. Col 6, ll. 62-64.

28

As modified by the term electronically, Block's proposed definition is consistent with the ordinary meaning of the term "filing." Merriam-Webster's Online Dictionary defines the verb "file" as

> *2 a: to place among official records as prescribed by law*
>
> *<file a mortgage>*

*Merriam-Webster's Online Dictionary, at*

http://www.merriam-webster.com/dictionary/file.   In this instance, it is an electronic tax return that is placed into the official record of the IRS or other taxing authority.  *See* Col 6, l 52—Col. 7, l. 2.

Simplification's definition is unduly broad given the clear context of the action. For example, if one submits or transmits a question to the IRS (e.g., by email) one has not filed anything.  Instead, in the context of this invention, filing has a more specific meaning than that proposed by Simplification.  That meaning is more consistent with the construction offered by Block.

Thus, for the foregoing reasons and based upon the prosecution history, Block respectfully requests that the Court adopt its definition of "filing electronically."

### 8.  Electronic tax return

| electronic tax return | a completed computerized tax return ready for submission to a governmental tax agency. |
|---|---|

To be consistent with a fully automated system and method for tax reporting, the system and method must be capable of completing a tax return.  *See* Col. 3, ll. 20-24. Accordingly, Block asserts the term "electronic tax return" refers to "a completed computerized tax return ready for submission to a governmental tax agency."  This

definition is consistent with the claim language, the specification, and the prosecution history.

In common usage, a tax return is a completed tax form (e.g., IRS Form 1040) which is ready for submission to a governmental tax agency. The specification admits so much in reciting that the electronic tax return prepared in Step 14 may be electronically filed in Step 15. *See* Col. 6, ll. 62-64. *see also*, Col. 6, ll. 58-61 ("For example, if the taxing authority is the IRS, the electronic tax return will correspond to the appropriate federal tax return, such as the Form 1040 or the Form 1040EZ.").

Simplification's definition is similar to Block's but lacks needed specificity. More specifically, Simplification's definition fails to specify that the tax report is complete and ready for submission to a governmental tax agency. Since the specification in the patents-in-suit teaches that the electronic tax return generated by the invention is capable of being electronically filed in Step 15, the electronic tax return must necessarily be complete and ready for submission to the taxing authority.

Thus, based upon the intrinsic evidence, Block respectfully requests that the Court adopt its definition of "electronic tax return."

### C. Means Plus Function Limitations

The parties agree that terms listed in this section should be construed under 35 U.S.C. § 112(6). Accordingly, these claim limitations "shall be construed to cover the corresponding structure, material, or acts described in the specification and equivalents thereof". 35 U.S.C. ¶112, P6. The first step of a means-plus-function analysis is an identification of the recited function. The second step is an identification of the structure in the written description that corresponds to and performs that function.

30

With regard to the means-plus-function elements discussed below, Block contends that the specification of the patents-in-suit fails to disclose structure sufficient to perform the recited functions. As the Federal Circuit recently opined, "[i]n cases involving a computer-implemented invention in which the inventor has invoked means-plus-function claiming, [the Federal Circuit] has consistently required that the structure disclosed in the specification be more than simply a general purpose computer or microprocessor." *Aristocrat Techs. Austl. Pty Ltd. v. Int'l Game Tech.*, 521 F.3d 1328, 1333 (Fed. Cir. 2008). "The reference to 'appropriate programming' imposes no limitation whatever, as any general purpose computer must be programmed." *Id.* at 1334. Likewise, the description of the embodiments in the patents-in-suit "is simply a description of the outcome of the claimed functions, not a description of the structure, i.e., the computer programmed to execute a particular algorithm." *See id.* at 1334 -1335.

### 1. Means for connecting electronically

Because this phrase includes the term "electronically," Block submits that the connecting function for this means plus function limitation must be performed automatically without manual intervention from the user. Consistent with its definition for "connecting electronically above, Block proposes that the Court construe the function of this limitation to be "establishing communication between computerized devices automatically without manual intervention from the user."

Block contends that the specification does not disclose structure sufficient to perform the recited function. However, to the extent the Court believes structure is sufficiently described, Defendant submits that the only structure disclosed is a general

31

purpose computer programmed with undisclosed software connected by electronic links 32-37 to tax data providers. *See* Col. 5, l. 50-Col., 6, l. 6; *see also*, Fig. 2.

### 2.  Means for collecting electronically

Because this phrase includes the term "electronically," Block submits that the collecting function for this means plus function limitation must be performed automatically without manual intervention from the user. Consistent with its definition for "collecting electronically" above, Block proposes that the Court construe the function of this limitation to be "gathering data automatically without manual intervention from the user."

Block contends that the specification does not disclose structure sufficient to perform the recited function.  However, to the extent the Court believes structure is sufficiently described, Block submits that the structure disclosed is a general purpose computer programmed with undisclosed software connected by electronic links 32-37 to tax data providers. *See* Col. 5, l. 50-Col., 6, l. 6; *see also*, Fig. 2.

