**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| SIMPLIFICATION, LLC,<br><br>     Plaintiff,<br><br> v.<br><br>BLOCK FINANCIAL CORPORATION and H&R<br>BLOCK DIGITAL TAX SOLUTIONS, INC.,<br><br>    Defendants. | Civil Action No. 03-355-JJF<br>Civil Action No. 04-114-JJF<br>   CONSOLIDATED |

**SIMPLIFICATION, LLC'S OPENING *MARKMAN* BRIEF ON THE**
**CONSTRUCTION OF THE CLAIMS OF U.S. PATENT NOS. 6,202,052 & 6,697,787**

MORRIS, NICHOLS, ARSHT & TUNNELL LLP
Mary B. Graham (#2256)
Julia Heaney (#3052)
1201 N. Market Street
P.O. Box 1347
Wilmington, DE 19899-1347
(302) 658-9200
jheaney@mnat.com
 *Attorneys for Plaintiff, Simplification LLC*

OF COUNSEL:

Julie A. Petruzzelli
Peter J. Curtin
David M. Farnum
Michelle M. Marcus
VENABLE, LLP
575 7th Street, N.W.
Washington, DC 20004-1601
(202) 344-4000

Dated: May 13, 2008

## TABLE OF CONTENTS

TABLE OF AUTHORITIES. ................................................................................................ ii

I.      INTRODUCTION. .................................................................................................1

II.     NATURE AND STAGE OF PROCEEDINGS ......................................................1

III.    STATEMENT OF FACTS .....................................................................................2

        A.  The '052 Patent. ..........................................................................................2

        B.  The '787 Patent. ..........................................................................................4

IV.     THE LAW OF CLAIM CONSTRUCTION. .........................................................6

        A.  The Role of the Claims. ..............................................................................6

        B.  Other Intrinsic and Extrinsic Evidence. .....................................................7

        C.  Interpreting Means-Plus-Function Limitations. .........................................9

V.      ARGUMENT. .......................................................................................................10

        A.  Agreed-Upon Constructions. ....................................................................10

        B.  The Proper Construction of "Automatic Tax Reporting." ........................11

        C.  The Proper Construction of "Electronically." ..........................................16

        D.  The Proper Construction of the Means Plus Function Claims...................24

        E.  The Proper Construction of "Electronic Tax Return." ..............................30

VI.     CONCLUSION. ....................................................................................................32

# TABLE OF AUTHORITIES

**CASES**

*Altiris, Inc. v. Symantec Corp.*,
   318 F.3d 1363 (Fed. Cir. 2003)................................................................9

*Bicon, Inc. v. Straumann Co.*,
   441 F.3d 945 (Fed. Cir. 2006)................................................................7

*Brown v. 3M,*
   265 F.3d 1349 (Fed. Cir. 2001)................................................................7

*Cardiac Pacemakers, Inc. v. St. Jude Med., Inc.*,
   296 F.3d 1106 (Fed. Cir. 2002)................................................................9

*CollegeNet v. ApplyYourself, Inc.*,
   418 F.3d 1225 (Fed. Cir. 2005).......................................................... 14-16

*Comark Communications, Inc. v. Harris Corp.*,
   156 F.3d 1182 (Fed. Cir. 1998)................................................................8

*CSS Fitness, Inc. v. Brunswick Corp.*,
   288 F.3d 1359 (Fed. Cir. 2002)................................................................8

*Georgia-Pacific Corp. v. United States Gypsum Co.*,
   195 F.3d 1322 (Fed. Cir. 1999)...............................................................13

*In re Ghiron,*
   442 F.2d 985 (U.S.P.Q. 1971) ........................................................ passim

*Innova/Pure Water, Inc. v. Safari Water Filtration Sys., Inc.*,
   381 F.3d 1111 (Fed. Cir. 2004)..........................................................7, 18

*Intervet Am., Inc. v. Kee-Vet Labs., Inc.*,
   887 F.2d 1050 (Fed. Cir. 1989)................................................................8

*Inverness Med. Switz. GmbH v. Warner Lambert & Co.*,
   309 F.3d 1373 (Fed. Cir. 2002)................................................................8

*JVW Enters., Inc. v. Interact Accessories, Inc.*,
   424 F.3d 1324 (Fed. Cir. 2005)........................................................ passim

*Markman v. Westview Instruments, Inc.*,
   52 F.3d 967 (Fed. Cir. 1995) (*en banc*) ....................................................2

*Medtronic, Inc. v. Advanced Cardiovascular Sys.*,
   248 F.3d 1303 (Fed. Cir. 2001).........................................................9, 24

*MercExchange, LLC v. eBay, Inc.*,
   401 F.3d 1323 (Fed. Cir. 2005).......................................................................15

*Merck & Co. v. Teva Pharms. USA, Inc.*,
   395 F.3d 1364 (Fed. Cir. 2005).........................................................................7

*Personalized Media Communications, L.L.C. v. Int'l Trade Comm'n*,
   161 F.3d 696 (Fed. Cir. 1998)...........................................................................9

*Phillips v. AWH Corp.*,
   415 F.3d 1303 (Fed. Cir. 2005) (*en banc*) ................................................. 6-8, 13

*Superguide Corp. v. DirecTV Enters., Inc.*,
   358 F.3d 870 (Fed. Cir. 2004)...........................................................................7

*Vitronics Corp. v. Conceptronic, Inc.*,
   90 F.3d 1576 (Fed. Cir. 1996)...........................................................................7

*York Prods., Inc. v. Central Tractor Farm & Family Ctr.*,
   99 F.3d 1568 (Fed. Cir. 1996)...........................................................................6

## STATUTES

35 U.S.C. § 112, ¶ 6....................................................................................... Passim

## OTHER

Internal Revenue Code §§ 6011-6110 .................................................................31

Internal Revenue Code §§ 6031-6052 .................................................................31

## I.       __INTRODUCTION.__

Simplification, LLC has brought these consolidated patent infringement suits against Block Financial Corporation ("BFC") and H&R Block Digital Tax Solutions, Inc. (collectively "Block") for infringement of U.S. Patent No. 6,202,052 ("the '052 patent") and U.S. Patent No. 6,697,787 ("the '787 patent"). The '052 patent and its continuation, the '787 patent, generally relate to a method, apparatus, and computer-readable medium for collecting and processing tax data electronically. Simplification contends that Block has marketed and sold computer software products and web-based tax preparation services that infringe the '052 and '787 patents.

As the Court ordered, Simplification and Block have conferred to identify the claim terms requiring construction and to narrow their differences on the proper construction. As a result, the parties have agreed upon the construction of several claim terms and jointly request that the Court construe the agreed-upon terms as set forth below. Simplification and Block, however, still dispute the proper construction of thirteen (13) claim terms from the two patents, including five (5) "means-plus-function" limitations. Simplification urges the Court to adopt its proposed constructions, which comport with the intrinsic and extrinsic evidence, and the governing law.

## II.      __NATURE AND STAGE OF PROCEEDINGS.__

On March 8, 2003, Simplification brought suit against H&R Block, Inc., alleging *inter alia* that the TaxCut® tax preparation software infringed the '052 patent. The parties agreed to substitute BFC as the named defendant. On July 11, 2003, BFC requested that the U.S. Patent & Trademark Office ("USPTO") reexamine the validity of the '052 patent, and USPTO granted that request in October 2003. This Court stayed that litigation pending the results of the reexamination, pursuant to the parties' stipulation.

After the '787 patent issued, Simplification filed the second suit against BFC on February 24, 2004 (Civil Action No. 04-114-JJF). Within weeks, BFC filed a second request for

reexamination, which the USPTO granted on June 3, 2004.  This Court then stayed the second suit pending the results of the reexamination of the '787 patent.

