IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| SIMPLIFICATION, LLC, | ) |
| Plaintiff, | ) ) ) |
| v. | ) C.A. No. 03-355 (JJF) ) C.A. No. 04-114 (JJF) ) |
| BLOCK FINANCIAL CORPORATION, and H&R BLOCK DIGITAL TAX SOLUTIONS, INC., | ) ) ) CONSOLIDATED ) |
| Defendants. | ) ) ) |

**<u>DEFENDANTS BLOCK FINANCIAL CORPORATION'S
AND H&R BLOCK DIGITAL TAX SOLUTIONS, INC.'S
REPLY BRIEF ON CLAIM CONSTRUCTION</u>**

**YOUNG CONAWAY STARGATT & TAYLOR, LLP**
John W. Shaw (No. 3362)
Karen E. Keller (No. 4489)
Jeffrey T. Castellano (No. 4837)
The Brandywine Building, 17th Floor
1000 West Street
Wilmington, Delaware 19899-0391
(302) 571-6600
kkeller@ycst.com

-and-

**STANDLEY LAW GROUP LLP**
Jeffrey S. Standley (Ohio Bar #0047248)
F. Michael Speed, Jr. (Ohio Bar #0067541)
495 Metro Place South, Suite 210
Dublin, OH 43017
(614) 792-5555

*Attorneys for Defendants*

# Table of Contents

I. INTRODUCTION .................................................................................................... 1

II. ARGUMENT ............................................................................................................ 1

    A. Simplification's Definition for "Automatic" is inconsistent with Its Testimony to the Board of Patent Appeals and Interferences. ................................................................ 2

        1. In the patents-in-suit, the term "automatic" characterizes a process which continues without manual invention through all the claimed steps in the process. .................................................................................................. 3

        2. During the reexamination, Simplification equated "automatic" and "electronically" to overcome the prior art of record in the reexamination. ................ 6

    B. Simplification's Definition for "Electronically" is Inconsistent with Its Testimony to the Board of Patent Appeals and Interferences. .............................................................. 7

        1. Simplification Explicitly Disclaimed Manual Input for the Term "Electronically" .................................................................................................... 7

        2. The claimed steps of the process in the patents-in-suit occur automatically without human intervention. ................................................................................ 9

    C. The Means-plus-function Elements are Indefinite under 35 U.S.C. §112, ¶2 because they Lack Structure Sufficient to Perform the Recited Functions. ................. 10

        1. The specification does not disclose a single algorithm for executing the claimed functions. ................................................................................................. 12

        2. The figures do not disclose a single algorithm for executing the claimed functions. ................................................................................................. 13

    D. Read in Light of the Specification and Claims, an "Electronic Tax Return" is Complete and Ready for Filing. .......................................................................... 14

VI. CONCLUSION ..................................................................................................... 15

# Table of Authorities

**Cases**

*Andersen Corp. v. Fiber Composites, LLC*,
474 F.3d 1361 (Fed. Cir. 2007) ............................................................................................. 2

*Aristocrat Techs. Austl. Pty Ltd. v. Int'l Game Tech.*,
521 F.3d 1328 (Fed. Cir. 2008) ............................................................................... 11, 12, 13

*Chime v. PPG Indus.*,
402 F.3d 1371 (Fed. Cir. 2008) ............................................................................................. 1

*Computer Docking Station Corp. v. Dell, Inc.*,
519 F.3d 1399 (Fed. Cir. 2008) .......................................................................................... 1, 2

*Harris Corp. v. Ericsson, Inc.*,
417 F.3d 1241 (Fed. Cir. 2005) ........................................................................................... 12

*In re Donaldson*,
16 F.3d 1189 (Fed. Cir. 1994) ............................................................................................. 11

*Laitram Corp. v. Morehouse Indus., Inc.*,
143 F.3d 1456 (Fed. Cir. 1998) ............................................................................................. 2

*N. Telecom Ltd. v. Samsung Elec. Co.*,
215 F.3d 1281 (Fed. Cir. 2000) ............................................................................................. 2

*Norian Corp. v. Stryker Corp.*,
432 F.3d 1356 (Fed. Cir. 2005) ............................................................................................. 2

*Omega Eng'g, Inc. v. Raytek Corp.*,
334 F.3d 1314 (Fed. Cir. 2003) ..................................................................................... 1, 2, 8

