IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| SIMPLIFICATION, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. 03-355-JJF |
| | ) | C.A. No. 04-114-JJR |
| BLOCK FINANCIAL CORPORATION and | ) | CONSOLIDATED |
| H&R BLOCK DIGITAL TAX SOLUTIONS, | ) | |
| INC., | ) | |
| | ) | |
| Defendant. | ) | |

**SIMPLIFICATION, LLC'S RESPONSIVE *MARKMAN* BRIEF ON THE
CONSTRUCTION OF THE CLAIMS OF U.S. PATENT NOS. 6,202,052 & 6,697,787**

MORRIS, NICHOLS, ARSHT & TUNNELL LLP
Mary B. Graham (#2256)
Julia Heaney (#3052)
1201 N. Market Street
P.O. Box 1347
Wilmington, DE  19899-1347
(302) 658-9200
jheaney@mnat.com
  *Attorneys for Plaintiff Simplification LLC*

OF COUNSEL:

Julie A. Petruzzelli
Peter J. Curtin
David M. Farnum
Michelle M. Marcus
VENABLE, LLP
575 7th Street, N.W.
Washington, DC  20004-1601
(202) 344-4000

May 27, 2008

**TABLE OF CONTENTS**

Page

TABLE OF AUTHORITIES ........................................................................................ iii

I.      INTRODUCTION ...........................................................................................1

II.     ARGUMENT ..................................................................................................2

        A.      Certain Key Legal Points Relevant to this Brief.................................2

        B.      The Proper Construction of "Automatic Tax Reporting." ...................4

                1.      "Automatic Tax Reporting" Must Be Understood as Part of
                        the Preamble of "Comprising" Claims in the '052 Patent. ..........5

                2.      The '052 Patent Specification Makes Clear the Metes and
                        Bounds of "Automatic Tax Reporting." ......................................7

                3.      Block's Proposed Construction Is Inconsistent With
                        Federal Circuit Precedent...........................................................10

                4.      Simplification's Proposed Construction Is Not Overly
                        Broad...........................................................................................11

        C.      The Proper Construction of "Electronically."..................................11

                1.      Block's Scenario Purporting to Show the Effect of
                        Simplification's Proposed Construction Is Fundamentally
                        Flawed..........................................................................................12

                2.      Block Misinterprets Simplification's Statements During
                        Oral Argument Before the BPAI. ................................................16

                3.      The Proper Construction of "Connecting Electronically." ........18

                4.      The Proper Construction of "Collecting Electronically.".........20

                5.      The Proper Construction of "Processing Electronically." ........21

                6.      The Proper Construction of "Preparing Electronically." .........23

                7.      The Proper Construction of "Filing Electronically." ................24

D.      The Proper Construction of the Means Plus Function Claims.............................26

        1.      The Proper Construction of "Means for Connecting
                Electronically." ..............................................................................26

        2.      The Proper Construction of "Means for Collecting
                Electronically." ..............................................................................27

        3.      The Proper Construction of "Means for Processing
                Electronically." ..............................................................................29

        4.      The Proper Construction of "Means for Preparing
                Electronically." ..............................................................................31

        5.      The Proper Construction of "Means for Filing
                Electronically." ..............................................................................33

E.      The Proper Construction of "Electronic Tax Return."........................................34

III.    CONCLUSION...................................................................................................36

# TABLE OF AUTHORITIES

Page(s)

CASES

*ACTV, Inc. v. Walt Disney Co.*,
  346 F.3d 1082 (Fed. Cir. 2003)........................................................................18

*Aristocrat Techs. Austl. Pty Ltd. v. International Game Tech.*,
  521 F.3d 1328 (Fed. Cir. 2008)........................................................................27

*Athletic Alternatives, Inc. v. Prince Mfg., Inc.*,
  73 F.3d 1573 (Fed. Cir. 1996)...........................................................................3

*Budde v. Harley-Davidson, Inc.*,
  250 F.3d 1369 (Fed. Cir. 2001)....................................................................30, 32

*Chimie v. PPG Indus., Inc.*,
  402 F.3d 1371 (Fed. Cir. 2005)...........................................................................3

*CollegeNet, Inc. v. ApplyYourself, Inc.*,
  418 F.3d 1225 (Fed. Cir. 2005)........................................................... 6, 8, 10-11

*Genentech, Inc. v. Chiron Corp.*,
  112 F.3d 495 (Fed. Cir. 1997)........................................................................4, 9

*Georgia-Pacific Corp. v. United States Gypsum Co.*,
  195 F.3d 1322 (Fed. Cir. 1999)....................................................................... 5-6

*In re Icon Health & Fitness, Inc.*,
  496 F.3d 1374 (Fed. Cir. 2007).........................................................................17

*Innova/Pure Water, Inc. v. Safari Water Filtration Sys., Inc.*,
  381 F.3d 1111 (Fed. Cir. 2004)...........................................................................3

*Inverness Med. Switz. GmbH v. Warner Lambert Co.*,
  309 F.3d 1373 (Fed. Cir. 2002)...........................................................................2

*LSI Indus., Inc. v. Imagepoint, Inc.*,
  2008 U.S. App. LEXIS 5892 (Fed. Cir. Mar. 19, 2008).....................................17

*Merck & Co. v. Teva Pharms. USA, Inc.*,
  395 F.3d 1364 (Fed. Cir. 2005)............................................................ 3-4, 7, 12

*Moore U.S.A., Inc. v. Standard Register Co.*,
  229 F.3d 1091 (Fed. Cir. 2000)...........................................................................7

*Phillips Petroleum Co. v. Huntsman Polymers Corp.*,
   157 F.3d 866 (Fed. Cir. 1998) ..............................................................................4, 9

*Phillips v. AWH Corp.*,
   415 F.3d 1303 (Fed. Cir. 2005) (*en banc*) ................................................... Passim

*Primos, Inc. v. Hunter's Specialties, Inc.*,
   451 F.3d 841 (Fed. Cir. 2006) ...........................................................................4, 12

*Radio Sys. Corp. v. Tri-Tronics*,
   2007 U.S. Dist. LEXIS 17315 (E.D. Tenn. Mar. 9, 2007)................................30, 32

*S3, Inc. v. nVIDIA Corp.*,
   259 F.3d 1364 (Fed. Cir. 2001).........................................................................29, 31

*Schwing Gmbh v. Putzmeister Aktiengesellschaft*,
   305 F.3d 1318 (Fed. Cir. 2002)...........................................................................2, 12

*Symantec Corp. v. Computer Assocs. Int'l, Inc.*,
   2008 U.S. App. LEXIS 7826 (Fed. Cir. Apr. 11, 2008) ........................................18

*Teleflex, Inc. v. Ficosa N. Am. Corp.*,
   299 F.3d 1313 (Fed. Cir. 2002)..................................................................................3

*Vivid Tech., Inc. v. American Sci. & Eng'g, Inc.*,
   200 F.3d 795 (Fed. Cir. 1999)............................................................................4, 9

**STATUTES**

26 U.S.C. § 6033 ...........................................................................................................24

# I.    INTRODUCTION

Block's opening papers make clear that its proposed claim constructions and, indeed, its case rely primarily upon its interpretation of a handful of statements in the transcript of Simplification's hearing before the Board of Patent Appeals and Interferences ("BPAI") during the reexamination of the patents-in-suit.  Block takes these brief excerpts out of context and relies upon them to argue for constructions of "automatic tax reporting" and "electronically" which depart drastically from the patent specification and the plain meaning of those terms, and indeed would render those key claim terms redundant.

When read in context, however, those statements simply do not mean what Block claims they mean.  Moreover, other arguments and authorities Simplification presented at the BPAI hearing and throughout the reexamination directly contradict Block's proposed constructions, as does the text of the patent.  It is important to be mindful that this BPAI hearing capped more than three years of reexamination proceedings which produced a written file history more than a foot thick.[1]  In construing the claims, the Court must read this record as a whole in conjunction with the original file histories and the text of the patent itself, and give due weight to the plain meaning of the claim language and the detailed description in the specification.  Nothing in the file histories can fairly be read as showing any clear intent by Simplification to depart from the plain meaning of the claim terms "automatic" and "electronically," especially

---

[1]    Block would have the Court believe that the statements it cites were critical to preserving the patent claims, serving as Simplification's "lifeboat" in a storm, *see* Block's Opening Brief, at 14, but they apparently played no part in the decision.  Indeed, the interpretation of "automatic" and "electronically" did not appear in the Board's analysis.  The decision instead turned on: (a) the examiner's failure to adequately support the Section 112 rejections, and (b) the definition of "tax data," which is undisputed in this case.  *See* Block Ex. C, Decision on Appeal, at 20-25.

where doing so would render one of those terms superfluous. Block's proposed claim constructions cannot stand.

