# EXHIBIT H

Reexam Control No. 90/006,713

**IN THE UNITED STATES PATENT AND TRADEMARK OFFICE**
**BOARD OF PATENT APPEALS AND INTERFERENCES**

Reexam Control No. **90/006,713**

| | |
|---|---|
| Confirmation No. | 3671 |
| Filing Date: | July 11, 2003 |
| U.S. Patent No. | 6,202,052 |
| Issue Date | March 13, 2001 |
| Title | Fully-Automated System for Tax Reporting, Payment and Refund |
| Examiner | Susanna M. Diaz |
| Art Unit | 3623 |
| Attorney Docket No. | 31921-191331 |
| Customer No. | 26694 |

**APPEAL BRIEF**

Mail Stop: *Appeal Brief - Patents*
Commissioner for Patents
P.O. Box 1450
Alexandria, VA  22313-1450

Sir:

    In response to the Final Office Action dated June 21, 2005, Appellants submit herewith an Appeal Brief in accordance with 37 C.F.R. § 41.37. A copy is also served on the third party requester. Pursuant to 37 C.F.R. § 41.20(b)(2), please charge the required small entity fee of $250 and any additional fees necessary, or credit any refunds, to our deposit account no. 22-0261, referencing our docket no. 31921-191331. The Notice of Appeal was filed on Friday, August 19, 2005, in accordance with 37 C.F.R. § 41.31(a)(3).

VENABLE LLP
P.O. Box 34385
Washington, DC 20043-9998
Telephone: (202) 344-4000
Telefax: (202) 344-8300
Attorneys for Appellant-Patent Owner

Reexam Control No. 90/006,713

## *TABLE OF CONTENTS*[1]

I.      REAL PARTY IN INTEREST – 37 C.F.R. § 41.37(c)(1)(i). . . . . . . . . . . . . . . . . . . . . . . . .4
II.     STATEMENT OF RELATED APPEALS AND INTERFERENCES – 37 C.F.R. §
        41.37(c)(1)(ii). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .4
III.    STATUS OF CLAIMS – 37 C.F.R. § 41.37(c)(1)(iii) . . . . . . . . . . . . . . . . . . . . . . . . . . . .4
IV.     STATUS OF AMENDMENTS – 37 C.F.R. § 41.37(c)(1)(iv) . . . . . . . . . . . . . . . . . . . . . .5
V.      SUMMARY OF CLAIMED SUBJECT MATTER – 37 C.F.R. § 41.37(c)(1)(v) . . . . . . . . . .5
        A. Features of the Invention. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .5
        B. The Independent Claims on Appeal – Claims 1, 15, 19, 20 and 29-36 . . . . . . . . .5
                Claim 1. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .5
                Claim 15. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .6
                Claim 19. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .6
                Claim 20. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .7
                Claim 29. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .8
                Claim 30. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .8
                Claim 31. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .9
                Claim 32. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .10
                Claim 33. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .10
                Claim 34. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .11
                Claim 35. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .12
                Claim 36. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .12
VI.     GROUNDS OF REJECTION TO BE REVIEWED ON APPEAL – 37 C.F.R. §
        41.37(c)(1)(vi). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .13
VII.    ARGUMENT – 37 C.F.R. §41.37(c)(1)(vii) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .14
        A. The Rejection of Claims 29-36 Under 35 U.S.C. § 112, First Paragraph. . . . . . .14
                1.      The Final Office Action Fails to Follow the Requirements for
                        Reexamination Proceedings . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14
                2.      The Office Fails to Meet Its Burden . . . . . . . . . . . . . . . . . . . . . . . . . . 15
        B. The Rejection of Claims 29-36 Under 35 U.S.C. § 112,
           Second Paragraph. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19
        C. The Rejection of Claims 1, 2, 6, 8-10, 14, 15, 17-20, and 29-36 Under
           35 U.S.C. § 102(b) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20
                1.      Scott Beamer's Tax Preparation Methodology Using
                        MaxInTax . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21
                        a. Beamer. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .21
                        b. S. Beamer's MacInTax Made Easy. . . . . . . . . . . . . . . . . . . . . . . .24
                2.      Beamer Fails to Teach or Suggest "Automatic Tax
                        Reporting by an Electronic Intermediary" . . . . . . . . . . . . . . . . . . . . .29
                        a.      The Preamble Limits the Claims. . . . . . . . . . . . . . . . . . . . . . 30
                        b.      The Ordinary Meaning of "Automatic" is
                                NOT Limited to "Computer-Implemented" . . . . . . . . . . . . . 32
                        c.      The Term "Automatic" Limits Each and Every
                                Claim Limitation. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 33
                        d.      The Term "Automatic" Must be Given Weight. . . . . . . . . . .36

---

[1] The Table of Contents is included for reference purposes only and not to limit the issues to be reviewed on appeal.

Reexam Control No. 90/006,713

|  |  | e. | <u>Beamer</u> Requires <u>Manual</u> Steps. . . . . . . . . . . . . . . . . . . . . . . . 37 |
|  | 3. | | <u>Beamer</u> Fails to Teach or Suggest the Recited <u>Taxing Authority</u> . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 38 |
|  | 4. | | <u>Beamer</u> Fails to Teach or Suggest "Collecting Electronically Tax Data from said Tax Data Provider" . . . . . . . . . . . . . . . . . . . . . . 43 |
|  | 5. | | <u>Beamer</u> Fails to Teach or Suggest the Recited <u>Tax Data</u>. . . . . . . . . .44 |
|  | D. | | The Rejection of Claims 3-5, 7, 11-13 and 16 Under 35 U.S.C. § 103(a) . . . . . .46 |
| VIII. | CONCLUSION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .49 |
| IX. | CLAIMS APPENDIX - 37 C.F.R. § 41.37(c)(1)(viii) . . . . . . . . . . . . . . . . . . . . . . . . . . .50 |
| X. | EVIDENCE APPENDIX - 37 C.F.R. § 41.37(c)(1)(ix) . . . . . . . . . . . . . . . . . . . . . . . . . .59 |
| XI. | RELATED PROCEEDINGS APPENDIX - 37 C.F.R. § 41.37(c)(1)(x) . . . . . . . . . . . . . . . .60 |

Reexam Control No. 90/006,713

## I.   REAL PARTY IN INTEREST – 37 C.F.R. § 41.37(c)(1)(i)

The real party in interest is Simplification, LLC of New York, NY, the owner of U.S. Patent No. 6,202,052 by virtue of assignment from David S. Miller of New York, NY, recorded May 7, 1998, at Reel 009164, Frame 0132.

## II.   STATEMENT OF RELATED APPEALS AND INTERFERENCES – 37 C.F.R. § 41.37(c)(1)(ii)

The above-named real party in interest, Simplification, LLC, filed a patent infringement action in the United States District Court for the District of Delaware against Block Financial Corporation ("Block") on April 8, 2003, based on the patent at issue in this appeal (U.S. 6,202,052) (hereinafter "the '052 patent").  Civil Action No. 03-355-JJF.  Block filed this request for reexamination on July 11, 2003, which reexamination was granted by the Office on October 2, 2003.  The parties filed a stipulation staying the case pending reexamination on November 21, 2003, the stay being granted on November 25, 2003.

Simplification also filed a patent infringement action against Block in the United States District Court for the District of Delaware on February 24, 2004, based on U.S. patent 6,697,787 (hereinafter "the '787 patent"), which issued from a continuation application of the patent at issue in this appeal.  Civil Action No. 04-114-JJF.  Block filed a request for reexamination of the '787 patent on March 15, 2004, which reexamination was granted by the Office on June 3, 2004 as Reexam Control No. 90/006,969.  The case was stayed pending reexamination on May 10, 2004.

There are no other appeals, interferences or judicial proceedings known to appellant/owner, appellant's legal representatives, or the above-noted inventor/assignor, that will directly affect or will be directly affected by or have bearing on the Board's decision in this appeal.

## III.   STATUS OF CLAIMS – 37 C.F.R. § 41.37(c)(1)(iii)

Pending claims 1-20 and 29-36 have been finally rejected, and are appealed.  Claims 21-28 have been cancelled.

IV.   STATUS OF AMENDMENTS – 37 C.F.R. § 41.37(c)(1)(iv)

No responses have been filed subsequent to the Examiner's final rejection dated June 21, 2005.

V.   SUMMARY OF CLAIMED SUBJECT MATTER – 37 C.F.R. § 41.37(c)(1)(v)

A.  Features of the Invention

The invention provides a method, apparatus and computer-readable medium for automatic tax reporting by an electronic intermediary.  The electronic intermediary electronically connects with a tax data provider and collects electronically tax data from the tax data provider. The electronic intermediary processes the tax data collected electronically, and prepares an electronic tax return using the processed tax data. The electronic intermediary connects electronically with a taxing authority, files the electronic tax return with the taxing authority, and arranges electronically for the payment or receipt of any tax liability or refund, respectively.

B.  The Independent Claims on Appeal – Claims 1, 15, 19, 20 and 29-36

The following explanation of the claimed subject matter, with reference to the specification and drawings of the '052 patent, is by way of example and for explanation only.  The invention is not limited to the disclosed embodiments, and certain elements may be found in more than one of the disclosed embodiments.

<u>Claim 1</u>

Claim 1 recites a method for automatic tax reporting by an electronic intermediary 21 (FIGS. 1 and 2; column 3, lines 24-34; column 4, lines 30-34).  The method (as shown in FIG. 1) includes the steps of:

- connecting electronically said electronic intermediary 21 to a tax data provider 22-27 (FIG. 1, block 12; FIG. 2; column 4, lines 34-50 and column 5, line 50 – column 6, line 6);

- collecting electronically tax data from said tax data provider 22-27 (FIG. 1, block 12; FIG. 2; column 5, line 50 – column 6, line 23);

- processing electronically said tax data collected electronically from said tax data

Reexam Control No. 90/006,713

provider 22-27 to obtain processed tax data (FIG. 1, block 13; column 6, lines 30-52);

- preparing electronically an electronic tax return using said processed tax data (FIG. 1, block 14; column 6, lines 53-61);

- connecting electronically said electronic intermediary 21 to a taxing authority 27 (FIG. 1, block 15; FIG. 2; column 6, line 62 – column 7, line 2); and

- filing electronically said electronic tax return with said taxing authority 27 (FIG. 1, block 15; FIG. 2; column 6, line 62 – column 7, line 2).

## Claim 15

Claim 15 recites an apparatus for automatic tax reporting by an electronic intermediary 21 (FIGS. 1 and 2; column 3, lines 35-50; column 4, lines 30-34). The apparatus includes:

- means 21 for connecting electronically said electronic intermediary 21 to a tax data provider 22-27 (FIG. 1, block 12; FIG. 2; column 4, lines 34-50 and column 5, line 50 – column 6, line 6);

- means 21 for collecting electronically tax data from said tax data provider 22-27 (FIG. 1, block 12; FIG. 2; column 5, line 50 – column 6, line 23);

- means 21 for processing electronically said tax data collected electronically from said tax data provider 22-27 to obtain processed tax data (FIG. 1, block 13; column 6, lines 30-52);

- means 21 for preparing electronically an electronic tax return using said processed tax data (FIG. 1, block 14; column 6, lines 53-61);

- means 21 for connecting electronically said electronic intermediary 21 to a taxing authority 27 (FIG. 1, block 15; FIG. 2; column 6, line 62 – column 7, line 2); and

- means 21 for filing electronically said electronic tax return with said taxing authority 27 (FIG. 1, block 15; FIG. 2; column 6, line 62 – column 7, line 2).

