IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE


SIMPLIFICATION, LLC,     )
                       )
        Plaintiff,   )
                       ) C.A. No. 03-355-JJF
v.                   ) C.A. No. 04-114-JJF
                       ) CONSOLIDATED
BLOCK FINANCIAL CORP.,  )
and H & R BLOCK DIGITAL  )
TAX SOLUTIONS, INC.,    )
                       )
        Defendants.   )


Thursday, June 5, 2008
2:47 p.m.
Courtroom 4B


844 King Street
Wilmington, Delaware


BEFORE:  THE HONORABLE JOSEPH J. FARNAN, JR.
        United States District Court Judge


APPEARANCES:


        MORRIS, NICHOLS, ARSHT & TUNNELL
        BY:  MARY B. GRAHAM, ESQ.
        BY:  JULIE HEANEY, ESQ.

              -and-

        VENABLE, LLP
        BY:  PETER J. CURTIN, ESQ.
        BY:  DAVID FARNUM, ESQ.
        BY:  MICHELLE MARCUS, ESQ.
        BY:  MEAGHAN KENT, ESQ.

              Counsel for the Plaintiff

APPEARANCES CONTINUED:


       YOUNG, CONAWAY, STARGATT & TAYLOR, LLP
       BY:  KAREN L. PASCALE, ESQ.

              -and-

       STANDLEY LAW GROUP, LLP
       BY:  JEFFREY S. STANDLEY, ESQ.
       BY:  MARK R. ENGLE, ESQ.

             Counsel for the Defendants

1           THE COURT:  All right.  Be seated,
2   please.  Good afternoon.
3           MS. HEANEY:  Good afternoon, Your
4   Honor.  Julie Heaney for plaintiff,
5   Simplification.  I would like to reintroduce to
6   you Peter Curtin of the Venable firm, and his
7   colleagues sitting at the table, Michelle Marcus
8   and David Farnum.
9           THE COURT:  Good afternoon.
10          MS. HEANEY:  And Meaghan Kent and
11  Mary Graham from our office is here.
12          THE COURT:  Good afternoon.
13          MS. PASCALE:  Good afternoon, Your
14  Honor.  Karen Pascale from Young, Conaway for
15  the defendants, Block Financial Corporation and
16  H & R Block Digital Tax Solutions.  And I would
17  like to introduce from the Standley Law Firm,
18  Jeff Standley and Mark Engle.
19          THE COURT:  Good afternoon.
20          MR. STANDLEY:  Good afternoon,
21  Your Honor.
22          THE COURT:  Good afternoon to you.
23          All right.  Ready to proceed.
24          MR. CURTIN:  Very well, Your

1    Honor.

2              Good afternoon, Your Honor.  My

3    name is Pete Curtin from Venable and I'm here on

4    behalf of Simplification, the plaintiff in this

5    case.  If it is appropriate, Your Honor, I would

6    like to hand up a copy of the slides I'll be

7    showing here today.  I have one for opposing

8    counsel as well.

9              THE COURT:  Sure.

10             MR. CURTIN:  Your Honor, there are

11   two patents at issue here in this case, and

12   their full names and their numbers are set forth

13   in the briefs in detail, but we call -- the

14   first patent is called the '052 patent.

15             And the '052 patent discloses and

16   claims a method and apparatus and a computer

17   readable medium for something called automatic

18   tax reporting.

19             The second patent is the '787

20   patent, and that's a continuation of the first,

21   it has an identical specification amount and the

22   '787 patent discloses and claims a method and

23   apparatus and a computer readable medium for

24   collecting tax data.

1          Like all patent cases, Your Honor,

2    this case began with an idea and it was an idea

3    that a lone inventor had back in 1996.  That

4    gentleman's name is David Miller and he's a tax

5    attorney himself.  And Mr. Miller was doing his

6    taxes in 1996 using a commercially available tax

7    preparation software when he had an idea.  And

8    the crux of this idea, Your Honor, was the

9    realization that a substantial amount of the tax

10   data you need to determine your tax liability

11   existed electronically.  So in that case, why

12   should he have to enter it all in manually.

13          His concept was why not reach out

14   electronically to the tax data provider, connect

15   electronically with that tax data provider, and

16   retrieve tax data to the extent you could from

17   that tax data provider electronically so that

18   that tax data could be processed and used to

19   help prepare an electronic tax return that then

20   may or may not be filed electronically.

21          Mr. Miller thought about that idea

22   for a while, investigated, felt it had some

23   merit, as far as he could ascertain, no one else

24   was doing it in 1997.

1           Mr. Miller filed the original

2    patent application in this case, and then he

3    later founded Simplification LLC which is his

4    own company, a one-man shop.  And here we are

5    today.

6           Because the initial patent

7    application was filed back in 1997, and that's

8    eleven years ago, but that is a lifetime ago in

9    the context of computers, technology and the

10   speed with which that advances, because back in

11   1997, no one was out there with a product

12   practicing this claimed invention.  Today, there

13   are a number of people who do.

14          Now, there are thirteen terms that

15   are in dispute, Your Honor, across the claims of

16   the two patents.  But in -- I understand that

17   the patents have already briefed these issues

18   extensively and we have limited time before the

19   Court today, so we're going to leave a lot of

20   the minor issues, Simplification is going to

21   leave a lot of the minor issues to the papers,

22   although we're happy to take any questions the

23   Court may have.

24          My presentation is going to focus

1    on four major disputes between the parties, four

2    core issues that if the Court resolves those

3    four issues, it takes care of -- it takes care

4    of most of the claim construction.

5              The first dispute, Your Honor, is

6    the dispute over the meaning of the term

7    automatic tax reporting.  And particularly, the

8    automatic piece of that.

9              That term is contained in the

10   preamble of all the claims of the '052 patent.

11   And Block's proposed construction of automatic

12   essentially would change that term to mean fully

13   automated.  And Simplification's response is no,

14   those terms have different plain meanings,

15   they're different and that is not what was

16   claimed in the patent.

17             The second major dispute, Your

18   Honor, deals with the meaning of the term

19   electronically, which is contained in all the

20   claims of both patents.  Block's proposed

21   construction which essentially defines

22   electronically to mean automatically, and to do

23   that, they rely on excerpts of arguments taken

24   from a hearing in the reexamination before the

1    patent office.  And those arguments are taken

2    out of context, Your Honor, because

3    Simplification's arguments regarding

4    electronically were all made in the context of

5    two claims in one of the patents.  In fact, two

6    limitations in Claims 1 and 10 of the '787

7    patent and Block argues that that definition

8    should be imported across all of the claims in

9    both patents and that's inappropriate.

10          Simplification says no,

11    electronically means electronically, automatic

12    means automatic and you shouldn't have a

13    construction of electronic that renders

14    automatic superfluous.

15          The third core dispute has to do

16    with the construction of the means plus function

17    limitations because a number of the claims in

18    both patents are within this means plus function

19    format.  I'm sure as the Court is aware to

20    conclude a means plus function first you have to

21    identify the function involved and then you have

22    to identify the corresponding structure in the

23    specification that performs that function.

24          Now, Block's argument, Your Honor,

1   is that the Court cannot construe those claim

2   terms because the specification does not

3   disclose enough structure to support those claim

4   limitations.  And of course the upshot of that

5   argument, Your Honor, is the patents would then

6   be invalid or the patent claims would be

7   invalid.  Simplification says no, the

8   specification discloses more than enough

9   structure under the law to support those claim

10  limitations and Block cannot meet its clear and

11  convincing burden of proof to show otherwise.

12          The fourth major dispute, Your

13  Honor, focuses on the definition of electronic

14  tax return which appears in the claims of the

15  '052 patent.  And that really centers on what

16  exactly Block means by including the word

17  completed in its proposed construction.

18          So those are the four major issues

19  my presentation is going to deal with today.

20  And I'm going to address the first two issues,

21  the construction of automatic tax reporting and

22  electronically at the same time because as the

23  Court will see, the arguments and issues

24  overlap.

1          With that, we'll move to the

2    slides.

3          There are four global problems,

4    Your Honor, with Block's proposed claim

5    constructions of automatic tax reporting and

6    electronically.  The first problem, Your Honor,

7    is that their definition of automatic reads the

8    term comprising out of the claims.

9          As the Court is aware, comprising

10   is a standard term of art in the patent world as

11   a transitional term between the preamble and the

12   body of the claim.  All of these claims are

13   written with the term comprising in it, but

14   Block's construction of fully automated would

15   eliminate comprising, it would render it a

16   nullity.  And they never adequately acknowledge

17   and address that problem.

18          The second global problem with

19   Block's proposed construction is that they

20   ignore the difference between fully automated

21   and automatic.  Those claims have different

22   claim meaning both to individuals in ordinary

23   life.  They have different meanings to a person

24   of ordinary skill in the art and as you'll see,

1    they have different meanings to the Federal

2    Circuit.

3              The third problem is the Block

4    misuses the record of oral argument before the

5    Board of Patent Appeals.  For its construction

6    of automatic and electronically, Your Honor,

7    that is Block's case.  It takes that transcript

8    which was a thirty-five-page transcript, roughly

9    forty-five minutes of oral argument where

10   Simplification's counsel is sitting across the

11   table from three administrative patent judges

12   being peppered with questions, comes from three

13   years of examination.

14             As I highlighted in the

15   introduction, they take some of those statements

16   out of context.  And it turns out, Your Honor,

17   that transcript read as a whole in light of the

18   whole record as it must be is a slender read and

19   it cannot bear the weight that Block gives it.

20             The fourth and final global

21   problem of Block's construction is that they

22   radically depart from the plain meaning of the

23   terms.  Automatic is not fully automated.

24   Electronically is not automatic.  And that

1    departure, Your Honor, is unjustified because

2    there is not record support to overcome,

3    sufficient to overcome the heavy presumption in

4    favor of plain meaning.

5                    Next slide, please.

6                    To comprising point, Your Honor,

7    first.  All of the claims of the patents include

8    the word comprising.  And comprising has a clear

9    and well-established legal effect.  It means

10   essentially including but not limited to.  In

11   other words, at least the following limitations

12   must be performed, but there are perhaps more,

13   other limitations are also possible.  And the

14   presence of other steps don't take the process

15   outside the scope of the claim.

16                   The use of comprising in the

17   preamble of these claims after automatic tax

18   return -- or automatic tax reporting, pardon me,

19   expressly allows for additional intervening

20   steps that are not recited and we see the

21   Georgia-Pacific case for that and others in our

22   briefs.

23                   Of course, then, as I said, this

24   allows for additional steps which even if --

1   even though all of the recited steps, and there

2   may be a misunderstanding between Block and

3   Simplification here, Your Honor, because as we

4   have said in our briefs and as Dr. Sartori said

5   to the patent office, if you recited steps in

6   the claims of the '052 patent with automatic in

7   them, it must be performed automatically.  We

8   acknowledge that.

9           But the presence of the word

10  comprising means there can be other steps which

11  may or may not be automatic.  It allows for the

12  presence of some manual data entry.  It allows

13  you to circle back around in the process, get

14  one piece of tax data, your W-2 data, for

15  example, from the IRS and maybe you have to go

16  contact the bank to get a 1099 form for

17  dividends or your mortgage broker to get your

18  1098, you can go back and circle around and pull

19  that information down and that's all within the

20  steps of the process.

21          And also if there is in the course

22  of that some manual data entry, perhaps for

23  example your mortgage broker or your charities

24  aren't tied up to that program, they don't make

1    it available electronically for downloading, you

2    do some manual data entry, the presence of those

3    manual steps along with the electronic and

4    automatically performed steps do not by them --

5    do not take that process outside the scope of

6    the claims.  And that's because of the presence

7    of the word comprising.

8              The Federal Circuit recognizes

9    this issue, Your Honor, in a case, and they

10   discuss this in a case that Simplification

11   actually cited to the Board of Patent Appeals at

12   the hearing that we're talking about.  Here is a

13   quote from that case, this is CollegeNet versus

14   ApplyYourself, Inc.  While Claim 1 does not

15   expressly provide for human intervention, the

16   use of comprising suggests that additional

17   unrecited elements are not excluded.  Such

18   elements could include human actions to

19   expressly initiate the automatic storing or

20   inserting or to interrupt some functions.

21             I'll leave the detailed analysis

22   of that case to our briefs, Your Honor, but it's

23   important to note that the Federal Circuit in

24   CollegeNet rejected a proposed claim

construction for automatically that was put
forward by the defendant.  It's very similar to
Block's proposed fully automated construction in
that it would have precluded any manual
intervention at any point in the process.

And the Federal Circuit said no,
that is not the plain meaning of automatic and
also these are comprising claims.

At the oral hearing,
Simplification's counsel also explained the
effect of comprising to the patent judges.
Judge Moore said, "So you read these claims as
excluding all manual data entries?"

Mr. Sartori responds, "No, it
doesn't for the fact that it is comprising, so
it's open-ended.  So you could perhaps enter
other information automatically."

And I have an SIC there, Your
Honor, because as can happen sometimes in oral
argument because he must have misspoken because
that sentence only makes sense if instead of
automatically it is manually.  You can see that
even more clearly when you consider what he said
next.  Next slide.  When he goes on to further

1    explain.

2                   For example, let's say you gave

3    some donations to Purple Heart last year in

4    2006.  And Purple Heart, you know, isn't set up

5    to do this electronic transmission.  You would

6    need to type up and enter your donations to go

7    on your scheduled itemized deductions.  That

8    would be within the software, within the scope

9    of the claim because it's comprising, but that

10   would not actually meet the elements of the

11   claims.

12                   So Simplification's counsel

13   highlighted here exactly the point that I made

14   to the Court, that manual entry of Purple Heart

15   charitable contribution by itself doesn't meet

16   the scope of the claims, it wouldn't, for

17   example, infringe by itself but the presence of

18   that manual entry doesn't take that tax return,

19   that process outside the scope of the claims.

20                   Next slide, please.

21                   Moving on to the second point,

22   Your Honor, Block's proposed constructions

23   ignore the difference between fully automated

24   and automatic.  First, of course, there is the

core point that the language of the claims

define the invention.  And these claims recite

automatic tax reporting, not fully automated tax

reporting.

Now, it's certainly true as

Mr. Stanley is going to point out to you that

the term fully automated appears in the patent,

it appears in the title, it appears in the

background section.  It's mentioned a few times.