### 3.  Means for processing electronically

Because this phrase includes the term "electronically," Block submits that the processing function for this means plus function limitation must be performed automatically without manual intervention from the user. Consistent with its definition for "processing electronically" above, Block proposes that the Court construe the function of this limitation to be "performing the appropriate computations (e.g., addition, subtraction, multiplication, and division) automatically without manual intervention from the user.

Block contends that the specification does not disclose structure sufficient to perform the recited function.   Reference to a general purpose computer with special programming is insufficient to meet the requirements of Section 112¶6.  *See Aristocrat Techs.*, 521 F.3d at 1333-34.  However, to the extent the Court believes structure is sufficiently described, Defendant submits that the only structure disclosed is a general purpose computer programmed with undisclosed software.  *See* Col., 6, ll. 33-39; *see also*, Fig. 2.

### 4.  Means for preparing electronically

Because this phrase includes the term "electronically," Block submits that the preparing function for this means plus function limitation must be performed automatically without manual intervention from the user.  Consistent with its definition for "preparing electronically" above, Block proposes that the Court construe the function of this limitation to be "completing automatically without manual intervention from the user and electronic tax return using said processed tax data."

Block contends that the specification does not disclose structure sufficient to perform the recited function.   Reference to a general purpose computer with special programming is insufficient to meet the requirements of Section 112¶6.  *See Aristocrat Techs.*, 521 F.3d at 1333-34.  However, to the extent the Court believes structure is sufficiently described, Block submits that the only structure disclosed is a general purpose computer programmed with undisclosed software. *See* Col., 6, ll. 53-56; *see also*, Fig. 2.

### 5. Means for filing electronically

Because this phrase includes the term "electronically," Block submits that the preparing function for this means plus function limitation must be performed automatically without manual intervention from the user. Consistent with its definition for "filing electronically" above, Block proposes that the Court construe the function of this limitation to be "entering an electronic tax return with said taxing authority by means of a computer automatically without manual intervention from the user."

Block contends that the specification does not disclose structure sufficient to perform the recited function. However, to the extent the Court believes structure is sufficiently described, Block submits that the only structure disclosed is a general purpose computer programmed with undisclosed software connected to a taxing authority by electronic link 37. *See* Col. 6, l. 63-Col., 7, l. 1; *see also*, Fig. 2.

IV.    **CONCLUSION**

Block's interpretations of the disputed terms of the asserted claims of the patents-in-suit, as set forth in the forgoing brief, are consistent with the established principles of claim construction. The definitions set forth by Block are based on the intrinsic evidence and the purpose of the invention and the problems solved by it. These definitions are based on a careful reading of the patents-in-suit, their related file histories, and in particular, the applications incorporated by reference and to which priority is claimed, thereby ensuring that the scope of the patent is consistent with, and adequately covers, the bounds of the actual invention.

Respectfully submitted,

John W. Shaw (No. 3362)
Karen E. Keller (No. 4489)
Jeffrey T. Castellano (No. 4837)
YOUNG CONAWAY STARGATT
& TAYLOR, LLP
The Brandywine Building
1000 West Street, 17th Floor
Wilmington, Delaware 19801
(302) 571-6600
jcastellano@ycst.com
*Attorneys for Defendants*

OF COUNSEL:

Jeffrey S. Standley (Ohio No. 0047248)
jstandley@standleyllp.com
F. Michael Speed, Jr. (Ohio No. 0067541)
mspeed@standleyllp.com
STANDLEY LAW GROUP LLP
495 Metro Place South, Suite 210
Dublin, OH 43017
(614) 792-5555

## CERTIFICATE OF SERVICE

I, Jeffrey T. Castellano, hereby certify that on May 13, 2008, I caused to be electronically filed a true and correct copy of the foregoing document with the Clerk of the Court using CM/ECF, which will send notification that such filing is available for viewing and downloading to the following counsel of record:

> Mary B. Graham, Esquire
> Julia Heaney, Esquire
> Morris Nichols Arsht & Tunnell LLP
> 1201 North Market Street
> PO Box 1347
> Wilmington, DE 19899-1347

I further certify that on May 13, 2008, I caused a copy of the foregoing document to be served by hand-delivery and e-mail on the above-listed counsel of record and on the following in the manner indicated:

> **BY E-MAIL**
>
> Julie A. Petruzzelli, Esquire [japetruzzelli@venable.com]
> Peter J. Curtin, Esquire [pjcurtin@venable.com]
> Venable LLP
> 575-7th Street, N.W.
> Washington, DC 20004

YOUNG CONAWAY STARGATT & TAYLOR, LLP

/s/ Jeffrey T. Castellano
John W. Shaw (No. 3362)
Karen E. Keller (No. 4489)
Jeffrey T. Castellano (No. 4837)
The Brandywine Building
1000 West Street, 17th Floor
Wilmington, Delaware 19801
(302) 571-6600
kkeller@ycst.com

*Attorneys for Defendants*