After more than three years of reexamination, the USPTO's Board of Patent Appeals and Interferences confirmed the validity of the '052 and '787 patent claims on July 31, 2007.  The Court thereafter lifted the stays and consolidated the cases.

On February 8, 2008, Simplification filed a Second Amended Complaint joining H&R Block Digital Tax Solutions ("DTS") as a defendant.  Block has asserted declaratory judgment counterclaims of non-infringement and invalidity and/or unenforceability. Fact discovery is scheduled to end on May 30, 2008 and a *Markman* hearing is set for June 5, 2008.   Expert discovery is set to follow the Court's *Markman* ruling, with dispositive motions due by October 31, 2008.  The consolidated cases are scheduled for a jury trial to begin on February 9, 2009.

## III.   <u>STATEMENT OF FACTS.</u>

### A.   *The '052 Patent.*

The '052 patent issued from Application No. 09/073,027 filed on May 7, 1998, and claims priority to Provisional Application No. 60/045,945 filed on May 8, 1997.  The '052 patent issued on March 13, 2001 with twenty (20) claims, including four (4) independent claims.  *See* Ex. A, '052 patent.

The inventions of the '052 patent address the need to simplify the process by which a taxpayer determines and ultimately reports tax liability while also reducing errors and saving paper.   Determining and reporting tax liability has long been paper-based and manually intensive, and before the inventions of the '052 patent it remained so even if the taxpayer used tax preparation software.  *Id*. at Col. 2:16-58.  Taxpayers had to gather paper copies of their IRS tax forms (*e.g.* Forms W-2, 1099, and 1098) and other tax data, and hand write or type that

information into their own tax returns.   The claimed inventions advantageously solve these problems by recognizing that much of the information necessary to compute tax liability is available electronically, *see id*. at Col. 1:16-38, and that tax return preparation and filing are increasingly automated processes capable of being performed by computer software.   *Id*. at Cols. 1:39-49, 1:64–2:1.  The claimed inventions simplify the tax determination and reporting process by providing a method, apparatus, and computer-readable medium utilizing a system comprising a general purpose computer with software and electronic communications equipment, to collect and process the information needed to prepare a tax return and report to a taxing authority.

Simplification has asserted against Block claims 1-2 and 6-20 of the '052 patent.   The four (4) independent claims of the '052 patent read as follows (italicized terms are disputed):

> 1.     A method for *automatic tax reporting* by an electronic intermediary comprising:
>> *connecting electronically* said electronic intermediary to a tax data provider;
>> *collecting electronically* tax data from said tax data provider;
>> *processing electronically* said tax data collected electronically from said tax data provider to obtain processed tax data;
>> *preparing electronically* an electronic tax return using said processed tax data;
>> *connecting electronically* said electronic intermediary to a taxing authority; and
>> *filing electronically* said *electronic tax return* with said taxing authority.

> 15.    An apparatus for *automatic tax reporting* by an electronic intermediary comprising:
>> *means for connecting electronically* said electronic intermediary to a tax data provider;
>> *means for collecting electronically* tax data from said tax data provider;
>> *means for processing electronically* said tax data collected electronically from said tax data provider to obtain processed tax data;
>> *means for preparing electronically* an *electronic tax return* using said processed tax data;

3

> *means for connecting electronically* said electronic intermediary to a taxing authority; and
>
> *means for filing electronically* said *electronic tax return* with said taxing authority.

19.  A computer-readable medium embodying a computer program for *automatic tax reporting* by an electronic intermediary, said computer program comprising code segments for:

> *connecting electronically* said electronic intermediary to a tax data provider;
>
> *collecting electronically* tax data from said tax data provider;
>
> *processing electronically* said tax data collected electronically from said tax data provider to obtain processed tax data;
>
> *preparing electronically* an *electronic tax return* using said processed tax data;
>
> *connecting electronically* said electronic intermediary with a taxing authority; and
>
> *filing electronically* said *electronic tax return* to said taxing authority.

20.  A method for *automatic tax reporting* by an electronic intermediary comprising:

> *connecting electronically* said electronic intermediary to a tax data provider;
>
> *collecting electronically* tax data from said tax data provider;
>
> *processing electronically* said tax data collected electronically from said tax data provider to obtain processed tax data; and
>
> *preparing electronically* an *electronic tax return* using said processed tax data.

## B.    *The '787 Patent.*

The '787 patent issued on February 24, 2004 from Application No. 09/776,707, filed on February 6, 2001 as a continuation of the application leading to the '052 patent.  As a continuation, the '787 patent has the same specification and priority date as the '052 patent.  As originally issued, the '787 patent has eighteen (18) claims, including three (3) independent claims.  *See* Ex. B, '787 patent.

The inventions of the '787 patent address the need to simplify how a taxpayer collects information relevant to determining their tax liability and preparing a tax return while also

reducing errors and saving paper.  The collection of tax data and the determination of tax liability has long been paper-based and manually intensive, and before the inventions of the '787 patent it remained so even if the taxpayer used tax preparation software.  *Id*. at Col. 2:16-58.  Taxpayers had to gather paper copies of their IRS tax forms (*e.g.* Forms W-2, 1099, and 1098) and other tax data, and hand write or type that information into their own tax returns.  The claimed inventions advantageously solve these problems by recognizing that much of the information necessary to compute tax liability is available electronically, *see id*. at Col. 1:16-38, and that the determination of tax liability is increasingly an automated process capable of being performed by computer software.  *See id*. at Cols. 1:39-49, 1:64 – 2:1.  The claimed inventions simplify the processes of collecting tax data and determining tax liability by providing a method, apparatus, and computer-readable medium utilizing a system comprising a general purpose computer with software and electronic communications equipment to collect and process information needed for the preparation of a tax return.

Simplification has asserted against Block all the claims of the '787 patent.  The three (3) independent claims of the '787 patent read as follows (italicized terms are disputed):

1. An apparatus for collecting tax data comprising:
   *means for connecting electronically* an electronic intermediary to a tax data provider;
   *means for collecting electronically* tax data from said tax data provider;
   *means for processing electronically* said tax data collected from said tax data provider to obtain processed tax data; and
   *means for preparing electronically* an *electronic tax return* using said processed tax data.

10.  A computer-readable medium embodying a computer program for collecting tax data, said computer program comprising code segments for:
   *connecting electronically* an electronic intermediary to a tax data provider;
   *collecting electronically* tax data from said tax data provider;

5

*processing electronically* said tax data collected from said tax data
provider to obtain processed tax data; and
*preparing electronically* an *electronic tax return* using said processed
tax data.

15.    A method for automatic tax data collecting by an electronic
intermediary comprising:
*connecting electronically* said electronic intermediary to a tax data
provider;
*collecting electronically* tax data from said tax data provider, wherein
said tax data is reported on an Internal Revenue Service ("IRS"),
state, local, or foreign tax form;
*processing electronically* said tax data collected electronically from
said tax data provider to obtain processed tax data; and
*preparing electronically* an *electronic tax return* using said processed
tax data.

## IV.    THE LAW OF CLAIM CONSTRUCTION.

### A.    The Role of the Claims.

"It is a bedrock principle of patent law that the claims of a patent define the invention to

which the patentee is entitled the right to exclude." *Phillips v. AWH Corp*., 415 F.3d 1303, 1312

(Fed. Cir. 2005) (*en banc*) (internal citations omitted).  Unless the inventor expressly gives claim

language a novel meaning, claim terms take on their ordinary meaning – "the meaning that the

term would have to a person of ordinary skill in the art at the time of the invention (*i.e.*, as of the

effective filing date of the patent application)."  *Phillips*, 415 F.3d at 1313 (citing cases); *York*

*Prods., Inc. v. Central Tractor Farm & Family Ctr*., 99 F.3d 1568, 1572 (Fed. Cir. 1996).  In the

case of the '052 and '787 patents, the effective filing date is May 8, 1997.  The claims

themselves will provide "substantial guidance" as to the meaning of particular claim terms, and

in some cases, the ordinary meaning of claim language "may be readily apparent even to lay

judges, and claim construction in such cases involves little more than the application of the

widely accepted meaning of commonly understood words."  *Phillips*, 415 F.3d at 1314.  Non-

technical claim terms usually do not require elaborate interpretations. *See Brown v. 3M*, 265 F.3d 1349, 1352 (Fed. Cir. 2001).