*Ormco Corp. v. Align Tech., Inc.*,
498 F.3d 1307 (Fed. Cir. 2007) .......................................................................................... 8, 9

*Purdue Pharma L.P. v. Endo Pharms., Inc.*,
438 F.3d 1123 (Fed. Cir. 2006) ............................................................................................. 1

**Statutes**

35 U.S.C. § 112 ¶¶ 2 and 6 ............................................................................... 11, 12, 13, 14

DB01:2555250.1          062255.1001

I.  **INTRODUCTION**

The definitions proposed by defendants H&R Block Digital Tax Solutions and Block Financial Corporation ("Block") comport with well-settled claim construction principles. Block's definitions are consistent with the plain and ordinary meanings of the disputed claim terms and phrases, except where the Patentee expressly defined a claim term or demonstrated a clear intention to deviate from the plain meaning of a term. In contrast, Simplification, LLC's ("Simplification") litigation-inspired definitions are a transparent attempt to recapture claim scope it expressly disavowed in testimony before the Board of Patent Appeals and Interferences ("BPAI") during the reexamination.

II.  **ARGUMENT**

Patent claims "should not be construed 'one way in order to obtain their allowance and in a different way against accused infringers.'" *Computer Docking Station Corp. v. Dell, Inc.*, 519 F.3d 1366, 1375 (Fed. Cir. 2008) (quoting *Chimie v. PPG Indus.*, 402 F.3d 1371, 1384 (Fed. Cir. 2005)). Specifically, "a patentee may limit the meaning of a claim term by making a clear and unmistakable disavowal of scope during prosecution." *Purdue Pharma L.P. v. Endo Pharms., Inc.*, 438 F.3d 1123, 1136 (Fed. Cir. 2006). "A patentee could do so, for example, by clearly characterizing the invention in a way to try to overcome rejections based on prior art." 519 F.3d at 1374. Accordingly, the doctrine of prosecution disclaimer "preclud[es] patentees from recapturing through claim interpretation specific meanings disclaimed during prosecution." *Omega Eng'g, Inc., v. Raytek Corp.* 334 F.3d 1314, 1323 (Fed. Cir. 2003). "As a basic principle of claim interpretation, prosecution disclaimer promotes the public notice function of the

1

intrinsic evidence and protects the public's reliance on definitive statements made during prosecution." *Id.* at 1324.

Prosecution disclaimer does not depend on whether an applicant distinguishes their invention in multiple ways; a disavowal, if clear and unambiguous, can lie in a single distinction among many. *See Andersen Corp. v. Fiber Composites, LLC*, 474 F.3d 1361, 1374 (Fed. Cir. 2007); *Norian Corp. v. Stryker Corp.*, 432 F.3d 1356, 1362 (Fed. Cir. 2005) ("[W]e have not allowed [patentees] to assert that claims should be interpreted as if they had surrendered only what they had to."). Moreover, the fact the USPTO does not rely on the distinction does not erase an applicant's clear disavowal of the claim scope. *See Laitram Corp. v. Morehouse Indus., Inc.*, 143 F.3d 1456, 1462 (Fed. Cir. 1998) (finding prosecution statements relevant to claim construction although the examiner did not rely on them).

On the grandest stage at the patent office, with *all* of its claims on the brink of invalidation, Simplification specifically and unmistakably disclaimed specific meanings to overcome the prior art of record. Having survived the reexamination by the narrowest of margins, Simplification now attempts to recapture the claim scope it surrendered during that proceeding.

### A. Simplification's Definition for "Automatic" is inconsistent with Their Testimony to the Board of Patent Appeals and Interferences.

Simplification's definition of the term "automatic" is inconsistent with the invention it described to the BPAI. During the testimony before the BPAI, discussed extensively in Block's Opening Brief, Simplification insisted on the following two points regarding the meaning of the term "automatic." First, Simplification argued "automatic" means once the invention is initiated, the process or apparatus continues without human

2

intervention (i.e., "automatically"), until a completed tax return is generated. Second, it was made clear that the meanings of the terms "automatic," "electronically," and "no manual input" are equivalent.