II.     ARGUMENT

For all of the reasons set forth by Simplification in its opening papers, and below, the Court should adopt Simplification's proposed constructions for the disputed claim terms of the '052 and '787 patents.

A.     Certain Key Legal Points Relevant to this Brief.

The controlling precedent sets forth a clear hierarchy of the evidence available to the Court during claim construction: the claims themselves; the written description; the file history; and the extrinsic evidence. *See Phillips v. AWH Corp.*, 415 F.3d 1303, 1312-17 (Fed. Cir. 2005) (*en banc*). This hierarchy exists because not all evidence is equally trustworthy or pertinent; intrinsic evidence is preferred over extrinsic evidence and the patent itself is viewed as more reliable than the prosecution history. *Id.*

A court must evaluate a patent's prosecution history as part of the claim construction analysis, but "because the prosecution history represents an ongoing negotiation between the PTO and the applicant, rather than the final product of that negotiation, it often lacks the clarity of the specification and thus is less useful for claim construction purposes." *Id.* at 1317. An ambiguous prosecution history is unhelpful as a guide to claim construction. *See, e.g.*, *Inverness Med. Switz. GmbH v. Warner Lambert Co.*, 309 F.3d 1373, 1380-82 (Fed. Cir. 2002) ("It is inappropriate to limit a broad definition of a claim term based on prosecution history that is itself ambiguous. As we recently said in *Schwing*, '[a]lthough prosecution history can be a useful tool for interpreting claim terms, it cannot be used to limit the scope of a claim unless the applicant took a position before the PTO that would lead a competitor to believe that the

applicant had disavowed coverage of the relevant subject matter.'") (citing *Schwing Gmbh v. Putzmeister Aktiengesellschaft*, 305 F.3d 1318, 1324 (Fed. Cir. 2002)); *Athletic Alternatives, Inc. v. Prince Mfg., Inc.*, 73 F.3d 1573, 1580 (Fed. Cir. 1996) (the ambiguity of the prosecution history made it "unhelpful as an interpretive resource" for claim construction).

The "purpose of consulting the prosecution history in construing a claim is to 'exclude any interpretation that was disclaimed during prosecution.'" *Chimie v. PPG Indus., Inc.*, 402 F.3d 1371, 1384 (Fed. Cir. 2005) (excluding citations). That history may show that "the patentee intended to deviate from a term's ordinary and accustomed meaning, *i.e.*, if it shows that the patentee characterized the invention using words or expressions of *manifest exclusion or restriction* before the United States Patent and Trademark Office." *Teleflex, Inc. v. Ficosa N. Am. Corp.*, 299 F.3d 1313, 1326 (Fed. Cir. 2002) (emphasis added). The specification, however, "is always highly relevant to the claim construction analysis. Usually, it is dispositive; it is the single best guide to the meaning of a disputed term." *Phillips*, 415 F.3d at 1315 (citation and internal quotation marks omitted).

The court must also carefully consider all of the claim language in choosing its construction. "A claim construction that gives meaning to all terms of the claim is preferred over one that does not do so." *Merck & Co. v. Teva Pharms. USA, Inc.*, 395 F.3d 1364, 1372 (Fed. Cir. 2005). As a result, different claim terms [such as "automatic" and "electronically" in the '052 patent claims] are presumed to have different meanings. *See Innova/Pure Water, Inc. v. Safari Water Filtration Sys., Inc.*, 381 F.3d 1111, 1119 (Fed. Cir. 2004) ("[W]hen an applicant uses different terms in a claim it is permissible to infer that he intended his choice of different terms to reflect a differentiation in the meaning of those terms."). Thus, claim terms should not

be construed in a way that renders another term superfluous. *Primos, Inc. v. Hunter's Specialties, Inc.*, 451 F.3d 841, 848 (Fed. Cir. 2006); *Merck & Co.*, 395 F.3d at 1372.

Finally, it is important to recognize the well-established legal effect of the use of the transitional word "comprising" in patent claims, including all of the claims of the patents-in-suit. Put simply, "comprising" essentially means "including, but not limited to." Therefore, a "comprising" method claim, like claim 1 in the '052 patent, expressly allows for the performance of unlisted and unclaimed steps in addition to those set forth in the claims. *See Vivid Tech., Inc. v. American Sci. & Eng'g, Inc.,* 200 F.3d 795, 811 (Fed. Cir. 1999) ("A claim using the signal 'comprising' . . . is generally understood to signify that the claims do not exclude the presence in the accused apparatus or method of factors in addition to those explicitly recited"); *Phillips Petroleum Co. v. Huntsman Polymers Corp.*, 157 F.3d 866, 874 (Fed. Cir. 1998) ("The use of . . . 'which comprises' in the composition and process claims generally would mean that the claims require the recited limitations, but that additional elements or process steps may be present."); *Genentech, Inc. v. Chiron Corp.*, 112 F.3d 495, 501 (Fed. Cir. 1997) ("'Comprising' is a term of art used in claim language which means that the named elements are essential, but other elements may be added and still form a construct within the scope of the claim.").

B.    The Proper Construction of "Automatic Tax Reporting."

The Court should reject Block's proposed construction of "automatic tax reporting" – "*preparing a tax return on a computer automatically without manual intervention from the user*" – because it is inconsistent with the claim language, the '052 patent specification, and the prosecution and reexamination file histories of the '052 patent. Indeed, the sound bites from the oral argument on which Block heavily relies do not truly support its argument even when read in isolation, much less when read in their full context as the law requires.

In its opening brief, Block argues that the "automatic tax reporting" limitation requires "a *fully-automated* system for tax reporting." Block's Opening Brief, at 11. In essence, Block argues for a construction in which the '052 patent claims cover only a system which allows the taxpayer to press a button at the very beginning of the process and then do nothing more until receiving their refund check. Block's position must fail, however, because the patents-in-suit neither claim nor describe that sort of "fully-automated" tax reporting system. *See, e.g.*, *Phillips*, 415 F.3d at 1312 (noting "the claims of a patent define the invention to which a patentee is entitled the right to exclude") (citation and internal quotation marks omitted).

1.      "Automatic Tax Reporting" Must Be Understood as Part of the Preamble of "Comprising" Claims in the '052 Patent.

Indeed, Block's proposed construction demonstrates a fundamental misunderstanding of the claim language, the specification's detailed description of the invention, and even the arguments made by Simplification's patent counsel during the hearing before the BPAI.[2] First, the '052 patent claims all recite "automatic tax reporting" *and* then the transitional phrase "comprising" in their preamble before reciting the listed claim limitations. The law is clear that the use of "comprising" in the preamble of these claims means that the claims permit additional and/or intervening steps that are neither recited nor automatic. *See Georgia-Pacific Corp. v. United States Gypsum Co.*, 195 F.3d 1322, 1327-28 (Fed. Cir. 1999) (the transitional term "comprising" is open-ended "and does not exclude additional, unrecited elements or method steps."). Put simply, "comprising" essentially means "including, but not limited to." Therefore, a "comprising" method claim, like claim 1 in the '052 patent, expressly allows for the

---

[2]      Block also fails to present any support or even argument for one half of its proposed definition ("preparing a tax return on a computer"), and improperly includes as part of its proposed definition (". . . automatically . . .") one of the claim terms being defined ("automatic").

performance of unlisted, unclaimed steps in addition to those set forth in the claims. In fact, a "comprising" method claim can encompass any number of additional unrecited steps, and even the repeated performance of certain steps, so long as each of the recited steps are performed. *Id.*; *see also CollegeNet, Inc. v. ApplyYourself, Inc*., 418 F.3d 1225, 1235 (Fed. Cir. 2005).