## Claim 19

Claim 19 recites a computer-readable medium embodying a computer program for automatic tax reporting by an electronic intermediary 21 (FIGS. 1 and 2; column 3, line 51 – column 4, line 11; column 4, lines 30-34). The computer program includes code segments

-6-

Reexam Control No. 90/006,713

for:

- connecting electronically said electronic intermediary 21 to a tax data provider 22-27 (FIG. 1, block 12; FIG. 2; column 4, lines 34-50 and column 5, line 50 – column 6, line 6);
- collecting electronically tax data from said tax data provider 22-27 (FIG. 1, block 12; FIG. 2; column 5, line 50 – column 6, line 23);
- processing electronically said tax data collected electronically from said tax data provider 22-27 to obtain processed tax data (FIG. 1, block 13; column 6, lines 30-52);
- preparing electronically an electronic tax return using said processed tax data (FIG. 1, block 14; column 6, lines 53-61);
- connecting electronically said electronic intermediary 21 to a taxing authority 27 (FIG. 1, block 15; FIG. 2; column 6, line 62 – column 7, line 2); and
- filing electronically said electronic tax return with said taxing authority 27 (FIG. 1, block 15; FIG. 2; column 6, line 62 – column 7, line 2).

### Claim 20

Claim 20 recites a method for automatic tax reporting by an electronic intermediary 21 (FIGS. 1 and 2; column 3, lines 24-34; column 4, lines 30-34).  The method (as shown in FIG. 1) includes the steps of:

- connecting electronically said electronic intermediary 21 to a tax data provider 22-27 (FIG. 1, block 12; FIG. 2; column 4, lines 34-50 and column 5, line 50 – column 6, line 6);
- collecting electronically tax data from said tax data provider 22-27 (FIG. 1, block 12; FIG. 2; column 5, line 50 – column 6, line 23);
- processing electronically said tax data collected electronically from said tax data provider 22-27 to obtain processed tax data (FIG. 1, block 13; column 6, lines 30-52); and
- preparing electronically an electronic tax return using said processed tax data (FIG. 1, block 14; column 6, lines 53-61).

Reexam Control No. 90/006,713

### Claim 29

Claim 29 recites a method for automatic tax reporting by an electronic intermediary 21 (FIGS. 1 and 2; column 3, lines 24-34; column 4, lines 30-34). The method (as shown in FIG. 1) includes the steps of:

- connecting electronically said electronic intermediary 21 to a tax data provider 22-27 (FIG. 1, block 12; FIG. 2; column 4, lines 34-50 and column 5, line 50 – column 6, line 6);
- collecting electronically tax data from said tax data provider 22-27 (FIG. 1, block 12; FIG. 2; column 5, line 50 – column 6, line 23);
- processing electronically said tax data collected electronically from said tax data provider 22-27 to obtain processed tax data (FIG. 1, block 13; column 6, lines 30-52);
- preparing electronically an electronic tax return using said processed tax data (FIG. 1, block 14; column 6, lines 53-61);
- connecting electronically said electronic intermediary 21 to a taxing authority 27 (FIG. 1, block 15; FIG. 2; column 6, line 62 – column 7, line 2); and
- filing electronically said electronic tax return with said taxing authority 27 (FIG. 1, block 15; FIG. 2; column 6, line 62 – column 7, line 2),
- wherein said tax data collected electronically is not collected manually (FIG. 1, block 12; column 6, lines 23-29), and
- wherein said tax data collected electronically is not manually entered onto said electronic tax return (column 6, lines 23-29).

### Claim 30

Claim 30 recites an apparatus for automatic tax reporting by an electronic intermediary 21 (FIGS. 1 and 2; column 3, lines 35-50; column 4, lines 30-34). The apparatus includes:

- means 21 for connecting electronically said electronic intermediary 21 to a tax data provider 22-27 (FIG. 1, block 12; FIG. 2; column 4, lines 34-50 and column 5, line 50 – column 6, line 6);
- means 21 for collecting electronically tax data from said tax data provider 22-27 (FIG. 1, block 12; FIG. 2; column 5, line 50 – column 6, line 23);

- means 21 for processing electronically said tax data collected electronically from said tax data provider 22-27 to obtain processed tax data (FIG. 1, block 13; column 6, lines 30-52);
- means 21 for preparing electronically an electronic tax return using said processed tax data (FIG. 1, block 14; column 6, lines 53-61);
- means 21 for connecting electronically said electronic intermediary 21 to a taxing authority 27 (FIG. 1, block 15; FIG. 2; column 6, line 32 – column7, line 2); and
- means 21 for filing electronically (said electronic tax return with said taxing authority 27 (FIG. 1, block 15; FIG. 2; column 6, line 62 – column 7, line 2),
- wherein said tax data collected electronically is not collected manually (FIG. 1, block 12; column 6, lines 23-29), and
- wherein said tax data collected electronically is not manually entered onto said electronic tax return (column 6, lines 23-29).

## Claim 31

Claim 31 recites a computer-readable medium embodying a computer program for automatic tax reporting by an electronic intermediary 21 (FIGS. 1 and 2; column 3, line 51 – column 4, line 11; column 4, lines 30-34). The computer program includes code segments for:

- connecting electronically said electronic intermediary 21 to a tax data provider 22-27 (FIG. 1, block 12; FIG. 2; column 4, lines 34-50 and column 5, line 50 – column 6, line 6);
- collecting electronically tax data from said tax data provider 22-27 (FIG. 1, block 12; FIG. 2; column 5, line 50 – column 6, line 23);
- processing electronically said tax data collected electronically from said tax data provider 22-27 to obtain processed tax data (FIG. 1, block 13; column 6, lines 30-52);
- preparing electronically an electronic tax return using said processed tax data (FIG. 1, block 14; column 6, lines 53-61);
- connecting electronically said electronic intermediary 21 to a taxing authority 27 (FIG. 1, block 15; FIG. 2; column 6, line 62 – column 7, line 2); and
- filing electronically said electronic tax return with said taxing authority 27 (FIG. 1,

Reexam Control No. 90/006,713

block 15; FIG. 2; column 6, line 62 – column 7, line 2),

- wherein said tax data collected electronically is not collected manually (FIG. 1, block 12; column 6, lines 23-29), and
- wherein said tax data collected electronically is not manually entered onto said electronic tax return (column 6, lines 23-29).

## Claim 32

Claim 32 recites a method for automatic tax reporting by an electronic intermediary 21 (FIGS. 1 and 2; column 3, lines 24-34; column 4, lines 30-34). The method (as shown in FIG. 1) includes the steps of:

- connecting electronically said electronic intermediary 21 to a tax data provider 22-27 (FIG. 1, block 12; FIG. 2; column 4, lines 34-50 and column 5, line 50 – column 6, line 6);
- collecting electronically tax data from said tax data provider 22-27 (FIG. 1, block 12; FIG. 2; column 5, line 50 – column 6, line 23);
- processing electronically said tax data collected electronically from said tax data provider 22-27 to obtain processed tax data (FIG. 1, block 13; column 6, lines 30-52); and
- preparing electronically an electronic tax return using said processed tax data (FIG. 1, block 14; column 6, lines 53-61),
- wherein said tax data collected electronically is not collected manually (FIG. 1, block 12; column 6, lines 23-29), and
- wherein said tax data collected electronically is not manually entered onto said electronic tax return (column 6, lines 23-29).

## Claim 33

Claim 33 recites a method for automatic tax reporting by an electronic intermediary 21 (FIGS. 1 and 2; column 3, lines 24-34; column 4, lines 30-34). The method (as shown in FIG. 1) includes the steps of:

- connecting electronically said electronic intermediary 21 to a tax data provider 22-27 (FIG. 1, block 12; FIG. 2; column 4, lines 34-50 and column 5, line 50 – column 6,

line 6);

- collecting automatically and electronically tax data from said tax data provider 22-27 (FIG. 1, block 12; FIG. 2; column 5, line 50 – column 6, line 29);
- processing electronically said tax data collected electronically from said tax data provider 22-27 to obtain processed tax data (FIG. 1, block 13; column 6, lines 30-52);
- preparing electronically an electronic tax return using said processed tax data (FIG. 1, block 14; column 6, lines 53-61);
- connecting electronically said electronic intermediary 21 to a taxing authority 27 (FIG. 1, block 15; FIG. 2; column 6, line 62 – column 7, line 2); and
- filing electronically said electronic tax return with said taxing authority 27 (FIG. 1, block 15; FIG. 2; column 6, line 62 – column 7, line 2).

### Claim 34

Claim 34 recites an apparatus for automatic tax reporting by an electronic intermediary 21 (FIGS. 1 and 2; column 3, lines 35-50; column 4, lines 30-34). The apparatus includes:

- means 21 for connecting electronically said electronic intermediary 21 to a tax data provider 22-27 (FIG. 1, block 12; FIG. 2; column 4, lines 34-50 and column 5, line 50 – column 6, line 6);
- means 21 for collecting automatically and electronically tax data from said tax data provider 22-27 (FIG. 1, block 12; FIG. 2; column 5, line 50 – column 6, line 29);
- means 21 for processing electronically said tax data collected electronically from said tax data provider 22-27 to obtain processed tax data (FIG. 1, block 13; column 6, lines 30-52);
- means 21 for preparing electronically an electronic tax return using said processed tax data (FIG. 1, block 14; column 6, lines 53-61);
- means 21 for connecting electronically said electronic intermediary 21 to a taxing authority 27 (FIG. 1, block 15; FIG. 2; column 6, line 62 – column 7, line 2); and
- means 21 for filing electronically said electronic tax return with said taxing authority 27 (FIG. 1, block 15; FIG. 2; column 6, line 62 – column 7, line 2).

Reexam Control No. 90/006,713

### Claim 35

Claim 35 recites a computer-readable medium embodying a computer program for automatic tax reporting by an electronic intermediary 21 (FIGS. 1 and 2; column 3, line 51 – column 4, line 11; column 4, lines 30-34). The computer program includes code segments for:

- connecting electronically said electronic intermediary 21 to a tax data provider 22-27 (FIG. 1, block 12; FIG. 2; column 4, lines 34-50 and column 5, line 50 – column 6, line 6);
- collecting automatically and electronically tax data from said tax data provider 22-27 (FIG. 1, block 12; FIG. 2; column 5, line 50 – column 6, line 29);
- processing electronically said tax data collected electronically from said tax data provider 22-27 to obtain processed tax data (FIG. 1, block 13; column 6, lines 30-52);
- preparing electronically an electronic tax return using said processed tax data (FIG. 1, block 14; column 6, lines 53-61);
- connecting electronically said electronic intermediary 21 to a taxing authority 27 (FIG. 1, block 15; FIG. 2; column 6, line 62 – column 7, line 2); and
- filing electronically said electronic tax return with said taxing authority (FIG. 1, block 15; FIG. 2; column 6, line 62 – column 7, line 2).

### Claim 36

Claim 36 recites a method for automatic tax reporting by an electronic intermediary 21 (FIGS. 1 and 2; column 3, lines 24-34; column 4, lines 30-34). The method (as shown in FIG. 1) includes the steps of:

- connecting electronically said electronic intermediary 21 to a tax data provider 22-27 (FIG. 1, block 12; FIG. 2; column 4, lines 34-50 and column 5, line 50 – column 6, line 6);
- collecting automatically and electronically tax data from said tax data provider 22-27 (FIG. 1, block 12; FIG. 2; column 5, line 50 – column 6, line 29);
- processing electronically said tax data collected electronically from said tax data provider 22-27 to obtain processed tax data (FIG. 1, block 13; column 6, lines 30-52); and

- preparing electronically an electronic tax return using said processed tax data (FIG. 1, block 14; column 6, lines 53-61).

### VI.   GROUNDS OF REJECTION TO BE REVIEWED ON APPEAL – 37 C.F.R. § 41.37(c)(1)(vi)

A. Claims 29-36 stand rejected under 35 U.S.C. § 112, first paragraph, for failing to comply with the written description requirement.

B. Claims 29-36 stand rejected under 35 U.S.C. § 112, second paragraph, as being indefinite for failing to particularly point out and distinctly claim the subject matter which applicant regards as the invention.

C. Claims 1, 2, 6, 8-10, 14, 15, 17-20, and 29-36 stand rejected under 35 U.S.C. § 102(b) as being anticipated by the integration of MacInTax with Dollars & Sense, as disclosed in Beamer ("A Marriage of Convenience"), and further supported by the disclosure of the article, "It's W-2 Time."