But the claims state automatic and that we

submit that is a conscious choice because fully

automated is not automatic, unless they have

different plain meanings.

That is underscored by how Block

chooses to distinguish the terms and also

underscored by examples from real life.

Automatic teller machines.  Automatic

dishwasher.  An autopilot on airplane.  All of

those are examples of devices and processes

where there is manual intervention both to

initiate it and throughout, it can respond with

prompts, you can interrupt the process.

When you're dealing with your

automatic teller machine, you're entering your

1  password, you're responding to prompts, what do

2  I want, here, there, give me my balance, give me

3  my checking, give me my money.  So you're

4  manually intervening throughout, but at the same

5  time everyone understands that is still an

6  automatic machine, a processing going on there

7  automatic even though it is not fully automated.

8  And the dishwasher analogy, Your

9  Honor, that is contained in the briefs, and I'll

10  shorten that up for you to make a very basic

11  point, that if you have a method claim for a

12  method of automatically cleaning dishes after a

13  dinner party, comprising, and you have to use

14  the automatic dishwasher, you put in the dishes

15  you wash them, et cetera, if you wash the dishes

16  in an automatic dishwasher and you put those

17  dishes in the sink but you have some wine

18  glasses, they're fragile, you don't put them in

19  the automatic dishwasher, you wash those in the

20  sink by hand and put them away.

21  You may have a frying pan that's

22  crusted all over and you need to leave that soak

23  overnight.  The fact that you wash the frying

24  pan and the wine glasses by hand does not mean

1    that you did not clean the other dishes

2    automatically.  And the presence of that manual

3    washing of the wine glasses does not remove your

4    clean up process from the scope of the

5    comprising claim.  That's a core point.

6              The next slide, please.  The

7    Federal Circuit agrees, Your Honor, and they

8    have interpreted automatically to mean, "Once

9    initiated, the function is performed by a man,

10   without the need for manually performing the

11   function."

12             And as you'll see, Your Honor,

13   that parallel, that's almost exactly the

14   proposed construction of automatic

15   Simplification is offering in this case.  And,

16   again, that is the CollegeNet case which was

17   cited to the board.

18             Next slide, please.  The third

19   point, Your Honor, that is the board transcript

20   does not truly support Block's position.

21   Block's arguments for automatic tax reporting

22   and for electronically ignore what I'll call the

23   inherent imprecision of oral argument.  By that

24   I mean, Your Honor not that any word is

1    necessarily imprecise, but it's a process.

2              People when you're speaking to

3    each other, the judge and the counsel, there may

4    be a question and answer, you're trying to

5    understand each other.  When someone is talking,

6    you don't necessarily recite the full preamble

7    in all the context of your statement the way you

8    might do if you're an attorney crafting your

9    brief, it's just a different process and

10   sometimes in the course of oral argument people

11   can get a little lost, get a little confused and

12   it's hard to gauge the tenor of an oral record

13   by the polled record, that's why it's important

14   to read statements taken from an oral argument

15   in context, in the context of the full hearing

16   and to read that full hearing transcript in the

17   context of the record as a whole.

18              And Block's cites in support of

19   their position, Your Honor, are either taken out

20   of context with regarding to electronically or

21   clarified or countered elsewhere in the

22   transcript.

23              The next side, please.  The first

24   point, Your Honor, is that every passage Block

1    cites about electronically refers to Claims 1

2    and 10 of the '787 patent, and in particular it

3    refers to two limitations of those claims,

4    connecting electronically and collecting

5    electronically.

6              In those statements Simplification

7    wasn't purporting to define electronically by

8    itself and that's clear from a reading of the

9    transcript as a whole.  And even in its

10   briefing, Your Honor, Block admits this context.

11             Often in their brief they'll put

12   in the brackets referring to Claims 1 and 10 of

13   the '787 patent and sometimes it's expressed in

14   the statements and yet they ignore that context.

15             I'm going to give you a couple of

16   examples here now and I'm sure Mr. Stanley is

17   going to show you a number of other cites from

18   the transcript in his presentation.

19             Let's look at this one which comes

20   from page 29 of the oral hearing and Block

21   highlights this passage so much, they cited it

22   two or three times in their brief.  Here is part

23   of it, in the '787 we have two independent

24   Claims 1 and 10 which do not recite automatic.

1    We're focusing on Claims 1 and 10.  And there

2    are two reasons that I said previously that the

3    Beamer article does not teach it, those claims.

4    One is they're connecting electronically.  And

5    yes, we are saying electronically means that

6    there's no manual input.  You have to -- we're

7    saying you need to read it in light of the

8    specification.

9              Here is specific reference to the

10   connecting electronically limitation in 1 and 10

11   of the '787 patent.  Next slide, please.

12             Then going on on that page, Judge

13   Lee says, Yeah, but why does that exclude any

14   kind of manual input?  I mean that's the crux of

15   the issue.  Yes, for Claims 1 and 10 of the '787

16   patent.  Because, Your Honor, that was the

17   issue, these are the only two claims in the

18   patent that did not -- in the two patents that

19   did not have the word automatic in them.  The

20   only two independent claims.

21             And the issue that Simplification

22   was going back and forth with the patent judges

23   on were okay, we understand what you're saying

24   about automatic, but in the absence of

1   automatic, how do these claims survive the prior

2   art? And Simplification's response was that the

3   connecting electronically and the collecting

4   electronically steps must be performed

5   automatically. It says you just say it does,

6   but I don't get it. In the context of the step

7   which refers to that recitation of collecting

8   electronically refers to step 12 of the patent.

9   Again, Claims 1 and 10 of the '787 patent,

10  collecting electronically.

11                    Next slide.

12                    Now, Block argues that there is

13  no -- in its briefs that there is no reason to

14  limit the scope of these statements to Claims 1

15  and 10 of the '787 patent, but as I think I've

16  already given you heads up, Your Honor, there

17  are plenty of good reasons to do so. These are

18  the only independent claims that do not include

19  the term automatic, therefore, the focus of the

20  discussion was how Claims 1 and 10 survived the

21  prior art in the absence of automatic.

22                    They do not represent, therefore,

23  a clear and unambiguous disavowal of the plain

24  meaning of the term electronically itself which

1    is what is required in the law to move beyond

2    the plain meaning based on the prosecution

3    history.  And it certainly doesn't represent a

4    clear and unambiguous disavowal of the plain

5    meaning of electronically throughout all the

6    claims of both patents.

7                    Next slide, please.

8                    Moving on to the automatic issue,

9    Your Honor, for automatic tax reporting.

10   Block's -- the passages Block cites about

11   automatic are clarified or countered by other

12   passages in that same hearing record showing

13   that automatic is given its plain meaning.

14                   Here is a quote from page 14 of

15   that transcript.  And automatic is not defined

16   anywhere in the specification, so it must be

17   given its ordinary meaning per the Phillips

18   case.

19                   Next slide, please.

20                   It's also useful to understand,

21   Your Honor, and you can see this from the

22   transcript early on from that hearing,

23   Simplification submitted about eight dictionary

24   definitions of automatic and those dictionary

1     definitions are all basically consistent and we

2     presented a number of them in our briefs in

3     support of our proposed claim construction, but

4     the very fact that Simplification submitted

5     eight dictionary definitions shows that they

6     weren't trying to present any one special or

7     unusual definition of automatic, they were just

8     trying to show what the plain meaning of the

9     term is.

10               And Simplification also cited

11    CollegeNet's definition of automatically as

12    well.  And we have discussed already, one

13    initiated the function is performed by a machine

14    without the need for the function to be

15    performed manually.  You see, that definition

16    and the dictionary definitions and

17    Simplification's proposed construction ties the

18    automatically, draws the line at the beginning

19    of each function.  Once you initiate the

20    function, that step must be performed

21    automatically.

22               Not some kind of -- they don't

23    draw the line anywhere else.

24               Next slide, please.

1          Therefore, Your Honor, there is --

2     the transcript of the record of the board

3     hearing read as a whole shows there is no clear

4     and unambiguous disavowal of the claim scope or

5     of the plain meanings of the claim except as

6     noted, there is no clear and unambiguous

7     disavowal of automatic, there is no clear and

8     unambiguous disavowal of the term electronically

9     by itself and certainly not of the term

10    comprising.

11          And Block, Your Honor, in their

12    briefs, they acknowledge that there are

13    inconsistencies in this transcript as they must.

14    And at footnote six of their opening brief,

15    Block says yes, there are inconsistencies, but

16    it argues that the statements it cites about

17    automatically and electronically nullify the

18    statements about the comprising and the Purple

19    Heart example.

20          Well, Your Honor, that's just not

21    so.  First of all, we submit you can minimize

22    the inconsistency by interpreting those passages

23    as Simplification urges by limiting the

24    arguments about electronically to Claims 1 and

10 of the '787 patent, two of those claim
limitations, and by understanding that by
talking about automatic, Simplification meant
the plain meaning of automatic, not fully
automated.

But even if Block's interpretation
of those passages is correct, Your Honor, and
one set does nullify the other set, then what
you have got is a wash, you have an ambiguous
transcript that is not helpful for claim
interpretation because the law is clear that an
ambiguous prosecution history cannot limit the
claims, it doesn't provide a basis to depart
from the plain meaning of claim language.

And for that we rely on the
Athletic Alternatives case and the Inverness
Medical cited in our briefs.

In sum, Your Honor, this board
hearing transcript is a prime example of the
reason behind the caution the Federal Circuit
issued about the use of the prosecution history
in the Phillips case.  And what the Federal
Circuit said sitting on en banc, Because the
prosecution history represents an ongoing

1    negotiation between the PTO and the applicant,

2    rather than the final product of the

3    negotiation, which is the specification of the

4    patent itself, it often lacks the clarity of the

5    specification and thus is less useful for claim

6    construction purposes.

7              And here, Your Honor, we're

8    dealing with a situation where at best, the best

9    case scenario for Block is a situation where

10   this hearing transcript in the reexamination

11   history is ambiguous, it's a nullity, it's a

12   wash.  Certainly interpreting those passages as

13   Block would have you do, certainly the

14   transcript lacks clarity and therefore provides

15   no basis to depart from the plain meaning of the

16   claims.

17             The fourth key point, Your Honor,

18   is that Block's proposed construction radically

19   departs from the plain meaning of the claim

20   terms.  Automatic is not fully automated.

21   Electronically is not automatic.  And Block's

22   construction of electronically would render

23   automatic superfluous.  And we'll go on to show

24   you why here.

1             Next slide.  It's also important
2    to note that Block's proposed constructions
3    ignore the specification of the patents.
4    Block's constructions are inconsistent with the
5    disclosure in the specification which as we'll
6    show you distinguishes between automatic and
7    fully automated in terms of the examples they
8    disclose in the specification, and the treatment
9    of electronically throughout the patent.  And as
10   you know, the law is clear that the
11   specification is often regarded as the best
12   guide for claim construction.
13             Next slide.  The specification
14   never expressly defines automatic, therefore
15   under the Phillips' case there is a heavy
16   presumption that you employ the plain meaning of
17   the term.  However, the specification makes it
18   clear that automatic tax reporting, that
19   preamble term, need not be fully automated.
20   They're not the same things.
21             First of all, Your Honor, the
22   patents acknowledge that not all tax data will
23   be available electronically.  We have got cites
24   for that, for those two passages.  And what it

1     says there, Your Honor, is it talks about -- it

2     mentions, it says substantially all tax data is

3     available electronically.  And it says later on

4     that it's possible to eliminate virtually all

5     copies of intermediate paper copies.  There is

6     nothing there that says all the tax data will or

7     must be available electronically.

8           Secondly, Your Honor, and I think

9     even more significantly, the specification

10     expressly notes that the processing and

11     preparing steps can be implemented using current

12     technology, the technology that was available in

13     1997.  And, in fact, they cull out a specific

14     example of that commercially available tax

15     software, and the specification it calls out

16     TurboTax as an example of the commercially

17     available tax software that could implement the

18     processing and preparing steps of the invention.

19           And in Block's brief, opening

20     brief, they concede that quote a standard tax

21     program like TurboTax can perform the processing

22     electronically step.

23           Well, let's take a look at that,

24     Your Honor.  One thing that is absolutely clear,

1    and this is shown, it's both a matter of public

2    record and a matter of fact, but it's shown from

3    the screen shots from the 1997 version of

4    TurboTax that we attached to your belief, that

5    in 1997 TurboTax was an automatic program, it

6    acted automatically, but it was not fully

7    automated.  TurboTax walked users through the

8    preparation process giving them the option of

9    using the easy step process or forms method.

10   I'll show you now if I can figure out how to

11   switch over to the Elmo, I'll try to make this a

12   little more legible for the Court.

13              This is a copy of one of the

14   screen shots that we attached to our brief and

15   I'll try to zoom in so we can read it.  This is

16   a screen shot from early in the program where

17   they are describing to the taxpayer how it's

18   going to work.  And you see up there, Your

19   Honor, it says easy step interview approach.

20   Easy step interview guides you through your tax

21   return.  It asks you questions about your tax

22   situation, enters your data on the proper tax

23   forms, and offers relevant tax advice and

24   suggestions.

1        But here is an important point,

2   Your Honor.  It then says your calculations are

3   automatically updated as you add or change data.

4   So you see behind the scenes the computer

5   program is automatically processing that data

6   and automatically working in response to your

7   prompt and responds to your information, but

8   there is intervention to initiate each

9   processing step.

10        Under the forms method approach,

11   Your Honor, again it says basically you're on

12   your own, but it still has the taxpayer move

13   from one form to -- one tax form to the other,

14   entering information in the fields that apply to

15   their tax situation.

16        Again, both of those steps require

17   considerable manual intervention.  And I'll try

18   to get better with the Elmo for the next one.

19        So therefore -- next slide, please

20   -- Block's fully automated construction would

21   exclude an example of the preferred embodiment

22   set forth in the specification allowing for the

23   use of 1997 technology similar to TurboTax for

24   processing the said tax data and for preparing

1    electronically the tax return, the processing

2    and preparing steps.

3              And as you know, Your Honor, the

4    law is clear that a claim construction that

5    excludes the preferred embodiment quote is

6    rarely if ever correct and requires highly

7    persuasive evidentiary support.  And they cite

8    the Vitronics case for that one.