The words in a claim are presumed to have some meaning, and so any interpretation that renders the words of a claim meaningless or superfluous is generally considered incorrect. *See, e.g.*, *Bicon, Inc. v. Straumann Co.*, 441 F.3d 945, 950 (Fed. Cir. 2006); *Merck & Co. v. Teva Pharms. USA, Inc.*, 395 F.3d 1364, 1372 (Fed. Cir. 2005). Therefore, "when an applicant uses different terms in a claim, it is permissible to infer that he intended his choice of different terms to reflect a differentiation in the meaning of those terms." *Innova/Pure Water, Inc. v. Safari Water Filtration Sys., Inc.*, 381 F.3d 1111, 1119 (Fed. Cir. 2004) (citing cases).

## B.      Other Intrinsic and Extrinsic Evidence.

Patent claims are not construed in isolation; instead, they are considered part of a "'fully integrated written instrument.'"  *Phillips*, 415 F.3d at 1315 (quoting *Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 978 (Fed. Cir. 1995) (*en banc*)).  Accordingly, "the court looks to 'those sources available to the public that show what a person of ordinary skill in the art would have understood disputed claim language to mean.'  Those sources include 'the words of the claims themselves, the remainder of the specification, the prosecution history, and extrinsic evidence concerning relevant scientific principles, the meaning of technical terms, and the state of the art.'"  *Phillips*, 415 F.3d at 1314 (quoting *Innova/Pure Water,* 381 F.3d at 1116); *Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1582-83 (Fed. Cir. 1996).  Courts are permitted to consider the dictionary definitions of words used in the claims in light of the intrinsic evidence, even if the ordinary meaning of the claim language seems readily apparent.  *See Phillips*, 415 F.3d at 1314, 1318, 1322-23 (noting the value of technical dictionaries in claim construction); *see also Superguide Corp. v. DirecTV Enters., Inc.*, 358 F.3d 870, 875 (Fed. Cir. 2004).

When looking to the specification to construe claim terms, care must be taken to avoid reading limitations from the specification into the claims themselves. *See Intervet Am., Inc. v. Kee-Vet Labs., Inc.*, 887 F.2d 1050, 1053 (Fed. Cir. 1989). The heavy presumption that a claim term takes on its ordinary meaning cannot be overcome simply "by pointing to the preferred embodiment or other structures or steps disclosed in the specification or prosecution history." *CSS Fitness, Inc. v. Brunswick Corp.*, 288 F.3d 1359, 1366 (Fed. Cir. 2002). There is sometimes a "fine line between reading a claim in light of the specification, and reading a limitation into the claim from the specification." *Comark Communications, Inc. v. Harris Corp.*, 156 F.3d 1182, 1186 (Fed. Cir. 1998). To walk this "fine line," it is useful to look "to the specification to ascertain the meaning of a claim term as it is used by the inventor in the context of the entirety of his invention," not merely to limit a claim term. *Comark*, 156 F.3d at 1187. The focus always remains on understanding how a person of ordinary skill in the art would understand the claim terms and attempting to resolve the problem in the context of the particular patent. *See Phillips*, 415 F.3d at 1323.

The prosecution history of patent may play a role in interpreting a claim term, but the prosecution history is less relevant when it is ambiguous. *See Philips*, 415 F.3d at 1317. "It is inappropriate to limit a broad definition of a claim term based on prosecution history that is itself ambiguous." *Inverness Med. Switz. GmbH v. Warner Lambert & Co.*, 309 F.3d 1373, 1382 (Fed. Cir. 2002). Indeed, "'[a]lthough prosecution history can be a useful tool for interpreting claim terms, it cannot be used to limit the scope of a claim unless the applicant took a position before the PTO that would lead a competitor to believe that the applicant had disavowed coverage of the relevant subject matter.'" *Id.* (quoting *Schwing GmbH v. Putzmeister Aktiengesellschaft*, 305 F.3d 1318, 1324 (Fed. Cir. 2002)).

### C.     Interpreting Means-Plus-Function Limitations.

The manner in which the claim limitation is expressed may also limit the scope of a patent claim.  For example, the law provides that when a claim limitation is "expressed as a means or step for performing a specified function without the recital of structure, material or acts in support thereof, . . [the] claim shall be construed to cover the corresponding structure, material, or acts described in the specification and equivalents thereof."  35 U.S.C. § 112, ¶ 6. Such claim limitations are called "means-plus-function" limitations.  When a claim uses the word "means" to describe a certain limitation, it creates a rebuttable presumption that this is a "means-plus-function" limitation.  *See Personalized Media Communications, L.L.C. v. Int'l Trade Comm'n*, 161 F.3d 696, 703-04 (Fed. Cir. 1998).  To rebut that presumption, the claim must recite the specific physical structure which performs the entire claimed function.  *See Altiris, Inc. v. Symantec Corp.*, 318 F.3d 1363, 1376 (Fed. Cir. 2003).

Once a claim limitation is determined to be a means-plus-function limitation, claim construction follows two steps.  First, the court must determine the "function" of the limitation. *See JVW Enters., Inc. v. Interact Accessories, Inc*., 424 F.3d 1324, 1330 (Fed. Cir. 2005) (citing *Omega Eng'g, Inc. v. Raytek Corp*., 334 F.3d 1314, 1321 (Fed. Cir. 2003)).  It is improper to narrow the scope of the claimed function beyond the claim language or to broaden the scope by ignoring clear claim limitations.  *See Cardiac Pacemakers, Inc. v. St. Jude Med., Inc*., 296 F.3d 1106, 1113 (Fed. Cir. 2002).  Second, the court must ascertain from the specification the corresponding structure (and equivalents thereof) necessary to perform the determined function. *See JVW Enters.*, 424 F.3d at 1330.  To qualify as "corresponding" structure, the identified structure must perform the claimed function and the specification must clearly associate the structure with performance of the function.  *See* 35 U.S.C. § 112, ¶ 6; *JVW Enters.,* 424 F.3d at 1332 (quoting *Cardiac Pacemakers,* 296 F.3d at 1113); *Medtronic, Inc. v. Advanced*

*Cardiovascular Sys.*, 248 F.3d 1303, 1313 (Fed. Cir. 2001) (noting that a single structure may perform more than one function, and two structures may together perform a single function); *see also In re Ghiron,* 442 F.2d 985, 991 (U.S.P.Q. 1971) (functional-type block diagrams may be acceptable "corresponding structure" if they, with the rest of the specification, enable a person skilled in the art to practice the claimed invention).

## V.   ARGUMENT.

Several categories of terms from the '052 and '787 patent claims require construction. First, Simplification and Block have agreed upon proposed constructions for certain claim terms. Second, the parties dispute the meaning of the term "*automatic tax reporting,*" which appears in the preamble of every claim of the '052 patent.  Third, the parties dispute the proper construction of the term "electronically," which carries through to several terms setting forth various acts done "electronically," *i.e.*, "*connecting electronically*," "*collecting electronically*," "*processing electronically*," "*preparing electronically*" and "*filing electronically*."   All of these claim terms appear in both the '052 and '787 patents, except for "*filing electronically*," which only appears in the '052 patent.   Fourth, the parties dispute the meaning of several means-plus- function limitations:   "*means for connecting electronically*," "*means for collecting electronically,*" "*means for processing electronically*," "*means for preparing electronically,*" and "*means for filing electronically*."   All of these means-plus- function limitations appear in both the '052 and '787 patents, except for "*means for filing electronically*," which only appears in the '052 patent. Lastly, the parties dispute the meaning of "*electronic tax return*."