1. **In the patents-in-suit, the term "automatic" characterizes a process which continues without manual invention through all the claimed steps in the process.**

Before the BPAI, Simplification analogized their invention to a dishwasher. *See* Defs.' Ex. F, pg. 16 (Mr. Sartori: . . . "It can be analogized to an automatic dishwasher, where you load the dishes up, and you close the door and you press start, and the dishwasher, off it goes. It's automatic. You don't add the water. You don't tell it when to start the rinse cycle."). Like an automated dishwasher, once the process is initiated, the process should continue without human intervention until complete. *See* Defs.' Ex. F, pg. 16 (MR. SARTORI: ". . . . *And then once it receives the information, it automatically goes through all the steps in the process. It goes out to the tax data provider, collects the tax data, processes the tax data, and prepares the electronic tax return.*") (emphasis added).

Simplification's proposed definition for "automatic" requires only that ". . .one or more functions, once initiated, are completed without manual intervention." However, Simplification's proposed definition would dismantle the automated dishwasher it constructed to explain its invention to the BPAI. If *only* one of the steps in the automated tax preparation process needs to be automatic, then automatic tax reporting is not really automatic at all. Under the construction proposed by Simplification, a tax accountant using a calculator to prepare a tax return would be "automatic tax reporting" because the

3

mathematical operations performed by the calculator are completed internal of the calculator. Accordingly, Simplification's definition should be rejected by the Court.

Simplification's patent counsel, Mr. Sartori, testified to the Board that all manual input in the invention was confined to initiating the automatic process, termed Step 11 in the specification of the patents-in suit. *See* Defs.' Ex. F, pg. 30, ll. 18-24. Throughout their testimony, Simplification repeatedly distinguished the fully-automated process of its invention with the partially automated processes found in the prior art, which require at least some manual input. For example, in distinguishing the Beamer article, Simplification testified as follows:

> MR. SARTORI: For two reasons. One, the Dollars and Cents program is not a party per this definition. *The second reason is that I suppose the automatic transfer that Beamer talks about in his article does not actually happen automatic at all. There is a manual point and clicking.* What's interesting is that we actually provided the –
> JUDGE MEDLEY: Why? It says it's automatic.
> MR. SARTORI: It says it's automatic. Actually -- I'm sorry.
> JUDGE MEDLEY: If you look at paragraph 10 of the Beamer article, it says, "Next year, several companies expect to have new versions of their products that will invisibly tag files. In this way, data from the year-end report can be transferred automatically to Mac & Tax."
> MR. SARTORI: That's right. But if you read on further in the article, actually what that means is it means that it's actually -- it's a point-and-click operation that the user must go through by *manually* showing -- by *manually* clicking on "Here's my entry in my Dollars and Cents program, and here's my entry in Mac & Tax, and these two match up."
> And then what Beamer does -- in fact, Beamer actually wrote a book called "Mac & Tax Made Easy" in 1991, four years after the '87 article. We provided a copy of the book to the examiner and excerpts in here. Actually, in this book, Beamer talks about more explicitly what does that mean? What does this importing actually mean? And it means that there's a lot of manual input.
>> In fact, in one section of the book, Beamer actually says, "Don't even bother doing it." He says, "Mac & Tax will import it, but you must cut and paste each member to its appropriate line in Mac & Tax. The amount of *manual* effort this entails largely negates the advantage of importing."

4

> He further on says that "Mostly you'll find that the easiest
> approach is to print out your year-end report from your Dollars and Cents
> in the personal finance management software and type the relevant
> information into Mac & Tax." So he's even suggesting this import
> function is so manually intensive, don't do it. Simply print out your year-
> end report from your personal finance software. Type it back in. This is
> manual. This is outside the scope of the claims. *This is not automatic.*
> Beamer does not anticipate --

Defs.' Ex. F, pg. 27-28 (emphasis added).

Simplification stressed the absence of manual input in its invention as a central and critical distinction over the prior art. In one of the clearest exchanges in the Oral Hearing, Simplification cemented the fact that any manual input, outside of initiation, is outside the scope of the claims and would not anticipate the claims.