In this case, the '052 patent specification expressly recognizes that not all of the information required to compute an individual's tax liability (*e.g.*, charitable donations) will necessarily be available in electronic format or be capable of being transmitted electronically. *See, e.g.*, Simplification Ex. A, '052 patent, at Col.1:27-38.[3] The patent thus recognizes that, even when practicing the claimed invention, manual intervention will likely be required to collect some of the tax data used in any given tax return. Nothing in the term "automatic tax reporting," the other terms of the '052 patent claims, or the structure of those claims bars the use of some manually-collected and manually-entered tax data in preparing the tax return. To the contrary, the use of "comprising" makes it clear that "automatic tax reporting," as that term is used in the '052 patent, can be based in part on tax data "collected electronically" according to the claimed method and in part on tax data collected and entered manually.

Block's apparent failure to understand or address the effect of the term "comprising" leads Block to misunderstand and misapply the possible analogy between the claimed invention and an automatic dishwasher. *See* Block's Opening Brief, at 11 (citing Oral Hearing). As an example, imagine a claim involving the use of an automatic dishwasher reciting: "A method for replacing automatically-cleaned dishes in a cupboard after a dinner party, comprising: placing a dish into an automatic dishwasher; adding detergent to said

---

[3]     Simplification Exhibits A-G are attached to Simplification's Opening Brief (DE # 80).

automatic dishwasher; starting said automatic dishwasher; cleaning said dish with said automatic dishwasher; and replacing said dish in said cupboard after cleaning."  As written, this claim does <u>not</u> require that every single dish used at the dinner party be washed by an automatic dishwasher before going back into the cupboard.  Instead, it requires only that at least one dish be washed by an automatic dishwasher; the wine glasses (for example) could be washed by hand in the sink.

Similarly, the '052 patent claims:  "A method of automatic tax reporting by an electronic intermediary, comprising" followed by certain steps which must be followed, including  collecting tax data electronically and processing electronically "said tax data." Nothing in this claim language requires that *all* of the tax data used to prepare the electronic tax return ultimately reported to a taxing authority must be collected and/or processed electronically. Instead, the plain language of the claim indicates only that *some* tax data (not all, as Block repeatedly argues) must be automatically collected and processed.

2.    The '052 Patent Specification Makes Clear the Metes and Bounds of "Automatic Tax Reporting."

Block's proposed construction is also fatally flawed in part because it fails to construe "automatic tax reporting" in light of the specification as a whole.  *See Phillips*, 415 F.3d at 1315-16, 1321.  In *Phillips*, the Federal Circuit emphasized the primacy of the specification in claim construction, calling it "the single best guide to the meaning of a disputed term," and reminded readers that "claims 'must be read in view of the specification, of which they are a part.'"  *Id.* (citations omitted); *see also Merck & Co.*, 347 F.3d at 1371 ("[C]laims must be construed so as to be consistent with the specification").  Block relies on the title of the '052 patent, which is indeed "Fully-Automated System for Tax Reporting, Payment and Refund," but a patent's title does not limit the claimed invention.  *See Moore U.S.A., Inc. v. Standard Register Co.*, 229 F.3d 1091, 1111 (Fed. Cir. 2000) ("That the title also refers to an IBM 3800 printer

does not change our analysis, since the bar on importing limitations from the written description into the claims applied no less forcefully to a title.") (citing *Pitney Bowes, Inc. v. Hewlett-Packard Co.*, 182 F.3d 1298, 1312 (Fed. Cir. 1999) ("[I]f we do not read limitations into the claims from the specification that are not found in the claims themselves, then we certainly will not read limitations into the claims from the patent title.")).

Furthermore, the references to "fully-automated tax reporting" in the specification should be read in the context of both the problem to be solved and the detailed description of the invention itself. *See, e.g., CollegeNet*, 418 F.3d at 1235. The specification recognizes that only "*substantially* all of the information necessary to compute most individuals' and many other taxpayers' income tax liability is readily available and capable of being transmitted electronically." Simplification Ex. A, '052 patent, at Col. 1:34-37 (emphasis added). The specification also clarifies that "with the electronic collection of tax data as in step 12, the invention . . . eliminates the need for all, *or virtually all,* intermediate hard copies of tax data." Simplification Ex. A, '052 patent, at Col. 6:23-28 (emphasis added). The written description does not limit the invention to systems where <u>no</u> tax data is manually collected and entered into the electronic tax return.

Simplification's counsel similarly explained the proper interpretation of the claims in light of their use of the term "comprising" during the Oral Hearing before the BPAI:

> Mr. Sartori: For example, let's say you gave some donations to Purple Heart last year in 2006. And Purple Heart, you know, isn't set up to do this electronic transmission. You would need to type in and enter in your donations to go on your scheduled itemized deductions. *That would be within the software within the scope of the claim, because it's comprising, but that would not actually meet the elements of the claims.*

Block Ex. F, Oral Hearing, at 8 (emphasis added). This explanation of the effect of the term "comprising" is correct as a matter of law. *See Vivid Tech.,* 200 F.3d at 811; *Phillips Petroleum Co.*, 157 F.3d at 874; *Genentech, Inc.*, 112 F.3d at 501 ("'Comprising' is a term of art used in claim language which means that the named elements are essential, but other elements may be added and still form a construct within the scope of the claim.").

Block attempts to discount this supposedly "surreptitious" explanation in a footnote buried in its discussion of the claim term "collecting electronically," *see* Block's Opening Brief, at 23 n.9, but those arguments miss the point. Simplification has never contended that the properly construed claims cover the manual collection and/or entry of tax data by itself; instead, Simplification makes the incontrovertible point that the claims do not *proscribe* the presence of some manually entered tax data in the automatic tax reporting process so long as the claim limitations are also all met. Simplification's counsel even reiterated this important point at the BPAI hearing during a separate line of questioning which Block apparently misunderstands:

> Judge Medley: So "automatic," what does that – what is your position? What does that mean?
>
> Mr. Sartori: It should mean acting or operating in a manner that is essentially independent of external input or control.
>
> Judge Medley: So not manual.
>
> Mr. Sartori: Not manual, yes.
>
> Judge Medley: So if you have any kind of manual input from start to end, then, it's no good.
>
> Mr. Sartori: It's no good *in the sense of the comprising language*, and no good in the sense of *the limitations we have in the claims must be performed automatically.*

Block Ex. F, Oral Hearing, at 15 (emphasis added).  In this passage, Simplification's counsel states that the express claim limitations must be performed automatically, but once again notes the presence of the transitional term "comprising."  Thus, Block's proposed definition of "automatic tax reporting" – which would proscribe the presence of any unclaimed manual steps -- contradicts not only the plain meaning of the claims, but the description of the invention set forth in the specification and during the reexamination.  Despite Block's wish to the contrary, the claims do not recite "wherein no tax data is manually entered."

       3.     Block's Proposed Construction Is Inconsistent With Federal Circuit Precedent.

Block's proposed definition is also inconsistent with legal precedent.  In a similar context, the Federal Circuit interpreted the term "automatically" to mean that "once initiated, the function is performed by a machine, without the need for manually performing the function." *CollegeNet*, 418 F.3d at 1235; *see also* Simplification's Opening Brief, at 14-16.  Notably, the *CollegeNet* court's interpretation of "automatically" took into account the claim's use of the term "comprising:"  "While claim 1 does not expressly provide for human intervention, the use of 'comprising' suggests that additional, unrecited elements are not excluded.  Such elements could include human actions to expressly initiate the automatic storing or inserting, or to interrupt such functions."  *CollegeNet*, 418 F.3d at 1235 (noting that automatic dishwashers and auto-pilots are automatic devices despite the need for human initiation and the possibility of human interruption).

Simplification presented and relied upon this definition of automatic from *CollegeNet* at the BPAI hearing.  Simplification's proposed construction for "automatic tax reporting" in this case – *i.e.*, "determining and/or reporting tax liability, or satisfying tax reporting obligations, via a process in which one or more functions, once initiated, are completed

without manual intervention" – is consistent with the *CollegeNet* case, the disclosure in the patent, and with its oral and written arguments to the PTO.