D. Claims 3-5, 7 and 16 stand rejected under 35 U.S.C. § 103(a) as being unpatentable over the integration of MacInTax with Dollars & Sense, as disclosed in Beamer ("A Marriage of Convenience"), and further supported by the disclosure of the article, "It's W-2 Time," as applied to claims 1, 6, and 15, in view of Official Notice taken by the Examiner.

E. Claims 11-13 stand rejected under 35 U.S.C. § 103(a) as being unpatentable over the integration of MacInTax with Dollars & Sense, as disclosed in Beamer ("A Marriage of Convenience"), and further supported by the disclosure of the article, "It's W-2 Time", as applied to claim 1, in view of Meadows ("Faster Refunds with Electronic Filing: Computerizing Your Relationship with the IRS") (hereinafter "Meadows"), and further in view of "Electronic Tax Payment Through TAXLINK Discussed in IRS Procedure" (hereinafter "TAXLINK").

Reexam Control No. 90/006,713

**VII.   ARGUMENT – 37 C.F.R. §41.37(c)(1)(vii)**

    **A.   The Rejection of Claims 29-36 Under 35 U.S.C. § 112, First Paragraph**

    The Patent Owner respectfully traverses, and hereby appeals, the final rejection of added claims 29-36 under 35 U.S.C. § 112, first paragraph, for at least the following two reasons.

    **1.   The Final Office Action Fails to Follow the Requirements for Reexamination Proceedings**

    First, the Final Office Action fails to follow the requirements for reexamination proceedings. With regard to reexamination proceedings, M.P.E.P. § 2258(II) provides, in relevant part, that "[w]here new claims are presented or where any part of the disclosure is amended, the claims of the reexamination proceeding, are to be examined for compliance with 35 U.S.C. § 112," and that "[c]onsideration of 35 U.S.C. § 112 issues should be limited to the amendatory (e.g., new language) matter." *See also* Final Office Action, page 15; 35 U.S.C. § 1.552(a). In this case, claims 29-32 are the same as original claims 1, 15, 19, and 20, respectively, except for the additional recitations of: "wherein said tax data collected electronically is not collected manually," and "wherein said tax data collected electronically is not manually entered onto said electronic tax return." Similarly, claims 33-36 are the same as original claims 1, 15, 19, and 20, respectively, except for the additional recitation of "automatically and" in the second feature of "collecting automatically and electronically tax data from said tax data provider." Thus, the rejection of claims 29-36 under section 112, first paragraph, must be limited to the new language noted above. The Final Office Action, however, fails to follow this requirement.

    For example, the Final Office Action states, on page 11 at lines 1-2: "[t]here is no mention of the instant invention being limited to a single software module." Importantly, claims 29-36 do not recite the phrase "a single software module." The Final Office Action similarly presents arguments, on page 11 at lines 2-7, regarding "non-limiting examples of an electronic link," and "existing software," neither of which is recited in claims 29-36. Thus, basing a section 112, first paragraph, rejection on this reasoning is improper in the context of a reexamination.

    Similarly, the Final Office Action summarily asks, on page 11 at lines 17-18: "[w]hat

-14-

Reexam Control No. 90/006,713

is the extent of 'automatic' and 'without manual intervention'?" The term "automatic" is used in the preamble of claims 29-36, just as in the preamble of original claims 1, 15, 19, and 20, and can, thus, not be the subject of a rejection under section 112, first paragraph, in a reexamination. Therefore, basing a section 112, first paragraph, rejection on this reasoning is improper in the context of a reexamination. Additionally, the phrase "without manual intervention" is not recited anywhere in claims 29-36. Thus, the Office Action fails to follow the requirements for reexamination proceedings, and the rejection of claims 29-36 under section 112, first paragraph, is improper.

### 2.    The Office Fails to Meet Its Burden

Second, the Office fails to meet its burden of presenting, by a preponderance of evidence, why a person skilled in the art would not recognize in the specification of the '052 patent a description of the invention defined by the new language in claims 29-36. The first paragraph of 35 U.S.C. § 112 requires that the "specification shall contain a written description of the invention . . . ." This requirement is separate and distinct from the enablement requirement. *See, e.g., Vas-Cath, Inc. v. Mahurkar*, 935 F.2d 1555, 1560, 19 U.S.P.Q.2d 1111, 1114 (Fed. Cir. 1991). To satisfy the written description requirement, a patent specification must describe the claimed invention in sufficient detail that one skilled in the art can reasonably conclude that the inventor had possession of the claimed invention. *See, e.g., Moba, B.V. v. Diamond Automation, Inc.*, 325 F.3d 1306, 1319, 66 U.S.P.Q.2d 1429, 1438 (Fed. Cir. 2003); *Vas-Cath, Inc. v. Mahurkar*, 935 F.2d at 1563, 19 U.S.P.Q.2d at 1116. Moreover, the examiner has the initial burden of presenting by a preponderance of evidence why a person skilled in the art would not recognize in an applicant's disclosure a description of the invention defined by the claims. M.P.E.P. § 2163(III)(A) (citing *In re Wertheim*, 541 F.2d 257, 263, 191 U.S.P.Q. 90, 97 (CCPA 1976)). In view of the foregoing guidelines, the Patent Owner respectfully traverses the rejection of the new language of claims 29-36 under section 112, first paragraph, for at least the following four reasons.

First, as to the new recitations presented in claims 29-32, the Final Office Action asserts, on page 11 at line 20 to page 12 at line 2, that: "[t]he specification does not render a clear picture of the intended metes and bounds of any claim details relating to the automatic collecting and processing of data, 'wherein said tax data collected electronically is not

-15-

collected manually, and wherein said tax data collected electronically is not manually entered onto said electronic tax return.'" In contrast to the assertion in the Final Office Action, the Patent Owner respectfully submits that the specification does, in fact, render a clear picture of the metes and bounds of the new language. As noted at page 34 of the Patent Owner's response filed May 17, 2005, the added recitations in claims 29-32 are supported in the '052 patent at, for example, column 6, lines 23-27, which recites, in relevant part:

> the invention *eliminates the current requirement that a taxpayer manually collect the tax data, eliminates the current requirement that a taxpayer manually enter such tax data onto a tax return or into a computer*, and eliminates the need for all, or virtually all, intermediate hard copies of tax data, thereby saving paper, time, and cost. (emphasis added).

In view of the foregoing recitations in the specification of the '052 patent, a person skilled in the art would recognize a description of the invention defined by the new language in claims 29-32. Accordingly, the Final Office Action fails to make a *prima facie* case with regard to claims 29-32.

Second, regarding claims 29-32, the Final Office Action on page 12 at lines 2-7 asserts that the new language in claims 29-32 makes unclear the "intended scope of involvement of the human versus a computer in the data collection and processing steps . . . especially in terms of . . . the limitation 'wherein said tax data collected electronically is not collected manually, and wherein said tax data collected electronically is not manually entered onto said electronic tax return.'" The Patent Owner respectfully disagrees. The specification does, in fact, make clear the intended scope of human involvement as to the new claim language in claims 29-32.

In addition to the portions of the specification already cited above, column 4, lines 34-35 of the '052 patent provides, for example, that "[i]n step 11, the taxpayer 20 provides the electronic intermediary 21 with information on tax data providers." The '052 patent further recites, at column 4, line 51 – column 5, line 15 (emphasis added):

> *The information provided by the taxpayer to the electronic intermediary may include identification*, such as the taxpayer's social security number, so that electronic data networks, such as the Internet, or electronic data bases may be searched by the electronic intermediary for the taxpayer's tax data. Alternatively, *the taxpayer could specifically identify the tax*

Reexam Control No. 90/006,713

> *data providers and could include information on how to contact the tax data providers electronically*, if the electronic intermediary cannot automatically search for and locate the tax data providers. Additionally, *the taxpayer can provide the electronic intermediary with authorization to contact and receive information from the tax data providers*. Moreover, the *taxpayer can provide the electronic intermediary with information concerning basic questions designed to identify special tax cases*. For example, the taxpayer could be asked whether the taxpayer has donated money or other items to charities. If the taxpayer has donated, the electronic intermediary then notes that these charities need to be electronically contacted for collection of tax data.

> *The taxpayer can provide the electronic intermediary with the information on the tax data providers* in a number of ways. For example, the electronic intermediary could prompt the taxpayer for the information, and *the taxpayer could provide the information using an input means*. Non-limiting examples of the input means include: a keyboard, a mouse, a microphone, and a telephone touch-tone pad. In FIG. 2, the communication between the taxpayer 20 and the electronic intermediary 21 is indicated by link 31. In the preferred embodiment, this link is an electronic link. Non-limiting examples of such an electronic link include: input means for a computer, a modem, telephone communication equipment, and an electronic data network, such as the Internet.

FIG. 1 also shows that step 11 includes providing information on the tax data providers. This "manual" step is performed by the taxpayer to allow the electronic intermediary to automatically connect to relevant tax data providers. Even though this step is **not** recited in claims 29-32, which recite automatic steps and elements, such recitation helps render a clear picture of the metes and bounds of the new language. Thus, a person skilled in the art would recognize a description of the invention defined by the new language in claims 29-32 in the Patent Owner's disclosure. The Final Office Action fails to make a *prima facie* case with regard to claims 29-32.

Third, regarding claims 33-36, the Final Office Action, at lines 8-9 on page 12, summarily states that "Patent Owner's original specification does not provide adequate written disclosure of the intended metes and bounds of the claimed invention." For substantially the same reasons as discussed above with regard to claims 29-32, the Patent Owner respectfully submits that the specification does, in fact, render a clear picture of the

Reexam Control No. 90/006,713

metes and bounds of the new language in claims 33-36. As noted at page 34 of the Patent Owner's response filed May 17, 2005, the added recitation of "automatically" in the "collecting" step of claims 33-36 is supported in the '052 patent at, for example, column 2 line 15 – column 3 line 7; column 3 lines 9-20; and column 6, lines 23-29. As already set forth above, column 6, lines 23-29, recites, in relevant part:

> the invention *eliminates the current requirement that a*
> *taxpayer manually collect the tax data, eliminates the current*
> *requirement that a taxpayer manually enter such tax data*
> *onto a tax return or into a computer,* and eliminates the need
> for all, or virtually all, intermediate hard copies of tax data,
> thereby saving paper, time, and cost. (emphasis added).

In view of the foregoing recitations in the '052 patent, a person skilled in the art would recognize a description of the invention defined by the new language in claims 33-36 in the Patent Owner's disclosure. Accordingly, the Final Office Action fails to make a *prima facie* case with regard to claims 33-36.

Fourth, as to the new recitation presented in claims 33-36, the Final Office Action, on page 12 at lines 2-7, asserts that the new language in claims 33-36 makes unclear the "intended scope of involvement of the human versus a computer in the data collection and processing steps . . . especially in terms of the steps recited as automatically or electronically performed . . . ." The Patent Owner respectfully disagrees for substantially the same reasons as discussed above with regard to claims 29-32. The specification does, in fact, make clear the intended scope of human involvement as to the new claim language in claims 33-36. *See* the '052 patent, column 2 line 15 – column 3 line 7; column 3 lines 9-20; and column 6, lines 23-29. In view of the foregoing recitations in the '052 patent, a person skilled in the art would recognize a description of the invention defined by the new language in claims 33-36 in the Patent Owner's disclosure. Accordingly, the Final Office Action fails to make a *prima facie* case with regard to claims 33-36.

In sum, the Office has not followed the rules of reexamination proceedings. Moreover, the Office has not met its burden of presenting, by a preponderance of evidence, why a person skilled in the art would not recognize in an applicant's disclosure a description of the invention defined by the new language in claims 29-36. Accordingly, the rejection of claims 29-36 under 35 U.S.C. § 112, first paragraph, should be reversed.

Reexam Control No. 90/006,713

**B.     The Rejection of Claims 29-36 Under 35 U.S.C. § 112, Second Paragraph**

The Patent Owner respectfully traverses, and hereby appeals, the final rejection of added claims 29-36 under 35 U.S.C. § 112, second paragraph, for at least the following three reasons.