9              Next slide, please.  Moving on to

10   electronically.  There is no special meaning

11   given to the term electronically in the patent

12   specification.  Therefore, of course, there is a

13   presumption towards plain meaning.  And, in

14   fact, the specification taken as a whole makes

15   it clear that electronic and electronically

16   refer to states, states of being.

17             And we spent two pages laying out

18   those quotes in our opening brief and I'm not

19   going to try to do it here for Your Honor, but

20   we believe that is very clear from the

21   specification.  And, in fact, Block's proposed

22   construction of electronic link and

23   automatically is consistent with not only with

24   the specification, but with the parties' agreed

1  upon claim constructions of the terms electronic

2  link and electronic intermediary which the

3  parties agree and the construction is made clear

4  are simply electronic devices.

5          Next slide.  Simplification's

6  constructions of automatic tax reporting and

7  electronically by contrast comport with the

8  plain meaning of the patents in the prosecution

9  history.  They acknowledge the presence of the

10  word comprising in the claims, recognize the

11  choice of the claim language automatic, and

12  they're consistent with the hearing transcript

13  taken as a whole.

14          Next slide.  Said specification

15  does not define automatic.  The plain meaning of

16  automatic we submit is via a process in which

17  one or more functions once initiated are

18  completed without manual intervention.  And the

19  Court will recognize that from the CollegeNet

20  case.

21          Next slide.  We also note that the

22  plain meaning construction of automatic matches

23  dictionary definitions which we submitted in our

24  brief and we note that Block so far has

1    submitted none to the contrary, it mirrors the

2    definition in the CollegeNet case which was

3    presented to the patent office. And it gives

4    the term comprising its full effect because it

5    draws the automatic line at each step of the

6    process. Each of the recited steps. Pardon me,

7    let me clarify that. At each of the recited

8    steps once initiated must proceed automatically.

9    It still allows for the presence of other steps

10    which may or may not be automatic.

11    Next slide. Therefore, Your

12    Honor, Simplification's proposed construction of

13    automatic tax reporting is determining and/or

14    reporting tax liability, or satisfying tax

15    reporting obligations via a process in which one

16    or more functions, once initiated, are completed

17    without manual intervention.

18    Next slide. Back to

19    electronically. We submit the plain meaning of

20    electronically is by way of devices, circuits or

21    systems utilizing electronic devices.

22    Next slide. This plain meaning

23    construction of electronically is consistent

24    with the specification in the way it treats

1    electronically.  It matches the dictionary

2    definition, again, that we have submitted and it

3    gives all of the claim language its full effect.

4    It does not render automatic in the '052 patent

5    claims superfluous and it's consistent with

6    those agreed upon claim constructions for other

7    terms that I pointed out to you.

8              At this point, Your Honor, we'll

9    move on to the third core dispute between the

10   parties, the construction of the means plus

11   function limitation.

12             Next slide, please.  Next slide.

13   To construe a means plus function limitation,

14   Your Honor, the Court must first define the

15   function of that claim limitation, and then

16   identify the corresponding structure in the

17   specification to perform that function.

18             The disputes between the parties

19   over what exact function applies to these

20   different limitations really hinges, Your Honor,

21   on the construction of the term electronically,

22   because all of these means plus function

23   limitations have electronically in them.  Means

24   for connecting electronically, connecting

1   electronically, preparing electronically, filing

2   electronically, so you can see the functional

3   issues hinge on the construction of

4   electronically.  So we're not going to go back

5   over that, we'll rely on our briefs and to my

6   prior argument.

7                   However, the structural issues,

8   that's what we need to focus on, because Block

9   argues that the Court cannot construe the means

10  plus function limitation because there is not

11  sufficient structure disclosed in the

12  specification.  And the upshot of that is the

13  patent claims would be invalid.

14                  However, these claims are presumed

15  valid under 35 USC, and, therefore, Block has

16  the burden of proof on this issue by clear and

17  convincing evidence if it is arguing to the

18  Court that there is insufficient structure in

19  the patents to support these claim limitations,

20  they must show it by clear and convincing

21  evidence.  And that's the Budde versus

22  Harley-Davidson case, Federal Circuit 2001.

23                  Next slide, please.

24                  Specifically, the means for

1    collecting electronically, I'll skim over this

2    corresponding structure that's identified in our

3    brief.  The corresponding structure identified

4    in the specification includes a data processing

5    system with a general purpose computer program

6    with code segments to operate that computer

7    causing it to connect electronically to

8    establish a physical or logical coupling via an

9    electronic link.

10          And the specification also lists

11    examples of electronic links, including a modem,

12    a computer readable medium and an electronic

13    data network.

14          This structure, Your Honor, is

15    sufficient to support the claimed limitation,

16    means for connecting electronically.

17          Next slide.  It's also important

18    to recognize, Your Honor, that structures and

19    means for connecting two devices electronically

20    were well-known in 1997.  That's something you

21    could almost take judicial notice of.  The

22    electronic data networks like the internet,

23    there were modems, there were automatic teller

24    machines that were networked.  There is really

1    no dispute, people of ordinary skill in the art

2    understood how to connect devices electronically

3    eleven years ago.

4            And the law is also clear, Your

5    Honor, this is an important point, because a

6    detailed description of structure is unnecessary

7    when the structure to perform the claimed

8    function is well-known in the prior art, or

9    well-known in the art.  And that's the S3 versus

10   nVidia case.  And I'm going to read the quote

11   actually from that case, Your Honor.  The law is

12   clear, the patent document need not include

13   subject matter that is known in the field of the

14   invention and is in the prior art.  The patents

15   are written for persons experienced in the field

16   of the invention, told otherwise would require

17   every patent document to include a technical

18   treatis beyond the skilled reader.  And that's

19   not the law, Your Honor.

20           Next slide, please.  However, to

21   address a point that Block first raised in its

22   opposition brief, Your Honor, Block raises in

23   its opposition brief the idea that the means for

24   connecting electronically and collecting

1    electronically do not satisfy the requirements

2    under the Aristocrat Technologies and the Harris

3    case because it's a computer implemented

4    invention using software and they don't set

5    forth an algorithm.

6              Well, Your Honor, to assess that

7    argument it's critical to understand what an

8    algorithm is.  It's not source code.  You don't

9    have to write out your whole computer program

10   and put it in a patent.  Instead, under the law

11   an algorithm is simply a step wise description

12   of the process you would use to perform that

13   function.  And it doesn't have to be every

14   single little step, but it has to be a

15   sufficient description of a step wise process to

16   show a person of ordinary skill in the art how

17   you intend to perform -- it gives structure for

18   how you're supposed to perform the claimed

19   function.  That's why, for example, block

20   diagrams with arrows and circles and boxes can

21   be sufficient structure to support a means plus

22   function claim.

23              The means for connecting

24   electronically is supported by sufficient

1     structure, and because it discloses steps for

2     connecting electronically.  And I will point

3     Your Honor to those steps in the patent.  It

4     begins in column four of the patent and goes

5     down to column five lines 65 and it's a

6     discussion of steps 11 and 12.

7             Step 12, let's get this over to

8     the Elmo here.  And this is towards the bottom

9     of column five, Your Honor, discussing step 12,

10    which I believe the parties agree includes both

11    the connecting electronically and collecting

12    electronically parts of the process.

13            In step 12, the electronic

14    intermediary electronically collects tax data

15    from the tax data providers using electronic

16    links.  And it goes on to describe how that

17    happens.

18            At the bottom of the paragraph it

19    says Figure 2 is illustrative and the electronic

20    intermediary 21 can connect electronically with

21    and collect tax data electronically from, see

22    both step connecting and collecting, from other

23    tax data providers as discussed above in step

24    11.

1          So let's see what they say about

2   that in step 11.  It refers back, and by doing

3   this, Your Honor, it specifically refers to and

4   identifies the process of step 11 as being a

5   piece of the algorithm you use to accomplish

6   step 12, connecting and collecting

7   electronically.

8          And, Your Honor, starting -- let

9   me go a little higher up.  In step 11 this is

10  from column four of the patent, in step 11 the

11  taxpayer 20 provides the electronic intermediary

12  21 with information on tax data providers.

13         Going down the column a bit.  The

14  information provided by the taxpayer to the

15  electronic intermediary may include

16  identification, that's personal identifying

17  information such as a Social Security number.

18         Also alternatively, the taxpayer

19  could specifically identify the tax data

20  providers and could include information on how

21  to contact tax data providers electronically.

22         Additionally, the taxpayer can

23  provide the electronic intermediary with

24  authorization to contact and receive information

1     from the tax data providers.  That's the link to

2     step 12 there, connecting and collecting.

3              In sum, Your Honor, let's look and

4     see what's been disclosed here.  The taxpayer

5     provides identifying information to the

6     electronic intermediary, and that can be an

7     identifying information about themselves,

8     identification of the tax data providers,

9     account numbers, et cetera.

10             The electronic intermediary takes

11    that information, reaches out and contacts the

12    tax data provider and connects with the tax data

13    provider.  And those, Your Honor, are steps, the

14    steps disclosed in the patent, the algorithm for

15    performing the connecting electronically step,

16    and that provides under the law and under the

17    standards of Aristocrat and Harris, the

18    algorithm that's required, the structure that's

19    required to support the means plus function

20    limitation.

21             And that's particularly true

22    because you have to consider that in the context

23    of all the physical structures disclosed and the

24    fact that this was well-known in the art how to

1    do these things.

2            Means for collecting

3    electronically.  Again, Your Honor, we have a

4    similar structure here, data processing system,

5    general purpose computer, program of code

6    segments, causing it to gather tax data by an

7    electronic link.  We're back up at step 12, and

8    the specification lists examples of electronic

9    links including a modem, a computer readable

10   medium and an electronic data network.

11            Next slide.  And that, Your Honor,

12   is sufficient structure to support the means for

13   collecting electronically limitation of the

14   patents.  Particularly when you consider that

15   structures and means for collecting data

16   electronically were well-known in 1997, and an

17   example that resonates in the legal community,

18   Your Honor, is Westlaw and Lexis, these are data

19   services that were available back in 1997, and

20   you reach out from your computer, your

21   electronic intermediary to a main server, you

22   look for data, you connect with them, you look

23   for data, you grab data and download cases and

24   retrieve them back.  This gives a legal point

1    that a detail description of structure is not

2    necessary when the structure to perform that

3    function is well-known in the art.

4             Next slide.  Similarly, Your

5    Honor, as noted before and given a very similar

6    to what I have shown you already on the Elmo

7    with columns four and five of the patent, the

8    specification discloses steps for collecting

9    electronically.  And that provides in any

10    algorithm that Block requires be required under

11    Aristocrat and Harris.

12             In this case, for this step it's

13    the taxpayer provides identifying information as

14    I have discussed, the electronic intermediary

15    contacts and connects with the tax data

16    provider, the electronic intermediary collects

17    tax data from the tax data provider and pulls it

18    back.  That's the step wise process, a step wise

19    description of a process used to perform the

20    claimed function.  And that tells a person of

21    skill in the art what they're supposed to do.

22    That provides the structure required to support

23    this claim limitation.

24             Next slide, please.  Moving on to

1    means for processing electronically.  Again, we

2    have got the corresponding structure identified

3    there, data processing system with a computer

4    program with code segments causing it to perform

5    such systematic operations to do the processing.

6              Importantly here, Your Honor, the

7    patent specifically discloses that the

8    processing step could be performed by 1997 tax

9    preparation software similar to TurboTax.  We

10   have got a cite for that.

11             So the specification has culled

12   out not only that commercially available

13   products can do this processing, but it's

14   identified one, TurboTax.

15             Next slide.  This is significant,

16   Your Honor, because a specific reference to a

17   commercially available product as an example of

18   corresponding structure is sufficient to

19   overcome a claim of indefiniteness.  And that's

20   black letter law.  And we cite Budde versus

21   Harley-Davidson for that, which in that case

22   Your Honor, one of the means plus function

23   limitations involved was a sensing means.  It

24   was a case involving fuel injectors for

1    motorcycle engines.  And it was a sensing means.

2              And the patent specification

3    referred to as commercially available vacuum

4    sensor.  They said that's fine, because that

5    tells a person of ordinary skill in the art what

6    you use to perform that function.

7              Here this patent is identified

8    commercially available tax preparation software

9    similar to TurboTax, so one of skill in the art

10   knows what to look for.

11             And also the Radio Systems case,

12   Your Honor, in which the specification noted

13   that circuitry for starting and stopping signals

14   was commercially available.  And that was

15   sufficient disclosure to support a means plus

16   function limitation for that.

17             Moving on to preparing

18   electronically, Your Honor, means for preparing

19   electronically, the argument there is

20   essentially the same.  You have a data

21   processing system with a computer and code

22   segments to operate it which prepares an

23   electronic tax return.  But again, the patent

24   discloses the preparing step could be performed

1    by 1997 tax preparation software similar to

2    TurboTax. And again, we point to the Budde case

3    and the Radio Systems case. That specific

4    reference to commercially available products

5    defeats Block's argument that there is

6    insufficient structure to support that step.

7            The last means plus function

8    limitation, same slide, is means for filing

9    electronically. There, Your Honor, we have

10   corresponding structure of course being the

11   general purpose computer program with code

12   segments to operate it causing it to submit an

13   electronic tax return to a taxing authority

14   through an electronic link.

15           We have talked about examples of

16   the electronic link. And here the patent also

17   discloses, Your Honor, that electronic filing

18   with the IRS was available in 1997. And also

19   I'll point out it also identifies commercially

20   available tax preparation software such as

21   TurboTax which could, in fact, perform the type

22   of E-filing.

23           The next slide. Your Honor, the

24   specific reference, and we'll go back to the

1    Budde case and Radio Systems case and say look,

2    the specific reference to the fact the IRS

3    E-filing tax system was available on the market,

4    because it wasn't commercially available because

5    the IRS wasn't charging people, people weren't

6    buying it, but they were using it and it was out

7    there.  And the patent points to it as an

8    example of how E-filing was done.  And that is

9    sufficient structure to defeat a claim of

10   indefiniteness because it tells a person of

11   ordinary art what structure gets the job done.

12             Next slide please.  The next and

13   final major contention between the parties, Your

14   Honor, is the electronic tax return.  Next

15   slide.

16             Simplification's proposed

17   construction of electronic tax return, Your

18   Honor, is a statement of tax liability or tax

19   related information in a form prescribed by a

20   taxing authority in an electronic format.