### A.   *Agreed-Upon Constructions.*

Simplification and Block have agreed to constructions for certain terms in the '052 and '787 patents, and request that the Court construe those terms accordingly:

• The parties agree that the term "*electronic intermediary*" means "a data processing system comprising a general purpose computer and a computer program." *See, e.g.*, Ex. A, '052 patent, at FIGS. 1 & 2; Cols. 3:24-34, 4:30-35, 4:39-42, 5:17-20.

• The parties agree that the term "*tax data*" means "tax information relevant to a taxpayer's tax liability or tax reporting obligations." *See, e.g., id*. at FIGS. 1 & 2; Cols. 4:42-50, 5:50–6:23; Claim 10.

• The parties agree that the term "*tax data provider*" means "a party with tax information relevant to the taxpayer's tax liability or tax reporting obligations." *See, e.g., id*., at FIGS. 1 & 2; Cols. 4:42-50, 5:50–6:23; Claims 2 & 5.

• The parties agree that the term "*electronic link*" means "an electronic means of communicating digital information bi-directionally." *See, e.g., id*. at FIGS. 1 & 2; Cols. 5:3-15, 5:50–6:6, 6:64–7:1, 7:11-28; *see also* Ex. D, IEEE Standard Dictionary of Electrical and Electronics Terms (6th ed. 1996), at 589 (A "link" is "(9) A means of communicating digital information bidirectionally…").

• The parties agree that the term "*processed tax data*" means "tax data which has been processed electronically." *See supra* V.A ("tax data") & *infra* at V.C.3 ("processing electronically"); *see also, e.g.*, Ex. A, '052 patent, at FIG 1 (block 13); Col. 6:30-52.

## B.      The Proper Construction of "Automatic Tax Reporting."

One of the primary disputes in this case involves the meaning of the term "*automatic tax reporting*" found in the preamble of the '052 patent claims, particularly the meaning of "automatic." Simplification asks the Court to construe "*automatic tax reporting*" to mean "determining and/or reporting tax liability, or satisfying tax reporting obligations, via a process in which one or more functions, once initiated, are completed without manual intervention."

Simplification believes that its proposed construction of the "tax reporting" portion of that term as "determining and/or reporting tax liability, or satisfying tax reporting obligations . . ." is well-supported by the specification, and may not be controversial. *See, e.g., id*. at Cols. 1:10-49, 1:56-63, 2:11-58, 3:9-20, 4:28-33, 5:27-34, 5:50–7:2.

The remainder of Simplification's proposed construction – ". . . via a process in which one or more functions, once initiated, are completed without manual intervention" – focuses on

11

the word "automatic," and comports with the plain meaning of the term, with the patent specification, and with Federal Circuit precedent on the proper construction of that "automatic" term as used in the computer arts.

      1.      The Plain Meaning, Claim Structure, and Specification All
                Support Simplification's Construction of "Automatic."

There is no express definition of the term "automatic" in the '052 patent specification, and no indication in the record that Simplification intended to give it any special definition. Thus, as noted above, there is a heavy presumption that "automatic" should be given its plain meaning.   A review of multiple technical dictionaries confirm that the plain meaning of "automatic" is "pertaining to a process or device that, under specified conditions, functions without intervention by a human operator."  Ex. C, *The IBM Dictionary of Computing* (10th ed. 1994), at 42; *see also* Ex. D, *IEEE Standard Dictionary of Electrical and Electronics Terms*, at 58 (defining automatic as:  "(1):  pertaining to a function, operation, process, or device that, under specified conditions, functions without intervention by a human operator"); Ex. E, *McGraw Hill Dictionary of Scientific and Technical Terms* (5th ed. 1994), at 158 (defining automatic as:   "[ENG] having a self-acting mechanism that performs a required act at a predetermined time or in response to certain conditions") (all emphases added).

The plain meaning of "automatic" accords with the description of the invention in the '052 patent specification.  The background of the invention indicates that the invention generally relates to "collecting, processing, compiling, and distributing information and data" and more specifically to a "method, apparatus, and article of manufacture for automated tax reporting, payment, and refund."  *Id*. at Col. 1:10-15.  The '052 patent specification makes it clear that "tax preparation has become increasingly automated," and cites to the use of computer programs by

individual taxpayers and professional tax preparers to prepare tax returns. *Id*. at Col. 1:39-49. The specification also discusses how "taxing authorities have increasingly automated the tax collecting and return filing process," and cites to the IRS' program allowing the electronic filing of tax returns and the payment or refund of income taxes through electronic money transfers. *Id*. at Col. 1:64 – 2:1.

A person of ordinary skill in the art reading the '052 patent would understand that these examples of some of the steps involved in "automatic tax reporting" describe processes that are automated – *i.e.* once started are completed without manual intervention. *See Phillips*, 415 F.3d at 1323 (noting that claim terms are construed as a person of ordinary skill in the art would understand them in light of the intrinsic evidence). One of skill in the art would further understand, however, based on these descriptions in the specification, that each of these steps may require some degree of manual intervention to be started in the first place. *See, e.g., id*. at Cols. 1:16-38, 2:16-65, 4:34-35, 4:51–5:15, 8:8-13.

Moreover, the law is clear, and one of skill in the art would recognize, that the use of the transitional phrase "comprising" in the preamble of the claims means that there may be intervening steps that are neither recited nor automated. *See Georgia-Pacific Corp. v. United States Gypsum Co.*, 195 F.3d 1322, 1327-28 (Fed. Cir. 1999) (recognizing that the use of the transitional term "comprising" is open-ended). For example, a person of skill in the art would understand that tax preparation software, such as the TurboTax[®] software of Intuit, Inc. that is expressly referenced in the '052 patent, *see* Ex. A, '052 patent, at Col. 1:43, typically follows an iterative process in which a user inputs certain information, followed by the program automatically performing certain actions, followed by the user inputting additional information, and so on. Indeed, the '052 patent specification expressly recognizes that not all information

required to compute an individual's tax liability (*e.g.* charitable donations) will necessarily be available in electronic format or be capable of being transmitted electronically, *id.* at Col. 1:35-38, which means that manual intervention will likely be required to collect and process some of the tax data used in any given tax return. Thus, as used in the claims of the '052 patent, the term "automatic tax reporting" should be construed to require that each recited step in the claimed method may be performed without manual intervention once initiated but not that the entire claimed method (or the entire tax return) <u>must</u> be completed from start to finish entirely without stopping or manual intervention as Block suggests.

        2.     Federal Circuit Precedent Also Supports
                <u>Simplification's Construction of "Automatic."</u>

Simplification's proposed construction of "automatic tax reporting" is also consistent with closely analogous Federal Circuit precedent interpreting similar terminology. For example, the Federal Circuit has interpreted the term "automatically" to mean that "<u>once initiated</u>, the function is performed by a machine, without the need for manually performing the function." *CollegeNet v. ApplyYourself, Inc.*, 418 F.3d 1225, 1235 (Fed. Cir. 2005) (emphasis added). The claim at issue in *CollegeNet* related to a method for using an "online service for reducing the amount of work required by applicants and institutions in, respectively, submitting and processing applications for admission." *Id.* at 1227. The claimed method in *CollegeNet* involved creating online a first college application form, storing information entered by the applicant in a database, and, in response to a request by the applicant to create an application form to a second college, "automatically inserting into some of the second form data fields applicant information from the database." *Id.* at 1227-28.