> JUDGE LEE: The tax preparer ensures that information is collected to
> determine whether the taxpayer has a special tax case.
> MR. SARTORI: Oh, on column 5. Okay, I got you. I'm sorry.
> JUDGE LEE: Can you explain that?
> MR. SARTORI: Sure.
> JUDGE LEE: *That sounds like manual intervention.*
> MR. SARTORI: That is manual intervention. And that has to do with
> step 11, which is the manual step required to initiate it, to initiate the
> automatic process. That's taken from column 5, line 45, what you've been
> focusing on, sir, Your Honor. And that has to do with step 11, which is the
> manual stuff.
> JUDGE LEE: I see. So you're allocating all of these manual input to
> the category of initiating the process.
> MR. SARTORI: *Yes, yes.*
> JUDGE LEE: *If there's any manual input outside of initiation, then
> it's not covered by the claim.*
> MR. SARTORI: *It's not covered by the claim and it does not
> anticipate the claim.*

Defs.' Ex. F, pg. 30 (emphasis added).[1]

---

[1] Although the subject matter of this discussion that preceded this admission was claims 1 and 10 from the '787 patent, there is no reason to confine the discussion to those claims. In context, it is clear that the above discussion relates to the invention as a whole.

5

## 2. During the reexamination, Simplification equated "automatic" and "electronically" to overcome the prior art of record in the reexamination.

Simplification complains that Block's proposed definitions conflate the meanings of the terms "automatic" and "electronic." In response, Block concedes its proposals for the terms "automatic" and electronically" are similar in requiring the limitation "without manual intervention." However, it was Simplification that forced this merger when arguing around prior art before the BPAI.

The following exchange demonstrates the extent to which Simplification insisted the claim terms "automatic," "electronic" and "no manual input" are synonymous:

> JUDGE MEDLEY: But you don't claim automatic everywhere. [Referring to independent claims 1 and 10 of the '787 patent.]
> MR. SARTORI: We do not claim -- that's right. We do not claim-- I'm sorry. I'm sorry.
> JUDGE MEDLEY: So electronic -- see, that's why I'm kind of having a problem. Because I read your brief—
> MR. SARTORI: I thought you were on the '052 for a second. You're on the '787. I'm sorry.
> JUDGE MEDLEY: But you do. You sort of mix the issues. I read what you say, and it seems like you're saying automatic is electronic, is not entering manually information. *You're equating all three.*
> MR. SARTORI: *That's right.* In the context of the '052 patent, which recites "automatic" in all the claims, "automatic" needs to be given its ordinary meaning and weight. In those ones, I think it's clear with regard to the Beamer reference.
>     In the '787, we have two independent claims, 1 and 10, which do not recite "automatic." The rest of the independent claims recite "automatic." And so those ones, I think it's clear that the Beamer doesn't teach it. We're focusing on Claims 1 and 10.
>     And there are two reasons that I said previously that the Beamer article does not teach it. One is they're connecting electronically. *And yes, we are saying electronically means that there's no manual input. You have to -- we're saying you need to read it in light of the specification.*

Defs.' Ex. F, pg. 28-29 (emphasis added); *see also id.* at 24 (JUDGE MEDLEY: "But yet, when I look through your arguments, it seems like you're equating electronic, automatic, and no manual input all to be the same. I could put equal signs in between.").

6

Accordingly, Simplification should not be able to rely on a presumption that the referenced claim terms have independent meanings when, in fact, Simplification insisted otherwise to overcome the prior art of record in the reexamination.

### B. Simplification's Definition for "Electronically" is Inconsistent with Its Testimony to the Board of Patent Appeals and Interferences.

In the '787 patent, there are two independent claims that do not recite the term "automatic" within the preamble. During the Oral Hearing, these claims were cited by the BPAI because most of Simplification's arguments centered on the fact that the claimed invention did not permit manual input. From the transcript of the Record of Oral Hearing, it is evident Simplification was forced to concede 1) the term electronically means that there is no manual input and 2) the claimed steps are the automated steps of an automated invention.

#### 1. Simplification Explicitly Disclaimed Manual Input for the Term "Electronically".

> MR. SARTORI:. . . *And yes, we are saying electronically means that there's no manual input. You have to -- we're saying you need to read it in light of the specification.*

Defs.' Ex. F, pg. 29 (emphasis added).[2]

Simplification's disavowal of manual entry with respect to the term "electronically" is not ambiguous, nor is it taken out of context. Instead, with the claims in both patents-in-suit finally rejected by the Examiner assigned to the reexamination, Simplification implored the administrative judges on the BPAI to save their claims by importing a "no manual input" limitation into the term "electronically." Indeed, it is

---

[2] This unmistakable admission came toward the end of the Oral Hearing. Read from beginning to end, it is evident from the transcript that Simplification was compelled to make these strong admissions before the close of the hearing in order to save the claims of the patents-in-suit.