        4.        Simplification's Proposed Construction Is Not Overly Broad.

Finally, contrary to Block's assertion, the phrase "one or more functions" in Simplification's proposed construction of "automatic tax reporting" does not make the claim broad enough to cover systems "having any degree of automation whatsoever." *See* Block's Opening Brief, at 14. Rather, as counsel stated at the hearing, the plain language of the '052 patent claims sets forth certain specific limitations that must be performed "automatically" by the electronic intermediary. For that reason, Block is wrong to hypothesize that a tax accountant using a calculator would satisfy the claim limitations. *Id*.

In sum, when construed in the context of the claim language, the specification, and the full file history, the claim term "automatic tax reporting" refers to a process in which at least one piece of tax data is handled automatically in accordance with the steps recited in the claims. This reading is consistent with Simplification's proposal and inconsistent with Block's. Therefore, the Court should reject Block's proposed construction of "automatic tax reporting," and adopt Simplification's plain meaning proposal.

        C.        The Proper Construction of "Electronically."

Block proposes to define "*electronically*" as meaning "on a computer automatically without manual intervention from the user." As discussed in Simplification's Opening Brief, this proposal is inconsistent with the plain meaning of this term ("by way of devices, circuits, or systems utilizing electron devices") and its use in the specification. *See* Simplification's Opening Brief, at 17-18. Block's proposed construction is also legally flawed

because it would render superfluous one of two key terms in the '052 patent claims – "electronically" and "automatic." *Primos, Inc.*, 451 F.3d at 848; *Merck & Co.*, 395 F.3d at 1372.

Block argues that Simplification itself gave this special meaning to the term "electronically," Block's Opening Brief, at 15, but that position is not supported by any fair reading of the patents' specification or their respective prosecution and reexamination histories. The record is clear that the passages from the oral argument cited by Block were directed towards the *"collecting electronically"* limitation in claims 1 and 10 of the '787 patent (which do not include term "automatic tax reporting" in their preamble). Those statements do not purport to describe or define the term "electronically" standing alone, whether in those claims or throughout the two patents. Therefore, they do not show the clear intent to adopt a special definition for "electronically," or constitute words of manifest restriction or disavowal as required for a patentee to "act as his own lexicographer." *See Phillips*, 415 F.3d at 1316, 1320. Moreover, even if Block's interpretation of those statements were accurate, which it is not, other statements from the same hearing and throughout the file histories contradict Block's positions. *See, e.g.*, Simplification's Opening Brief, at 16-19. These contradictions render the file history at most ambiguous regarding the proper definition of "electronically." An ambiguous file history cannot justify departing from the plain meaning of the claim language to limit the claims. *Schwing Gmbh*, 305 F.3d at 1324.

1. Block's Scenario Purporting to Show the Effect of Simplification's Proposed Construction Is Fundamentally Flawed.

Block constructs an elaborate scenario intended to show that applying the plain meaning of "electronically" as Simplification urges would produce overly broad claims. *See* Block's Opening Brief, at 19-20. Block posits that a taxpayer using a prior art tax program (such

as pre-1997 TurboTax) who calls an employer to obtain their W-2 form by e-mail to complete a tax return would infringe claim 20 of the '052 patent if the plain meaning of "electronically" applies. This is simply not true, however, and the flaws in Block's "Claim 20 scenario" show the extent to which Block must twist the record to maintain its position.

First, Block's statement that a "telephone would surely qualify as a device using electrons," is irrelevant in the context of these patent claims, including claim 20 of the '052 patent. *Id*. at 20. The first step listed in the method of claim 20 requires "connecting electronically *said electronic intermediary* to a tax data provider" (emphasis added). The parties agree that an "electronic intermediary" is "a data processing system comprising a general purpose computer and a computer program." *Id*. at 5. The telephone itself is not a computer, and nothing in the record suggests that the electronic intermediary includes a telephone. Moreover, Block's hypothetical telephone call did not "connect electronically" the taxpayer's computer (electronic intermediary) to the employer (the tax data provider). Indeed, it represents an example of the kind of manual intervention that falls outside the scope of this limitation.

Second, Block argues that, under Simplification's plain meaning definition, the "taxpayer's employer email[ing] W-2 data to the taxpayer" for the taxpayer to later manually enter into the tax preparation software would satisfy the claim limitation "collecting electronically tax data from said tax data provider." *Id*. at 20. This reading, however, finds no support in the '052 patent, in any of the proceedings before the PTO, or in either parties' proposed claim constructions. The '052 patent specification clearly states that the "*collecting electronically*" step is intended to minimize, to the extent possible, the need for both the manual collection and the *manual entry* of said tax data. Simplification Ex. A, '052 patent, at Col. 6:24-29. Simplification underscored this point during both the original prosecution and the

reexamination prosecutions of the patents-in-suit, and used it as a point of distinction over the prior art. *See* Simplification Ex. G, '052 Pros. History, Request for Reconsideration in Response to Office Action, dated Nov. 24, 1999, at 3.

Simplification also emphasized this point in its appeal brief to the BPAI. *See* Simplification Ex. H, '052 Reexam Appeal Brief, at 44. During the oral argument, Simplification's counsel explained:

> [T]hat recitation of *collecting electronically* refers to step 12 of the patent. Any there is [sic] talks about, as I said before, the invention eliminates the current requirement that a taxpayer manually collect the tax data, and that the taxpayer – it eliminates the current requirement that the taxpayer *manually enter the tax data onto the tax return or into the computer*. And by collecting electronically, you're eliminating those requirements.

Block Ex. F, Reexam Oral Argument, at 29-30 (emphases added). Thus, the specification and prosecution histories show that "collecting electronically" means more than just receiving the tax data electronically; when it occurs, that step eliminates the need to manually enter that particular tax data into the tax preparation software. Therefore, Block's e-mail arguments are flat wrong.

Third, Block's description of the "*processing electronically*" step in its Claim 20 scenario contradicts the description in the specification and is inconsistent with its own proposed claim construction. In Block's scenario, the "taxpayer enters the information from the email into a standard tax program like TurboTax which performs the appropriate calculations on the data" as part of "processing electronically said tax data collected electronically." Block's Opening Brief, at 20. At the same time, its proposed construction for "processing electronically" excludes manual data entry from that step by defining it as "the act of performing the appropriate computations (e.g., addition, subtraction, multiplication, and division) automatically without

manual intervention from the user." [4]  *Id.* at 24.   Thus, Block's arguments are internally inconsistent, and its Claim 20 scenario makes no sense.

Under both parties' proposed construction of "processing electronically" a standard tax program performs basic computations on the tax data that has already been entered into the program; there is no manual entry of "said tax data collected electronically."  Moreover, nothing in the '052 patent specification supports interpreting "processing electronically" to include manual entry of "said tax data." To the contrary, as discussed above, the specification and prosecution histories show that the automatic data entry of tax data collected electronically is part of the "collecting electronically" step.

Finally, Block's Claim 20 scenario demonstrates the fallacy of its overarching argument that the patent claims only read on "fully-automated" systems, with no manual intervention at all allowed after the user provides certain initial information.  *See, e.g.*, *id.* at 13. When commenting on its proposed scenario, Block recognizes that, as set forth in the specification, "a standard tax program like TurboTax" can perform the "*processing electronically*" step.  *Id.* at 20; *see* Simplification Ex. A, '052 patent, at Col. 6:33-41.  However, TurboTax was not a "fully automated" tax preparation program in 1997 when Simplification filed the initial application, and is not fully automated today.  Any person of skill in the art, or even a casual user, knows that TurboTax walks its users step-by-step through its process and requires manual intervention and input at several points.  *See id.* at Col. 6:33-41 (TurboTax and other then-current technology required manual input of tax data); *see also* Simplification Ex. I,

---

[4]     Simplification's proposed construction of "processing electronically" also recognizes that the claimed processing is of tax data already entered into a standard tax preparation program.

Screen Captures from TurboTax 1996 Tax Year (Final Version).  No method in which TurboTax could perform the "processing electronically" step (as Block concedes it can) can be "fully automated" as Block contends the claims require.  Indeed, the patents-in-suit recognize and account for this issue by using the open-ended transitional term "comprising" before reciting the claimed steps of the invention.