First, the Final Office Action improperly uses, *in haec verba*, the same argument for both the section 112, first paragraph, written description rejection and the section 112, second paragraph, indefiniteness rejection. These are two completely separate statutory standards of patentability having completely different requirements and underlying purposes. *See* M.P.E.P. § 2174. Nevertheless, because the Office applies the same reasoning to each rejection, the Patent Owner hereby incorporates by reference each of the arguments made above in subsection VII(A) of this brief.

Second, the Final Office Action fails to follow the requirements for reexamination proceedings. As noted above, with regard to reexamination proceedings, M.P.E.P. § 2258(II) provides, in relevant part, that "[w]here new claims are presented or where any part of the disclosure is amended, the claims of the reexamination proceeding, are to be examined for compliance with 35 U.S.C. § 112," and that "[c]onsideration of 35 U.S.C. § 112 issues should be limited to the amendatory (e.g., new language) matter." *See also* Final Office Action, page 15. In this case, claims 29-32 are the same as original claims 1, 15, 19, and 20, respectively, except for the additional recitations of: "wherein said tax data collected electronically is not collected manually," and "wherein said tax data collected electronically is not manually entered onto said electronic tax return." Similarly, claims 33-36 are the same as original claims 1, 15, 19, and 20, respectively, except for the additional recitation of "automatically and" in the second feature of "collecting automatically and electronically tax data from said tax data provider." Thus, the rejection of claims 29-36 under section 112, second paragraph, must be limited to the new language noted above. The Final Office Action, however, fails to follow this requirement.

Third, the Patent Owner respectfully submits that claims 29-36 are not indefinite. As will be further discussed below, the term "automatic" in the preamble of each claim limits the claims and requires that each step be performed without manual intervention. With respect to claims 29-32, the added recitation, "wherein said tax data collected electronically is not collected manually, and wherein said tax data collected electronically is not manually entered

onto said electronic tax return," while not affecting the scope of the claims as compared to claims 1, 15, 19 and 20, serves to clarify and/or make more definite the "collecting electronically" step recited in the claims. Likewise, with respect to claims 33-36, the added recitation of "automatically and," while not affecting the scope of the claims as compared to claims 1, 15, 19 and 20, serves to clarify and/or make more definite the "collecting electronically" step recited in the claims. Hence, claims 29-36 are not indefinite.

Thus, the Patent Owner respectfully submits that the rejection of claims 29-36 under 35 U.S.C. § 112, second paragraph, is improper and should be reversed.

### C. The Rejection of Claims 1, 2, 6, 8-10, 14, 15, 17-20, and 29-36 Under 35 U.S.C. § 102(b)

The Final Office Action rejects claims 1, 2, 6, 8-10, 14, 15, 17-20 and 29-36 under 35 U.S.C. § 102(b) as being anticipated by S. Beamer, "A Marriage of Convenience" (hereinafter Beamer) and further supported by the article "It's W-2 Time." The Patent Owner respectfully traverses the rejection and hereby appeals the same.

35 U.S.C. § 102(b) states that "[a] person shall be entitled to a patent unless -

> (b) the invention was patented or described in a printed publication in this or a foreign country or in public use or on sale in this country, more than one year prior to the date of application for patent in the United States . . . .

"A claim is anticipated only if **each and every element** as set forth in the claim is found, either expressly or inherently described, in a single prior art reference." *Verdegaal Bros. v. Union Oil Co. of California*, 814 F.2d 628, 631, 2 U.S.P.Q.2d 1051, 1053 (Fed. Cir. 1987) (emphasis added); M.P.E.P. § 2131. Furthermore, "[t]he identical invention must be shown in as complete detail as is contained in the . . . claim." *Richardson v. Suzuki Motor Co.*, 868 F.2d 1226, 1236, 9 U.S.P.Q.2d 1913, 1920 (Fed. Cir. 1989).

The Patent Owner respectfully submits that Beamer fails to teach each and every element set forth in at least independent claims 1, 15, 19, 20 and 29-36. A full and complete description of Beamer's tax preparation methodology was provided at pages 11-14 of Patent Owner's response, filed May 17, 2005, and is hereby reproduced below in subsection VII(C)(1)(a) for the Board's review.

Reexam Control No. 90/006,713

1.      **Scott Beamer's Tax Preparation Methodology Using MaxInTax**

   a.      **Beamer**

According to <u>Beamer</u>, preparation of a tax return using MacInTax requires four software programs (i.e., MoneyLine, Dollars & Sense, MacInTax Converter, and MacInTax). The following figure depicts the various software programs used according to <u>Beamer</u> and the flow of data through the <u>Beamer</u> system.

-21-

Reexam Control No. 90/006,713



-22-

Reexam Control No. 90/006,713

First, using the MoneyLine software program, the taxpayer transfers a bank record indicating a salary deposit for a taxpayer from a bank to a file readable by the Dollars & Sense software program. <u>Beamer</u>, ¶¶ 3, 23, 26.

Second, with the Dollars & Sense software program, which is a **personal finance management program**, the **taxpayer prepares monthly updates** of the Dollars & Sense file throughout the year and grooms (i.e., finally prepares) a year-end financial report of the Dollars & Sense file. <u>Beamer</u>, ¶¶ 9, 22, 23, 36, 37. Specifically, the taxpayer: (1) provides **monthly manual input** throughout the year to prepare a monthly financial report each month; and (2) provides **manual input** at **year end** to groom the financial report to prepare a year-end financial report for use in preparing a tax return. <u>Beamer</u>, ¶¶ 30-37. The Dollars & Sense software program does **not** automatically produce monthly financial report updates and the year-end financial report. Instead, a significant amount of **user manual input** is required by the taxpayer to **manipulate** the data from the bank into a form that is useable for determining taxes. This **user manual input** is done both **monthly** and at **year end**. *Id.* According to <u>Beamer</u>:

> If you want to be, [sic] more organized before you start, *look at a few months* of canceled checks and credit card receipts....

> It helps to have *a couple months of entries* up on the screen *when you are entering transactions*....

> *Little errors pop up frequently.* If an error is major, say for instance you entered a deposit as a withdrawal or vice versa, the account won't balance and you'll know about it right away. Whenever your accounts don't balance, be careful not to save the unbalanced version over last month's balanced version....

> *Grooming your files at the end of the year is a must.* If your accounts balance at the end of the year, you are in pretty good shape but *transactions can still be in the wrong categories. At tax time it is necessary to review all transactions one by one*, making sure that each is in the correct category and correctly marked as taxable or nontaxable. It is best to empty out the "Misc." and "Cash" accounts as much as possible.

> Hopefully, before tax time rolls around *you have been practicing with report templates all year.* This is the most

-23-

Reexam Control No. 90/006,713

> difficult part of using these programs, especially with
> MacMoney, because there are so many variables to deal with.
> *You must make a year end report that will correctly
> summarize the tax data from your files.* If you have been
> using the suggested tax accounts from the program, this
> shouldn't be too hard.
>
> *If you balance your accounts even once a month*, in a
> few months a sense of order will begin to replace disarray....

Beamer, ¶¶ 31, 34-37, 44 (emphasis added).

Third, with the MacInTax Converter software program, the taxpayer converts the Dollars & Sense file for the year-end financial report into an ASCII text file. Beamer, ¶ 9.

Fourth, with the MacInTax software program, the taxpayer accesses the **ASCII text file** for the year-end financial report, **manipulates** the data in the report, and generates a MacInTax file with a tax return. Beamer, ¶¶ 8, 9, 13, 38. To produce the tax return, the MacInTax software program does **not** do this automatically. Instead, to produce the tax return, the taxpayer provides **manual input** to **match** entries in the ASCII text file of the year-end financial report with entries in the tax return. Beamer, ¶¶ 8, 38. According to Beamer:

> MacInTax (for 1986) already includes an interface that
> will allow it to open ASCII text files as a separate window from
> within MacInTax. *You can select data in the window, then
> point to where you want the data entered in the tax forms*,
> permitting quick transfer of information from MacMoney to
> MacInTax.
>
> When it is time to prepare your taxes, open MacInTax
> and have it fill in the information from last year's forms
> automatically. Then open the interface window with the
> [ASCII] text file of your year end financial report. *Move the
> data from the [ACSII] text file into the correct locations on
> the tax forms* and your returns should be pretty well filled out.

Beamer, ¶¶ 8, 38 (emphasis added).

### b.   S. Beamer's MacInTax Made Easy

In further support of the **manual** requirements involved in Beamer's system, the Patent Owner also directs the Board's attention to Scott Beamer's book, MacInTax Made

-24-

Reexam Control No. 90/006,713

Easy, 1993, submitted previously in an information disclosure statement (IDS) on July 1, 2005, and which has the same author as Beamer. The following excerpts from MacInTax Made Easy further explain the extent of manual input required by a taxpayer in preparing his or her taxes using Beamer's system with regard to the steps recited in the instant claims.

Regarding converting and importing data into MacInTax to get ready for preparing tax forms, MacInTax Made Easy states:

> Some veteran users may also have prepared their personal financial management data for import into MacInTax. Now is the time to do it, if it seems worth it to you. The problem is that if your data file is in ASCII text, *MacInTax will import it, but you must cut and paste each number to its appropriate line in MacInTax. The amount of manual effort this entails largely negates the advantage of importing*. Page 18 (emphasis added).

Next, regarding organizing personal records, including income, in preparing a tax return, MacInTax Made Easy states:

> Now it's time to organize your personal records. Hopefully, you have been using an electronic checkbook all year. Otherwise, *you will have to put in some hard hours collecting, categorizing, and sorting your paper records*. Page 38 (emphasis added).

Regarding converting, importing and updating tax-related records in preparing a tax return, MacInTax Made Easy states:

> *Anyone who tracks their personal or business finances on their Mac and uses MacInTax must dream of the day when they can fill out their tax return at the click of a button. A few are able to approach such simplicity now, but for most of us, it's a dream only partly fulfilled.*
>
> MacInTax can import two kinds of files (ASCII text and STD), and now has Publish and Subscribe fully operational for System 7 users. The *question is whether it is more work to import the data or to just type it in, copying from a printed year-end report. Most still find that the easiest approach is to print out a year-end report in their personal financial management software and type the relevant information into MacInTax.* Page 92 (emphasis added).

Reexam Control No. 90/006,713

With regard to importing a Quicken® file in preparing a tax return, <u>MacInTax Made Easy</u> states:

> Those who use Quicken certainly have the option of printing out a tax summary report, then re-keying that information into MacInTax.  However, Intuit has for years built a more elegant solution into Quicken. Your year-end report can be exported as an STD (Standard Tax Data) file.  *MacInTax can import an STD file and enter the information automatically in all the appropriate parts of your return.*
>
> *The negative side is that you must do considerable preparation for this to happen.*  Page 92 (emphasis added).

***

> You may have noticed that *all the effort involved in importing data from Quicken to MacInTax negates much of the advantage of using Import.*  While that's true, next year, and in the years to come, your efforts will pay big dividends. Quicken will remember how you assigned your Quicken categories for MacInTax, and you can skip this step entirely. Actually, *you will probably have some editing to do*, but that shouldn't take too much time.  Page 94 (emphasis added).

With regard to importing a MacMoney file in preparing a tax return, <u>MacInTax Made Easy</u> states:

> *If you used MacMoney to keep your financial records* last year, *you have three choices for getting that information into your tax return*. As with the other personal financial management software, the *best choice is often to print out last year's category list* after the first of the new year. The *year-to-date totals for tax-related categories can then be typed by hand into MacInTax. This is the simplest method.*
>
> You may wish instead to save to disk, as ASCII text, a tax summary report, such as the category list, which shows year-to-date totals for each category. You *can then import this report into MacInTax and point and click to transfer amounts to the appropriate lines.*
>
> Your *third choice* is to *use the HyperCard stack* that came on your original MacMoney disk. If for some reason you do not have this stack, you can download it from major bulletin boards or contact Survivor Software. It will prepare an STD file from your MacMoney data. In the HyperCard stack (shown in

Reexam Control No. 90/006,713

Figure 8-5), *you will go through the process of pairing MacMoney categories with MacInTax categories*. The STD file can be imported by MacInTax and the information will flow directly to the correct places.  Page 95 (emphasis added).