21             Block's proposed construction is a

22   completed computerized tax return ready for

23   submission to a governmental taxing agency.

24             There are a couple of issues with

1    that, Your Honor.  First of all, it is not clear

2    to us exactly what Blocks means by a computer,

3    secondly when they say completed, that raises a

4    lot of questions, Your Honor.  What do they mean

5    by completed?  Do they mean it has to be signed?

6    Do they mean it needs an electronic signature?

7    Do they need mean there can be no manual

8    intervention at the point of filing because that

9    is certainly what their proposed constructions

10   of preparing and filing electronically suggest.

11   And those are dealt with in the briefs.  But if

12   that's the issue, if that's what Block means by

13   completed, then Block is wrong.

14            Next slide.  An electronic tax

15   return because the specification expressly notes

16   that you could prepare an electronic tax return

17   using circa 1997 tax preparation software.  And

18   back in 1997, Your Honor, and you can see this

19   in the screen shots that we attached to our

20   brief, commercially available tax preparation

21   software like TurboTax had the capacity to

22   electronically file with the IRS.  But when

23   people were E-filing federal tax returns back

24   then, the IRS didn't accept an electronic

1    signature. The taxpayer had to after you hit

2    the button to send your tax return in, Your

3    Honor, taxpayers had to print out an IRS form,

4    8453-OL, you to had fill out that form putting

5    in a control number that you got back from the

6    Internal Revenue Service, you had to sign that

7    form and submit it to the IRS and the IRS did

8    not consider that tax form complete until they

9    received the signed form.

10             So in sum, Simplification says the

11   correct construction of the claim term

12   electronic tax return cannot require preparation

13   or completion beyond what could be done in 1997.

14             Back to the beginning, please. In

15   conclusion, Your Honor, Block's proposed claim

16   constructions must fail for a number of reasons

17   that I have pointed out to you. Particularly,

18   Your Honor, they must fail because the

19   transcript of the hearing before the Board of

20   Patent Appeals simply does not show what Block

21   says it shows.

22             Those passages do not mean what

23   Block says they mean. As I said, they're either

24   taken out of context with regard to

1  electronically or they're countered by others

2  which show that Simplification was just arguing

3  for the plain meaning of automatic, not for

4  fully automated.

5  Secondly, Your Honor, the record

6  as a whole supports Simplification's proposed

7  constructions.  By that I mean the hearing

8  transcript read as a whole, the hearing

9  transcript read in light of the re-examination

10  history and the file history and the

11  specification and the plain language of the

12  patent.

13  Third, as regards to a means plus

14  function limitation, there is sufficient

15  structure disclosed in the specification to

16  support those limitations.  There are

17  algorithms.  There are commercially available

18  products disclosed.  And Block cannot meet its

19  clear and convincing burden of proof to show

20  otherwise.

21  And finally, the electronic tax

22  return, that construction cannot require more

23  than what was possible to do in 1997.

24  Thank you very much for your time,

1    Your Honor.  At this point I'll reserve my

2    remaining time for any rebuttal.

3              THE COURT:  Thank you.  We'll have

4    a short recess before we have you present.

5              (A brief recess was taken.)

6              THE COURT:  All right.  Be seated.

7    Ready to proceed?

8              MR. STANDLEY:  Your Honor, my name

9    is Jeff Standley.  I'm here on behalf of the

10   defendants today.  Along with me, Mark Engle and

11   Karen Pascale.  It's our pleasure to be here.

12             Your Honor, we have a slide

13   presentation we would like to present and if it

14   meets with your approval, I would like to give a

15   copy to the Court and to opposing counsel.

16             THE COURT:  Yes.  Thank you.

17             MR. STANDLEY:  It's only thick,

18   Your Honor, because we have -- we put the

19   exhibits in the back.  The presentation I assure

20   you is not that long.

21             THE COURT:  All right.

22             MR. STANDLEY:  All right.  Your

23   Honor, we'll begin with our first slide.  Your

24   Honor, we thought that it would benefit the

1   Court to understand a little bit about the

2   evolution of tax preparation and how it has come

3   along in past years.

4              Originally tax returns were

5   completed by hand.  We're all familiar with

6   this, sitting around the kitchen table filling

7   these things out.

8              Then the process progressed

9   somewhat.  And you had tax preparation companies

10  like H & R Block that assisted people with their

11  tax returns using a computer.

12             The next one is, the next

13  progression was tax returns prepared on your

14  home computer.  The data was still manually

15  entered with your own fingertips through the

16  keyboard and the computer would perform the

17  calculations and generate a completed return

18  ready for submission to the IRS.

19             The next step in the evolution was

20  tax returns were prepared on a computer at home,

21  data was manually entered, the computer

22  performed the calculations and generated a

23  completed return.  Instead of mailing, the tax

24  return was then capable of being transmitted

online to the IRS through something known as
electronic filing.

More recently, we have been able
to import data from banks, companies such as
that into personal financial software which
could be imported into the tax return software
to generate a return.

And this gets into the so-called
Beamer references, which the patent office
relied upon in the reexamination to reject the
claims of the Simplification patents.

I will say that the Beamer
references did involve some manual pointing and
clicking, so there was some manual work that had
to be done with those.

The patent itself, Your Honor,
refers to increasing levels of automation in tax
preparation. At column one it refers to an
increasing amount of data necessary to compute
income tax liability and that data was
increasingly becoming available electronically.

In column one, lines 39 to 49, it
refers to how tax return preparation had become
increasingly automated. Mentioned the TurboTax

1    program which we've heard about today.

2                    Also in column one at lines 50 to

3    63, there are a few legal interpretational

4    issues with regard to determining tax liability

5    for most taxpayers.  In other words, I think

6    what this is driving at is many taxpayers in the

7    country do not have complex tax returns.

8                    Finally, taxing authorities such

9    as the IRS have begun accepting electronic

10   returns and that's also mentioned in column one

11   of the patent.

12                    It's very important in the context

13   of this case that we have an appreciation for

14   what was this invention supposed to do.  And I

15   think that's highlighted in several places, five

16   or six to be exact, in both patents, each

17   patent.  It's highlighted by the description

18   that is fully automated, and right there in

19   column two are a couple of instances out of the

20   patent where it refers to this invention being

21   fully automated, talking about how historically

22   fully automated tax prep was not available.

23                    It is also interesting that the

24   title of the patent is fully automated.  There

1          is several references to being fully automated.

2                    I think what is probably more

3          important is that aside from the manual entry of

4          initiating the software that's described in step

5          11, which we're going to get into in the patent

6          in a few moments, aside from that initiation,

7          the initial step, the patent is silent as to any

8          other manual initiation going on.  I think

9          that's another indication, in other words, what

10         isn't said is another indication of the fact

11         that this is a fully automated system.

12                   In column three in the summary of

13         the invention, another reference to what the

14         invention is.  It's the object and advantages of

15         the present invention are achieved by a method,

16         an apparatus, and an article of manufacture for

17         fully-automated reporting of tax refund.

18                   And then here is a figure taken

19         out of the patent, and this is Figure 1, and it

20         just goes through the procedures that are in

21         this patent.

22                   Before I get too deep into this,

23         Your Honor, I want to point out that if you take

24         a look at these patents, I know you have, there

1    are two figures.  I don't know about you, but I

2    refer to these figures as stick figures.  There

3    is no meat on these bones.  They're a skeleton.

4    You can see the general idea of what the

5    inventor had in mind, but you don't see any

6    substance there.

7              And this is going to be a

8    continuing problem as we get further into --

9    especially into the means plus function claims.

10    But this is about as detailed as it gets.

11              What troubles Block about this

12    sort of a drawing is that Block above probably

13    all others in the world knows the complexities

14    of what is involved in tax prep and collecting

15    of tax data.  And it's an extremely complicated

16    process.  And we truly question whether the

17    inventor in this situation grasp that.

18              But anyway, during the initiation

19    procedure, step 11 is the only step that's

20    mentioned in the patent where the user manually

21    inputs information.  And just very quickly, what

22    is that information they're manually inputting?

23    This is setup information, Your Honor.  This is

24    your name, your address, maybe where you bank.

1    Maybe the name of your employer, where we can

2    get your W-2.  Maybe the account number of the

3    bank or something like that where this data

4    could be automatically obtained.

5         And then it goes through the

6    various steps.  Step 12, the electronic

7    intermediary is described as data processing

8    system comprising a general purpose computer and

9    a computer program.  Electronically collects the

10   tax data from each tax data provider that has

11   tax data pertaining to the taxpayer using the

12   electronic links.

13        It may sound apparent from what

14   we're talking about.  What we're highlighting

15   there is there isn't any mention from steps 12

16   down to step 15, there is no mention in this

17   patent of anything being done manually.  Once

18   you get the initiation setup started, from there

19   you go out and you collect the data

20   automatically, it's imported automatically.

21        And here is the other stick figure

22   or drawing that's in the patent, and links 32,

23   33, 34, 35, 36 and 37 shown in those drawings

24   are all culled out in the patent as electronic

1     links.

2            There is no detail of how those

3     electronic links are set up.  You're just told

4     that they're there.  And then you have these

5     blocks out on each end where the person is to

6     get -- excuse me, the electronic intermediary is

7     to get the data.

8            With the electronic collection of

9     tax data in step 12, this is taken right out of

10    the patent, column six, lines 23 to 27, the

11    invention I'm quoting eliminates the current

12    requirement that a taxpayer manually collect the

13    tax data, eliminates the current requirement

14    that a taxpayer manually enter such tax data

15    onto a tax return or into a computer.  I think

16    eliminates is a strong word.

17           Step 13.  The electronic

18    intermediary processes the tax data obtained

19    electronically from the tax data providers in

20    step 12.  The information processed in step 13

21    is obtained in the steps 11 and 12, this is

22    referred to in column six of the patent.

23           And then finally step 14, the

24    electronic intermediary, perhaps the electronic

1    tax returns using the processed tax data from

2    step 13.  The reason we highlighted processed

3    tax data is we think it's clear that processed

4    tax data comes from the prior step which is

5    again an automatic fully electronic step.

6            In the first patent, you have the

7    fact that you can file the electronic tax return

8    in step 15, the second patent doesn't include

9    that in the independent claims, the first patent

10    does.

11            Read in light of specification,

12    the invention is a fully automated system.  The

13    title of the parent patent recites fully

14    automated.  The summary of the invention says

15    the invention is fully automated.  None of the

16    embodiments disclose any manual input from step

17    12 on through the process of the patent.  And

18    the prosecution history supports a fully

19    automated invention.

20            The patent claims should not be

21    construed one way in order to obtain their

22    allowance and in a different way against accused

23    infringers.  And this is a case that I'm sure

24    the Court is very familiar with, the Computer

1    Docking Station versus Dell case.

2                Your Honor, earlier today

3    Mr. Curtin referred to the context of the oral

4    hearing in Washington.  And he said that Block

5    had taken things out of context.

6                There are two things about the

7    context that we want the Court to see.  The

8    first thing about the context is the entire

9    structure of the patent being fully automated.

10   It's all over this patent saying it's fully

11   automated.  In that context we haven't gotten it

12   wrong, we haven't taken it -- but at that board

13   hearing, the context was this, the reexamination

14   authority at the patent office had stricken both

15   patents, both patents were dead, they were gone.

16               The context of that hearing was

17   Simplification was fighting for its life, its

18   patent life.  Had the board not seen it

19   Simplification's way, these patents would be

20   dead and invalid and not in existence today.

21   That's the context of that board hearing and

22   that's why we think that board hearing was so

23   crucial.

24               There were some statements made up

at the beginning of the board hearing where you
see this going on between the inventor, the
inventor's attorney and the board, and as you
see that negotiation heating up in the
transcript, you start to get further toward the
end and you see where the inventor made
statements that through his attorney that he had
to make in order to defeat the prior art and get
this thing back into issuance and out of the way
of the prior art.

So the history of the
reexamination on April 8, 2003, Simplification
sues Block for patent infringement of the '052
patent. On July 11, '03, Block requested
reexamination of the '052 patent. In October of
'03, the reexamination was granted on the '052
patent. And then in February of 2004, the
continuation patent, that is the also the
subject of this case, it issued at the patent
office.

On February 24, 2004,
Simplification sues Block on that continuation
'787 patent. On March 15, 2004, Block requests
a reexamination of the '787 patent. And in June

1    of 2004, the reexamination was granted, the

2    request was granted on the '787 patent.

3                    In June of '05, the examiner

4    issues a final rejection for all asserted claims

5    of the '052 patent.  So the reexamination had

6    wound its way through, it took some time, final

7    rejection was issued.

8                    In January of '06, the examiner

9    issued a final rejection of all asserted claims

10   of the continuation patent.

11                   And the primary basis for the

12   prior art rejections was the Beamer reference,

13   which you'll hear more about here momentarily.

14                   So in the Beamer reference, which

15   by the way, Your Honor, predated the application

16   by Simplification of some ten years, we've

17   highlighted a section there out of the Beamer

18   reference and I quote, one day in the not too

19   distant future, Jan and Jim Smithwick will have

20   their employers transmit their salaries

21   electronically directly into their personal bank

22   accounts.  They will be able to download their

23   bank records into their personal financial

24   software.  That program can -- it says lien -- I

think it meant then pass the information to a

tax preparation program.  Jan and Jim will then

send the electronic version of their tax return

to their accountant via modem and the accountant

can electronically file the tax return with the

IRS.  All of this will be accomplished without

the Smithwick's having to re-enter any data,

without the use of a pocket calculator and

without the necessity of any paper.

I think what's important here is

this is ten year before Simplification's patent

filing.  And even when Simplification comes out

with their filing ten years later, there is no

meat on those bones.  You still have just the

skeleton figures, the Figure 1 and 2, not much

more than you see right here in this Beamer

reference.

Also in the Beamer reference, I

quote, MoneyLine allows you to communicate

directly with your bank's computer system.  Many

transactions can be directly fed by the bank's

computer into Dollar & Sense accounts, capital

D, capital S.  This reduces the drudgery of

retyping data, increases accuracy and gives

1  convenient access to bank information at any

2  time, not just when the statement arrives.  This

3  is a powerful example of how easily information

4  can be transferred between dissimilar computers,

5  let alone dissimilar programs.