Moreover, as with all of the '052 patent claims in this case, *see supra III.B;* Ex. A, the claims at issue in *CollegeNet* were "comprising" claims. The Federal Circuit recognized and

14

emphasized the fundamental rule that the "transitional term 'comprising' . . . is inclusive or open-ended and does not exclude additional, unrecited elements or method steps." *CollegeNet*, 418 F.3d at 1235 (citations omitted). "A drafter uses the term 'comprising' to mean 'I claim at least what follows and potentially' more." *Id*. (quoting *Vehicular Techs. Corp. v. Titan Wheel Int'l, Inc.*, 212 F.3d 1377, 1383-84 (Fed. Cir. 2000)).

The Federal Circuit's analysis of the relationship between the claims' use of "comprising" and the proper construction of "automatically" in *CollegeNet* applies with equal force to the claims of the '052 patent: "While claim 1 does not expressly provide for human intervention, the use of 'comprising' suggests that additional, unrecited elements are not excluded. Such elements could include human actions to expressly initiate the automatic storing or inserting, or to interrupt such functions." *Id*. (noting that automatic dishwashers and auto-pilots are automatic devices despite the <u>need</u> for human initiation and the <u>possibility</u> of human interruption); *see also MercExchange, LLC v. eBay, Inc.*, 401 F.3d 1323, 1338 (Fed. Cir. 2005) (holding that the use of the term "automated" in the preamble of a claim does <u>not</u> require that all of the steps following the preamble must be performed by an automated process).

In addition, as in *CollegeNet*, Simplification's proposed definition of "automatic tax reporting" accords with one of the problems the '052 patent solves. The '052 patent recognized that while some of the steps required to determine and report tax liability had already become automated processes capable of being performed by computer software, *see* Ex. A, '052 patent, at Cols. 1:39-49, 1:64–2:1, the step of collecting tax data and entering it into a tax preparation software program was still largely a manual process. *Id*. at Col. 2:17-21, 30-35. Simplification's proposed construction of "automatic tax reporting," which recognizes that individual steps may be manually initiated, is consistent with the '052 patent's solution to this problem. The '052

15

patent solves this problem by gathering and entering tax data available electronically into the tax preparation software without the human user physically gathering or manually entering that particular tax data.  In this case, as with the *CollegeNet* patent's automatic entry of college applicant information into a new form, "[a]dding a human initiation or interruption element would not alter the invention's solution to this problem." *CollegeNet*, 418 F.3d at 1235.  Indeed, the *CollegeNet* court rejected the defendant's proposed construction of "automatically" which was similar to Block's proposal here, and noted further that the construction it adopted did not read "automatically" out of the claims because a machine still performs the claimed functions without manual operation, even though a human may initiate or interrupt the process.  *See id.* (rejecting a "process that occurs *without human intervention*, such that a human does not have the option to intercede and alter the flow of that process") (emphasis in original).

Therefore, the claim term "automatic tax reporting" should be construed as "determining and/or reporting tax liability, or satisfying tax reporting obligations, via a process in which one or more functions, once initiated, are completed without manual intervention."  There is no sound basis to argue, as Block essentially does, that the term "automatic" mandates absolutely no human intervention from the time the taxpayer starts of the process all the way through to the issuance of the tax refund.  Nothing in the '052 patent claims, specification, or file histories, taken in context as the law requires, can fairly be read to so transform the plain meaning of the term "automatic."

### C.    The Proper Construction of "Electronically."

The second key dispute in this case involves the meaning of the term "electronically," which appears as a modifier in several limitations throughout the claims of both the '052 and '787 patents, *i.e.*, "connecting electronically," "collecting electronically," "processing electronically," "preparing electronically," and "filing electronically."  As used in each of these

phrases, the claim term "*electronically*" should be construed in accordance with its plain meaning as "by way of devices, circuits, or systems utilizing electron devices."

In the context of the claims and written description of the inventions of the '052 and '787 patents, the term "electronically" is repeatedly used to refer either to the use of electronics or to not in non-hard copy or paper format.  In other words, as shown by the following examples from the patent, the term "electronically" clearly defines a <u>state</u> (emphases added).

- "In recent years, an increasing amount of data and other information necessary to compute . . . income tax liability . . , is available <u>electronically</u> and capable of being transmitted over telephone communication equipment or other <u>electronic</u> means to the taxpayer or the taxpayer's agent or representative.  For example, payroll, bank statement, residential mortgage payment, and brokerage and mutual account information is prepared almost entirely on computers, and is capable of being transmitted <u>electronically</u> in standardized or other readable format."  Ex. A, '052 patent, at Col. 1:15-27.

- "[F]or data that is necessary to compute a taxpayer's liability but that may not at present be regularly transmitted to the taxpayer …the information is generally entered into, and processed by, computers and could easily be transmitted to the taxpayer or the taxpayer's agent <u>electronically</u> using telephone communication equipment, by modem, or through the Internet.  Thus, substantially all of the information necessary to compute most individuals' and many other taxpayer's income tax liability is readily available and capable of being transmitted <u>electronically</u>."  *Id*. at Col. 1:28-37.

- "In certain circumstances, as mentioned above, tax returns may be filed <u>electronically</u>, and payments may be made <u>electronically</u> or refunds may be made <u>electronically</u>.  However, this ability to file <u>electronically</u> is used sparsely. . . .  Presumably, such sparse usage of the current <u>electronic</u> filing system is due to the laborious manual steps still required. . . ."  *Id*. at Col. 2:49-52.

- "The term '<u>electronic</u> intermediary' refers to a data processing system comprising a general purpose computer and a computer program, as described above, for performing the invention."  *Id*. at Col. 4:39-42.

- "Alternatively, the taxpayer . . . could include information on how to contact the tax data providers <u>electronically</u>. . . ."  *Id*. at Col. 4:56-59.

- "Non-limiting examples of such a granting include:  in person; through the mail; by facsimile; or <u>electronically</u> using a general purpose computer and a modem connected to a general purpose computer. . . ."  *Id*. at Col. 5:37-43.

- "Hence, in step 18, the <u>electronic</u> intermediary <u>electronically</u> authorizes the taxing authority to credit the taxpayer's refund <u>electronically</u> to the taxpayer's financial institution." *Id*. at Col. 7:57-60.

- "The final report can be embodied in a number of ways, including <u>electronically</u> or on paper." *Id*. at Col. 7:64-66.

All of these examples of "electronic" and "electronically" in the specification involve devices, circuits, or systems utilizing electron devices, such as a general purpose computer or a data network (*e.g.*, the Internet). Two of the claim constructions agreed upon by the parties also construe "electronic" in that manner, in accordance with its plain meaning. *See supra* V.A ("electronic intermediary" and "electronic link"). The usage in the patent and these agreed-upon constructions also comport with dictionary definitions of "electronic" such as "Of, or pertaining to, devices, circuits, or systems utilizing electron devices." Ex. D, IEEE Standard Dictionary of Electrical and Electronics Terms, at 347.

By contrast, Block's proposed definition of "electronically" improperly conflates that term with its definition of the separate and distinct claim term "automatic." Block urges the Court to define "electronically" as "performed *on a computer automatically without manual intervention from the user*."[1] In essence, Block treats the terms "automatic" and "electronically" as synonymous and interchangeable. Block's conflation of these terms, however, is both legally incorrect and unsupported by the use of these terms in the claims and specification of the '052 and '787 patents. *See, e.g., Innova/Pure Water*, 381 F.3d at 1119 ("While not an absolute rule, all claim terms are presumed to have meaning in a claim. . . . [W]hen an applicant uses different terms in a claim, it is permissible to infer that he intended his choice of different terms to reflect a differentiation in the meaning of those terms"). Nothing in the patent would indicate to a person of ordinary skill in the art that these two terms should be defined the same way, or that

one or the other should be read out of the claims, as Block's construction proposes.  Nothing in the file histories of the patents, read as a whole and taken in context, can fairly be read to so transform the plain meaning of the term "electronically" – as confirmed by the parties' repeated (and contrary) agreement on the meaning of the term "electronic."  In fact, a person of ordinary skill in the art would define the two terms differently and in accordance with their plain meanings, as Simplification proposes.