7

difficult to imagine how Simplification could disclaim manual input in a more definite way.

From a public notice perspective, the context of the disclaimer above is equally compelling. *See Omega Eng'g*, 334 F.3d at 1324. These statements are not derived from a random page of an obscure document in the prosecution history. Instead, Simplification provided this testimony at the culmination of the reexamination process on the biggest stage at the Patent Office—an Oral Hearing before the Board of Patent Appeals and Interferences. Furthermore, the BPAI overturned all of the Examiner's rejections based at least in part on this testimony. Consequently, it is surprising that Simplification failed to acknowledge this record in its opening claim construction brief.

A "without manual intervention" limitation within the term "electronically" is consistent with the specification of the patents-in-suit. *See Ormco Corp. v. Align Tech., Inc.* 498 F.3d 1307, 1316 (Fed. Cir. 2007) ("Although their claim language does not expressly recite automatic control of the finish tooth positioning, that is what they mean, and that is all that the specification describes; the specification does not support operator positioning."). First, a "without manual intervention" limitation is consistent with the title of the parent '052 patent, "Fully-Automated System for Tax Reporting, Payment and Refund." Although Simplification changed the title in the later filed '787 patent, the content of both patents-in-suit is the same. Second, the "Background of the Invention" section describes the problem addressed by the invention as a failure of the prior art to realize a fully-automated system. *See* Defs.' Opening Brief on Claim Construction at 2-3. Finally, through the automated preparation of an electronic tax return, Simplification cannot cite a single instance of manual input that is disclosed within the claimed steps. In

8

other words, from the electronic collection of tax data (Step 12) through the preparation of an electronic tax return (Step 15), none of the disclosed embodiments in the specification describe even the possibility of manual intervention. Consequently, "to attribute to the claims a meaning broader than any indicated in the patents and their prosecution history would be to ignore the totality of the facts of the case and exalt slogans over real meaning." *See Ormco*, 498 F.3d at 1316.

Indeed, except for the input of initiation data, manual intervention is actually inconsistent with the fully-automated system described in the specification. *See* Col. 6, ll. 23-29 ("Hence, *with the electronic* collection of tax data as in step 12, the invention eliminates the current requirement that a taxpayer manually collect the tax data, *eliminates the current requirement that a taxpayer manually enter* such tax data onto a tax return or into a computer, and eliminates the need for all, or virtually all, intermediate hard copies of tax data, thereby saving paper, time, and cost.") (emphasis added).

### 2. The claimed steps of the process in the patents-in-suit occur automatically without human intervention.

Consistent with the disclosure in the specification and the prosecution history, Block contends that the claimed steps of "connecting electronically," "collecting electronically," "processing electronically," "preparing electronically," and "filing electronically" are performed automatically without human intervention. Accordingly, the terms should be construed consistently with the specification and the prosecution history regarding the term "electronically." However, despite the clear admissions above, Simplification continues to argue that the claimed steps need only be tied to devices utilizing electronics. *See* Pl.'s Opening Markman Brief at 17 (Simplification's

9

definitions for the term "electronically": by way of devices, circuits, or systems utilizing electron devices.).

Using Simplification's broad definition for the term electronically, the steps of the invention could be performed by a telegraph, a telephone, or a fax as long as they use electrons. For example, under Simplification's definition for the term "electronically," the step of connecting electronically may now be satisfied by a simple telephone call to the tax data provider. Collecting electronically can be accomplished if the tax data provider faxes (or telegraphs) tax data in response to the call, even if the taxpayer has to manually key in the data contained on the fax by hand. Processing electronically and preparing electronically occur if the taxpayer enters the information into a prior art tax program like TurboTax,® which is described in the background of the specification of the patents-in-suit. Simplification asks the Court for this unjustifiable breadth, even though the only significant structure described in the shared specification of the patents-in-suit is a general purpose computer programmed with undisclosed software.

As to the meanings of the individual gerunds, Block incorporates the arguments presented in its initial brief. Because Simplification's proposed definitions for the terms "connecting electronically," "collecting electronically," "processing electronically," "preparing electronically" and "filing electronically" ignore the understandings Simplification reached with the BPAI, they should be rejected by this court.