> 2. Block Misinterprets Simplification's Statements During Oral Argument Before the BPAI.

Block also argues that Simplification conceded during the BPAI hearing that the term "electronically" means "automatically" in the patents–in-suit.  *See* Block's Opening Brief, at 15-17.  Once again, Block misunderstands these statements.  When read *in context*, as the law requires, the cited statements by Simplification's counsel came in response to specific questions about the terms "connecting electronically" and "collecting electronically" as used in claims 1 and 10 of the '787 patent, which do not include "automatic tax reporting" in their preamble:

> "And there are two reasons that I said previously that the Beamer article does not teach [claims 1 and 10 of the '787 patent].  One is they're *connecting electronically*.  And yes, we are saying electronically means that there's no manual input.  You have to – we're saying *you need to read it in light of the specification*." Block Ex. F, Oral Hearing, at 29 (emphases added).

In response to further questioning on this issue, Simplification's counsel explained:

> In the context of the step which refers to – *that recitation of collecting electronically refers to step 12 of the patent*.  And there it talks about, as I said before, the invention eliminates the current requirement that a taxpayer manually collect the tax data, and that the taxpayer – it eliminates the current requirement that the taxpayer manually enter the tax data onto the tax return or into the computer.  And by *collecting electronically*, you're eliminating those requirements.

*Id*. at 29-30 (emphases added).  As these passages show, Simplification was not discussing the word "electronically" in isolation; counsel did not purport to define that word by itself or to disavow any claim scope based on "electronically."  Rather, these statements occurred in the context of the discussion of Step 12 [collecting electronically] as described in the patent specification, with a particular focus on claims 1 and 10 of the '787 patent.

In sum, Block attempts to twist the meaning of "electronically" beyond recognition by taking out of context a few statements made in an oral argument at the end of a three-year reexamination process, while largely ignoring many other statements and definitions in the foot-thick file histories, the specification, and the claims themselves.  Yet the law will not permit it.  *See Phillips*, 415 F.3d at 1312-17; *see also LSI Indus., Inc. v. Imagepoint, Inc*., 2008 U.S. App. LEXIS 5892, *10 (Fed. Cir. Mar. 19, 2008) (unpublished) ("The plain language of the claims, however, does not require these limitations, and the presence of similar limitations in dependent claims strongly suggests that the independent claims should not be so limited.  [The cited statements] are not sufficient to constitute a clear and unambiguous disavowal of claim scope.").

When the claim terms are properly construed in light of the entire record, the proper meanings of "electronically" itself and of "connecting electronically" or "collecting electronically" are those proposed by Simplification.  This is particularly so because this Court must use a different approach to claim construction than that applied by the PTO during the initial prosecution and reexamination of these claims.  When claims are before the PTO for examination, the agency must give them their "broadest possible meaning" consistent with the specification to test their validity.  *See, e.g., In re Icon Health & Fitness, Inc*., 496 F.3d 1374, 1379 (Fed. Cir. 2007).  After issuance, however, the claims enjoy a presumption of validity, and

should be given "[t]he construction that stays true to the claim language and most naturally aligns with the patent's description of the invention [.]" *Phillips*, 415 F.3d at 1316. Block's proposed construction of "electronically" does not "naturally align" with either the claim language, the description in the specification, or the file histories, and would render the term "automatic" superfluous in the '052 patent claims. Therefore, that construction must fail, and the Court should give "electronically" its plain and ordinary meaning as urged by Simplification.

### 3. The Proper Construction of "Connecting Electronically."

Block's proposed definition of "connecting electronically," *i.e.*, "the act of establishing communication between computerized devices automatically without manual intervention from the user," is premised upon its proposed construction of "electronically" combined with certain dictionary definitions of "connecting." Simplification is not certain what Block intends by "the act of establishing communication between computerized devices," but the parties' greater disagreement concerns Block's proposed construction of "electronically."

However, Block's proposed dictionary definitions for "connecting" do not appear to come from sources dating to the relevant time – when the patent application was filed in 1997. *Id*. at 1313 (claim terms are given the meaning they would have to a person of ordinary skill in the art "at the time of the invention (*i.e.*, as of the effective filing date of the patent application)."); *ACTV, Inc. v. Walt Disney Co*., 346 F.3d 1082, 1089 (Fed. Cir. 2003) (citation omitted) (describing the value of contemporaneous dictionaries); *see also Symantec Corp. v. Computer Assocs. Int'l, Inc*., 2008 U.S. App. LEXIS 7826, *19-20 (Fed. Cir. Apr. 11, 2008) (defining meaning of claim term to person of ordinary skill in art based in part on computer dictionary from time of invention). Block provides no dates for many of its definitions, and some (like the Bluetooth Technology Glossary definition) could not have existed in 1997.

Further, both of Block's proposed dictionary definitions of "connecting" are somewhat circular – they use the term "connection." *See* Block's Opening Brief, at 22. Finally, Block's proposed definition limits the connection to one between "computerized devices," a term that Block does not explain and that is not used anywhere in the patent specification. For these reasons, the court should reject Block's proposed construction of "connecting."

Simplification's proposed definition, by contrast, comports with the description in the specification. The specification provides several "[n]on-limiting examples of electronic links used to connect electronically the electronic intermediary and the tax data providers includ[ing]: a general purpose computer electronically connected to telephone communication equipment using, for example, a modem or to an electronic data network, such as the Internet; or a computer-readable medium for transferring and receiving the tax data." Simplification Ex. A, '052 patent, at Col. 5:67–6:6. All of these examples of "electronic links" show physical or logical coupling by way of devices, circuits, or systems utilizing electron devices.

The second part of Block's proposed construction, "automatically without manual intervention from the user," is premised on Block's proposed construction of "electronically." For the reasons described above, Block's interpretation of the term "electronically" is overly narrow and inconsistent with the claim language, specification, and file histories. For example, Block argues that: "From the point at which the electronic intermediary connects to the tax data provider to the point that an electronic tax return is prepared, any manual entry by the user would be inconsistent with the specification." Block's Opening Brief, at 22.

As discussed above, however, this argument ignores the plain meaning of the claim terms, and especially the effect of the presence of the transitional phrase "comprising." Block also improperly attempts to minimize the specification's recognition that not all tax data

required for a completed tax return was or will be available electronically, as well as its description of alternative embodiments in which certain steps could be done manually. *See* Simplification Ex. A, '052 patent, at Cols. 1:27-38, 2:16-21; 8:8-13. The claims merely require that at least one piece of tax data be collected and processed automatically for use in an electronic tax return, not that <u>no</u> manual entry can ever occur. Indeed, Block acknowledges that its "proposed construction for 'electronically' contains a negative limitation, the 'without manual input' limitation." Block's Opening Brief, at 18. Block's resort to this negative definition is not mandated by anything in the patents or their file histories, but rather, is driven by Block's need to avoid the plain meaning of the claims.

Therefore, the court should reject Block's proposed definition of "connecting electronically" and adopt the plain meaning construction proposed by Simplification.

4. The Proper Construction of "Collecting Electronically."

The parties' proposed constructions for "collecting electronically" appear on the surface to be similar in part: they each combine gathering (or the act of gathering data) with the party's respective (disputed) construction of electronically. The issue, once again, turns on the parties' different understanding and application of those terms.

Curiously, when describing the "collecting electronically" step, Block states that: "Well past initiation of the system and method, any manual entry during the 'collecting electronically' step is inconsistent with the specification and Simplification's testimony." *Id.* at 23. First, the statements Block cites from the file histories are *not* "testimony," they are argument. Second, to the extent that Block asserts that the *claimed* "collecting electronically" step means that at least one piece of tax data must be collected without manual entry after initiation of the step, then Block's statement accords with the specification. Of course, this does

- 20 -

not mean that the claimed method requires that there be no manual entry of *any* tax data. *See supra* II.B.

The term "collecting electronically" must be understood in light of the description of the problem to be solved by the patents-in-suit and their inventive solution. As set forth in the specification: "Hence, with the *electronic collection of tax data* as in step 12, the invention eliminates the current requirement that a taxpayer manually collect *the tax data*, eliminates the current requirement that a taxpayer manually enter *such tax data* onto a tax return or into a computer, and eliminates the need for all, *or virtually all*, intermediate hard copies of tax data, thereby saving paper, time, and cost." Simplification Ex. A, '052 patent, at Col. 6:24-29 (emphases added). This description does not require, or even suggest, that the invention requires that *all* tax data must be collected without manual intervention. Block has not, and cannot, identify any statement in the patent specification or file histories that so limits the claims.