*If you edit your data in MacMoney and want to send the edited version to MacInTax, the HyperCard stack will remember the pairings between your MacMoney categories and the MacInTax ones.  It will prepare the new STD report at the click of a button.  Disappointingly, this is not true from year to year.  Next year, you will have to match up the categories again.*

Whatever method you use to copy information from MacMoney to MacInTax, *remember to verify the accuracy of your MacMoney data.*  Any inaccuracies there might migrate to your tax returns.  Page 96 (emphasis added).

With regard to importing ASCII text files in preparing a tax return, <u>MacInTax Made Easy</u> states:

The problem is that *MacInTax has no way of knowing where to put the dollar amounts from the text file. You will have to tell it by clicking on the dollar amount visible in the import window* (as seen in Figure 8-6), *then clicking on the line on a tax form to show MacInTax where to put the information*. This is a sort of streamlined Copy and Paste.

*The question is, are you saving enough time and effort to justify the extra effort of the ASCII text export and import?* One minor advantage of importing is that you may reduce the typos that might creep into your tax return if you re-key all the dollar amounts.  Page 97 (emphasis added).

-27-

Reexam Control No. 90/006,713



TaxMatch
converts
MacMoney
data to STD
**Figure 8-6.**

For repeat users of MacInTax, with regard to transferring information filled out from last year's MacInTax return, <u>MacInTax Made Easy</u> provides:

> It will fill in your name, address, social security number, filing status, dependents, and so forth with last year's information. ***It will not fill in your income and deductions with last year's amounts, because these will almost certainly have changed.*** Page 108 (emphasis added).

Other relevant portions of the <u>MacInTax Made Easy</u> book similarly describe the additional amount of manual input and work required by a taxpayer in using the <u>Beamer</u> system to prepare a tax return.

The above description of <u>Beamer</u>'s tax preparation methodology, including the several relevant excerpts from <u>MacInTax Made Easy</u>, highlights the extent of manual input and manipulation required in order for a taxpayer to process and file taxes using, *inter alia*, MacInTax (for 1986). This is in stark contrast to the method for "automatic" tax reporting according to the instant invention as will be further discussed below in subsections VII(C)(2-5). For at least the following four reasons, <u>Beamer</u> fails to anticipate independent claims 1, 15, 19, 20 and 29-32.

Reexam Control No. 90/006,713

### 2.   <u>Beamer</u> Fails to Teach or Suggest "<u>Automatic</u> Tax Reporting by an Electronic Intermediary"

First, <u>Beamer</u> does not anticipate claims 1, 15, 19, 20 and 29-36 because he fails to teach or suggest "**automatic** tax reporting by an electronic intermediary," as recited in each of the claims. The Patent Owner submits that such recitation in the preamble of each claim limits the recited steps and/or elements such that each recited step and/or element MUST be carried out **automatically**. In contrast to the claimed invention, <u>Beamer</u> teaches the type of **manual** tax preparation that the instant invention was intended to solve.

A properly construed definition of the term "automatic" and the limiting nature of its recitation in the claim preambles are, thus, significant in distinguishing between the claimed invention and the tax preparation methodology set forth in <u>Beamer</u>. In each of the rejections presented in the Final Office Action, the Examiner improperly disregards and/or misconstrues the recitation of "automatic" recited in the claim preambles. Both the prior Office Action and the Final Office Action merely state that "the computer is an electronic device that **automates** such computations as opposed to performing the calculations completely manually by a human." *See* Office Action dated March 17, 2005, at page 3; Final Office Action, page 5 lines 17-19) (emphasis added). The Final Office Action, in rejecting claim 1, also states that "[u]se of software executed by a computer to perform tax computations for preparing a tax return is indicative of electronic and automatic performance of these computations. In other words, the computer is an electronic device that automates such computations as opposed to performing the calculations completely manually by a human." Page 17, lines 6-9. The Final Office Action also cites to the article "It's W-2 Time" in support of this position. Page 17, lines 9-11. The Patent Owner respectfully acknowledges that a computer can automate calculations involved in a data processing step, but notes that **Beamer's teaching of automation in one step does not necessarily import automation into other steps taught therein**.

During the May 3, 2005, interview of record, the Office clarified its interpretation of the term "automatic" in the claims by stating that:

(1) "automatic" is recited in the preamble of the claims and not in the body;

(2) "automatic" is read by the Office to mean "computer-implemented"; and

(3) "automatic" is given no weight, even though it is recited in the claim preambles.

Reexam Control No. 90/006,713

The Patent Owner respectfully traverses the rejections and the foregoing positions for at least the following four reasons.

### a.    The Preamble Limits the Claims

As to the first position taken by the Office, although "automatic" is recited in the preamble, the preamble limits the claim. "The determination of whether a preamble limits a claim is made on a case-by-case basis in light of the facts in each case; there is no litmus test defining when a preamble limits the scope of a claim." M.P.E.P. § 2111.02 (citing *Catalina Mktg. Int'l v. Coolsavings.com, Inc.*, 289 F.3d 801, 808, 62 U.S.P.Q.2d (BNA) 1781, 1785 (Fed. Cir. 2002)). "[A] claim preamble has the import that the claim as a whole suggests for it. In other words, when the claim drafter chooses to use both the preamble and the body to define the subject matter of the claimed invention, the invention so defined, and not some other, is the one the patent protects." *Bell Communications Research, Inc. v. Vitalink Communications Corp.*, 55 F.3d 615, 620, 34 U.S.P.Q.2d (BNA) 1816, 1820 (Fed. Cir. 1995) (emphasis in original). "If the claim preamble, when read in the context of the entire claim, recites limitations of the claim, or, if the claim preamble is 'necessary to give life, meaning, and vitality' to the claim, then the claim preamble should be construed as if in the balance of the claim." *Pitney Bowes, Inc. v. Hewlett-Packard Co.*, 182 F.3d 1298, 1305, 51 U.S.P.Q.2d (BNA) 1161, 1165 (Fed. Cir. 1999).

Further, "[a]ny terminology in the preamble that limits the structure of the claimed invention must be treated as a claim limitation." M.P.E.P. § 2111.02. The recitations in the preamble are considered structural limitations by reviewing the application in its entirety "to gain an understanding of what the inventors actually invented and intended to encompass by the claim." *Corning Glass Works v. Sumitomo Elec. U.S.A., Inc.*, 868 F.2d 1251, 1257, 9 U.S.P.Q.2d (BNA) 1962, 1966 (Fed. Cir. 1989).

On the other hand, "[i]f the body of a claim fully and intrinsically sets forth all of the limitations of the claimed invention, and the preamble merely states, for example, the purpose or intended use of the invention, rather than any distinct definition of any of the claimed invention's limitations, then the preamble is not considered a limitation and is of no significance to claim construction." M.P.E.P. § 2111.02 (citing *Pitney Bowes*, 182 F.3d at 1305, 51 U.S.P.Q.2d at 1166). "During examination, statements in the preamble reciting the

-30-

purpose or intended use of the claimed invention must be evaluated to determine whether the recited purpose or intended use results in a structural difference (or, in the case of process claims, manipulative difference) between the claimed invention and the prior art." M.P.E.P. § 2111.02.

Here, the preamble of claim 1, for example, recites in its entirety: "A method for automatic tax reporting by an electronic intermediary." The body of claim 1 further recites multiple instances of "said electronic intermediary." By reciting multiple instances of **said** electronic intermediary in the body of claim 1, the electronic intermediary recited previously in the preamble of the claim is specifically being referenced. The situation for claim 1 here is the same as for claim 6 of the patent at issue in *Bell Communications*. In *Bell Communications*, the court noted that "said packet" in the body of claim 6 referred to the packet first introduced in the preamble and concluded that "said packet" expressly incorporated by reference the preamble recitation of "packet" into the body of the claim. *Bell Communications*, 55 F.3d at 621, 34 U.S.P.Q.2d at 1820. Following the reasoning in *Bell Communications*, the recitation of "said electronic intermediary" in the body, expressly incorporates by reference the preamble recitation of "automatic tax reporting by an electronic intermediary" into the body of claim 1.

Further, in the recitation of "automatic tax reporting by an electronic intermediary," the phrase "automatic tax reporting" is a structural limitation of the "electronic intermediary." In accordance with the reasoning in *Corning Glass Works*, a review of the '052 patent in its entirety makes clear that "automatic tax reporting" is what was invented and intended to be encompassed by at least claim 1. *See, e.g.*, the '052 patent, column 2, line 15, to column 3, line 7; column 3, lines 9-20; column 6, lines 23-29. Thus, "automatic" is a limitation of each of the pending claims.

On the other hand, even if the preamble recitation of "automatic tax reporting by an electronic intermediary" is considered a purpose or an intended use of the invention, the recited purpose or intended use results in a manipulative difference between claim 1 and Beamer. As discussed above, Beamer fails to teach "**automatic** tax reporting." Thus, even if the preamble is considered a purpose or an intended use, the preamble limits the scope of the claim.

Reexam Control No. 90/006,713

**b.      The Ordinary Meaning of "Automatic" is NOT
Limited to "Computer-Implemented"**

As to the second position taken by the Office, the term "automatic" is read by the Office to mean "computer-implemented." The Office's definition of "automatic," however, is too narrow, does not comport with the ordinary meaning of "automatic," and is not what was intended by the invention when viewing the disclosure in its entirety.

The specification of the '052 patent does not recite a specific or special definition of the term "automatic." In such cases, a dictionary definition may be relied upon to determine the ordinary meaning of a claim term, so long as the dictionary definition is not contradictory with the specification. *See, e.g., Vitronics Corp. v. Conceptronic*, 90 F.3d 1576, 1584 n.6, 39 U.S.P.Q.2d (BNA) 1573, 1578 n.6 (Fed. Cir. 1996); *accord Phillips v. AWH Corp.*, 415 F.3d 1303, 75 U.S.P.Q.2d 1321 (Fed. Cir. July 12, 2005, as amended July 14, 2005). Webster's Third New International Dictionary, for example, has often been used by the Federal Circuit in cases when there has been a "battle of the terms." *See, e.g., Omega Engineering, Inc. v. Raytek Corp*, 334 F.3d 1314, 1322, 67 U.S.P.Q.2d (BNA) 1321, 1326 (Fed. Cir. 2003) (using Webster's Third New International Dictionary 1681 (1993) to determine the ordinary meaning of "periphery."); *Desper Products, Inc. v. QSound Labs, Inc.*, 157 F.3d 1325, 1333, 48 U.S.P.Q.2d (BNA) 1088, 1094 (Fed. Cir. 1998) (using Webster's Third New International Dictionary 883 (1986) to determine the ordinary meaning of "following"). The Federal Circuit has also looked to technical dictionaries. *See, e.g., In re Thrift*, 298 F.3d 1357, 1364, 63 U.S.P.Q.2d (BNA) 2002, 2006 (Fed. Cir. 2002) (using the IBM Dictionary of Computing 638 (10th Ed. 1994) to determine the ordinary meaning of "speech user agent").

Webster's Third New International Dictionary (1976), for example, defines "automatic" in a first entry as "1 a : involuntary either wholly or to a major extent so that any activity of the will is largely negligible : of a reflex nature : without volition <the automatic blinking of the eyelids>," and in a second entry as "a machine or apparatus that operates automatically; *esp*: an automatic or autoloading firearm." Similarly, The American Heritage College Dictionary (3rd Ed., 1997) defines "automatic" as: "(1)(a) Acting or operating in a manner essentially independent of external influence or control." Moreover, Webster's II New College Dictionary (1999) defines "automatic" as: "(1)(a) Acting or operating in a manner essentially independent of external influence or control." In addition, Webster's II New Riverside Dictionary, Revised Edition (1996) defines "automatic" as: "(1) Operating or

-32-

able to operate with little or no external control: self-operating or self-regulating."