6         So with that background, the

7  examiner in the reexamination proceeding said in

8  an office action dated January 18, 2006, at page

9  15, and I quote, "The tax preparation software,

10  e.g., MacInTax, can electronically connect to

11  and download relevant financial information from

12  a bank via a home accounting program, e.g.,

13  Dollars & Sense.  This downloaded information is

14  used to assist in completing one's tax return.

15  Use of software executed by a computer to

16  perform tax computations for preparing a tax

17  return is indicative of electronic and automatic

18  performance of these computations.  In other

19  words, a computer is an electronic device that

20  automates such computations as opposed to

21  performing the calculations completely manually

22  by a human."

23         Simplification responded on

24  November 30, 2005 at their appeal brief for the

1   '052 patent and on August 22, 2006, their appeal

2   brief was filed for the '787 patent.  On May 7,

3   2007, the oral hearing on both asserted patents

4   was conducted before the Board of Patent Appeals

5   and Interferences.

6           Your Honor, at this point,

7   although I'm sure the Court is well aware, we

8   think it's important for the record to put in a

9   little bit of law on the issue of prosecution

10  disclaimer.  The Purdue Pharma versus Endo

11  Pharms case, a patentee may limit the meaning of

12  a claim term by making a clear and unmistakable

13  disavowal of scope during the prosecution.

14          And then the Dell case we

15  mentioned earlier.  I quote, "A patentee could

16  do so, for example, by clearly characterizing

17  the invention in a way to try to overcome

18  rejections based on prior art."

19          And then we have the Omega

20  Engineering versus Raytek case.  And I quote,

21  "As a basic principle of claim interpretation,

22  prosecution disclaimer promotes the public

23  notice function of the intrinsic evidence and

24  protects the public's reliance on definitive

1   statements made during prosecution."

2          So prosecution disclaimer does not

3   depend on whether an applicant distinguishes

4   their invention in multiple ways.  A disavowal

5   if clear and unambiguous can lie in a single

6   distinction among many.  And for that you can

7   see the Andersen versus Fiber Composites.

8          Also in Norian versus Stryker,

9   there is a quote, "We have not allowed patentees

10  to assert that claims should be interpreted as

11  if they had surrendered only what they had to."

12         In the Laitram versus Morehouse

13  case, Moreover, the fact that the USPTO does not

14  rely on the distinction does not erase an

15  applicant's clear disavowal of the claim scope

16  taken out of that case.

17         Simplification asserts that

18  collecting electronically requires no manual

19  input in its appeal briefs.  This is a section

20  taken out of their appeals brief where they're

21  talking about the Beamer reference.  And I

22  quote.  "To move the data from the text file

23  into the locations on the MacInTax electronic

24  tax form, Beamer teaches that the taxpayer must

1    manually select the data -- and they underline

2    the words "manually select" -- continuing -- the

3    data from the Dollars & Sense year-end financial

4    report (which was converted into ASCII text by

5    the MacInTax Converter) and manually point --

6    again, the "manually point" are in bold and

7    underlined -- to where the data should be

8    entered on the MacInTax electronic tax form.

9            Beamer -- excuse me, there is a

10    reference to Beamer, and then it continues, all

11    of this manual input, again, manual input is

12    underlined, must be done by the taxpayer prior

13    to the MacInTax software performing any tax

14    computations for preparing a tax return.

15            Hence, Beamer fails to teach that

16    tax data collected electronically is not

17    manually entered onto the electronic tax return

18    and into the taxpayer's computer.  Thus, Beamer

19    fails to teach "means for collecting

20    electronically tax data from said tax data

21    provider", and/or the method step of "collecting

22    electronically tax data from said tax data from

23    said tax data provider."

24            And that ends our quote from that

1     appeals brief.

2                    So a representative claim taken

3     out of the '787 patent is Claim 10 and you can

4     see where we've highlighted connecting

5     electronically in the first claim element.  In

6     the next claim element, go ahead, again, taking

7     their comments made in the reply brief, they

8     once again say that Beamer fails to teach or

9     suggest collecting electronically tax data from

10    the tax data provider.

11                    I'm quoting from Simplification's

12    '787 reply brief.  "The automatic step of/means

13    for collecting electronically tax data from said

14    tax data provider."

15                    And then down below it refers to,

16    Beamer, however, teaches that manual input --

17    and once again, it's underlined -- manual input

18    must be done by the taxpayer prior to the

19    MacInTax software performing any tax

20    computations for preparing a tax return, which

21    is distinguishable from the automatic step

22    recited in the claims.

23                    So, therefore, collecting

24    electronically, that step is automatic in our

1   view and must be performed without manual input.

2   This was argued even as to Claims 1 and 10 of

3   the '787 patent, claims that do not recite the

4   term automatic anywhere.

5             At the oral hearing in

6   distinguishing its invention over the prior art

7   of record, Simplification made two key

8   admissions.  One, that electronically equals no

9   manual input.  And two, after step 11, if there

10   is any manual input, it's not covered by the

11   claims and it does not anticipate the claims.

12             Simplification specifically

13   disclaimed any manual input for the term

14   electronically at the hearing.  Mr. Sartori was

15   asked, or excuse me, commented, and I quote,

16   "And there are two reasons that I said

17   previously that the Beamer article does not

18   teach it.  One is they're connecting

19   electronically.  And yes, we are saying

20   electronically means that there's no manual

21   input.  You have to -- we're saying you need to

22   read it in light of the specification?

23             At another place, Simplification

24   specifically disclaimed all manual input outside

1    of initiation.  Mr. Sartori said at the hearing

2    and I quote, "That is manual intervention.  And

3    that has to do with step 11, which is the manual

4    step required to initiate it, to initiate the

5    automatic process.  That's taken from column 5,

6    line 45, what you've been focusing on, sir, Your

7    Honor.  And that has to do with step 11, which

8    is the manual stuff."

9          Judge Lee said, "I see.  So you're

10   allocating all of these manual input to the

11   category of initiating the process."

12         Mr. Sartori, "Yes, yes."

13         Judge Lee, "If there's any manual

14   input outside of initiation, then it's not

15   covered by the claim."

16         Mr. Sartori, "It's not covered by

17   the claim and it does not anticipate the claim."

18         So with all of this backdrop, we

19   have a section taken out of the chart which is

20   their Figure 1, Claim 11 -- excuse me, step 11

21   is the unclaimed manual initiation step and then

22   you see steps 12, 13 and 14.  Step 12 they're

23   connecting electronically to a tax data

24   provider.  They're connecting electronically the

1    tax data from a tax data provider.  In step 13

2    we're processing that tax data they provided.

3    And then in step 14 they're preparing

4    electronically an electronic tax return using

5    the processed tax data.

6              And we've highlighted on the left

7    there that's our addition in step 12, 13 and 14

8    that there is no manual input allowed, there is

9    no manual input even discussed with respect to

10   those steps in the patent.

11             Your Honor, we found a case, it's

12   a relatively recent case which we think is

13   directly on point here, this is Ormco,

14   O-R-M-C-O, versus Align Tech, or Align

15   Technologies.  Similar kind of fact pattern in

16   the sense that there was a lot of discussion in

17   the patent about this software program being

18   fully automatic.  It was an orthodontics

19   invention where an orthodontist would start this

20   program, and it would provide the optimum

21   finished positioning for the teeth of the person

22   who the orthodontist was working on.

23             And the Court said in there, and I

24   quote, From the beginning of the common

1    specification of the Ormco patents, it is clear

2    that the inventor's primary basis for

3    distinguishing their invention was its high

4    level of automation and the design of custom

5    orthodontic appliances as compared to the prior

6    art.

7              Continuing in that same case, the

8    Ormco case, the Court is quoted as saying we are

9    mindful of the prosecution that we must not

10   incorporate into the claims limitations only

11   found in the specification.

12             We are not doing the here, nor did

13   the district court.  We are interpreting the

14   claims in light of the specification.  The

15   situation here involves specifications that in

16   all respects tell us what the claims mean

17   buttressed by statements made during prosecution

18   in order to overcome a rejection over prior art.

19   Accordingly to attribute to the claims a meaning

20   broader than any indicated in the patent and

21   their prosecution history would be to ignore the

22   totality of the facts of the case and exalt

23   slogans over real meaning.

24             Simplification's arguments in our

1    view, Your Honor, you are unavailing.  First,

2    the clear disavowal in the prosecution history

3    are not ambiguous and they weren't taken out of

4    context.

5             Second the claim term comprising

6    does not shield the patents from a clear

7    disavowal of claim scope.  I think this is an

8    important point.  Simplification keeps wanting

9    to come back to the word comprising saying it's

10   open ended.  You know what, I agree with that.

11   The problem is when you as the inventor, when

12   you take that word and you squash it by telling

13   the Court -- excuse me, telling the patent

14   office, clear disavowal of claim scope, you can

15   overpower the word comprising which is exactly

16   what they did with their disavowals in the

17   proceedings at the patent office.

18             Third, it makes no difference

19   whether the board relied on the arguments or

20   not, surrendered claim scope is still

21   surrendered claim scope.  Once surrendered, they

22   can't recapture it.  Frankly the term

23   electronically cannot mean one thing in one

24   claim step and another thing in another claim

1    step.  It has to have the same meaning

2    throughout.

3         Then we get to the means plus

4    function claims and that we are arguing do not

5    possess sufficient structure to meet the

6    requirements of 112, paragraph 6 of the code.

7    We think the Aristocrat case, very recent case

8    out of the Federal Circuit decided just several

9    weeks ago says, and I quote, the point of the

10   requirement that the patentee disclose

11   particular structure in the specification and

12   that the scope of the patent claims be limited

13   to that structure and its equivalents is to

14   avoid pure functional claiming.  Close quote.

15        For a computer implemented means

16   plus function step, the Federal Circuit has

17   repeatedly held there must be an algorithm.  It

18   must be disclosed to meet the requirements.

19   Simplification failed to show and cannot show a

20   single algorithm for carrying out the claimed

21   functions in the specification.  The limited

22   structure cited by Simplification is not an

23   algorithm.

24        Here is an example in step 14 of

1    Figure 1, means for preparing electronically is

2    defined entirely by box 14 according to

3    Simplification.

4            Well, in that little box with no

5    meat on it, they're trying to say everything we

6    need to know to satisfy 112, paragraph 6, we

7    disagree with that.

8            You can see here is a

9    representative claim, this is Claim 1 of the

10   '787, the fourth element of that claim refers to

11   the means for preparing electronically, an

12   electronic tax return.  If you look in the prior

13   -- if you look in the prior element, means for

14   processing electronically, and then the prior

15   element to that, element two of that claim,

16   Claim 1 of the '787, means for collecting

17   electronically, and then the first point means

18   for connecting electronically, these are all

19   functional statements, and they have little if

20   any structural support that we can find in the

21   patent.

22           In Figure 2, they point to Box 21

23   of that figure, but it does not provide the

24   needed algorithm.  It's even less helpful than

1    Figure 1.

2                    Here is the chart of the relative

3    claim terms which I won't go through.  We'll

4    skip through this.

5                    And, Your Honor, what I want to

6    say with respect to the means plus function

7    claims is to ask the Court to consider this.

8    Why does the CAFC want an algorithm in the

9    claims?  Why is that important?  And what must

10   it talk about?

11                    And as I was listening to

12   Simplification's arguments earlier today, I

13   thought of the following things that are not

14   answered by their patents.  And it's very

15   frustrating that it's not in there anywhere.

16                    Take, for example, means for

17   connecting.  And we see these statements that

18   well, it could be a modem, it could be this, it

19   could be that.  Where is the algorithm or

20   instructions for connecting to the tax data

21   providers who are left to believe that this is

22   just a piece of cake, that there is nothing

23   complicated to it.

24                    Here is some specific questions

1    that aren't answered by the patent.  In what

2    format do you connect?  Are we all to believe

3    that everyone in the world runs the same format?

4    Of course they don't.

5                   What network platform are you

6    going to use?  There are no instructions in this

7    patent telling us what platform they are going

8    to use to go out and get the data.

9                   The tax data providers will be

10   using their own internal network systems.  If we

11   go to your employer, if we go to your bank,

12   they're going to have their own internal network

13   systems.  They're likely to be very different

14   from the next business down the street and the

15   next business down the street.

16                  How does the system of

17   Simplification's patents manage that problem?

18   There is no algorithm given for how they're

19   going to handle that problem.  But it gets worse

20   for them, and that's in the means for

21   collecting.  So somehow they've managed to

22   connect to these desperate systems, and now

23   they're getting a data stream that's coming down

24   the pike.  Where in this patent does it say

1 anything about how you collect that data?  And
2 here is some real world problems that they have
3 that they haven't solved and it's not in the
4 patent anywhere.
5            And that is once the connections
6 are established and the data is being received,
7 where is the algorithm for putting the data in
8 the appropriate places in the form?  You got a
9 tax form, you're getting the stream of data,
10 it's coming in, it's saying your mortgage
11 interest last year was X, your wages were Y,
12 your charitable deductions were Z, where does it
13 put X, Y and Z?  And there is no algorithm to
14 tell us where it puts that data that's coming
15 in.  We're left to kind of assume that it
16 magically found its way into the right places in
17 the tax forms.
18            There is no algorithm to show us
19 how that all works.  It's complicated.  Having
20 represented Block, I can tell you it's a very
21 complicated problem.
22            There is a statement made in the
23 oral hearing that was brought up today by
24 Simplification about the Purple Heart charity,

1  and that caught my eye, because the Purple Heart

2  charity was mentioned at the oral hearing as

3  though you could go out and get your charitable

4  deductions, you could get that manually, you

5  wouldn't have to get that necessarily fully

6  electronically, fully automatically.  But it's

7  interesting that that was said at the oral

8  hearing because at column four, lines 65 over to

9  the top of column five of the patents, and I'm

10  reasonably sure it's exactly the same in both

11  patents because the specifications are the same

12  in both patents, it says, for example, the

13  taxpayer could be asked about whether the

14  taxpayer has donated money or other items to

15  charity, i.e., Purple Heart.  That's my comment

16  about Purple Heart.  Purple Heart is not

17  mentioned in here.

18          And I continue the quote.  If the

19  taxpayer has donated the electronic intermediary

20  then notes that these charities need to be

21  electronically contacted for collection of tax

22  data, so the patent says one thing and at the

23  oral hearing there was something else said.