1.      The Proper Construction of "Connecting Electronically."

As used in the asserted claims, the claim term "*connecting electronically*" should be construed as "physically or logically coupling by way of devices, circuits, or systems utilizing electron devices."

The way "connecting electronically" is used in the claims indicates that the term "electronically" modifies the term "connecting" by describing the manner in which the connection is made.  For example, claim 1 of the '052 patent states in relevant part "connecting electronically said electronic intermediary to a tax data provider."  Ex. A, '052 patent, at Col. 8:20-21.  This language indicates that "connecting" is performed by way of devices, circuits, or systems utilizing electron devices.

Simplification's proposed definition also comports with the specification's description of the inventions.  For example, the specification explains that:  "In step 12, the electronic intermediary electronically collects tax data from the tax data providers using electronic links.  The electronic intermediary *connects electronically* to each tax data provider that has tax data pertaining to the taxpayer using the electronic links."  *Id*. at Col. 5:50-54 (emphasis added).  The specification provides several "[n]on-limiting examples of electronic links used to connect

---

[1]  For ease of comparison, Block's proposed definition of "automatic tax reporting" is "preparing a tax return *on a computer automatically without manual intervention from the user*."

electronically the electronic intermediary and the tax data providers includ[ing]:  a general purpose computer electronically connected to telephone communication equipment using, for example, a modem or to an electronic data network, such as the Internet; or a computer-readable medium for transferring and receiving the tax data." *Id*. at Cols. 5:67–6:6.  These examples (and the agreed-upon construction) of "electronic link" show that the connection may or may not be traceable through a physical connection.  All of the examples of "electronic links" are examples of physically or logically coupling by way of devices, circuits, or systems utilizing electron devices.

Thus, both the plain meaning of the '052 patent claims and the '052 patent specification support Simplification's proposed construction of connecting electronically.

### 2.     The Proper Construction of "Collecting Electronically."

As used in the asserted claims, the claim term "*collecting electronically*" should be construed as "gathering by way of devices, circuits, or systems utilizing electron devices."

The way "collecting electronically" is used in the claims indicates that the term "electronically" modifies the term "collecting" by describing the manner in which the tax data is collected.  For example, claim 1 of the '052 patent states in relevant part "collecting electronically tax data from said tax data provider." *Id*. at Col. 8:22-23.  This language indicates that "collecting" is performed by way of devices, circuits, or systems utilizing electron devices.

Simplification's proposed definition also comports with the specification's description of the inventions.  For example, the specification explains that:  "In step 12 [of Fig. 2], the electronic intermediary electronically collects tax data from the tax data providers using electronic links." *Id*. at Col. 5:50-52.  Simplification's proposed definition of collecting electronically is consistent with the solution provided by the inventions of the '052 patent: "Hence, with the electronic collection of tax data as in step 12, the invention eliminates the

current requirement that a taxpayer manually collect the tax data, eliminates the current requirement that a taxpayer manually enter such tax data onto a tax return or into a computer, and eliminates the need for all, or virtually all, intermediate hard copies of tax data, thereby saving paper, time, and cost." *Id*. at Col. 6:24-29.

In addition, Simplification's proposed construction accords with the prosecution history of the '052 patent. During the original examination, in response to a rejection of the claims by the patent examiner based on prior art, the applicant noted that "with the electronic collection of tax data, the invention eliminates the current requirement that a taxpayer manually collect the tax data." Ex. G, '052 Pros. History, Request for Reconsideration in Response to Office Action, dated November 24, 1999, at 3. The applicant then distinguished the invention over the prior art: "Instead, [the prior art] teaches manually collecting tax data and manually entering the collected tax data into a personal computer." *Id*.

Therefore, Simplification's proposed construction of collecting electronically is supported by the patent claims themselves, the patent specification, and the '052 patent prosecution history.

3.      The Proper Construction of "Processing Electronically."

The claim term "processing electronically" should be construed as the "systematic performance of operations, such as data manipulation, merging, sorting, and computing accomplished by way of devices, circuits, or systems utilizing electron devices." As with the other "electronically" limitations, the dispute between the parties centers on the meaning of the term "electronically." For the reasons discussed above, "electronically" should be construed as "by way of devices, circuits, or systems utilizing electronic devices."

The specification describes "processing electronically" when it discusses "step 13" of Figure 1, in which the electronic intermediary processes the tax data collected in step 12

[electronic intermediary electronically collects tax data from tax data providers using electronic links] without the need for manual input or manipulation of said tax data as required in the prior art.  *See* Ex. A, '052 patent, at Col. 6:30-41.  The specification then explains that, in step 13, the electronic intermediary processes the tax data by performing certain actions, "non-limiting examples" of which include:  addition, subtraction, multiplication, and division to determine the taxpayer's gross income, relevant deductions, net taxable income, and tax liability.  *Id*. at Col. 6:42-47.  Thus, the specification indicates that processing means more than simply "computing," contrary to Block's proposed construction which seeks to limit the term to only the "non-limiting examples" provided in the specification.  *See id*. at Col. 6:42-47.  Simplification's proposed construction comports with the specification as well as the plain meaning of the term.  *See, e.g.*, Ex. D, IEEE Standard Dictionary of Electrical and Electronics Terms, at 255 (defining "data processing" as "The systematic performance of operations upon data, such as data manipulation, merging, sorting, and computing."), 822 (citing to "data processing" for definition of "processing").

                4.       The Proper Construction of "Preparing Electronically."

        The claim term "preparing electronically" should be construed as "preparing an electronic tax return by way of devices, circuits, or systems utilizing electronic devices."  As with the other "electronically" limitations, the dispute between the parties centers on the meaning of the term "electronically."  For the reasons discussed above, "electronically" should be construed as "by way of devices, circuits, or systems utilizing electronic devices."

        Neither the claims nor the specification give "preparing" any special definition.  Instead the specification repeatedly refers simply to "preparing," and thus uses the plain and ordinary meaning of the word to describe preparing electronically:  "In step 14, the electronic intermediary prepares electronic tax returns using the processed tax data from step 13."  Ex. A,

'052 patent, at Col. 6:53-54.  The patent further explains that "[s]imilar to step 13, step 14 can be implemented using current technology.  In practicing the invention, the electronic tax returns are prepared with respect to the particular taxing authorities.  For example, if the taxing authority is the IRS, the electronic tax return will correspond to the appropriate federal tax return, such as the Form 1040 or the Form 1040EZ."  *Id*. at Col. 6:54-61.

> 5.     The Proper Construction of "Filing Electronically."

As used in the asserted claims, the claim term "filing electronically" should be construed as "submitting or transmitting to a taxing authority by way of devices, circuits, or systems utilizing electron devices."  As with the other "electronically" limitations, the dispute between the parties centers on the meaning of the term "electronically."  For the reasons discussed above, "electronically" should be construed as "by way of devices, circuits, or systems utilizing electronic devices."