### C. The Means-plus-function Elements are Indefinite under 35 U.S.C. §112, ¶2 because they Lack Structure Sufficient to Perform the Recited Functions.

Means-plus-function limitations must be defined by the structure disclosed in the specification plus any equivalents of that structure. *See* 35 U.S.C. §112, ¶ 6. "The point of the requirement that the patentee disclose particular structure in the specification and

10

that the scope of the patent claims be limited to that structure and its equivalents is to avoid pure functional claiming." *Aristocrat Tech. Austl. Pty Ltd. v. Int'l Game Tech.*, 521 F.3d 1328, 1333 (Fed. Cir. 2008); *see also id.* ( "Because general purpose computers can be programmed to perform very different tasks in very different ways, simply disclosing a computer as the structure designated to perform a particular function does not limit the scope of the claim to 'the corresponding structure, material, or acts' that perform the function, as required by section 112 paragraph 6."). In the absence of structure disclosed in the specification to perform the recited function, the claim limitation lacks specificity, rendering the claim as a whole invalid for indefiniteness under 35 U.S.C. §112, ¶ 2. *See In re Donaldson*, 16 F.3d 1189, 1195 (Fed. Cir. 1994) (en banc).

In cases involving a computer-implemented invention in which the inventor has invoked means-plus-function claiming, the Federal Circuit has consistently required that the structure disclosed in the specification be more than simply a general purpose computer or microprocessor. *Aristocrat Tech. Austl. Pty Ltd.*, 521 F.3d at 1333. Accordingly, a "'computer implemented means-plus-function term is limited to the corresponding structure disclosed in the specification and equivalents thereof, *and the corresponding structure is the algorithm.*'" *Id.* (quoting *Harris Corp. v. Ericsson Inc.*, 417 F.3d 1241, 1253 (Fed.Cir.2005)) (emphasis added).

The invention in the patents-in-suit is computer implemented. *See* Col. 3, ll. 35-38 ("the apparatus of the present invention comprises a general purpose computer programmed with software to operate the general purpose computer in accordance with the present invention."); *see also* Defs.' Ex. F, pg. 13 (MR. SARTORI: Yes. The Structure is the personal computer with the software.). However, in spite of

11

Simplification's misguided efforts to show otherwise, neither the specification nor the figures of the patents-in-suit contain a single algorithm to implement any of the recited functions. Therefore, this Court should hold that the means-plus-function limitations in the patents-in-suit render those claims indefinite under 35 U.S.C. §112, ¶ 2.

### 1. The specification does not disclose a single algorithm for executing the claimed functions.

In its Opening Markman Brief, Simplification failed to show and cannot show a single algorithm for carrying out the claimed functions. As such, the claimed steps represent pure functional claiming. The meager structure cited by Simplification is peripheral to the relevant inquiry, which is whether or not the specification discloses an algorithm for accomplishing the claimed functions.

In its efforts to pinpoint the necessary structure for its means-plus-function limitations, Simplification relies almost exclusively on the disclosure of "a general purpose computer programmed with code segments to operate the general purpose computer." *See* Pl.'s Opening Markman Brief at 24-29. That phrase is equivalent to stating that the claimed functions are performed by a computer programmed with a program. Under similar facts, the Federal Circuit has only recently held that such vague disclosure is insufficient to satisfy the requirements of 35 U.S.C. §112, ¶ 6, reciting:

> .... *That description goes no farther than saying that the claimed functions are performed by a general purpose computer. The reference to "appropriate programming" imposes no limitation whatever, as any general purpose computer must be programmed. The term "appropriate programming" simply references a computer that is programmed so that it performs the function in question, which is to say that the function is performed by a computer that is capable of performing the function.*

*Aristocrat Tech. Austl. Pty Ltd.*, 521 F.3d at 1334. In spite of such clear admonitions from the Federal Circuit, Simplification asks this Court to join it on a snipe hunt in order

12

to find the missing structure in the specification. This Court should reject that invitation, and instead force Simplification to answer the only relevant question, which is where in the specification is the algorithm for completing the step in question.