Therefore, the court should reject Block's proposed definition of "collecting electronically" and adopt the plain meaning construction proposed by Simplification.

5.    The Proper Construction of "Processing Electronically."

The Court should reject Block's proposed definition of "processing electronically" as "the act of performing the appropriate computations (e.g., addition, subtraction, multiplication, and division) automatically without manual intervention from the user" because it is inconsistent with the specification's description of this step.

As Block recognizes, but misunderstands, the patent specification states:

> In step 13, the electronic intermediary processes the tax data obtained electronically from the tax data providers in step 12. In the present invention, step 13 can be implemented using a computer program similar to the computer programs currently available in the market place, such as TurboTax, which is a registered trademark of Intuit, Inc. *Although step 13 can be*

> *implemented with current technology*, the current technology
> requires that the tax data and other information relevant to the
> taxpayer be inputted manually. With the present invention, this
> information is obtained as described above in *steps 11 and 12*.

*Id*. at Col. 6:31-41 (emphases added). This language makes clear that the manner (automatically versus manually) in which the tax preparation software program obtains "said tax data" for processing is addressed by steps 11 and 12 (connecting and collecting electronically). Although Block's proposed definition conflates the two issues, the "processing electronically" step is separate and distinct from the electronic collection of tax data. Moreover, the specification expressly states that then-existing (*i.e.*, circa 1997) tax preparation software was capable of "processing [tax data] electronically" [Step 13]. *Id*.

It is indisputably true that the tax preparation software commercially available in 1997 processed tax data by walking a user step-by-step through a series of questions to determine what tax data was needed and the appropriate computations to make. *See* Simplification Ex. I, Screen Captures from TurboTax 1996 Tax Year (Final Version). Therefore, to the extent Block merely contends such software performed the requisite arithmetical computations for the user, Simplification agrees. To the extent Block contends that the user could make no manual input of any kind once the first piece of tax data was collected, its contention is inconsistent with the way such software actually operated – and therefore with the manner in which the patent specification expressly states that the claimed invention operates.

Block's proposed construction is also flawed because it seeks to limit this claim term to examples from the specification specifically denoted as "non-limiting examples." Simplification Ex. A, '052 patent, Col. 6:42-47; *see also Phillips*, 415 F.3d at 1323 (warning against importing limitations from preferred embodiments). Simplification's proposed construction, by contrast, comports with both the specification and the plain meaning of the term.

*See, e.g.*, Simplification Ex. D, IEEE Standard Dictionary of Electrical and Electronics Terms, at 255 (defining "data processing" as "The systematic performance of operations upon data, such as data manipulation, merging, sorting, and computing."), 822 (citing to "data processing" for definition of "processing").

Therefore, the court should reject Block's proposed definition of "processing electronically" and adopt the plain meaning construction proposed by Simplification.

6.    The Proper Construction of "Preparing Electronically."

The parties' proposed constructions of "preparing electronically" differ largely in the meaning of the term "electronically." It is unclear whether the parties' competing definitions of "preparing" as "preparing" or "the act of completing" reflect a substantive difference. However, as discussed below, Simplification and Block disagree as to the meaning of "tax return." *See infra* II.E.

As with the previous claims involving the term "electronically," Simplification disagrees with Block's proposed importation of "automatically without manual input from the user" into this term for the reasons discussed above. In addition, as previously noted, Block's reliance on the discussion of the meaning of "electronically" during the oral argument before the BPAI is misplaced because that discussion centered on the meaning of the connecting and collecting electronically steps, which Simplification described in accordance with the patent specification. *See supra* II.C.2. Moreover, the patent specification states: "In step 14, the electronic intermediary *prepares electronic tax returns* using the processed tax data from step 13. Similar to step 13, step 14 can be implemented *using current technology*." Simplification Ex. A, '052 patent, at Col. 6:53-56. Thus, the patent specification leaves no doubt that the claimed "preparing electronically" step could be performed using circa 1997 tax preparation software.

The tax preparation software available in 1997 could "complete" a "tax return" up to the point of signature. *See, e.g.,* Simplification Ex. I, Screen Captures from TurboTax 1996 Tax Year (Final Version). However, most taxing authorities at that time (including the IRS) required the taxpayer to print, sign and submit an original signature even when e-filing. *See, e.g.*, Simplification Ex. A, '052 patent, Col. 2:45-48. When e-filing federal tax returns in 1997, the taxpayer also had to complete, sign and submit IRS Form 8453-OL, and the IRS did not consider the tax return to be complete until it received that signed form. *See, e.g.,* Simplification Ex. I, Screen Captures from TurboTax 1996 Tax Year (Final Version). To the extent Block's proposed definition requires "preparation" or "completion" of the tax return beyond what could occur in 1997, Block's definition is incorrect and at odds with the patent specification.

Therefore, the court should reject Block's proposed definition of "preparing electronically" and adopt the plain meaning construction proposed by Simplification.

### 7. The Proper Construction of "Filing Electronically."

The Court should reject Block's proposed construction of "filing electronically" as "the act of entering a legal document into the public record by means of a computer automatically without manual intervention from the user" because it suffers from several serious flaws – including, of course, its use of Block's proposed definition for "electronically."

First, the claim language specifies that an "electronic tax return" is filed with a "taxing authority." *See, e.g.*, Simplification Ex. A, '052 patent, at Col. 8:31-32. As every taxpayer knows, a tax return is a confidential document not part of the "public record." *See* 26 U.S.C. § 6033, n.1 (Internal Revenue Code). Thus, "filing electronically" cannot include "entering a legal document into the public record." Simplification is also not certain what Block

means by "a legal document," particularly in light of Block's insistence that "preparing electronically" requires the preparation of a "tax return." *See* Block's Opening Brief, at 26.

The specification describes filing electronically as follows: "[i]n step 15, the electronic intermediary electronically files the electronic tax returns prepared in step 14 with the taxing authorities." Simplification Ex. A, '052 patent, at Col. 6:62-64. As noted in the background of the invention, the "computation of income tax liability is generally a routine matter of collecting the relevant data, processing it, reflecting the data and ultimate calculations on the proper form or forms, and transmitting or otherwise sending the forms to the relevant taxing authorities." *Id*. at Col. 1:58-63. Moreover, the patent specification acknowledges that electronic filing of tax returns was known at the time of invention. *See id*. at Cols. 1:65–2:6 (noting "in 1997, thirteen million returns were filed electronically"); 2:49-58 (noting "tax returns may be filed electronically").

At a minimum, electronic filing required in 1997 (and still requires) manual intervention to enter certain relevant data regarding the taxpayer and/or preparer, and/or to initiate the filing step separate and apart from the preparation of the return. *See, e.g*., Simplification Ex. I, Screen Captures from TurboTax 1996 Tax Year (Final Version). Simplification's proposed construction accepts and reflects this reality. To the extent Block's proposed definition of "filing electronically" requires actions impossible in 1997, or precludes the practice of the 1997 technology cited in the specification, Block's definition is incorrect and at odds with the patent specification.

Therefore, the court should reject Block's proposed definition of "filing electronically" and adopt the plain meaning construction proposed by Simplification.

D.     The Proper Construction of the Means Plus Function Claims.

The means plus function claim limitations at issue in both the '052 and '787 patent claims parallel the claim limitations discussed immediately above in a different format – "means for connecting electronically," "means for collecting electronically," "means for processing electronically," "means for preparing electronically," and "means for filing electronically."     Therefore, Simplification hereby incorporates by reference the preceding discussion of these claim terms as its position regarding the function of the parallel means-plus-function limitations.  The other dispute between the parties on those claims is whether the patent specification discloses sufficient structure to support the means-plus-function limitations; the following sections focus on that related structure.

1.     The Proper Construction of "Means for Connecting Electronically."

For the reasons set forth above, the Court should reject Block's proposed function for "means for connecting electronically," *i.e.*, "establishing communication between computerized devices automatically without manual intervention from the user."  *See supra* II.C.3 (discussing "*connecting electronically*").