The IBM Dictionary of Computing (10th Ed. 1994) defines "automatic" as: "pertaining to a process or device that, under specified conditions, functions without intervention by a human operator." Further, the IEEE Standard Dictionary of Electrical and Electronics Terms (3rd Ed. 1984) defines "automatic" as: "(3): (station control and data acquisition) pertaining to a process or device that, under specified conditions, functions without intervention by a human operator." Moreover, the McGraw Hill Dictionary of Scientific and Technical Terms (Fourth Edition 1989) defines "automatic" as: "[ENG] having a self-acting mechanism that performs a required act at a predetermined time or in response to certain conditions."

Furthermore, the Federal Circuit has previously construed the term "automatic" similar to the above dictionary definitions. Using Webster's II New Riverside University Dictionary 140 (1988), the Federal Circuit defined the term "automatic" as "1.a. Acting or operating in a manner essentially independent of external influence or control. b. Self-regulating." *Space Systems/Loral, Inc., v. Lockheed Martin Corp.*, 243 F.3d 558, 2000 WL 1205154, *5 (Fed. Cir. 2000) (unpublished)[2]. In that case, the term "automatically" was recited in the claim body, and the Federal Circuit construed the claim based on the above dictionary definition of "automatic," stating, "we agree with Lockheed that **manual** initiation is antithetical to the concept of being **automatic**." *Id.* at *6 (emphasis added).

Thus, the foregoing cases and various dictionaries define the ordinary meaning of "automatic," such meaning being consistent with the use of "automatic" in the '052 patent   In contrast, the Office's position that "automatic" means "computer-implemented" is not only too narrow, but also inconsistent with the use of "automatic" in the '052 patent, the above dictionary definitions, and the Federal Circuit's construction of this term. Thus, "automatic" must be given its ordinary meaning.

### c.   The Term "Automatic" Limits Each and Every Claim Limitation

With regard to the third position taken by the Office, the term "automatic," as recited

---

2 Non-precedential opinion; cited only for its persuasive value in demonstrating the reasoning of the Federal Circuit in construing the term "automatic." The Court's decision is referenced in a "Table of Decisions Without Reported Opinions" appearing in the Federal Reporter.

Reexam Control No. 90/006,713

in the preamble of claims 1, 15, 19, 20 and 29-36, requires each and every step and/or element to be carried out automatically for at least four reasons.

First, in *MercExchange, LLC v. eBay, Inc.*, 401 F.3d 1323, 1338, 74 U.S.P.Q.2d (BNA) 1225, 1237 (Fed. Cir. 2005), *petition for cert. filed*, 74 U.S.L.W. 3051 (U.S. July 25, 2005) (No. 05-130), the Federal Circuit was required to construe the term "automated" which appeared in the preamble. Prior to the appeal proceeding, the district court construed the preamble phrase "automated method, performed by a computer-based auction system" as not requiring that all the steps following the preamble be performed by an automated process. *Id.* The Federal Circuit affirmed the district court's interpretation that the recitation of "automated" in the preamble did not require each step in the body of the claim to be performed automatically because several limitations in the body of the claim expressly required actions by participants and, thus, could not be "automatically performed via an automated process." *Id.* In addition, the Federal Circuit affirmed that this interpretation was consistent with the specification. *Id.*

For example, claim 1 in the *MercExchange* case contained a limitation in the body of the claim requiring that the computer system "receive bids on the item from participants," which requires that participants enter their bids manually and cannot occur automatically. *Id.* Likewise, one step of claim 12 required that a seller "establish a seller's account." *Id.* The Federal Circuit similarly reasoned that this step requires that a seller manually enter relevant information into the system. *Id.* By construing the claims in such a manner, the Federal Circuit, thus, reasoned that for the term "automated" to be imported from the preamble into the body of the claim, each and every limitation in the body must be performed automatically, and not manually.

In contrast to claims 1 and 12 in *MercExchange*, the instant claims do **not** recite any steps or contain any elements that require manual intervention by the taxpayer, or any other human user or participant. Therefore, following the Federal Circuit's reasoning in *MercExchange*, **each and every** one of the various steps and elements in claims 1, 15, 19, 20 and 29-36 of the '052 patent must be construed as being conducted automatically. Moreover, the specification of the '052 patent supports the interpretation that each step or element in the claims is intended to be carried out automatically (*see, e.g.*, '052 patent, column 2, line 15, to column 3, line 28; column 6, lines 23-29; and column 8, lines 8-15).

-34-

Reexam Control No. 90/006,713

Second, the specification and the concept of claim differentiation dictate that the term "automatic" limits each and every claim limitation. The last paragraph of the '052 Patent, for example, recites:

> *In an alternative embodiment* of the present invention, instead of the electronic intermediary preparing the tax returns in step 14, filing the tax returns in step 15, and either authorizing the payment of the taxes owed in step 17 or authorizing the receipt of the tax refund in step 18, *the taxpayer can choose to do these steps manually*. In this alternative embodiment, the *electronic intermediary performs steps 11-14 and 19*. Column 8, lines 8-15 (emphasis added).

In view of this recitation, the Patent Owner respectfully points out that claims 1, 15 and 19 in the issued patent generally refer to steps 12-15 (as shown in FIG. 2). Claim 20, on the other hand, does not include step 15 (i.e., connecting electronically said electronic intermediary to a taxing authority and filing electronically said electronic tax return with said taxing authority) for the express purpose of allowing the taxpayer to perform such steps. Thus, in view of the specification as a whole and by claim differentiation, claim 20, therefore, covers the embodiment recited in column 8, lines 8-15, where the steps of connecting, filing, determining, and crediting/debiting may not be automatic and may be performed by the taxpayer. This analysis further supports the position that each and every one of the recited steps and elements in claims 1, 15, 19, 20 and 29-36 **must** be performed automatically.

Third, the Final Office Action also asserts that the Patent Owner's specification and claimed invention lack specific details to preclude any sort of manual input. Page 3, lines 7-9. In support, the Examiner cites an excerpt starting at column 5, line 66 of the '052 patent and points out that non-limiting examples of an electronic link used to connect electronically the electronic intermediary and the tax data providers include "a computer-readable medium for transferring and receiving the tax data." Final Office Action, page 4, lines 18-21. The Examiner interprets this recitation by stating that "[t]his is merely a floppy disk or CD containing the tax data, which also raises the question of whether or not a human can intervene at all in the collection of tax data." *Id.* The use of a computer-readable medium to transfer tax data, however, is not contrary to the ordinary meaning of the term "automatic." For example, if the electronic intermediary recited in the claims connects electronically to, and collects electronically tax data from, tax data providers via a computer-readable medium

-35-

(e.g., a floppy disk), such tax data is nevertheless electronically and automatically transferred between the tax data providers and the electronic intermediary without the taxpayer, or any other human intermediary, being required to re-enter such tax data in order to be processed. Thus, the disclosure makes clear that at least each of the recited steps is required to be conducted automatically.

Fourth, in further support of the position that not all steps are required to be performed automatically, the Final Office Action states that "the instant invention is described as being implementing [sic] using existing software, such as TurboTax® . . . which admittedly requires some form of manual input." Final Office Action, page 4, lines 21-23; page 5, lines 6-7. The Final Office Action, however, misstates, and overextends the import of, this recitation in the disclosure. Column 6, lines 32-35 of the '052 patent, states that "step 13 can be implemented using a computer program **similar** to the computer programs currently available in the market place, such as TurboTax . . . ." (emphasis added). This reference is made within the specific context of, and is implicitly limited to, the tax data processing step 13 which includes "performing the appropriate tax computations," including "addition, subtraction,..." etc. Importantly, the recitation that step 13 can be implemented by current technology is subsequently modified by the recitation that "the current technology requires that the tax data and other information relevant to the taxpayer be inputted manually," and that, "[w]ith the present invention, this information is obtained as described above in steps 11 and 12." The '052 patent, column 6, lines 35-40.

Thus, both the claims and the written description make clear that **every step** of the method, **as claimed**, is performed **automatically and electronically**.

### d.    The Term "Automatic" Must be Given Weight

Furthermore, with regard to the third position taken by the Office, the term "automatic" is given no weight by the Office even though it is recited in the preamble. The Office expressly stated this position in the interview with the Examiner on May 3, 2005, and implicitly affirms as much in that the rejections in the Final Office Action fail to address the import of the term (*see, e.g.*, Final Office Action, page 16, line 9). This position is without support, and is contrary to both the rules and guidelines of patent examination as well as relevant case law. According to M.P.E.P. § 2106(II)(C), "when evaluating the scope of a

claim, <u>every</u> limitation in the claim must be considered. Office personnel may not dissect a claim into discrete elements and evaluate <u>in isolation</u> the discrete elements. Instead, the claim must be considered as a whole." (citations omitted) (emphasis in original).

As noted above in the *Lockheed* case, the Federal Circuit gave the recitation of "automatically" weight by finding noninfringement based on the claim construction of "automatically." *Space Systems/Loral, Inc., v. Lockheed Martin Corp.*, 243 F.3d 558, 2000 WL 1205154, *6 (Fed. Cir. 2000) (unpublished) ("[W]e agree with Lockheed that **manual** initiation is antithetical to the concept of being **automatic**."). Furthermore, in the *MercExchange* case discussed above, the Federal Circuit would have given the term "automated" weight, even though it was recited in the preamble, had the claim limitations permitted as much. Following the reasoning of the Federal Circuit, if each limitation in the body of the claim is performed automatically, the recitation of "automated" is imported from the preamble into the body. *See* 401 F.3d at 1338, 74 U.S.P.Q.2d at 1237. Thus, following the Federal Circuit, and contrary to the position taken by the Office, "automatic" in claim 1 must be given weight.

In sum, the Office cannot isolate the term "automatic" and, most certainly, cannot refuse to give the term "automatic" any patentable weight. The Office must give weight to the recitation of "automatic," both as to its ordinary meaning and its capacity to limit the claim scope.

### e.   **Beamer** Requires **Manual** Steps

Based on the foregoing definition of the term "automatic" and the following discussion of <u>Beamer</u>'s tax preparation methodology using MacInTax, <u>Beamer</u> fails to teach "automatic tax reporting by an electronic intermediary," as recited in claims 1, 15, 19, 20 and 29-36. <u>Beamer</u> teaches, for example, that the taxpayer must **manually collect** the data that was electronically obtained from the bank by: (a) **monthly manually updating** the Dollars & Sense financial report to balance the accounts (<u>Beamer</u>, ¶¶ 30-35, 37, 44); and (b) **year end manually "grooming"** the Dollars & Sense financial report by reviewing and editing each transaction one-by-one (<u>Beamer</u>, ¶¶ 36-37). *Cf.* <u>MacInTax Made Easy</u>, page 38. All of this **manual input** must be done by the taxpayer **prior to** the MacInTax software performing any tax computations for preparing a tax return.

Reexam Control No. 90/006,713

Further, <u>Beamer</u> teaches that the taxpayer must **manually enter** the data onto the electronic tax return and into the taxpayer's computer. <u>Beamer</u>, ¶¶ 8, 38; *cf.* <u>MaxInTax Made Easy</u>, pages 18, 97. For example, in order to input data into locations on the MacInTax electronic tax form, <u>Beamer</u> teaches that the taxpayer must **manually select** the data from the Dollars & Sense year-end financial report (which was converted into ASCII text by the MacInTax Converter) and **manually point** to where the data should be entered on the MacInTax electronic tax form. <u>Beamer</u>, ¶¶ 8, 38; *cf.* <u>MacInTax Made Easy</u>, pages 18, 97. All of this **manual input** must be done by the taxpayer **prior to** the MacInTax software performing any tax computations for preparing a tax return. Thus, <u>Beamer</u> fails to teach "automatic tax reporting by an electronic intermediary."

Claims 29-32 additionally recite "wherein said tax data collected electronically is not collected manually, and wherein said tax data collected electronically is not manually entered onto said electronic tax return," and claims 33-36 further recite "collecting automatically and electronically tax data from said tax data provider." These additional recitations, while not affecting the scope of the claims as compared to claims 1, 15, 19 and 20, serve to clarify and/or make more definite at least the "collecting electronically" step recited in the claims. Thus, because <u>Beamer</u> requires manual intervention to carry out at least this step it does not anticipate the claims. The citation to "It's W-2 Time" does not cure the deficiencies in <u>Beamer</u>.