24          The patent says if you want your

1   charitable deductions, you go out electronically

2   and get those.  But at the oral hearing, they

3   said you can contact Purple Heart and if they

4   can't get it to you electronically, you can put

5   it in manually.  But nowhere is that found in

6   the patent.  It's just not in the patent

7   anywhere.

8                So with comments made at the oral

9   hearing which we think are very clear,

10  unambiguous, disavowal of claim scope, when you

11  look at the prior art, where the prior art was,

12  you look at how some automation was already

13  there, you look at how manual inputting was

14  already there, and how does Simplification get a

15  patent here?

16               The only way they could get the

17  patent to get around Beamer, to get around

18  TurboTax, to get around all those products that

19  were out there before, the only way they could

20  do it is to say we're fully automated, we did

21  the whole thing in a fully automated fashion.

22               So starting with the very first

23  words of the title of their patent, fully

24  automated, we think this Court needs to hold

1    them, Your Honor, to what they said all through

2    the process which was full automation, and

3    except for one reference to a Purple Heart

4    charity in an oral hearing that doesn't comport

5    with what the patent says, other than that one

6    tiny mention, there is no mention anywhere that

7    once you set this thing up that there is any

8    manual intervention, it's all automatic from

9    that point.

10          Thank you, Your Honor.  We

11   appreciate your attention.

12          THE COURT:  Let me ask you a

13   question.  And I didn't want to interrupt you, I

14   wanted you to get through the full presentation.

15          When I was reading your papers, I

16   understand the fully automated argument, and I

17   know that you want to stay away from claim

18   interpretation becoming or being done in the

19   context of infringement, infringing, but I can't

20   help but when I listened to you today and when I

21   was reading your brief to think about that, and

22   like schedules and, you know, your typical tax

23   documents that you prepare, and then the

24   integration with required information.

1           You believe it's possible to have

2    a fully automated program.

3           MR. STANDLEY:  In the future, yes,

4    I do believe that will happen.

5           THE COURT:  And that's what I

6    think you were saying.  But do you think there

7    is one today?

8           MR. STANDLEY:  We know of none.

9           THE COURT:  And --

10          MR. STANDLEY:  It's an extremely

11   complex problem, Your Honor.  We have tried at

12   Block, Block has tried to do this, has failed.

13   It's a very complicated problem.

14          THE COURT:  Just give me a little

15   more about that so I have an understanding, like

16   -- and I know you have tried already to give me

17   some explanation, but what would you say in the

18   integration of the -- let's say a person or

19   small business's financial information and other

20   necessary information against the required

21   information by the government, is the biggest

22   problem.  Do you understand what I'm saying?

23          MR. STANDLEY:  I think you're

24   saying, Your Honor, that what we may keep in our

1   own personal finances that doesn't exactly

2   equate to what the IRS requires us to put on the

3   tax form.

4           THE COURT:  Yes.

5           MR. STANDLEY:  You're right, we

6   don't typically keep our daily lives organized

7   like a form 1040, and how it requires us to

8   input tax data.  But that's -- that is an issue,

9   sure, but it's one of actually probably one of

10   the more minor issues.

11           There are serious problems with

12   connecting to bank networks, with connecting to

13   state and local taxing authority networks,

14   connecting to a charity and their network, just

15   think of those three alone.  Every door that you

16   knock on, they have a different system.  It's

17   mind boggling how you get this stuff, this data

18   to be able to -- how you get your system, one

19   single system, a tax intermediary, how you get

20   it to talk to dozen if not hundreds of different

21   suppliers running different systems.  That's the

22   first problem.

23           The second problem is assume you

24   can pull that off, which you may be able to pull

1  it off on a very, very small level, small basis,

2  maybe one or two here and there that you can

3  sweet talk into allowing you into their facility

4  to try to see their code and see if it works,

5  but let's say you can do that with a few, now

6  you have got a problem, once the data is coming

7  down the pipeline, what do you do with that

8  data?  That's the next problem.  You have got to

9  import that somehow into a tax return, not as

10 easy as one might think how that's done.

11         Certainly we have instances out

12 there where some things like that maybe have

13 occurred, but when you're talking about a tax

14 form and you're talking about no errors, because

15 you can get into a lot of legal troubles if

16 there are errors in that tax return, it's an

17 extremely complex problem.

18         THE COURT:  I'm trying to stay

19 away from infringing, but tell me what it is

20 that -- tell me the extent that Block is able to

21 prepare an automated return.

22         MR. STANDLEY:  Well, we have never

23 succeeded at it in this sense.  What we have

24 been able to do is we have been able to make a

1    connection to certain W-2 providers, I don't

2    have the exact number, Your Honor, but I'm

3    almost certain it's less than ten, and on a

4    trial basis, which went on for a few years, I'm

5    not telling you anything I haven't told

6    Mr. Curtin from Simplification, for a few years

7    we tried this to get the data from just a W-2,

8    nothing more, to import into a tax form

9    automatically without any manual intervention by

10   the user.  We also tried it with 1099s and

11   1098s, which I think are mortgage interest and

12   interest earned.

13            We have a few examples where we

14   were able to make the electronic connection and

15   then ran into problems with respect to getting

16   it to fill out the tax form properly.

17   Ultimately the experiment failed, we shut it

18   down.

19            But I do want to stress this, that

20   during those few years where we tried this, and

21   the Court is ultimately going to hear evidence

22   about how many times someone tried to use it and

23   how many times they were successful and how many

24   times it failed, we'll have all that before the

1  Court, but none of them ever did it the way this

2  patent, these two patents describe it in the

3  sense that not a single time were we able to

4  fully automate the process.

5          We had a vision to try to do that,

6  but it never worked.  We were never able to get

7  a fully automated tax form completed.  It would

8  be nice to take all people and error

9  possibilities out of doing tax returns.  It

10  might make them simpler, but what we found out

11  is it's a huge problem.  But even in those

12  instances where we were able to successfully get

13  someone's W-2 data imported into an electronic

14  tax return, we still had a lot of manual

15  intervention that occurred after the initiation

16  step.

17          THE COURT:  All right.  Thank you.

18  I appreciate it.

19          MR. CURTIN:  Thank you very much,

20  Your Honor.  May it please the Court, I think I

21  have just a few minutes to make a couple of

22  brief points.  And also I realized Your Honor

23  after I sat back down that while I passed up

24  copies of the slides and then handed those to

1    opposing counsel as well, I had not provided the

2    Court with copies of the Elmo pages that we had

3    shown with the highlighting.  And if the Court

4    would be interested in that, we can certainly

5    provide copies to you for your files and

6    opposing counsel when we're done if that's okay.

7              Well, there are a few points, Your

8    Honor, I want to address and I believe I can do

9    this relatively quickly.  The first thing that

10   is important I think that struck me based on

11   Mr. Standley's presentation, Your Honor, was

12   that Block has spent an awful lot of time

13   talking about the requirement that the recited

14   claim limitations be performed automatically,

15   and we don't dispute that.

16             Block acknowledges in its

17   presentation repeatedly that those arguments

18   about electronically were made in the context of

19   Claims 1 and 10 of the '787 patent, and

20   Mr. Standley's argument for why that has to be

21   imported into all the other claims is because he

22   argues the word electronically must mean the

23   same thing in all claims.

24             Well, Your Honor, that's just not

1    so when you consider that we're talking about

2    the very special definition point that Block is

3    relying on.  It was not focused on

4    electronically in and of itself, it was focused

5    on connecting electronically and collecting

6    electronically in the context of those two

7    claims, those two claim limitations.

8              So Block's argument because they

9    say it as to one you say it as to all goes

10   completely contrary to the point they're

11   completely relying on which is the patentee

12   can't adopt a special definition for a

13   particular claim term for a special context to

14   justify the claim meaning.

15             In that respect the context of

16   what we're talking about there is critical.

17             Now, there are a couple of points

18   I want to mention to Your Honor, and I'm going

19   to use the Elmo to illustrate.

20             The first point, Your Honor, is

21   Mr. Standley spends a considerable amount of

22   time in his presentation poo-pooing figures one

23   and two of the patents, which are what he calls

24   stick figures.

1           Well, that may very well be what
2     Mr. Standley calls them, but what they're called
3     are flow charts.  They're called diagrams.
4     They're the diagrams that are standard in
5     describing software programs.  If you look to a
6     patent that talks about software, if you look to
7     a patent that has computer information, you're
8     going to find diagrams, you're going to find
9     flow charts.  And for one of ordinary skill in
10    the art, of course they are not highly detailed.
11    The law does not require that you set forth the
12    source code, but at the same time it puts the
13    meat on the bone in the sense that it lays out
14    the steps that the software is to follow.
15           And these are amplified, Your
16    Honor, these individual boxes that say collect
17    tax data, process tax data, prepare tax data are
18    amplified by the description and steps
19    Simplification has spent considerable time on,
20    and it is certainly just not the case that as
21    Mr. Standley said, that we're relying on say box
22    14, prepare electronic tax returns.  In fact, I
23    spent considerable time with Your Honor
24    discussing the structure in the patent that does

1    show how to do that including the fact that they

2    call out commercially available software, which

3    under the law is sufficient structure for

4    processing tax returns.

5            I also, Your Honor, I want to

6    address Mr. Standley's contention that with

7    regard to the definition to fully automated

8    point that you must construe the claims as being

9    fully automated because he says there is no

10   manual intervention described in the patent

11   after step 11.

12           Well, Your Honor, that is simply

13   not the case.  And we showed that that's not the

14   case in my initial presentation.  But I'll

15   emphasize a couple of points.  First all, we saw

16   the preference from step 12 back to 7, it talks

17   about that they act on that to go out and

18   connect to and collect the data.

19           But most specifically, let's go

20   back to column six, but a different part of

21   column six than Mr. Standley was looking at.

22   These are cites, Your Honor, that I gave you in

23   my earlier presentation.  I want to cull out

24   this language for you.  Mr. Standley says, of

1  course, after step 11 there is no manual

2  intervention described.  Here we are.  In step

3  13, the electronic intermediary processes the

4  tax data obtained electronically from the fact

5  data provided in step 12.  In the present

6  invention, step 13 can be implemented using a

7  computer program similar to the computer

8  programs currently available in the marketplace

9  such as TurboTax which is a registered trademark

10  of Intuit, Inc.

11  And it goes on, Your Honor.  Then

12  let's go down a little bit, a little farther

13  down the column, this is all in column six of

14  the patent, particularly I'm reading -- I was

15  reading column six lines 33 to 36, and now at

16  column six lines 54 to 56.

17  Similar to step 13, step 14 can be

18  implemented using current technology.  The

19  reference back to TurboTax.  That structure,

20  Your Honor, that structure under the law, that's

21  a commercially available product.  That tells

22  you what you need to do.  It points the person

23  of skill in the art what they need to do to

24  perform that step.  And as I showed Your Honor

1    in great detail, that 1997 technology, that

2    TurboTax software, for example, was not a fully

3    automated piece of software, that step is not

4    fully automated.

5                    Processing and preparing are not

6    fully automated given those references certainly

7    and that's clear from that description of the

8    specification. Manual intervention throughout,

9    the program responds to that manual intervention

10   by automatically processing and automatically

11   preparing the tax return, but it is simply not

12   fully automated.

13                   And let's turn back to a passage

14   of the specification that Mr. Standley culled

15   out on one of his slides, talking about what

16   this invention was intended to do. And he talks

17   about how it says the invention eliminates the

18   current requirement, but let's look at that

19   language a little more closely. Hence with the

20   electronic collection of tax data as in step 12,

21   the invention eliminates the current requirement

22   that a taxpayer manually collect the tax data,

23   not all tax data, it's the tax data, the tax

24   data that is capable of being electronically

1 collected under step 12 which as I described to

2 Your Honor, nothing in the patent suggest that

3 all the tax data in the world is available and

4 capable of being collected electronically.

5    It eliminates the current

6 requirement that the taxpayer manually enter

7 such tax data to a tax return or into a

8 computer, there you go.  Again, such tax data,

9 the tax data that was collected electronically.

10 It is not saying that it's all the tax data you

11 will need to do your tax return, necessarily.

12    For a person with a simple return

13 who just needs a W-2, probably all of it is

14 available electronically to be gathered.  For

15 many taxpayers it will not be.  The patent

16 recognizes that.

17    That is also supported, Your

18 Honor, by the structure of the claims

19 themselves.  I beg the Court's indulgence for a

20 moment, I seem to have lost the claims.

21    Let's look at Claim 1 of the '052

22 patent, Your Honor, and this is in column eight

23 of the patent.  And it talks about the method

24 and this is, of course, the actual language of

1    the claims that define the invention.  A method

2    for automatic tax reporting by an electronic

3    intermediary comprising, connecting

4    electronically said electronic intermediary to a

5    tax data provider.  One or more is what A means

6    under the patent law.

7              Collecting electronically tax

8    data, again not all tax data, from said tax data

9    provider, processing electronically said tax

10   data collected electronically from said tax data

11   provider to obtain processed tax data.

12             Again, you're electronically

13   processing the tax data that you collected from

14   the tax data provider.  It does not say all the

15   tax data necessary for the return.

16             Preparing electronically an

17   electronic tax return using said processed tax

18   data, which ties back to said collected tax

19   data.  There is nothing in the structure of the

20   claims, Your Honor, that requires that all the

21   tax data used to prepare the tax return be

22   collected electronically according to the

23   recited -- according to the recited steps, just

24   that one or more pieces of tax data be collected

1    electronically and handled according to the

2    steps set forth in order to satisfy the

3    limitations of the claim.

4              And that actually, Your Honor, is

5    not inconsistent with another point I wanted to

6    address that Mr. Standley made regarding I think

7    the only passage Mr. Standley pulled up from the

8    hearing transcript that I had not already

9    discussed with Your Honor.  It comes at page 30.

10             If there is any manual input

11   outside of initiation, then it's not covered by

12   the claim.  Mr. Sartori, it's not covered by the

13   claim and it does not anticipate the claim.

14             Mr. Standley uses that to argue on

15   a process basis that after -- that this response

16   should be used to say a process basis,

17   Simplification is saying from the start of the

18   process forward there can be no manual

19   intervention.