The specification describes filing electronically as "[i]n step 15, the electronic intermediary electronically files the electronic tax returns prepared in step 14 with the taxing authorities" Ex. A, '052 patent, at Col. 6:62-64.  The patent further explains that "[r]eferring to FIG. 2, the electronic intermediary electronically connects with the taxing authorities using electronic link 37, and transmits the electronic tax forms to the taxing authorities over the electronic links 37."  *Id*. at Cols. 6:64–7:1.  As noted in the background of the invention, "computation of income tax liability is generally a routine matter of collecting the relevant data, processing it, reflecting the data and ultimate calculations on the proper form or forms, and transmitting or otherwise sending the forms to the relevant taxing authorities."  *Id*. at Col. 1:58-63; *see also id*. at Cols. 1:65–2:6; 2:49-58 (electronic filing of tax returns was known).

**D.      The Proper Construction of the Means Plus Function Claims.**

Both the '052 and '787 patents have several claims written in means plus function format, and the parties agree that those claims fall within 35 U.S.C. § 112, ¶6.  As described above, to interpret such claim limitations, the courts must first determine the function of the claim limitation, and then look to the specification for structure(s), material, or acts (and equivalents thereof) that correspond to the function recited in the element.  *See JVW Enters.,* 424 F.3d at 1330; *Medtronic*, 248 F.3d at 1313 (noting that a single structure may perform more than one function, and two structures may together perform a single function).

The means plus function claim limitations at issue in both the '052 and '787 patents parallel in a different format the claim limitations discussed immediately above – "means for connecting electronically," "means for collecting electronically," "means for processing electronically," "means for preparing electronically," and "means for filing electronically." Simplification has already set forth above its proposed construction for those terms, *e.g.*, "*connecting electronically,*" and by so doing has identified the function of the parallel means-plus-function limitation and set forth the supporting evidence.  This section, therefore, will focus on the related structure identified in the specification.

1.      The Proper Construction of "Means for Connecting Electronically."

The claimed "*means for connecting electronically* [an electronic intermediary to a tax data provider or taxing authority]" has the function of "establishing a physical or logical coupling."  *See supra* V.C.1 (construing "*connecting electronically*").  Simplification submits that the corresponding structure for performance of this function is "a data processing system comprising a general purpose computer programmed with code segments to operate the general-purpose computer, causing it to establish a physical or logical coupling via an electronic link."

Contrary to Block's position to date, the '052 patent specification as a whole provides sufficient structure connected to performance of this function to permit the construction of this term. In particular, a person of ordinary skill in the art would recognize from the Figures and the descriptions in the specification (as well as the other non-means-plus-function claims) that the corresponding structure disclosed therein for performance of this function is a data processing system comprising a general purpose computer programmed with code segments to operate the general-purpose computer, causing it to establish a physical or logical coupling via an electronic link. *See* Ex. A, '052 patent, Figs. 1 & 2 (electronic links 32-37), Cols. 3:35-39, 4:28-50, 5:18-20, 5:50–6:6, 6:64-66. The code segments are present on a computer-readable medium. *See, e.g.*, *id.* at Col. 3:35-65.

The specification does not limit the types of electronic links used to establish the physical or logical coupling, but instead recites a number of "non-limiting" examples of electronic links, including a modem, an electronic data network (such as the Internet), or a computer-readable medium for transferring and receiving data. *Id.* at Cols. 5:65–6:6.

Moreover, Figures 1 and 2 of the patents are block diagrams illustrating structure for establishing a physical or logical coupling. *See In re Ghiron,* 442 F.2d at 991 (functional-type block diagrams are acceptable corresponding structure if, along with the rest of the specification, they enable a person skilled in the art to make a selection and practice the claimed invention). Where, as here, identified structures perform the claimed function, and are clearly associated with the performance of that function in the specification, those structures are the "corresponding structure," and the claims meet the requirements of 35 U.S.C. § 112, ¶6. *See, e.g., JVW Enters.,* 424 F.3d at 1330 (citing *Cardiac Pacemakers,* 296 F.3d at 1113).

25

2.      The Proper Construction of "Means for Collecting Electronically."

The claimed "*means for collecting electronically* [tax data from a tax data provider]" has the function of "gathering tax data."  *See supra* V.C.2 (construing "*collecting electronically*"). The corresponding structure for performance of this function is "a data processing system comprising a general purpose computer programmed with code segments to operate the general-purpose computer, causing it to gather tax data via an electronic link."

Contrary to Block's position to date, the '052 patent specification as a whole provides sufficient structure connected to performance of this function to permit the construction of this term.  In particular, a person of ordinary skill in the art would recognize from the Figures and the descriptions in the specification (as well as the other non-means-plus-function claims) that the corresponding structure disclosed therein for performance of this function is a data processing system comprising a general purpose computer programmed with code segments to operate the general-purpose computer, causing it to gather tax data via an electronic link.  *See, e.g.*, Ex. A, '052 patent, Figs. 1 & 2, Cols. 3:35-39, 4:28-33, 5:50–6:23.  The code segments are present on a computer-readable medium.  *See, e.g*., *Id*. at Col. 3:35-65.

The specification does not limit the types of electronic links used for gathering tax data, and recites a number of "non-limiting" examples of electronic links, including a modem, an electronic data network (such as the Internet), or a computer-readable medium for transferring and receiving data, that one of ordinary skill in the art reading the specification would also have known could be used for the gathering of tax data.  *Id*. at Col. 5:62–6:6.  The block diagrams in Figures 1 and 2 also illustrate corresponding structure for the gathering of tax data.  *See, e.g*., *id*. at Fig. 2 (electronic links 32-37); *see also In re Ghiron,* 442 F.2d at 991.  Where, as here, identified structures perform the claimed function, and are clearly associated with the performance of that function in the specification, those structures are the "corresponding

26

structure," and the claims meet the requirements of 35 U.S.C. § 112, ¶6.  *See, e.g., JVW Enters.,* 424 F.3d at 1330 (citing *Cardiac Pacemakers*, 296 F.3d at 1113).

3.      The Proper Construction of "Means for Processing Electronically."

The claimed "*means for processing electronically* [tax data collected from a tax data provider]" has the function of "performing systematically operations such as data manipulation, merging, sorting, and computing."  *See supra* V.C.3 (construing "*processing electronically*"). The corresponding structure for performance of this function is "a data processing system comprising a general purpose computer programmed with code segments to operate the general-purpose computer, causing it to perform said systematic operations."

Contrary to Block's position to date, the '052 patent specification as a whole provides sufficient structure connected to performance of this function to permit the construction of this term.  In particular, a person of ordinary skill in the art would recognize from Figure 1 and the descriptions in the specification that the corresponding structure disclosed therein for performance of this function is a data processing system comprising a general purpose computer programmed with code segments to operate the general-purpose computer, causing it to perform said systematic operations.  *See, e.g.,* Ex. A, '052 patent, at Fig. 1 (block 13), Cols. 3:35-39, 4:28-33, 6:30-52.  The code segments are present on a computer-readable medium.  *See, e.g.*, *id.* at Col. 3:35-65.

The specification notes that this function may be performed by "a computer program similar to the computer programs currently available in the marketplace" and further notes that "[the processing electronically function] can be implemented with current technology [using the information obtained in the connecting and collecting electronically steps]."  *Id.* at Col. 6:32-36. The block diagram in Figure 1 also illustrates the corresponding structure for the systematic

performance of operations such as data manipulation, merging, sorting, and computing.  *See id.* at Fig. 1 (block 13); *In re Ghiron,* 442 F.2d at 991.

Where, as here, identified structures perform the claimed function, and are clearly associated with the performance of that function in the specification, those structures are the "corresponding structure," and the claims meet the requirements of 35 U.S.C. § 112, ¶6.  *See, e.g., JVW Enters.,* 424 F.3d at 1330 (citing *Cardiac Pacemakers*, 296 F.3d at 1113).

> 4.      The Proper Construction of "Means for Preparing Electronically."