### 2. The figures do not disclose a single algorithm for executing the claimed functions.

Having failed to identify any relevant structure in the text of the Specification, Simplification directs the Court to the block diagrams contained in Figures 1 and 2. Simplification appears to suggest that somehow those figures contain sufficient structure. However, inspection of the Figures reveals that the missing algorithms are nowhere to be found.[3]

For example, claim 1 of the '787 patent contains the limitation, "means for processing electronically said tax data collected from said tax data provider to obtain processed tax data." In turning to Figure 1 for enlightenment, the Court will note that the corresponding structure for implementing the function of "processing electronically," the box labeled "13," is nothing more than a black box with the label "Process the tax data." *See* Fig. 1. The same is true for the other steps.

Figure 2 is even less helpful. *See* Fig. 2. Presumably, all the steps in Figure 2 are performed by the "Electronic Intermediary" shown at Box 21.

Because the specification and the figures do not contain corresponding structure, material, or acts to perform the function, as required by 35 U.S.C. §112, ¶ 6, this Court should find the asserted means-plus-function claims indefinite under 35 U.S.C. §112, ¶ 2.

---

[3] The relevant task here is to find appropriate structure for *each* means plus function limitation, not the invention as a whole. While the flow chart in Figure 1 may arguably contain steps of the invention as a whole, it does not contain any detail whatsoever regarding the structure for any particular means-plus-function element.

### D. Read In Light of the Specification and Claims, an "Electronic Tax Return" is Complete and Ready for Filing.

At first blush, Simplification's definition and Block's definition for the term "electronic tax return" are quite similar in substance. However, Block contends it is important the term "electronic tax return" be construed consistently with the fully-automated tax reporting system that is the subject matter of the invention. Accordingly, Block contends the Court should define "electronic tax return" as "a completed computerized tax return ready for submission to a governmental tax agency."

The utility of this invention is that it automatically *completes* one's tax return. Therefore, the electronic tax return which is prepared in the claims is complete and ready for submission to the relevant taxing authority. If these claims are permitted to encompass anything short of this, they drift into the partially automated systems of the prior art. Accordingly, Block submits that the final construction must include the fact that the electronic tax return is a completed tax form, ready for submission.

DB01:2555250.1

062255.1001

## IV. CONCLUSION

For the forgoing reasons, Block respectfully requests that the Court construe the claims as set forth in Defendants Block Financial Corporation's and H&R Block Digital Tax Solutions' Opening Brief on Claim Construction and reject the claim constructions proposed by Plaintiff Simplification.

YOUNG CONAWAY STARGATT &
TAYLOR, LLP

/s/ Karen E. Keller (No. 4489)

John W. Shaw (No. 3362)
Karen E. Keller (No. 4489)
Jeffrey T. Castellano (No. 4837)
The Brandywine Building, 17th Floor
1000 West Street
Wilmington, Delaware 19801
(302) 571-6600

OF COUNSEL:
Jeffrey S. Standley (Ohio No. 0047248)
F. Michael Speed, Jr. (Ohio No. 0067541)
STANDLEY LAW GROUP LLP
495 Metro Place South, Suite 210
Dublin, OH 43017
(614) 792-5555
jstandley@standleyllp.com
mspeed@standleyllp.com

Dated: May 27, 2008

# CERTIFICATE OF SERVICE

I, Karen E. Keller, hereby certify that on May 27, 2008, I caused to be electronically filed a true and correct copy of the foregoing document with the Clerk of the Court using CM/ECF, which will send notification that such filing is available for viewing and downloading to the following counsel of record:

> Mary B. Graham, Esquire
> Julia Heaney, Esquire
> Morris Nichols Arsht & Tunnell LLP
> 1201 North Market Street
> PO Box 1347
> Wilmington, DE 19899-1347

I further certify that on May 27, 2008, I caused a copy of the foregoing document to be served by hand delivery and e-mail on the above-listed counsel of record and on the following in the manner indicated:

> **BY E-MAIL**
>
> Julie A. Petruzzelli, Esquire [japetruzzelli@venable.com]
> Peter J. Curtin, Esquire [pjcurtin@venable.com]
> Venable LLP
> 575-7th Street, N.W.
> Washington, DC 20004

<br>

> YOUNG CONAWAY STARGATT & TAYLOR, LLP
>
> /s/ *Karen E. Keller*
> John W. Shaw (No. 3362)
> Karen E. Keller (No. 4489)
> The Brandywine Building
> 1000 West Street, 17th Floor
> Wilmington, Delaware 19801
> (302) 571-6600
> kkeller@ycst.com
>
> *Attorneys for Defendants*