Block's sole argument concerning the related structure for the claimed "means for connecting electronically" is that:

> Block contends that the specification does not disclose sufficient structure to perform the recited function.  However, to the extent the Court believes structure is sufficiently described, Defendant submits that the only structure disclosed is a general purpose computer programmed with undisclosed software connected by electronic links 32-37 to tax data providers.  *See* Col. 5, l. 50-Col., 6, 1. 6; *see also*, Fig. 2.

Block's Opening Brief, at 31-32.  Block's bare assertion that the patent fails to disclose sufficient structure to support this claim limitation is insufficient to properly raise the issue, especially in

light of the ease with which Block identified structure supporting this claim limitation. Furthermore, Block's proposed structure is essentially identical to Simplification's proposal – "a data processing system comprising a general purpose computer programmed with code segments to operate the general-purpose computer, causing it to establish a physical or logical coupling via an electronic link." The patent specification taken as a whole provides more than sufficient description of this structure for "connecting electronically." *See* Simplification's Opening Brief, at 25 (citing Simplification Ex. A, '052 patent, Figs. 1 & 2 (electronic links 32-37), Cols. 3:35-39, 4:28-50, 5:18-20, 5:50–6:6, 6:64-66); *see also* Simplification Ex. A, '052 patent, at Cols. 3:51–4:11, Claim 19.

Tellingly, Block does not even argue that the alleged lack of structure for the claimed "means for connecting electronically" parallels the facts of *Aristocrat Techs. Austl. Pty Ltd. v. International Game Tech.*, 521 F.3d 1328 (Fed. Cir. 2008), as it does for some of the other means plus function limitations. Block's implicit concession of that argument is proper given Block's identification of the structure present to support this claim term. The Court should reject, however, Block's unsupported assertion that the disclosed structure is still insufficient, and adopt the claim construction proposed by Simplification for the reasons set forth above.

> 2. The Proper Construction of "Means for Collecting Electronically."

For the reasons set forth above, the Court should reject Block's proposed function for "means for collecting electronically," *i.e.*, "gathering data automatically without manual intervention from the user." *See supra* II.C.4 (discussing "*collecting electronically*").

Block's sole argument concerning the related structure for the claimed "means for collecting electronically" is that:

> Block contends that the specification does not disclose sufficient structure to perform the recited function. However, to the extent the Court believes structure is sufficiently described, Block submits that the only structure disclosed is a general purpose computer programmed with undisclosed software connected by electronic links 32-37 to tax data providers. *See* Col. 5, l. 50-Col., 6, 1. 6; *see also*, Fig. 2.

Block's Opening Brief, at 32. As with Block's discussion of "connecting electronically," Block's bare assertion that the patent fails to disclose sufficient structure to support this claim limitation is insufficient to properly raise the issue, especially in light of the ease with which Block identified structure supporting this claim limitation. Furthermore, Block's proposed structure is essentially identical to Simplification's proposal – "a data processing system comprising a general purpose computer programmed with code segments to operate the general-purpose computer, causing it to gather tax data via an electronic link." The patent specification taken as a whole provides more than sufficient description of this structure. *See* Simplification's Opening Brief, at 26 (citing Simplification Ex. A, '052 patent, Figs. 1 & 2 (electronic links 32-37), Cols. 3:35-39, 4:28-50, 5:18-20, 5:50–6:6, 6:64-66); *see also* Simplification Ex. A, '052 patent, Cols. 3:51–4:11, Claim 19.

Once again, Block does not even argue that the alleged lack of structure for the claimed "means for collecting electronically" parallels the facts of *Aristocrat Technologies*. Block's implicit concession of that argument is proper given its identification of the structure present to support this claim term. The Court should reject, however, Block's unsupported assertion that the disclosed structure is still insufficient, and adopt the claim construction proposed by Simplification for the reasons set forth above.

3.      The Proper Construction of "Means for Processing Electronically."

For the reasons set forth above, the Court should reject Block's proposed function for "means for processing electronically," *i.e.*, "performing the appropriate computations (e.g., addition, subtraction, multiplication, and division) automatically without manual intervention from the user."  *See supra* II.C.5 (discussing "*processing electronically*").

Block's sole argument concerning the related structure for the claimed "means for processing electronically" is that:

> Block contends that the specification does not disclose sufficient structure to perform the recited function.  Reference to a general purpose computer with special programming is insufficient to meet the requirements of Section 112¶6.  *See Aristocrat Techs.*, 521 F.3d at 1333-34.  However, to the extent the Court believes structure is sufficiently described, Block submits that the only structure disclosed is a general purpose computer programmed with undisclosed software.  *See* Col. 6., ll. 33-39; *see also*, Fig. 2.

Block's Opening Brief, at 32-33.  Here, at least, Block attempts to rely upon *Aristocrat Technologies* to support its argument, but that reliance is misplaced.

When a patentee claims his invention in a means plus function format, "[t]he law is clear that patent documents need not include subject matter that is known in the field of the invention and is in the prior art, for patents are written for persons experienced in the field of the invention.  To hold otherwise would require every patent document to include a technical treatise for the unskilled reader."  *S3, Inc. v. nVIDIA Corp.*, 259 F.3d 1364, 1370-71 (Fed. Cir. 2001) (finding sufficient structure for the means plus function claim "means . . . for selectively receiving" where the specification referred to a "selector" but did not describe the electronic structure of the selector or the details of its electronic operation, because "a selector is a standard electronic component whose structure is well known in this art").  In other words, "the Federal

Circuit has held that a structure included in a specification need not be described in detail to show that it performs the claimed function when that structure is well known in the art." *Radio Sys. Corp. v. Tri-Tronics*, 2007 U.S. Dist. LEXIS 17315, *11 (E.D. Tenn. Mar. 9, 2007) (citing *S3, Inc.*, 259 F.3d at 1371).

Furthermore, a specific reference to a commercially available product as an example for the corresponding structure is sufficient to overcome a claim of indefiniteness. *Id.* at *11-12 (denying motion for summary judgment where patent disclosed in its specification "circuitry contained in the assignee's commercially marketing Model A170 system" as the structure that produces the starting and stopping signals claimed in the claims); *see also Budde v. Harley-Davidson, Inc.*, 250 F.3d 1369, 1381-1382 (Fed. Cir. 2001) (specification disclosed "vacuum sensors are commercially available units which produce analog signals for the control unit," so the phrase "commercially available units" particularly and distinctly pointed out to those skilled in the art the vacuum sensors claimed).

Here, the patent specification expressly states that: "In the present invention, step 13 [processing electronically] can be implemented using a computer program similar to the computer programs currently available in the market place, such as TurboTax, which is a registered trademark of Intuit, Inc." Simplification Ex. A, '052 patent, at Col. 6:32-35. Under the law, this specific citation to a particular known computer software program that can perform the claimed "processing electronically" function satisfies the description requirement for the structure of this claim limitation. Indeed, this reference enables even one not skilled in the art to know what structure can perform the recited function.

Once again, Block's proposed structure is similar to Simplification's proposal – "a data processing system comprising a general purpose computer programmed with code

segments to operate the general-purpose computer, causing it to perform said systematic operations." The patent specification taken as a whole provides more than sufficient description of this structure. *See* Simplification's Opening Brief, at 27-28 (citing Simplification Ex. A, '052 patent, at Fig. 1 (block 13), Cols. 3:35-39, 4:28-33, 6:30-52); *see also* Simplification Ex. A, '052 patent, Cols. 3:51–4:11, Claim 19.

In light of the structure disclosed in the patent specification for "processing electronically," and the Federal Circuit's recognition that a detailed description of structure is not required where that structure is known in the art, the Court should reject Block's arguments and proposed construction, and adopt Simplification's construction for the reasons set forth above.

4. The Proper Construction of "Means for Preparing Electronically."

For the reasons set forth above, the Court should reject Block's proposed function for "means for preparing electronically," *i.e.*, "completing automatically without manual intervention from the user." *See supra* II.C.6 (discussing "*preparing electronically*").