### 3.    <u>Beamer</u> Fails to Teach or Suggest the Recited <u>Taxing Authority</u>

Second, <u>Beamer</u> fails to teach or suggest "connecting electronically said electronic intermediary to a taxing authority" as recited in each of claims 1, 15, 19, 29-31 and 33-35. During reexamination, claims are given the <u>broadest reasonable interpretation consistent with the specification</u> and limitations in the specification are not read into the claims. *In re Yamamoto*, 740 F.2d 1569, 222 U.S.P.Q. 934 (Fed. Cir. 1984) (emphasis added); M.P.E.P. § 2258(I)(G); *see also* M.P.E.P. § 2111. The last 2 lines of claim 1, for example, recite, "connecting electronically said electronic intermediary to a taxing authority; and filing electronically said electronic tax return with said taxing authority." The Final Office Action asserts that the specification of the '052 patent does not provide a special definition of a taxing authority and, as a result, the term "taxing authority" is given its broadest reasonable

-38-

interpretation. Final Office Action, page 6, lines 8-11. The Final Office Action, at page 6, lines 7-8, also states that "the federal, state, local, and foreign taxing authorities are cited as non-limiting examples of tax data providers" (citing the '052 patent, column 4, lines 49-50). Accordingly, the Final Office Action interprets the phrase "taxing authority" to include "[b]oth the authorized professional preparer and the I.R.S." because "each entity receives an electronic version of the tax return." Final Office Action, pages 6, line 22 – page 7, line 2. The Patent Owner once again respectfully disagrees with this interpretation for the following four reasons.

First, the '052 patent does, in fact, provide a specific definition of the term *taxing authority*. Column 6, line 62 – column 7, line 2 of the '052 patent expressly states:

> In step 15, the electronic intermediary electronically files the electronic tax returns prepared in step 14 with the taxing authorities. Referring to FIG. 2, the electronic intermediary 21 electronically connects with the taxing authorities 27 using electronic link 37, and transmits the electronic tax forms to the taxing authorities 27 over the electronic links 37. In practicing the invention, *the taxing authority can be the IRS, or a state, local or foreign taxing authority*. (emphasis added).

Second, the Final Office Action misstates the description of the invention. The modifying phrase, "non-limiting examples," cited in the Final Office Action with reference to column 4, lines 49-50, is not provided in association with the definition of this particular term but, rather, in the context of defining the term "tax data providers," one of which may be a taxing authority. Thus, the Final Office Action's above-mentioned reliance on this open-ended modifying phrase in construing the term is misplaced. In other words, inclusion of a "taxing authority" as a non-limiting example of a "tax data provider" does not necessarily extend the specific definition of "taxing authority" which is provided later in the written disclosure.

Third, the Final Office Action attempts to use the Patent Owner's submitted dictionary definitions of the word "authority" as proof that a professional preparer can be considered a "taxing authority." *See* Final Office Action, pages 6-7. In response, the Patent Owner hereby reasserts its argument that the phrase "taxing authority" is a term of art that one of ordinary skill in the art would reasonably interpret to mean a governmental body that possesses the power to levy and collect taxes. By relying on a dictionary definition for the

**word** "authority," the Final Office Action still fails to appreciate that the **phrase** "taxing authority" is a term of art in taxes and is expressly defined as such in the written disclosure. In support of this interpretation, the Patent Owner reproduces below the arguments and art-specific definitional examples presented in the response filed May 17, 2005, at pages 16-19.

Contrary to the Office's interpretation in the Final Office Action, those of ordinary skill in the art would only reasonably interpret a "taxing authority" to be a governmental agency that possesses the authority to levy and collect taxes. The three tax-specific examples set forth below are derived from official publications of the following taxing officials: the U.S. Internal Revenue Service, the State of New York, and the State of Florida. Each of these taxing officials are believed to be of ordinary skill in the art of taxes.

(1) From the U.S. Internal Revenue Service: "Real Estate Taxes. Deductible real estate taxes are any state, local or foreign taxes or real property based on the assessed value of the real property and charged uniformly against all property under the jurisdiction of the **taxing authority**." IRS Publication 17 (Chapter 24; "Taxes") (emphasis added).

(2) From the New York State Resident Tax Credit Form:

> If you are a full-year or past-year resident of New York State and if any part of your income was taxed by another state, a local government within another state, the District of Columbia or a Canadian province, you may claim a credit against your New York State tax. This credit is allowable only for the part of the tax that applies to income received in the other **taxing authority** while you were a New York State resident. If you paid tax to more than the **taxing authority** during your New York State resident period, use a separate Form IT-112-R for each credit....
>
> Caution!. You must look at your real estate tax bill to determine if any nondeductible itemized charges, such as those just listed, are included in the bill. If your **taxing authority** (or mortgage lender) does not furnish you a copy of your real estate tax bill, ask for it.

New York State Resident Tax Credit Form IT-112-R (emphasis added).

(3) From the State of Florida: "What is a Taxing Authority? A **Taxing Authority** is a unit of government that levies taxes for operational expense. Each **Tax Authority** must hold public hearings on their proposed budget. The most common authorities are: Board of County Commissioners, School Districts, Municipalities, Water Management Districts, and Basin

Boards." http://bocc.co.sumter.fl.us/admin/budget/faq.htm (emphasis added), last visited September 13, 2005.

In addition, the Patent Owner provides the following five interpretations of the phrase "taxing authority" from the Edgar Filings filed with the Securities and Exchange Commission (SEC). In the publicly available Edgar Filings, the phrase "taxing authority" is used consistently as in the above examples. In these further examples, those of ordinary skill in the art of taxes are the tax attorneys that negotiated agreements for Qwest Communications International Inc., MCI, Inc., Toys "R" Us, Inc., Global Toys Acquisition, LLC, Global Toys Acquisition Merger Sub, Inc., PRIMEDIA Companies Inc., PRIMEDIA Inc., The New York Times Company, Verizon Communications Inc., Eli Acquisition, LLC, Dreamworks Animation SKG, Inc., and DW Investment II, Inc. Many other similar examples are available on Edgar.

(1) "'**Taxing Authority'** means, with respect to any Tax, the Governmental Entity that imposes such Tax, and the agency (if any) charged with the collection of such Tax for such Governmental Entity." Agreement and Plan of Merger Dated As of April 5, 2005, between Qwest Communications International Inc. and MCI, Inc. (filed with the SEC on April 6, 2005 and available on Edgar).

(2) "'**Tax Authority'** and '**Taxing Authority'** means any domestic, foreign, federal, national, state, county or municipal or other local government, any subdivision, agency, commission or authority thereof, or any quasi-governmental body exercising any **taxing authority** or any other authority exercising Tax regulatory authority." Agreement and Plan of Merger Among Toys "R" Us, Inc., Global Toys Acquisition, LLC, and Global Toys Acquisition Merger Sub, Inc. dated as of March 14, 2005 (filed with the SEC on March 22, 2005 and available on Edgar).

(3) "(d) '**Taxing Authority'** shall mean the Internal Revenue Service or any other authority (whether domestic or foreign, including, without limitation, any state, local or foreign government or any subdivision or taxing agency thereof (including a United States possession)) responsible for the administration of any Tax." Stock Purchase Agreement, dated as of February 17, 2005 between PRIMEDIA Companies Inc., PRIMEDIA Inc., and The New York Times Company (filed with the SEC as of March 10, 2005 and available on Edgar).

(4) "'**Taxing Authority'** means, with respect to any Tax, the Governmental Entity that imposes such Tax, and the agency (if any) charged with the collection of such Tax for such Governmental Entity." Agreement and Plan of Merger dated as of February 14, 2005 among Verizon Communications Inc., Eli Acquisition, LLC and MCI, Inc. (filed with the SEC on February 17, 2005 and available on Edgar).

(5) "'**Taxing Authority'** means the IRS and any other state, local, foreign or other Governmental Entity responsible for the administration of Taxes." Tax Receivables Agreement dated as of October 27, 2000, by and among Dreamworks Animation SKG, Inc., and DW Investment II, Inc. (filed with the SEC on March 28, 2005 and available on Edgar).

Thus, the specification of the '052 patent as well as the foregoing definitions from art-specific publications make clear that the phrase "taxing authority" is a term of art that one of ordinary skill in the art would reasonably interpret to mean a governmental body that possesses the power to levy and collect taxes.

Fourth, the Final Office Action asserts that "[t]he claimed invention does not preclude the existence of another intermediary, albeit human or electronic, between the recited electronic intermediary and the taxing authority." Final Office Action, page 7, line 21 – page 8, line 11. This assertion is used in the context of arguing that Beamer's disclosure of providing a human tax preparer with tax data for purposes of filing an electronic tax return with the IRS anticipates the steps of "connecting electronically said electronic intermediary to a taxing authority; and filing electronically said electronic tax return with said taxing authority." *See id.* Given the foregoing discussions of the phrase "taxing authority" and the term "automatic," the Patent Owner respectfully submits that Beamer fails to show or teach at least "connecting electronically said electronic intermediary to a taxing authority."

Accordingly, Beamer fails to teach or suggest the step of "connecting electronically said electronic intermediary to a taxing authority; and filing electronically said electronic tax return with said taxing authority," as recited in independent claims 1, 15, 19, 29-31 and 33-35.

Reexam Control No. 90/006,713

### 4.   Beamer Fails to Teach or Suggest "Collecting Electronically Tax Data from said Tax Data Provider"

Third, Beamer fails to teach or suggest "collecting electronically tax data from said tax data provider." The Final Office Action aligns this recitation in each of claims 1, 15, 19, 20 and 29-32 with the downloading of information from a bank to the MacInTax software program via the Dollars & Sense software program, where the "downloaded information is used to assist in completing one's tax return," as taught by Beamer. Final Office Action, page 16, lines 12-13. The recitation of "collecting electronically tax data from said tax data provider" corresponds, for example, to step 12 in Figure 1 of the '052 patent. According to the '052 patent, column 6, lines 23-29:

> Hence, *with the electronic collection of tax data as in step 12*, the invention *eliminates the current requirement* that *a taxpayer manually collect the tax data*, eliminates the current requirement that *a taxpayer manually enter such tax data onto a tax return or into a computer*, and eliminates the need for all, or virtually all, intermediate hard copies of tax data, thereby saving paper, time, and cost. (emphasis added).

This feature of the invention was noted by the Office during the interview of May 3, 2005, as distinguishing the invention over Beamer, and the Patent Owner agrees. If the recitation of "collecting electronically tax data from said tax data provider" were actually taught by Beamer, Beamer would **not** require (1) that **a taxpayer manually collect the tax data** and (2) that **a taxpayer manually enter such tax data onto a tax return or into a computer**. Specifically, Beamer first teaches that the taxpayer must **manually collect** the data that was electronically obtained from the bank by: (a) **monthly manually updating** the Dollars & Sense financial report to balance the accounts (Beamer, ¶¶ 30-35, 37, 44); and (b) **year end manually "grooming"** the Dollars & Sense financial report by reviewing and editing each transaction one-by-one (Beamer, ¶ 36-37). *Cf.* MacInTax Made Easy, page 38. All of this **manual input** must be done by the taxpayer **prior to** the MacInTax software performing any tax computations for preparing a tax return. Hence, Beamer fails to teach that tax data collected electronically is not collected manually.

Further, in direct contrast to the instant invention, Beamer also teaches that the taxpayer must **manually enter** the data onto the electronic tax return and into the taxpayer's computer. To move the data from the text file into the locations on the MacInTax electronic

-43-

tax form, Beamer teaches that the taxpayer must **manually select** the data from the Dollars & Sense year-end financial report (which was converted into ASCII text by the MacInTax Converter) and **manually point** to where the data should be entered on the MacInTax electronic tax form. Beamer, ¶¶ 8, 38; *cf.* MaxInTax Made Easy, page 18, 97. All of this **manual input** must be done by the taxpayer **prior to** the MacInTax software performing any tax computations for preparing a tax return. Hence, Beamer fails to teach that tax data collected electronically is not manually entered onto the electronic tax return and into the taxpayer's computer. Thus, Beamer fails to teach "collecting electronically tax data from said tax data provider."