20             It's equally appropriate, Your

21   Honor, to say, Mr. Sartori, if there is any

22   manual input outside of initiation of the

23   particular steps of the particular function,

24   then it's not covered by the claim.  Mr. Sartori

1  would agree, it's not covered by the claim.  It

2  does not meet the claim limitation and it does

3  not anticipate the claim.  He's talking about

4  validity points, he's focusing on what the prior

5  art has shown.

6          And you have to at least of course

7  consider this statement in context with a

8  statement we showed you earlier, which is

9  expressly to the contrary of Block's

10 interpretation.  Judge Moore plainly ask the

11 question.  So you read these claims as excluding

12 all manual data entries?

13         No, it doesn't for the fact that

14 it's comprising, so it's open ended.

15         Even if you construe that part of

16 Claim 30 in the way -- pardon, that part of page

17 30 in the way that Block urges, Your Honor, and

18 we submit there are certainly other reasonable

19 interpretations, given that view of the

20 transcript as a whole, it runs flatly head on in

21 what was said on Claim 8.  It's a wash, because

22 it's not as if that was a concession that was

23 necessary in the prior art, in fact this is

24 important for you to consider in the context of

1    -- I mean, I guess Block's interpretation is not

2    necessary for Simplification to have won

3    issuance over the prior art.

4            And Mr. Standley is certainly

5    correct that disavowal, the board doesn't have

6    to have relied on it, but it's worth noting in

7    the context of briefs in which Simplification

8    has said that we were clinging to these

9    interpretations, and Block has said we are

10   clinging to these interpretations like a life

11   boat, that these issues never appeared in the

12   decision of the board.

13           The board doesn't analyze

14   automatic, the board doesn't analyze

15   electronically.  The decision of the board that

16   allowed these patents to issue over the prior

17   art hinges on the definition of the tax data.

18   They say that Beamer and the other references do

19   not disclose the collection of tax data.  So

20   that was the issue.  And that's worth noting to

21   kind of better get the flavor of the issue.

22           And one other point, Your Honor, I

23   would like to also hit the Ormco case now if we

24   could.  I have some slides here.  Mr. Standley

1   talked about Ormco to a considerable extent.

2               In Ormco, the Federal Circuit

3   found that statements in the specification and

4   prosecution history limited the claims to prior

5   automatic positioning without manual

6   intervention after the process was started.  And

7   that is correct.  But Block's reliance on Ormco

8   is misplaced because here is a quote from Ormco

9   that the Federal Circuit found important.

10  Nowhere does the specification suggest or even

11  allow for human adjustment of the

12  computer-calculated tooth finish positions.

13              Next slide, please.  By contrast,

14  Your Honor, Simplification's statements in the

15  specification emphasize, for example, that

16  software incorporating some manual intervention

17  and manual entry falls within the scope of the

18  patent.  And also substantially hits the all tax

19  data and virtually all hard copies language that

20  I showed you.  Therefore, Simplification's

21  patents and the specification in

22  Simplification's patents tell a different story

23  than the specification of the patents issued at

24  Ormco.

1        So again, this Ormco case will not

2   bear the weight that Block assigns it.

3        One last point, Your Honor.  And I

4   wanted to address the issues Mr. Standley raised

5   about the means plus functions claims.  And I

6   hit this already to some extent.

7        Mr. Standley says there is just no

8   structure disclosed in the specification.  And

9   that is simply not so.  As I have shown before,

10  the specification makes it clear that the steps

11  in the process are not all fully automated,

12  calling out commercially available software

13  including TurboTax, in that same context that

14  calls out structure, that calls out structure

15  for preparing and for the processing steps, the

16  disclosure of the IRS E-filing in addition to

17  TurboTax calls out structure for the filing

18  steps.

19       And for collecting and connecting

20  electronically, Your Honor, the specification

21  sets out a step wise process for what needs to

22  be done.

23       Now, Mr. Standley says, well,

24  there are a lots of problems still, a lot of

1    details that aren't addressed by these patents,

2    and that's certainly true.  And those details

3    are important to the commercial implementation

4    of the product.  And while this is as you said,

5    Your Honor, we're not talking about commercial

6    embodiments here, we're not talking about the

7    accused product, it's not necessarily relevant

8    to claim construction.  Block did have terrible

9    trouble trying to do this, but contrary to what

10   Mr. Standley said, to the extent this may be

11   relevant to the Court's understanding of the

12   environment, what he calls a trial program, we

13   call -- we seem to see from the documents we can

14   decipher on a large number of commercial sales

15   and the documents to the extent we can decipher

16   them show that there were hundreds of thousands

17   of downloaded, tens of hundreds of thousands

18   that were successful.  To the extent we can

19   tell, to the extent we can decipher Block's

20   documents, we are going to have depositions on

21   that relatively soon to figure that out.  But

22   the law simply does not require that the patent

23   disclosed every single, every single detail

24   necessary for implementation, so these details

1    are important to commercial implementation of

2    it, but you don't have to hit every step in the

3    algorithm and that is clear.  In fact, there is

4    no way a patentee could know what CitiBank would

5    require for format or what Fidelity would

6    require or what Block would require, that is

7    just not realistic and that's not the law.

8              In fact, the specifications of the

9    Miller patents present far more detail than the

10   patents that were at issue and that were found

11   to be invalid in the Aristocrat and Harris case.

12             In the Aristocrat case, for

13   example, Your Honor, there was an improvement

14   for slot machines and a specification to look at

15   the opinion, the specification essentially said

16   a computer will do this, a particular feature,

17   and that's it.

18             So that's a very different

19   situation, again, than what we're facing here

20   with Simplification and with these patents.

21             And with that, Your Honor, I will

22   make one more -- one final point.  With the

23   definition of automatic, Your Honor, and the

24   parties' proposed constructions, it seems to me

1     that the parties agree on some of the language,

2     no manual intervention after initiation, the

3     question is where you draw the line.

4                The -- and Block attempts to draw

5     the line with a fully automated definition that

6     requires that the taxpayer enter his name and

7     enter some identifying information at the very

8     beginning of the process, hit a button and then

9     lean back in his chair and he doesn't have to do

10    anything until the tax refund check hits his

11    bank account.

12               Well, Your Honor, that is not what

13    is claimed in these patents.  That is not what

14    is described in the specification.  That may be

15    fully automated, but that is not automatic.

16               And that is also a process, Your

17    Honor, that as Mr. Standley implicitly

18    acknowledged was not available in 1997 and was

19    not performed by the software that the

20    specification calls out.  It's not in the patent

21    record, it's not required and it's not

22    consistent with either reality or with the

23    patents in this case.

24               Thank you, Your Honor.

1          THE COURT:  All right.  Let me ask

2     you a question.  Actually I don't remember doing

3     a tax return, I think my wife has always done

4     them, but I have watched the process.  And she

5     gets in an office and tons of information is

6     spread out, and then there is a sheet of paper

7     that the accountant has her fill out, just about

8     what information is there.

9          And then she starts putting it on

10    some sort of a disk that the accountant gave

11    her.  Is that when it's supposed to kick in as

12    automatic?

13          Well, give me your best estimate

14    of when all the stuff that wasn't available

15    already on the monthly P & Ls becomes automatic.

16          MR. CURTIN:  Very well, Your

17    Honor.  Just one moment.  Let me get the patent

18    claim.

19          THE COURT:  If it's not fully

20    automated.

21          MR. CURTIN:  Your Honor, to the

22    extent I understand the question, I mean, is

23    your question, Your Honor, whether or not what

24    you're describing --

1          THE COURT:  Here is my question,

2     make it even simpler.  I'm trying to stay away

3     from infringement analysis, but I'm trying to

4     understand automatic on your side of the case.

5          I see people tweaking the

6     documents, the data, and the end result product

7     going to the government throughout the process.

8     You're telling me that there is this striking

9     point when it becomes automatic.  I'm trying to

10     get some general idea when what you're calling

11     automatic kicks in.

12          Your friends on the other side

13     say, listen, you tried to invent something that

14     was fully automatic and it doesn't really exist,

15     but that's what you are describing that the tax

16     data is supposedly electronically available

17     kicked you in, that contradicts the idea of

18     sitting in this room with all these papers

19     around you, but you seem to have an idea of when

20     automatic begins.

21          MR. CURTIN:  Yes, Your Honor.  And

22     I think first of all in answering your question,

23     it's important to understand --

24          THE COURT:  I'm only talking about

1    tax data.

2              MR. CURTIN:  With tax data.  Well,

3    tax data is defined in the patent as being

4    information that is relevant to determining your

5    tax liability, and they have examples like W-2

6    data, the information on our 1099s, the

7    information on your 1098s, those are all

8    examples given in the patent, and being examples

9    of the sort of tax data that could be made

10   available electronically and collected

11   electronically from the various tax data

12   providers, such as the IRS and banks.

13             An accountant sitting down with

14   the taxpayer figuring out what all the data is,

15   you know, like boiling down the bank statements,

16   boiling down all the stuff, as you say, tweaking

17   the figures, that's not recited in the steps of

18   the patent, that is sort of -- that's

19   preliminary.  That's figuring out other

20   information in a much more complex situation

21   that may or may not ever ultimately end up being

22   within the scope of these claims.

23             Because to get within the scope of

24   these claims, Your Honor, it's automatic tax

1    reporting by an electronic intermediary.  In

2    other words, by a computer.  I don't want to

3    limit that too much, but that's an example.  And

4    I think a data processing network comprising a

5    computer, when you sit down to the computer and

6    it says connecting electronically said

7    electronic intermediary to a tax data provider,

8    I'll put this up on the Elmo, what the heck.

9              Connecting electronically said

10   electronic intermediary to said tax data

11   provider, that's one of the functions, that's

12   one of the recited steps in the claims, Your

13   Honor.  And Simplification acknowledges as they

14   said to the Board of Patent Appeals, and as we

15   said in our briefs, that those recited steps

16   individually, those functions must each be

17   performed automatically after initiation.

18             So you enter in your data, your

19   information, you sit down at your computer, you

20   enter in your information, you hit the button

21   and the computer goes out to connect

22   electronically with the tax data provider, say

23   the IRS, okay, you have hit the button, you have

24   initiated that step, and then that's when the

1   automatic kicks in.  Like the dishwasher that

2   operates after you push the button, like the ATM

3   that give us your account balance and that says

4   yes, I want it, it goes out and connects,

5   automatically kicks in, because it's

6   automatically connected as part of step 12.  It

7   has the information it needs and it collects

8   that data, and it does so automatically.

9            And that's Block's examples in its

10  briefs about getting an E-mail with your W-2,

11  that's why that doesn't infringe the claims,

12  because you still have to take that tax data

13  manually and type it in.

14           And then so the collecting

15  electronically step again, that step occurs

16  automatically.  Again, the processing

17  electronically step, it makes computations with

18  that collected tax data and you see this, and it

19  computes with it in response to that data, but

20  also it can be an iterative process, it ask you

21  questions and that's why the comprising language

22  is important because it don't foreclose the

23  concept of as the specification discloses, a tax

24  preparation software asking you questions, what

1    do you need, what kind of data do you have,

2    what's your tax situation, and you answer those

3    questions and you hit the button, you click the

4    mouse, and then you have given your input, you

5    have initiated it and automatic kicks in, it

6    processes electronically your responses, that's

7    the difference between automatic and fully

8    automated, because there are some intervening

9    manual steps which comprising allows for.

10             And then, you know, once the

11   programs process that tax data, it's prepared

12   electronically in an electronic tax return using

13   the data in there, and the invention, it

14   performs that automatically, and that you're not

15   telling it, you know, set up the form to look

16   this way, put this data here and here, at least

17   within the recited steps of the invention,

18   recited steps in the claim, it does that

19   automatically, but it does it in response to you

20   saying okay, give me the tax return.

21             And with the filing steps

22   similarly, Your Honor, the automatic kicks in

23   after you hit the button, you say okay, now I'm

24   filing, I'm ready to file, you know, you may

1    have -- for example, you put in yes, I'm done,

2    here is the account, some of the dependent

3    claims talk about getting a refund or paying

4    your taxes and you can arrange to do that

5    electronically as well, you have to put in your

6    bank account information, you may have to input

7    that information, here is my account information

8    to --

9              THE COURT:  But that doesn't

10   interfere with the trigger of automatic?

11             MR. CURTIN:  That doesn't, Your

12   Honor, because after that, because you do that

13   before you hit the button to say okay file, and

14   then you have initiated that step and the filing

15   occurs, and then it's automatic because the

16   machine does it.  The computer to use an example

17   does it.

18             Just like after you're dealing

19   with the automatic teller machine and it ask

20   you, as an example, of automatic versus fully

21   automated, it ask you, if it's fully automated,

22   you're not making input, you're not doing

23   things, but if it's automatic, the ATM ask you,

24   okay, what do you want?  Would you like your

1    account balance?  Yes.  You made some input

2    there.  Do you want checking or savings?  Yes,

3    it gives you the balance.

4                    Do you want money?  Yes.  And then

5    it gives you the money that you asked for.  You

6    have to type in those inputs.  But in each step

7    after those inputs, the machine did it

8    automatically, that's when the automatic kicks

9    in.

10                   And in this patent, the automatic

11   kicks in after the initiation of every listed

12   step, every listed claim element.  I'm pointing

13   specifically at Claim 1 of the '052 patent.

14                   But the difference between

15   automatic which is what's claimed there and

16   fully automated which is what Block argues is

17   the comprising language that allows for

18   intervening -- so comprising is consistent with

19   automatic because it allows for -- it allows for

20   the presence of the intervening steps.

21                   The automatic doesn't kick in back

22   at the very beginning where the taxpayer after

23   that can lean back in the chair and not do

24   anything more until the refund comes in, the

1    automatic kicks in -- sorry if that was a long

2    answer, Your Honor.

3              THE COURT:  No, it's -- I'm just

4    wondering, so I own this house at the lake with

5    my brother-in-law, and I work for DuPont, and

6    DuPont issues me a W-2, and I don't have any

7    health care or anything like that, and I can get

8    that electronically; right?

9              MR. CURTIN:  I'll assume so, Your

10   Honor, for the question.

11             THE COURT:  Let's just assume for

12   the question that DuPont issues it and it kicks

13   out electronically, and it can be moved right to

14   my computer.  And I don't have any major health

15   deductions.  I don't have any health accounts.

16   So I'm pretty setup to push the button to send

17   it to the IRS.  I'm trying to make that part

18   real simple.