The claimed "*means for preparing electronically* [an electronic tax return using processed tax data] has the function of "establishing a physical or logical coupling."  *See supra* V.C.4 (construing "*preparing electronically*").  The corresponding structure for performance of this function is "a data processing system comprising a general purpose computer programmed with code segments to operate the general-purpose computer and to prepare an electronic tax return."

Contrary to Block's position to date, the '052 patent specification as a whole provides sufficient structure connected to performance of this function to permit the construction of this term.  In particular, a person of ordinary skill in the art would recognize from Figure 1 and the descriptions in the specification that the corresponding structure disclosed therein for performance of this function is a data processing system comprising a general purpose computer programmed with code segments to operate the general-purpose computer and to prepare an electronic tax return.  *See, e.g.,* Ex. A, '052 patent, at Fig. 1 (block 14), Cols. 3:35-39, 4:28-33, 6:53-61.  Such code segments are present on a computer-readable medium.  *See, e.g.*, *id*. at Col. 3: 35-65.

Further, the specification notes that "[s]imilar to [the function of processing electronically], [the preparing electronically function] can be implemented using current

28

technology." *Id.* at Col. 6:54-56.  The block diagram in Figure 1 also illustrates corresponding structure for the systematic performance of operations such as data manipulation, merging, sorting, and computing.  *See id*. at Fig. 1 (block 14); *In re Ghiron,* 442 F.2d at 991.

Where, as here, identified structures perform the claimed function, and are clearly associated with the performance of that function in the specification, those structures are the "corresponding structure," and the claims meet the requirements of 35 U.S.C. § 112, ¶6.  *See, e.g., JVW Enters.,* 424 F.3d at 1330 (citing *Cardiac Pacemakers*, 296 F.3d at 1113).

> 5.      The Proper Construction of "Means for Filing Electronically."

The claimed "*means for filing electronically* [an electronic tax return with a taxing authority]" has the function of "submitting or transmitting to a taxing authority."  *See supra* V.C.5 (construing "*filing electronically*").  The corresponding structure for performance of this function is "a data processing system comprising a general purpose computer programmed with code segments to operate the general-purpose computer, causing it to submit said electronic tax return to the taxing authority via an electronic link."

Contrary to Block's position to date, the '052 patent specification as a whole provides sufficient structure connected to performance of this function to permit the construction of this term.  In particular, a person of ordinary skill in the art would recognize from Figures 1 and 2 and from the descriptions in the specification that the corresponding structure disclosed therein for performance of this function is a data processing system comprising a general purpose computer programmed with code segments to operate the general-purpose computer, causing it to submit said electronic tax return to the taxing authority via an electronic link.  *See, e.g.,* Ex. A, '052 patent, at Figs. 1 (block 15) & Fig. 2 (electronic link 37), Cols. 3:35-39, 4:28-33, 6:62–7:2 ("In step 15 [filing electronically], the electronic intermediary electronically files the electronic tax returns prepared in the previous step] with the taxing authorities.  Referring to FIG. 2, the

electronic intermediary . . . transmits the electronic tax forms to the taxing authorities 27 over the electronic links 37."); *In re Ghiron,* 442 F.2d at 991 (block diagram illustrates corresponding structure).   The code segments are present on a computer-readable medium.   *See, e.g.*, Ex. A, '052 patent, at Col. 3:35-65.

Where, as here, identified structures perform the claimed function, and are clearly associated with the performance of that function in the specification, those structures are the "corresponding structure," and the claims meet the requirements of 35 U.S.C. § 112, ¶6.   *See, e.g., JVW Enters.,* 424 F.3d at 1330 (citing *Cardiac Pacemakers*, 296 F.3d at 1113).

### E.        The Proper Construction of "Electronic Tax Return."

The claim term "*electronic tax return*" should be construed as "a statement of tax liability or tax-related information in a form prescribed by a taxing authority, in an electronic format."

Simplification believes that this construction is the ordinary and plain meaning of the terms.   Simplification's proposed construction is supported by the patent specification.   In particular, the specification states that "[i]n practicing the invention, the electronic tax returns are prepared with respect to the particular taxing authorities.   For example, if the taxing authority is the IRS, the electronic tax return will correspond to the appropriate federal tax return, such as the Form 1040 or the Form 1040EZ."   Ex. A, '052 patent, at Col. 6:54-61.   Such electronic tax returns are then submitted or transmitted electronically to the taxing authority.   *See id*. at Col. 6:62–7:1.   The specification notes that the electronic filing of tax returns was permitted by the IRS and in use at the time.   *See id*. at Cols. 1:64–2:6, 2:49-58.

Simplification's interpretation is further supported by the plain meaning of the term "tax return" as understood by a person of ordinary skill in the art.   For example, lay dictionaries define "tax return" as "16.   A formal tax statement on the required official form indicating taxable income, allowed deductions, exemptions, and the computed tax that is due."   Ex. F, *The*

*American Heritage*® *Dictionary of the English Language* (3rd ed. 1992), at 1452 ("return"), 1840 ("tax return").  A Treasury Regulation similarly states that "A return of tax under Subtitle A is a return filed by or on behalf of a taxpayer reporting the liability of the taxpayer for tax under Subtitle A.  A return of tax under Subtitle A also includes an information return filed by or on behalf of a person or entity that is not a taxable entity and which reports information which is or may be reported on the return of a taxpayer of tax under Subtitle A."  Treas. Reg. § 301.7701-15(c)(1).[2]  Thus, a person of ordinary skill in the art would understand that there are two broad categories of tax returns:  a) tax liability returns (*see, e.g.*, Internal Revenue Code §§ 6011-6110), and b) information returns (*see, e.g.*, Internal Revenue Code §§ 6031-6052).

Therefore, "electronic tax return" should be construed as "a statement of tax liability or tax-related information in a form prescribed by a taxing authority, in an electronic format."

_____

[2] Although this particular Treasury Regulation addresses only "returns under subtitle A," there are also other tax returns, including estate tax returns, gift tax returns, returns of excise taxes and income taxes collected at source on wages, individual and corporate declarations of estimated tax, informational statements and returns on IRS Forms 990, 1099 and similar informational forms.

## VI.   **CONCLUSION.**

For the foregoing reasons, Simplification respectfully submits that this Court should

adopt its proposed constructions of the disputed terms of the claims of the '052 and '787 patents.

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

*/s/ Julia Heaney (#3052)*

Mary B. Graham (#2256)
Julia Heaney (#3052)
1201 N. Market Street
P.O. Box 1347
Wilmington, DE  19899-1347
(302) 658-9200
jheaney@mnat.com
   *Attorneys for Plaintiff, Simplification LLC*

OF COUNSEL:

Julie A. Petruzzelli
Peter J. Curtin
David M. Farnum
Michelle M. Marcus
VENABLE, LLP
575 7th Street, N.W.
Washington, DC  20004-1601
(202) 344-4000

Dated:  May 13, 2008
2327515

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on May 13, 2008, I caused the foregoing to be electronically filed with the Clerk of the Court using CM/ECF which will send electronic notification of such filing to the following:

> John W. Shaw
> Karen E. Keller
> YOUNG CONAWAY STARGATT & TAYLOR, LLP

Additionally, I hereby certify that true and correct copies of the foregoing were caused to be served on May 13, 2008 upon the following individuals in the manner indicated:

## <u>BY E-MAIL</u>

John W. Shaw
Karen L. Pascale
Karen E. Keller
YOUNG CONAWAY STARGATT & TAYLOR, LLP
The Brandywine Building
1000 West Street, 17th Floor
Wilmington, DE  19801

Jeffrey S. Standley
F. Michael Speed, Jr.
STANDLEY LAW GROUP LLP
495 Metro Place South, Suite 210
Dublin, OH  43017

*/s/ Julia Heaney (#3052)*

_____
Julia Heaney (#3052)
jheaney@mnat.com