Block's sole argument concerning the related structure for the claimed "means for preparing electronically" is that:

> Block contends that the specification does not disclose sufficient structure to perform the recited function. Reference to a general purpose computer with special programming is insufficient to meet the requirements of Section 112¶6. *See Aristocrat Techs.*, 521 F.3d at 1333-34. However, to the extent the Court believes structure is sufficiently described, Block submits that the only structure disclosed is a general purpose computer programmed with undisclosed software. *See* Col. 6., ll. 53-56; *see also*, Fig. 2.

Block's Opening Brief, at 33. Here again, Block's reliance on *Aristocrat Technologies* is misplaced for the same reasons as it was for "processing electronically." *See, e.g.*, *S3, Inc.*, 259

F.3d at 1370-71; *Budde*, 250 F.3d at 1381-1382; *Radio Sys. Corp.*, 2007 U.S. Dist. LEXIS 17315, at *11-12.

As with the "processing electronically" limitation, the patent specification expressly states that the "preparing electronically" limitation "can be implemented using current technology." Simplification Ex. A, '052 patent, at Col. 6:55-56. From the specification's description, it is clear that the same tax preparation software used to process electronically in step 13 can be used to prepare electronically in step 14. *Id.* at Col. 6:31-61; *see also id.* at Col. 1:40-43 ("Several computer programs are available for individual taxpayers to compute their federal income tax liability and generate completed tax returns (such as TurboTax, which is a registered trademark of Intuit, Inc.)."). This specific reference to a commercially available product as an example for the corresponding structure properly supports that claim limitation.

Further, Block's proposed structure is similar to Simplification's proposal – "a data processing system comprising a general purpose computer programmed with code segments to operate the general-purpose computer and to prepare an electronic tax return." The patent specification as a whole provides more than sufficient description of this structure. *See* Simplification's Opening Brief, at 28-29 (citing Simplification Ex. A, '052 patent, at Fig. 1 (block 14), Cols. 3:35-65, 4:28-33, 6:53-61); *see also* Simplification Ex. A, '052 patent, at Cols. 3:51–4:11, Claim 19.

In light of the structure disclosed in the patent specification for "preparing electronically," and the Federal Circuit's recognition that a detailed description of structure is not required where that structure is known in the art, the Court should reject Block's arguments and proposed construction, and adopt Simplification's construction for the reasons set forth above.

5.      The Proper Construction of "Means for Filing Electronically."

Block's proposed constructions for the "filing electronically" and "means for filing electronically" limitations inexplicably differ. *Compare* Block's Opening Brief, at 28 (filing electronically is "the act of entering a legal document into the public record by means of a computer automatically without manual intervention from the user") *with id.* at 34 (means for filing electronically has the function of "entering an electronic tax return with said taxing authority by means of a computer automatically without manual intervention from the user"). Nonetheless, for the reasons set forth above, the Court should reject the second portion of Block's proposed function – "by means of a computer automatically without manual intervention." *See supra* II.C.7 (discussing "*filing electronically*").[5]

Block's sole argument concerning the related structure for the claimed "means for preparing electronically" is that:

> Block contends that the specification does not disclose sufficient structure to perform the recited function. However, to the extent the Court believes structure is sufficiently described, Block submits that the only structure disclosed is a general purpose computer programmed with undisclosed software connected to a taxing authority by electronic link 37. *See* Col. 6, l. 63 - Col., 7, l. 1; *see also*, Fig. 2.

Block's Opening Brief, at 34. As with Block's discussion of "connecting electronically," its bare assertion that the patent fails to disclose sufficient structure to support this "filing electronically" claim limitation is insufficient to properly raise the issue, especially in light of the ease with

---

[5]      Simplification cannot tell whether the first portion of Block's proposed function ("entering an electronic tax return with said taxing authority") differs meaningfully from the corresponding portion of Simplification's proposal – "submitting or transmitting to a taxing authority." Simplification requests permission to further brief this issue if necessary.

which Block identified structure supporting the limitation. Further, Simplification notes that Block's proposed structure is essentially identical to Simplification's proposal – "a data processing system comprising a general purpose computer programmed with code segments to operate the general-purpose computer, causing it to submit said electronic tax return to the taxing authority via an electronic link." The patent specification as a whole provides more than sufficient description of this structure. *See* Simplification's Opening Brief, at 29-30 (citing Simplification Ex. A, '052 patent, at Figs. 1 (block 15) & Fig. 2 (electronic link 37), Cols. 3:35-39, 4:28-33, 6:62–7:2); *see also* Simplification Ex. A, '052 patent, at Cols. 3:51–4:11, Claim 19.

Once again, Block does not even argue that the alleged lack of structure for the claimed "means for filing electronically" parallels the facts of *Aristocrat Technologies*. Block's implicit concession of that argument is proper given its identification of the structure present to support this claim term. The Court should reject, however, Block's unsupported assertion that the disclosed structure is still insufficient, and adopt the claim construction proposed by Simplification for the reasons set forth above.

E. The Proper Construction of "Electronic Tax Return."

Contrary to Block's argument, its proposed definition of "electronic tax return" as "a completed computerized tax return ready for submission to a governmental tax agency" is not supported by the '052 patent specification or file history. The core dispute between the parties stems from Block's requirement that the electronic tax return be a *completed* tax return, although Block provides no support for its use of "computerized tax return."

As the language and structure of the claims indicates, the claimed electronic tax return is filed with a taxing authority. *See id*. at Col. 8:27-32. As explained by the specification, "[i]n practicing the invention, the electronic tax returns are prepared with respect to the particular

taxing authorities.  For example, if the taxing authority is the IRS, the electronic tax return will correspond to the appropriate federal tax return, such as the Form 1040 or the Form 1040EZ." *Id*. at Col. 6:54-61.  Such electronic tax returns are then submitted or transmitted electronically to the taxing authority.  *See id*. at Col. 6:62–7:1.

Importantly, the specification notes that when Simplification filed the initial patent application, the IRS permitted and some taxpayers used electronic filing of tax returns. *See id*. at Cols. 1:64–2:6, 2:49-58.  The specification further notes that the step of "preparing electronically" an electronic tax return could be done by circa 1997 tax preparation software. *See id*. at Col. 6:53-56.  As set forth in the discussion of "preparing electronically" above, the "electronic tax return" limitation cannot require that those electronic returns be "completed" in a manner beyond the capabilities of such 1997 software.

Therefore, the Court should reject Block's proposed construction of "electronic tax return," and adopt Simplification's proposed construction for the reasons set forth above.

III.    CONCLUSION

WHEREFORE, for all of the reasons stated above and in Simplification's Opening *Markman* brief, Simplification respectfully submits that this Court should adopt its proposed constructions of the disputed terms of the claims of the '052 and '787 patents.

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

*/s/ Julia Heaney*
Mary B. Graham (#2256)
Julia Heaney (#3052)
1201 N. Market Street
P.O. Box 1347
Wilmington, DE  19899-1347
(302) 658-9200
jheaney@mnat.com
  *Attorneys for Plaintiff Simplification LLC*

OF COUNSEL:

Julie A. Petruzzelli
Peter J. Curtin
David M. Farnum
Michelle M. Marcus
VENABLE, LLP
575 7th Street, N.W.
Washington, DC  20004-1601
(202) 344-4000

May 27, 2008
2342996

## CERTIFICATE OF SERVICE

I hereby certify that on May 27, 2008, I caused the foregoing to be electronically filed with the Clerk of the Court using CM/ECF which will send electronic notification of such filing to the following:

> John W. Shaw
> Karen E. Keller
> YOUNG CONAWAY STARGATT & TAYLOR, LLP

Additionally, I hereby certify that true and correct copies of the foregoing were caused to be served on May 27, 2008 upon the following individuals in the manner indicated:

## BY E-MAIL

John W. Shaw
Karen L. Pascale
Karen E. Keller
YOUNG CONAWAY STARGATT & TAYLOR, LLP
The Brandywine Building
1000 West Street, 17th Floor
Wilmington, DE  19801

Jeffrey S. Standley
F. Michael Speed, Jr.
STANDLEY LAW GROUP LLP
495 Metro Place South, Suite 210
Dublin, OH  43017

*/s/ Julia Heaney*
_____
Julia Heaney (#3052)
jheaney@mnat.com

1268751