Independent claims 29-32 emphasize this distinction by reciting "wherein said tax data collected electronically is **not collected manually**, and wherein said tax data collected electronically is **not manually entered** onto said electronic tax return" (emphasis added). As noted above in subsection VII(B), such recitation does not affect the scope of the claims as compared to claims 1, 15, 19 and 20, since every step must be performed automatically, but rather serves to clarify and/or make more definite the "collecting electronically" step recited in the claims. Similarly, independent claims 33-36 emphasize the same distinction by reciting "collecting **automatically** and electronically tax data from said tax data provider" (emphasis added). Again, such recitation does not affect the scope of the claims as compared to claims 1, 15, 19 and 20, since every step must be performed automatically, but rather serves to clarify and/or make more definite the "collecting electronically" step.

### 5.      Beamer Fails to Teach or Suggest the Recited Tax Data

Fourth, Beamer fails to teach or suggest the recited **tax data**. Claim 1, for example, recites "collecting electronically tax data from said tax data provider; processing electronically said tax data collected electronically from said tax data provider to obtain processed tax data; preparing electronically an electronic tax return using said processed tax data."

In applying Beamer, the Final Office Action aligns the recited tax data provider with a bank. Final Office Action, page 16, lines 9-16 (citing Beamer, ¶¶ 23, 26). The taxpayer obtains the bank record on a monthly basis. Beamer, ¶¶ 36, 37. The monthly bank record of Beamer indicates a salary deposit of the taxpayer. Beamer, ¶ 3. The Final Office Action,

thus, equates the downloaded bank record, which indicates the salary entry for the taxpayer, with the recited tax data. Final Office Action, page 16, lines 9-16. The Patent Owner respectfully traverses this rejection and submits that the downloading of bank record with the indicated salary deposit is **not** "collecting electronically tax data from said tax data provider, and processing electronically said tax data collected electronically from said tax data provider to obtain processed tax data."

Contrary to the assertion in the Final Office Action, the bank record and the salary deposit indicated by <u>Beamer</u> are **not** tax data. <u>Beamer</u> teaches that the bank record indicates the salary of the taxpayer. <u>Beamer</u>, ¶ 3. This salary entry in the bank record is the net pay of the taxpayer. One of ordinary skill in the art of taxes would know that this salary entry, by itself, **neither** includes **nor** suggests the taxpayer's gross income, the tax withholdings taken from the taxpayer's gross income by the taxpayer's employer, and other deductions, such as, for example, retirement deductions, transportation deductions, and parking deductions, all of which are used to determine the taxpayer's taxable income. Further, one of ordinary skill in the art of taxes would know that, given that the employer withheld money from the taxpayer's income, the tax return including only the salary deposit indicated in the bank record of <u>Beamer</u> would be **incorrect** because that tax return would not include the taxpayer's taxable income. Only through **manual input**, then, could the taxpayer's taxable income be obtained. Hence, the downloaded bank record disclosed in <u>Beamer</u>, which indicates the salary deposit of the taxpayer, is **not** tax data because, by itself, the salary entry in the bank record cannot be used to prepare the tax return of the taxpayer.

Although <u>Beamer</u> discloses that the bank record of the taxpayer only includes the salary of the taxpayer, the Office asserted during the interview on May 3, 2005, that the bank record of the taxpayer in <u>Beamer</u> would inherently include interest paid by the bank to the taxpayer. The Patent Owner initially notes that <u>Beamer</u> does not teach a bank record indicating interest. Further, one of ordinary skill in the art would know that the position asserted by the Office is incorrect because not all "interest" paid by a bank is taxable. For example, if a bank record of a customer of a bank includes savings in non-taxable accounts or funds, the bank record would include the interest or other return on those non-taxable accounts. However, if those amounts reported on the bank record would be used in preparing a tax return, one of ordinary skill in the art of taxes would know that the tax return would be

-45-

**incorrect** because the tax return would require the tax payer to pay tax on non-taxable income. In addition, if given only the interest identified in the bank record of the taxpayer, one of ordinary skill in the art of taxes would know that only through the **manual input** of the taxable interest can this information be obtained. For this reason, banks provide their customers with IRS Form 1099 which indicates the amount of taxable interest income, and taxpayers are instructed to use the items in the IRS Form 1099 to determine their tax liability and not their bank records.

As an example of such a bank account, the Patent Owner again offers the bank record of the inventor David S. Miller (i.e., the 2004 Annual Statement Summary) and the Form 1099 from the same bank (i.e., the 2004 Tax Reporting Statement), originally offered in Patent Owner's response filed May 17, 2005. The 2004 Annual Statement Summary, which is a periodic (e.g., annual) bank record. On page 7 of this document, is a line item for "CMA NY Municipal Money" with a corresponding amount of $2,433.30. The 2004 Tax Reporting Statement, which is a tax bank statement (i.e., an IRS Form 1099), includes all of the amounts as reported on the 2004 Annual Statement Summary, except for the $2,433.30 because this amount represents the tax exempt NY municipal bond interest income, which does not appear on the IRS Form 1099 at all. Therefore, the 2004 Annual Statement Summary (i.e., periodic bank record) is **not** the same as the 2004 Tax Reporting Statement (i.e., tax bank statement). Using the Beamer system to generate a tax return based on the 2004 Annual Statement Summary would result in an **incorrect tax return** for the taxpayer. Thus, Beamer fails to teach or suggest tax data as recited in each of the independent claims.

For at least the four above-mentioned reasons, reversal of the rejection under 35 USC § 102(b) is respectfully requested.

### D.  The Rejection of Claims 3-5, 7, 11-13 and 16 Under 35 U.S.C. § 103(a)

The Final Office Action rejects claims 3-5, 7 and 16 under 35 U.S.C. § 103(a) as being unpatentable over Beamer and It's W-2 Time, as applied to claims 1, 6 and 15, in view of Official Notice taken by the Examiner. The Final Office Action also rejects claims 11-13 under 35 U.S.C. § 103(a) as being unpatentable over Beamer and It's W-2 Time, as applied to claim 1, in view of Meadows and further in view of TAXLINK. The Patent Owner respectfully traverses the rejections and hereby appeals the same.

Reexam Control No. 90/006,713

35 U.S.C. § 103(a) states:

> A patent may not be obtained though the invention is
> not identically disclosed or described as set forth in section 102
> of this title, if the differences between the subject matter sought
> to be patented and the prior art are such that the subject matter
> as a whole would have been obvious at the time the invention
> was made to a person having ordinary skill in the art to which
> said subject matter pertains. Patentability shall not be negatived
> by the manner in which the invention was made.

The test for obviousness is what the combined teachings of the prior art would have suggested to one of ordinary skill in the art. *See, e.g., In re Keller*, 642 F.2d 413, 425, 208 U.S.P.Q. 871, 881 (C.C.P.A. 1981). In establishing a *prima facie* case of obviousness, it is incumbent upon the Examiner to provide a reason why one of ordinary skill in the art would have been led to modify a prior art reference or to combine reference teachings to arrive at the claimed invention. *See Ex parte Clapp*, 227 U.S.P.Q. 972, 973 (Bd. Pat. App. & Int. 1985). Additionally, all the claim limitations must be taught or suggested by the prior art. *In re Royka*, 490 F.2d 981, 180 U.S.P.Q. 580 (C.C.P.A. 1974) (emphasis added). "All words in a claim must be considered in judging the patentability of that claim against the prior art." *In re Wilson*, 424 F.2d 1382, 1385, 165 U.S.P.Q. 494, 496 (C.C.P.A. 1970). *See* MPEP §2143.03.

Claims 3-5 and 7 depend from independent claim 1 and are allowable for at least the same reasons indicated above in subsection VII(C). Likewise, claim 16 depends from claim 15 and is allowable for at least the same reasons indicated above in subsection VII(C). Accordingly, reversal of the rejection of claims 3-5, 7 and 16 under 35 USC § 103(a) is respectfully requested.

Claims 11-13 depend from independent claim 1 and are allowable for at least the same reasons indicated above in subsection VII(C). Neither Meadows nor TAXLINK cure the deficiencies of Beamer with regard to its failure to teach or disclose "automatic tax reporting by an electronic intermediary," as recited in claim 1. Accordingly, reversal of the rejection of claims 11-13 under 35 USC § 103(a) is respectfully requested.

Further, claim 11 recites: "[t]he method for automatic tax reporting by an electronic intermediary as in claim 1, further comprising the steps of: determining whether taxes are owed or to be refunded; if taxes are owed, paying electronically said taxes owed; and if taxes

-47-

Reexam Control No. 90/006,713

are to be refunded, receiving electronically a tax refund." The Final Office Action acknowledges that such steps are nowhere disclosed or taught by <u>Beamer</u>. *See* Final Office Action, page 40, lines 15-17. Nevertheless, the Examiner takes Official Notice that it is old and well-known in the art of taxes that a taxpayer must either make a payment when taxes are owed or receive a refund when he/she has overpaid. *Id.* The Meadows and TAXLINK references are then cited as teaching that the IRS will electronically credit or debit a taxpayer's checking or savings account upon authorization from the taxpayer. *Id.* at 40-41. The Patent Owner respectfully submits that the Final Office Action files to establish a *prima facie* case of obviousness.

The Patent Owner submits that, even assuming, *arguendo*, that the combination of <u>Beamer</u>, "It's W-2 Time," Meadows and TAXLINK is proper, these other references fail to overcome the deficiencies of <u>Beamer</u>. Specifically, the preamble of claim 11 recites a "method for automatic tax reporting by an electronic intermediary." As discussed above, this recitation limits each and every step in the claim such that it must be performed **automatically** by said electronic intermediary and **without manual intervention**. *See* the '052 patent, column 7, lines 3-60. None of the foregoing references teach the recited steps of "paying electronically said taxes owed" or "receiving electronically a tax refund" being performed automatically by an electronic intermediary. In fact, Meadows, for example, states that "**if you ask**, the IRS will be pleased to do a direct deposit of your refund that zings it directly into your checking or savings account." Meadows, ¶ 3. This implies some amount of manual intervention on the part of the taxpayer in order to authorize a direct deposit by the IRS. Thus, the Final Office Action files to establish a *prima facie* case of obviousness because all the claim limitations are not taught or suggested by the prior art.

Claim 12 further recites "authorizing said financial institution to pay said taxes owed," which is required to be performed **automatically** by the electronic intermediary. This step, thus, requires automated payment **from** said financial institution **to** said taxing authority. None of the foregoing references teach as much. Both of Meadows and TAXLINK, for example, disclose direct deposit payment of a tax refund **from** the IRS **to** a taxpayer's checking or savings account when a tax refund is due, and not vice versa. Nevertheless, as noted above, the taxpayer manually performs the authorization described. Meadows, ¶ 3.

Claim 13 further recites "authorizing said taxing authority to credit said tax refund to

-48-

Reexam Control No. 90/006,713

said financial institution," which is required to be performed **automatically** by the electronic intermediary. As noted above, the taxpayer in Meadows manually performs the authorization. Meadows, ¶ 3.

In view of the foregoing arguments, reversal of the rejection of claims 3-5, 7, 11-13 and 16 under 35 USC § 103(a) is respectfully requested.

## VIII. CONCLUSION

In summary, the Patent Owner respectfully requests reversal of the Examiner's rejections of claims 29-36 under 35 U.S.C. § 112, first and second paragraphs. The Patent Owner further respectfully requests reversal of the Examiner's rejection of claims 1, 2, 6, 8-10, 14, 15, 17-20 and 29-36 under 35 U.S.C. § 102(b). Lastly, the Patent Owner respectfully requests reversal of the Examiner's rejections of claims 3-5, 7 and 16, as well as claims 11-13, under 35 U.S.C. § 103(a).

Respectfully submitted,

Date: November 30, 2005

Michael A. Sartori, Ph.D.
 Registration No. 41,289
VENABLE LLP
P.O. Box 34385
Washington, D.C. 20043-9998
Telephone: (202) 344-4000
Fax: (202) 344-8300

672029

-49-