19             Well, I got this house at the lake

20   with my brother-in-law and, you know, we each

21   take two weeks, we rent it, we have rental

22   income coming in, it's an old house so we do a

23   lot of repairs and we have to issue 1099s to the

24   people that come and paint it and the people

1   that do the sidewalks and the grounds and

2   everything.  None of that is electronic except

3   payment out because I have a program to my

4   accountant that mirrors my account for the

5   house.

6              MR. CURTIN:  I think I'm with you.

7              THE COURT:  At what point am I

8   automatic under the patent?

9              MR. CURTIN:  Well, there -- there

10  are a couple of different questions there, Your

11  Honor, and I'll attempt to answer them both to

12  the extent that I understand them.

13             One question is when are you

14  acting -- or when is something occurring

15  automatically as Simplification would construe

16  that term under the patent.  That is different

17  from when or if whatever you happen to be doing

18  falls within the scope of the claims.

19             In terms of the meaning, purely

20  the meaning of automatic, I would say that when

21  -- you mentioned paying electronically, when you

22  hit the button --

23             THE COURT:  You pay the mortgage

24  electronically, and every month you pay your

1    expenses on that lake house through an account,

2    and your accountant has already set up a program

3    that records all those payments.  And, in fact,

4    at the end of the tax year is able to issue as I

5    understand it in today's world, they issue 1099s

6    for people that do work for you.

7             MR. CURTIN:  Yes, Your Honor.

8             THE COURT:  So it's able to do

9    that.  But is that -- is that all under the

10    automatic idea of the patent?

11             MR. CURTIN:  Well, Your Honor, I'm

12    not sure if any of that would necessarily fall

13    within the scope of the claims, but just to

14    focus on the automatic issue, I think what

15    you're describing, Your Honor, the answer is if

16    you're clicking buttons to make individual

17    payments like I, for example, do electronic

18    banking sometimes and I go to my account and

19    they will allow to you make payments

20    electronically from your account, you enter in

21    the information, you have already set it up with

22    who the payee is, you enter in the amount of the

23    payment and the date you want to have it paid,

24    so those are the --

1          THE COURT:  You do it all by wire

2    transfer.

3          MR. CURTIN:  You hit the button

4    and the bank is telling you on X date we will

5    send this much money from your account, that's

6    happening automatically after you have initiated

7    it.

8          THE COURT:  And I can have a

9    program that if I put it under a certain

10   notation it will treat it as an expense on my

11   program for the end of the year.

12         MR. CURTIN:  Well, then that tax

13   program is doing that automatically, Your Honor.

14         THE COURT:  Does that infringe the

15   patent?

16         MR. CURTIN:  Based on the

17   description you have said, Your Honor, I don't

18   think so, because the patent is focusing on

19   automatic tax reporting, not on the details of

20   individual accounting.

21         THE COURT:  So then when I --

22   automatic only kicks in for purposes of

23   infringement when I push the button to send it

24   to the IRS.

1          MR. CURTIN:  Well, Your Honor,

2     that depends on the claim.  I mean, taking this

3     out of the context if I can, because I think

4     it's important to be clear on this, of the

5     example we're working with, the claims of the

6     '052 patent, all except Claim 20 do have a

7     filing step, so certainly to the extent -- I

8     know you're not doing an infringement analysis

9     here, but to the extent you're talking about

10    falling within the scope of the claims, yes, you

11    do have to file with the IRS to fall within

12    Claims 1 and 19.  I think Claim 20 does not have

13    a filing step, that's a separate kind of claim.

14          But that -- but then what you do

15    is you have to look at each element of course to

16    see whether with regard to whatever transaction

17    we're talking about, you have connected

18    electronically your computer to the tax data

19    provider, collected tax data electronically, and

20    that's different than just your bank account

21    information, or a payment you made to a -- and

22    that's something the process actually makes

23    clear, that's different from a given payment you

24    might make to a creditor.

1          Whether it's processed

2     electronically to turn it into a tax-return, to

3     compute your liability and to prepare it

4     electronically to turn it into a tax return, all

5     those steps have to be met in order to meet the

6     requirement of the patent claims.  And all those

7     steps -- so that's a little different.

8          It's not possible for me really to

9     answer the question whether what you have

10    described falls within the scope, would infringe

11    the patent or falls within the scope of the

12    patent, because you have to look at the patent

13    as a whole.

14          We don't want to fall into the

15    mistake that I think Block makes in their

16    presentation of looking at a particular claim

17    term in isolation.  And that's the falsity of

18    some of their analogies and their briefing,

19    their Claim 20 scenario about the person who

20    gets a W-2 by E-mail, or their scenario about

21    the accountant using a calculator could somehow

22    infringe the claims.  Just not so because the

23    fact that electronically has a certain plain

24    meaning, so it's doing that electronically in

1    the broadest sense of the term doesn't mean it

2    meets the claim language.

3              You have to connect --

4              THE COURT:  I think what we're

5    saying, for instance, is when the vendor who

6    repaired the roof at the lake house transmits by

7    E-mail the statement for that work, that they

8    say that that's within the claims, I think.

9              MR. CURTIN:  Well, I would certain

10   --

11             THE COURT:  It's electronically

12   generated.  It's a tax data collection, because

13   I'm collecting an expense item.  Is that what

14   you think?

15             MR. STANDLEY:  Well, Your Honor --

16             THE COURT:  I don't want to

17   characterize your argument.

18             MR. STANDLEY:  That's fine.  Your

19   Honor, the example you gave of an E-mail coming

20   in from the man who repairs the roof, because

21   it's in the form of an E-mail, the person

22   preparing the tax return is going to have to

23   take it from site and input it with their

24   fingers through the keyboard into the program,

1    so we're saying that is not automatic because

2    the person is having to manually input that

3    roofer's invoice.

4               MR. CURTIN:  On that point, Your

5    Honor, Simplification would agree, and that

6    actually parallels an argument that was made

7    before the Board of Patent Appeals that that is

8    not being performed automatically.

9               So I believe in that particular

10   example, that is not something that -- that

11   likely is not something that itself would fall

12   within the scope of the claims.

13              MR. STANDLEY:  Your Honor, I do

14   believe that Mr. Sartori answered your question

15   when he spoke to the Board of Patent Appeals,

16   and I believe I have an answer, if I may display

17   it.

18              THE COURT:  Sure.  Did you want to

19   add anything else?

20              MR. CURTIN:  No, Your Honor.  I'm

21   done.

22              THE COURT:  All right.  Thank you.

23              MR. STANDLEY:  I apologize for our

24   personal mark ups.

1              THE COURT:  Looks like you're

2      working that testimony there.

3              MR. STANDLEY:  Judge Medley said

4      so why is that not manual?  I'm quoting from the

5      Board of Patent Appeals oral hearing, continuing

6      the quote, they have to click on a mouse.  They

7      have to input numbers, let's say my account

8      number.  That's manual, according to what you're

9      saying is manual.  Mr. Sartori on behalf of

10     Simplification responded and he said, We

11     completely agree with that.  That is manual.

12     And that is step 11 in the patent.  Step 11

13     talks about the manual part of it.  It is the

14     engaging part.  It's the initiation, the

15     starting of it.  You need to tell the software

16     what your account number is, what your pass code

17     is.  And then once it receives the

18     information -- and, Your Honor, this is very

19     important --  it automatically goes through not

20     one, not two, it says all the steps in the

21     process.  It goes out to the tax data provider,

22     collects the tax data, processes the tax data

23     and prepares the electronic tax return.

24              Your Honor, you asked, how can you

1     prepare an electronic tax return unless you have

2     gone out and gotten all of that information your

3     wife has assembled on her table top as she's

4     doing your taxes, the scenario you describe,

5     this patent is talking about taking all that

6     paper off your wife's desk, getting rid of it

7     and going out and getting it all from the tax

8     data providers sufficient to prepare the

9     electronic tax return.

10                    And we just don't know of anyone

11    doing that.  But that's what's patented here.

12    That is the idea.  And I think Mr. Sartori very

13    clearly states, it goes automatically through

14    all the steps in the process once you get the

15    account numbers, once you get that setup phase

16    done, then you just flip the switch and away it

17    goes.

18                    MR. CURTIN:  If I could, Your

19    Honor?

20                    THE COURT:  Sure.

21                    MR. CURTIN:  I want to make one

22    more point in connection with this language and

23    I don't have the highlighted or marked up

24    version like Mr. Standley does, but I think it's

1    important to also read this passage in light of

2    the rest of the patent specification, where it's

3    true here, he says, you initiate, you tell the

4    software, you give it your account number and

5    then it goes out and it connects to the tax data

6    provider, collects that tax data, processes that

7    tax data and prepares the electronic tax return.

8            But look at that in the context of

9    the specification, Your Honor.  The

10   specification makes it clear that there could --

11   in fact, that's one of the diagrams that we

12   talked about, there can be many, many tax data

13   providers, so you have to do this, many tax

14   payers would have to do this again and again and

15   again.

16           This statement does not mean that

17   bingo, the tax return is prepared and it is done

18   and it is ready to be filed because that is

19   omitted, it doesn't mean the tax return is all

20   done, it means that you have -- after you tell

21   -- after you identify a tax data provider and

22   you hit the button, it reaches out

23   automatically, connects to the tax data

24   provider, collects that data back, like a

1    simplest example is a W-2 with the IRS, it

2    collects your W-2 data back, and then it takes

3    that information and it processes it like a tax

4    preparation program does.  It puts it in the

5    right places and does the computations necessary

6    to help prepare the tax return, but your tax

7    return is not necessarily done.

8            And the specification makes it

9    clear, you may have to do this over and over

10   again for different tax data providers.  If you

11   look at the definitions in the steps for

12   preparing the electronic tax return, they're

13   talking about a process, Your Honor, not the end

14   result.  The end result comes in when you have a

15   finished tax return, whatever, and I know we're

16   disputing this, and it's getting late, I don't

17   want to misspeak, Block is talking about

18   completed tax return, but whenever the tax

19   return is ready for filing in whatever state it

20   is, then you hit the button to file.  But this

21   does not mean and it does not say that after you

22   initiate the process in step 11 there is no more

23   manual intervention.

24            See, automatically goes through

1      the steps in the process.  The individual -- and

2      we have already said that those steps, the

3      recited steps in the claims must be performed

4      automatically.  That does not preclude the

5      possibility of all -- any kind of manual

6      intervention.  It doesn't preclude the need to

7      circle back and do it again.  It doesn't

8      preclude the possibility of intervening steps or

9      for all the reasons we talked about today,

10     column six the references to --

11            THE COURT:  When I read your

12     papers and looked at this, I understood clearly

13     your argument in the context of what I'll call a

14     W-2 filer.  Block raised this testimony in some

15     arguments about -- that puts in your mind folks

16     that aren't necessarily schedule filers, but in

17     any given year of a tax year might be an

18     enhanced W-2 filer.

19            And then when you go to the

20     specifications and you try to read them with

21     that kind of an understanding as opposed to the

22     W-2 filer, that's when you start to have a

23     little difficulty in both your arguments, fully

24     automated and automatic, and the concept of

1     electronically.

2               But you have been helpful in

3     answering the questions and your arguments

4     today.  And a lot of people saying just give us

5     ten percent of what you made, we would all be

6     out of business here.

7               MR. CURTIN:  That's true, Your

8     Honor.

9               THE COURT:  Isn't that the flat

10    tax, ten percent, or fifteen percent.  But I

11    appreciate your arguments.  You have been

12    helpful.

13              MR. CURTIN:  Thank you, Your

14    Honor.

15              THE COURT:  Thank you.

16              MR. STANDLEY:  Thank you.

17              MR. CURTIN:  Your Honor, if I

18    could, one question on another issue if I may.

19    If it would be possible for the Court to clarify

20    for my understanding, because I am not Delaware

21    counsel, the Court's policy or practice

22    regarding depositions, party depositions.  Is it

23    the case that in the absence of agreement

24    between the parties otherwise, is it typically

1    held in the forum or do you normally do things

2    differently?

3            THE COURT:  If there is a dispute,

4    it would typically be the practice to tell them

5    to hold it in the jurisdiction here.

6            MR. CURTIN:  Thank you, Your

7    Honor.

8            THE COURT:  Are you having a

9    dispute?

10            MR. CURTIN:  I don't know yet.

11            MR. STANDLEY:  Your Honor, we have

12    an executive who is going to be giving testimony

13    and it's very difficult for him to leave Kansas

14    City.  He's going to give the testimony, but we

15    would like to do these depositions in Kansas

16    City.  And I have been doing this for twenty

17    years and the parties always tend to agree that

18    his depositions will be at his office and mine

19    will be at my office.

20            THE COURT:  Typically that's what

21    happens between parties.  You know, when you're

22    sitting on this side of the bench, if you try to

23    parse it to each case, you would have no

24    consistent theme that would be fair.  So when

1    parties can't operate under the normal practice

2    of noticing, in other words, if it's in Kansas

3    City, you notice there or notice here, the only

4    rule that you can have that kind of works, if

5    you have an argument, then it's in Delaware.

6              It's not a great solution, but it

7    is consistent, one of my kid says, consistent

8    and dumb, but you know, that's all we can do.

9              MS. GRAHAM:  Must be a teenager.

10             THE COURT:  Exactly.  But adults,

11    they're even doing it now.  You know, it's hard

12    to work these out, you don't want to go to

13    Kansas City.  I have been to Kansas City.  They

14    have great steaks at The Stockyard.

15             MR. CURTIN:  I know the food is

16    fantastic.  It's something the parties are

17    continuing to discuss.

18             THE COURT:  Try to work it out.

19    If not, then you got to revert to that default

20    position of Delaware.

21             MR. CURTIN:  Thank you.

22             THE COURT:  Thank you.

23             (Court adjourned at 5:23 p.m.)

24

1    State of Delaware      )
                            )
2    New Castle County      )

3

4                    CERTIFICATE OF REPORTER

5

6         I, Dale C. Hawkins, Registered Merit
     Reporter and Notary Public, do hereby certify that
7    the foregoing record is a true and accurate
     transcript of my stenographic notes taken on June 5,
8    2008, in the above-captioned matter.

9         IN WITNESS WHEREOF, I have hereunto set my
     hand and seal this 15th day of June, 2008, at
10   Wilmington.

11

12   _____
                    Dale C. Hawkins, RMR

13

14

15

16

17

18

19

20

21

22

23

24