IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| SIMPLIFICATION, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | C.A. No. 03-355 (JJF) |
| v. | ) | C.A. No. 04-114 (JJF) |
| | ) | |
| BLOCK FINANCIAL CORPORATION, and | ) | **CONFIDENTIAL –** |
| H&R BLOCK DIGITAL TAX SOLUTIONS, | ) | **FILED UNDER SEAL** |
| INC., | ) | REDACTED PUBLIC VERSION |
| | ) | |
| Defendants. | ) | |

## OPENING BRIEF OF MOTION OF DEFENDANTS BLOCK FINANCIAL CORPORATION AND H&R BLOCK DIGITAL TAX SOLUTIONS, INC. FOR SUMMARY JUDGMENT

YOUNG CONAWAY STARGATT & TAYLOR LLP
John W. Shaw (#3362)
Karen L. Pascale (#2903)
Karen E. Keller (#4489)
Jeffrey T. Castellano (#4837)
The Brandywine Building
1000 West Street, 17th Floor
P.O. Box 391
Wilmington, DE 19899
Telephone: (302) 571-6600

- and -

Jeffrey S. Standley
F. Michael Speed, Jr.
Mark R. Engle
STANDLEY LAW GROUP LLP
495 Metro Place South, Suite 210
Dublin, OH 43017
(614) 792-5555

*Attorneys for Defendants,*
*Block Financial Corporation and*
*H&R Block Digital Tax Solutions, Inc.*

DATED: October 31, 2008

REDACTED PUBLIC VERSION FILED
NOVEMBER 6, 2008

# TABLE OF CONTENTS

I.    NATURE AND STAGE OF THE PROCEEDINGS ................................................. 1

II.   SUMMARY OF THE ARGUMENT ................................................................. 1

III.  STATEMENT OF UNDISPUTED FACTS ........................................................ 3

IV.   ARGUMENT ............................................................................................ 6

      A.    LEGAL STANDARD FOR SUMMARY JUDGMENT ................................ 6

      B.    BLOCK IS ENTITLED TO SUMMARY JUDGMENT THAT
            THE PATENTS-IN-SUIT ARE NON-ENABLING ..................................... 6

      C.    BLOCK IS ENTITLED TO SUMMARY JUDGMENT THAT THE
            ASSERTED CLAIMS OF THE PATENTS-IN-SUIT ARE
            INDEFINITE ................................................................................... 10

            1.    The Extent of Automation Required to Infringe the
                  Claims of the Patents-in-Suit Is Indefinite ......................... 13

            2.    Claims 15-18 of the '052 Patent and Claims 1-9 of the
                  '787 Patent are Means-Plus-Function Claims
                  Claiming Computer Implemented Functions for which
                  no Corresponding Structure is Provided and are
                  Therefore Indefinite ........................................................ 18

      D.    BLOCK IS ENTITLED TO SUMMARY JUDGMENT THAT IT DOES
            NOT INFRINGE THE PATENTS-IN-SUIT .............................................. 21

      E.    BLOCK IS ENTITLED TO SUMMARY JUDGMENT THAT IT HAS
            NOT WILLFULLY INFRINGED THE PATENTS-IN-SUIT ....................... 25

V.    CONCLUSION ......................................................................................... 26

# TABLE OF AUTHORITIES

**Cases**                                                                                           **Page**

*ABB Automation, Inc. v. Schlumberger Resource Management
    Services, Inc.*, 254 F. Supp. 2d 479 (D. Del. 2002) ....................................................6

*Advanced Medical Optics, Inc. v. Alcon, Inc.*, 361 F. Supp. 2d 404
    (D. Del. 2005) ....................................................................................................21, 22

*Allen Eng. Corp. v. Bartell Industries, Inc.*, 299 F.3d 1336
    (Fed. Cir. 2002) ....................................................................................................11

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986) ..........................................6

*Aristocrat Technologies Australia Pty Ltd. v. International Game
    Technology*, 521 F.3d 1328 (Fed. Cir. 2008) ........................................12, 18, 19, 20

*Atmel Corp. v. Information Storage Devices, Inc.*, 198 F.3d 1374
    (Fed. Cir. 1999) ....................................................................................................19

*Finisar Corp. v. DirecTV Group, Inc.*, 523 F.3d 1323 (Fed. Cir. 2008) ...............18, 19

*Genetech, Inc. v. Novo Nordisk A/S*, 108 F.3d 1361 (Fed. Cir. 1997) ....................7

*Halliburton Energy Services, Inc. v. M-I LLC*, 514 F.3d 1244
    (Fed. Cir. 2008) ....................................................................................................11, 12

*Harris Corp. v. Ericsson, Inc.*, 417 F.3d 1241 (Fed. Cir 2005) ...............................12

*In re %2C318 Patent Infringement Litig.*, Civ. No. 05-356-SLR,
    2008 WL 4376445 (D. Del. Sept. 26, 2008) ............................................................7

*In re Donaldson, Co.*, 16 F.3d 1189 (Fed. Cir. 1994) ..........................................12

*In re Mayhew*, 527 F.2d 1229 (CCPA 1976) ....................................................7, 10

*In re Seagate Technology, LLC*, 497 F.3d 1360 (Fed. Cir. 2007) .........................25

*Markman v. Westview Instruments, Inc.*, 52 F.3d 967 (Fed. Cir. 1995) ...............21

*Net Moneyin, Inc. v. Verisign, Inc.*, No. 2007-1565, 2008 WL 4614511
    (Fed. Cir. Oct. 20, 2008) ....................................................................................12, 18

*Ormco Corp. v. Align Tech., Inc.*, 498 F.3d 1307 (Fed. Cir. 2007)..........................................10, 11

*WMS Gaming, Inc. v. International Game Technology*, 184 F.3d 1339
  (Fed. Cir 1999)...................................................................................................................19

**Statutes and Other Authorities**

37 C.F.R. §1.198.......................................................................................................................25

35 U.S.C. § 112.....................................................................................................................passim

MPEP §1214.04.........................................................................................................................25

MPEP §2164.08(c)................................................................................................................7, 10

DB01:2649304.1                                                                                                 062255.1001

## EXHIBITS

Exhibit A - United States Patent No. 6,202,052

Exhibit B - United States Patent No. 6,697,787

Exhibit C - Markman Hearing Transcript

Exhibit D - Oral Hearing Before the Board of Patent Appeals and Interferences (BPAI)

# I.    NATURE AND STAGE OF THE PROCEEDINGS

This is a patent infringement suit alleging that Block has infringed Simplification's United States Patent No. 6,202,052 and United States Patent No. 6,697,787. Fact discovery in the case closed on June 30, 2008. Briefing on claim construction is complete and a *Markman* hearing was held on June 5, 2008. A claim construction order is pending. All case dispositive motions are due October 31, 2008. A pretrial conference is set for January 8, 2009 and the trial is scheduled to commence on February 9, 2008.

Simplification has indicated its assertion of claims 1–2 and 6–20 of the '052 patent and claims 1–18 of the '787 patent against Block. Both the '052 patent and the '787 patent are currently in reexamination and at present all claims in both patents stand rejected. Block has filed a Motion to Reinstate the Stay pending the outcome of reexamination. Pursuant to Federal Rule of Civil Procedure 56, Block now moves for summary judgment that the patents-in-suit are invalid for failing to satisfy the enablement requirement of 35 U.S.C. §112, ¶1, that claims 1–2 and 6–20 of the '052 patent and claims 1–18 of the '787 patent are invalid for failing to satisfy the definiteness requirement of 35 U.S.C. §112, ¶ 2, that Block has not infringed the patents-in-suit, and that Block has not willfully infringed the patents-in-suit.

# II.    SUMMARY OF THE ARGUMENT

1.    The claims of the patents-in-suit fail to meet the enablement requirement of the patent statute. 35 U.S.C. §112, ¶1 requires that a patent be supported by an enabling disclosure. When an invention has a critical element, yet that critical element is not covered by the patent's claims, the claims do not satisfy 35 U.S.C. §112, ¶1. The

invention of the patents-in-suit is not functional unless a taxpayer identifies and provides information to the system about "tax data providers." While the specifications of the patents-in-suit indicate that this step is necessary, it is not included within any of the patents' claims. Thus, a critical step of the invention of the patents-in-suit is excluded from the claims; the claims of the patents-in-suit do not satisfy §112, ¶1 and are therefore non-enabling and invalid.

2.      The claims also fail to satisfy the definiteness requirement of §112, ¶2. Section 112 of the patent statute requires patent claims to be sufficiently particular and definite to point out to a person of ordinary skill in the art what are the metes and bounds of the claimed invention, *i.e.*, what the patentee regards as his invention. These patents claim a system for automated tax reporting. Over the course of this litigation, much debate has taken place over the extent of automation required by the claimed system. However, if the claimed invention is construed by the Court to be anything less than fully-automated, the patents-in-suit do not provide disclosures that permit one skilled in the art to understand the bounds of what is being claimed; therefore, the asserted claims of the patents-in-suit are indefinite.

The means-plus-function claims of the patents-in-suit are additionally indefinite. Simplification has utilized means-plus-function language to claim computer-implemented inventions, but has failed to disclose the algorithms utilized by the computers in performing the claimed functions. The Federal Circuit has held that when a computer-implemented invention is claimed with means-plus-function terminology, the algorithm utilized by the computer in performing the stated function must be disclosed for the claim to be definite under §112, ¶2. The means-plus-function claims of the patents all claim a

computer-implemented invention, however, nowhere in the specifications or in the prosecution histories of the patents is there an algorithm provided that is utilized by the computer in performing the stated functions. The asserted means-plus-function claims of the patents are indefinite and therefore invalid under §112, ¶2.

3.     Moreover, even if the patents-in-suit are valid (which they are not), Block has not infringed the patents-in-suit. Utilizing the claim constructions proposed by Block, the patents-in-suit claim a fully-automated system. Block's accused products, OTP and TaxCut, are not – and never have been – fully-automated. Infringement of the patents-in-suit cannot be found literally or under the doctrine of equivalents because Block's systems do not possess the fully-automatic elements required by the patent claims.

4.     Finally, it cannot be found that Block has willfully infringed the patents-in-suit. A finding of willful infringement requires a clear and convincing showing that the infringer acted despite an objectively high likelihood that its actions constituted infringement of a valid patent. The patents-in-suit stand freshly rejected in reexamination. It cannot be shown that Block had reason to believe the patents-in-suit are valid when the United States Patent and Trademark Office has yet to rule them as such. The showings required to find willful infringement cannot be made in this case.

## III.     STATEMENT OF UNDISPUTED FACTS

1. United States Patent No. 6,202,052 (the '052 patent) entitled "Fully-automated system for tax reporting, payment, and refund" issued on March 13, 2001 and has been assigned to Simplification. A copy of the '052 patent is attached hereto as Exhibit A.

2. The '052 patent has 20 claims, four of which are independent.

3

3. Simplification asserts that claims 1–2 and 6–20 of the '052 patent are infringed by the accused software.

4. United States Patent No. 6,697,787 (the '787 patent) entitled "System for collecting tax data" issued on February 24, 2004 and has been assigned to Simplification. A copy of the '787 patent is attached hereto as Exhibit B.

5. The '787 patent has three independent claims.

6. Simplification asserts that claims 1 – 18 of the '787 patent are infringed by the accused software.

7. The '787 patent is a continuation of the '052 patent. The specification of the '052 patent is identical to the specification of the '787 patent.

Facts Regarding the Issue of Enablement

8. In the common specification, the detailed description describes a series of steps, including steps 11-19.

9. In the common specification, all of the disclosed embodiments include step 11.

10. In step 11, the taxpayer provides the electronic intermediary with information on tax data providers.

11. The Brief Description of the Drawings states that Fig. 1 "illustrates the procedure of the invention."

12. Box 11, the uppermost box in Figure 1, contains the words "Provide information on the tax data providers."

13. None of the asserted claims recite the step of providing information on the tax data providers.

### Facts Regarding Indefiniteness

14. The structure provided for implementing the means-plus-function includes a data processing system comprising a general purpose computer programmed with code segments to operate the general purpose computer.

### Facts Regarding the Issue of Infringement

15. Simplification has accused Block's TaxCut Software and Online TaxCut Program ("OTP") of infringing its '052 patent and its '787 patent.



REDACTED

## IV. ARGUMENT

### A. LEGAL STANDARD FOR SUMMARY JUDGMENT

Federal Rule of Civil Procedure 56(c) provides, in pertinent part, that summary judgment:

> ... shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.

A fact is material if it might affect the outcome of the suit. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–248 (1986). Once the moving party has demonstrated an absence of material fact, the nonmoving party must come forward with specific facts showing there is a genuine issue for trial. *ABB Automation Inc. v. Schlumberger Resource Management Services, Inc.*, 254 F. Supp.2d 479, 481 (D. Del. 2002). The mere existence of some evidence in support of the nonmoving party is not sufficient for denial of a motion of summary judgment. *Id.* To the contrary, to avoid summary judgment there must be enough evidence for the jury to find for the nonmoving party on that issue. *Id.* (citing *Anderson*, 477 U.S. at 249).

There is an absence of material fact as to the non-enablement of the asserted claims, the indefiniteness of the patents-in-suit, Block's lack of willfulness, and the non-infringement of the '052 and '787 patents. Block is therefore entitled to summary judgment on these issues.

### B. BLOCK IS ENTITLED TO SUMMARY JUDGMENT THAT THE PATENTS-IN-SUIT ARE NON-ENABLING

The claims of a patent must be supported by an enabling disclosure. 35 U.S.C. §112, ¶ 1. In relevant part, §112, ¶ 1 provides:

6

> The specification shall contain a written description of the invention and of the manner and process of making and using it, in such full, clear, concise and exact terms as to enable any person skilled in the art to which it pertains, or with which it is most nearly connected, to make and use the same.

To satisfy the enablement requirement, a specification must teach those skilled in the art how to make and to use the full scope of the claimed invention without undue experimentation. *In re %2C318 Patent Infringement Litig.*, Civ. No. 05-356-SLR, 2008 WL 4376445, *18 (D. Del. Sept. 26, 2008) (citing *Genetech, Inc. v. Novo Nordisk A/S*, 108 F.3d 1361, 1365 (Fed. Cir. 1997)). Enablement is determined as of the filing date of the patent application. *In re %2C318 Patent Infringement Litig.*, 2008 WL 4376445 at *18.

Section 2164.08(c) of the Manual of Patent Examining Procedure (the "MPEP") provides:

> A feature which is taught as critical in a specification and is not recited in the claims should result in a rejection of such claims under the enablement provision section of 35 U.S.C. 112. *See In re Mayhew*, 527 F.2d 1229, 1223 (CCPA 1976). In determining whether an unclaimed feature is critical, the entire disclosure must be considered. If a Court finds that as a matter of law, a critical feature of an invention has not been claimed, the Court should invalidate the patent for failing to satisfy the enablement requirement of §112, ¶ 1.

*See In re Mayhew*, 527 F.2d 1229 (CCPA 1976). In order for the inventions described in the patents-in-suit to work, a taxpayer must identify and provide information to the system about "tax data providers." The specification illustrates the operation of the invented system through the use of a flowchart:



11   Provide information on the tax data providers

12   Collect tax data from tax data providers

13   Process the tax data

14   Prepare electronic tax returns

15   File electronic tax returns

Step 11 is described as follows at Col. 4, ll. 34-50.:

DB01:2649304.1

062255.1001

In step **11**, the taxpayer **20** provides the electronic intermediary **21** with information on tax data providers. As used hereinafter, the term "taxpayer" refers to an individual or other entity, such as a trust, estate, corporation, or partnership, who has tax liability or must file a tax return. The term "electronic intermediary" refers to a data processing system comprising a general purpose computer and a computer program, as described above, for performing the invention. The term "tax data provider" refers to each party that has tax information relevant to the taxpayer's tax liability or tax reporting obligations. Non-limiting examples of tax data providers include the taxpayer's employers **22**, partnerships, banks **23**, savings and loans institutions, mortgage institutions, credit card bureaus, thrift institutions, security brokerage firms **24**, mutual fund holding institutions, charities **25**, and federal, state, local, and foreign taxing authorities **27**.

Step 11 is not optional; without step 11, the claimed invention cannot operate. As is disclosed by the common specification of the patents, "[t]he information provided by the taxpayer to the electronic intermediary may include identification... so that electronic data networks, such as the Internet, or electronic data bases may be searched by the electronic intermediary for the tax payer's tax data." Col. 4, ll. 51 – 56. Alternatively, the taxpayer can specifically identify the tax data providers. Col. 4, ll. 56 – 60. Without this information, the system of the patents-in-suit cannot find the tax data required to complete the taxpayer's return. While step 11 is described in detail in the specification, it is <u>not claimed</u>. Independent claim 1 of the '052 patent states as follows:

1. *A method for automatic tax reporting by an electronic intermediary comprising:*

   *connecting electronically said electronic intermediary to a tax data provider;*

   *collecting electronically tax data from said tax data provider;*

   *processing electronically said tax data collected electronically from said tax data provider to obtain processed tax data;*

   *preparing electronically an electronic tax return using said processed tax data;*

9

*connecting electronically said electronic intermediary to a taxing authority; and*

*filing electronically said electronic tax return with said taxing authority.*

Claim 1 of the '052 patent is not operational as claimed because the critical element that the taxpayer provide information about a tax data provider is missing. The absence of this critical element from the claim should result in a rejection of claim 1 under the enablement section of 35 U.S.C. § 112. MPEP 2164.08(c); *see also In re Mayhew*, 527 F.2d at 1333 (concluding that "claims which fail to recite the use of a [critical element] are not supported by an enabling disclosure"). As can be seen by referencing the attached patents, claims 15, 19, and 20 of the '052 patent and claims 1, 10, and 15 of the '787 patent are the other independent claims of the patents-in-suit. *See* Ex. A; Ex. B. Like claim 1 of the '052 patent, none of these independent claims includes the critical element that the taxpayer provide information about a tax data provider. *Id.* Furthermore, this critical element is not provided by any of the dependent claims of the patents-in-suit. *Id.*

Just as in *Mayhew*, the asserted claims of the patents-in-suit are lacking a required element. If step 11, the act of providing information about tax data providers, is not performed, the claimed invention cannot operate. Moreover, the specification provides no enabling disclosure for an invention without that step. Accordingly, the asserted claims are not enabled, and they are therefore invalid.

### C. BLOCK IS ENTITLED TO SUMMARY JUDGMENT THAT THE ASSERTED CLAIMS OF THE PATENTS-IN-SUIT ARE INDEFINITE

Throughout this litigation, Block has consistently argued that the claims of the patents-in-suit are directed to a fully-automated system for tax reporting (i.e., a system, method and apparatus which operates without manual input after initiation). *See Ormco*

10

*Corp. v. Align Tech., Inc.*, 498 F.3d 1307, 1316 (Fed. Cir. 2007) ("Although their claim language does not expressly recite automatic control of the finish tooth positioning, that is what they mean, and that is all that the specification describes; the specification does not support operator positioning."). Although its specification is devoid of post-initiation manual input, Simplification continues to insist that the asserted claims read on partially automated systems, even those requiring substantial manual input. However, Block contends that if the claims are construed by this Court to read on anything broader than a fully-automated system, they will be indefinite. If so construed, the asserted claims are indefinite because they fail to indicate any cognizable boundaries for discerning when the automated process begins and when it ends.

The second paragraph of section 112 provides that "the specification of a patent shall conclude with one or more claims that particularly points out and distinctly claims the subject matter which the applicant regards as his invention." 35 U.S.C. §112, ¶2. The Court of Appeals for the Federal Circuit has held that §112, ¶2 contains two requirements: (1) the claim must set forth what the applicant regards as his invention; and (2) the claim must be sufficiently definite. *Allen Eng. Corp. v. Bartell Industries, Inc.*, 299 F.3d 1336, 1348 (Fed. Cir. 2002). In determining whether a claim satisfies the definiteness requirement of §112, ¶2 the Court should analyze whether one skilled in the art would understand the bounds of the claim when read in light of the specification. *Id.* The purpose of the definiteness requirement is to ensure that the claims delineate the scope of the invention using language that adequately notifies the public of the patentee's right to exclude. *See Halliburton Energy Services, Inc. v. M-I LLC*, 514 F.3d 1244, 1249 (Fed. Cir. 2008).

Paragraph six of §112 permits the use of means-plus-function language in patent claims. *See In re Donaldson Co.*, 16 F.3d 1189, 1195 (Fed. Cir. 1994); 35 U.S.C. § 112 (2000). A claim element that contains the word "means" and recites a function is presumed to be drafted in means-plus-function format under §112, ¶6. *Net Moneyin, Inc. v. Verisign, Inc.*, No. 2007-1565, 2008 WL 4614511, *4 (Fed. Cir. Oct. 20, 2008). The presumption that a claim is drafted in means-plus-function language is rebutted only if "the claim itself recites sufficient structure to perform the claimed function." *Id.* One using means-plus-function language must satisfy the requirement of §112, ¶2 that a claim particularly point out and distinctly claim the invention. *Id.*

In order to satisfy §112, ¶2, the scope of a means-plus-function claim limitation must be defined by a structure that is disclosed by the specification plus any equivalents of that structure. *Aristocrat Technologies Australia Pty Ltd. v. International Game Technology*, 521 F.3d 1328, 1331 (Fed. Cir. 2008). A "'computer implemented means-plus-function term is limited to the corresponding structure disclosed in the specification and equivalents thereof, and the corresponding structure is the algorithm.'" *Id.* at 1333 (quoting *Harris Corp. v. Ericsson Inc.*, 417 F.3d 1241, 1253 (Fed. Cir. 2005)) (emphasis added).

Whether or not a claim is invalid based on indefiniteness is a question of law that may appropriately be decided on summary judgment. *See Halliburton Energy Services, Inc.*, 514 F.3d at 1244. Block contends that unless the asserted claims are construed in light of the fully-automated invention described in the specification, the claims of the patents-in-suit do not permit one of ordinary skill in the art to ascertain the degree to which the claims require automation.

DB01:2649304.1                                                                    062255.1001

Furthermore, Block submits that the asserted means-plus-function claims are indefinite. The means-plus-function elements in the claims are directed to computer-implemented steps. However, the patents-in-suit fail to disclose a single algorithm to perform the stated function. Accordingly, the asserted means-plus-function claims of the '052 patent and the '787 patent are indefinite and therefore invalid and unenforceable.

## 1. The Extent of Automation Required to Infringe the Claims of the Patents-In-Suit Is Indefinite

During the Markman Hearing on June 5, 2008, this Court asked Simplification's counsel, Mr. Curtin, the following question:

> THE COURT: Here is my question, make it even simpler. I'm trying to stay away from infringement analysis, but I'm trying to understand automatic on your side of the case. I see people tweaking the documents, the data, and the end result product going to the government throughout the process. You're telling me that there is this striking point when it becomes automatic. I'm trying to get some general idea when what you're calling automatic kicks in. Your friends on the other side say, listen, you tried to invent something that was fully automatic and it doesn't really exist, but that's what you are describing that the tax data is supposedly electronically available kicked you in, that contradicts the idea of sitting in this room with all these papers around you, but you seem to have an idea of when automatic begins.

Markman Hearing Transcript at 106 (hereby attached to this Motion as Exhibit C). By its questions, the Court exposed a fundamental problem with Simplification's partially automated position. That is, if Simplification's claims are directed at something less than a fully automated system, what are the metes and bounds of that automation?

Based on the patent specification and the prosecution history, Block contends that post-initiation manual intervention is inconsistent with the asserted claims. The "Background of the Invention" section asserts the shortfalls of partially-automated

13

systems of the past as a failure to achieve full automation. *See* Col. 2, ll. 15-17

("However, despite these technological advances, the potential for fully-automated tax

reporting has not yet been realized for several reasons."). In response, the common

patent specification describes a fully-automated invention for tax reporting, payment, and

refund. *See* "Summary of the Invention", Col. 3, ll. 21-24. In the only described

embodiments, the only manual input that is described occurs when a user enters personal

identification information and/or information on tax data providers (*see* Col. 4, l. 51- Col.

5, l. 2) to initiate the process. *See* Col. 4, l. 51- Col. 5, l. 2. After that point, the process

continues without human intervention until a completed electronic tax return is prepared.

*See* Col 5, l. 50-Col. 6, l. 61. Throughout that process, there is no suggestion of

intervening manual input anywhere in the patent.

Other than in the context of a fully automated process, the asserted claims provide

no basis for delineating the metes and bounds of automation necessary to infringe the

claims. For example, claim 10, a representative claim from the '787 patent, recites:

> *10. A computer-readable medium embodying a computer program for collecting tax data, said computer program comprising code segments for:*
>
> *connecting electronically an electronic intermediary to a tax data provider;*
>
> *collecting electronically tax data from said tax data provider;*
>
> *processing electronically said tax data collected from said tax data provider to obtain processed tax data; and*
>
> *preparing electronically an electronic tax return using said processed tax data.*

Claim 10, '787 patent. Like the representative claim above, all the claims of the patents-in-suit contain four basic core elements including: "connecting electronically," "collecting electronically," "processing electronically," and "preparing electronically." Other than reciting the term "electronically," the claims provide no detail whatsoever about how the elements function together in an automated manner. In reading the claim, a person having ordinary skill in the art has no idea when automation begins and when it ends.

The vagueness of the asserted claims has resulted in nuanced and confusing arguments by Simplification. This confusion has been particularly apparent in the reexamination proceedings and the instant litigation.[1] Depending on the forum, Simplification has argued at times that its invention is fully automated (i.e., without manual intervention) and at other times that its invention is only partially automated.

For example, when arguing around partially automated prior art systems discussed at their Oral Hearing before the BPAI, Simplification asserted that no manual input could occur outside of initiation step 11:

> JUDGE LEE: All right. What about how does the tax preparer make sure that information is collected to determine whether the taxpayer has a special tax case?
>
> MR. SARTORI: I'm sorry. Could you repeat that again?

---

[1] At one particularly telling moment in the Oral Hearing before the BPAI, Judge Lee stated:

> *JUDGE LEE: See, you talk like we should be understanding this just by reading the little text you have here. But don't you need more description in order for us to catch that meaning? Aren't you asking us to read a lot from just a few words? You want us to have that specific understanding, that "automatic" just has to mean this but not that. It covers this but not that. I mean, where is it coming from?*

Oral Hearing at 18. (Exhibit D).

JUDGE LEE: The tax preparer ensures that information is collected to determine whether the taxpayer has a special tax case.

MR. SARTORI: Oh, on column 5. Okay, I got you. I'm sorry.

JUDGE LEE: Can you explain that?

MR. SARTORI: Sure.

JUDGE LEE: That sounds like manual intervention.

MR. SARTORI: That is manual intervention. And that has to do with step 11, which is the manual step required to initiate it, to initiate the automatic process. That's taken from column 5, line 45, what you've been focusing on, sir, Your Honor. And that has to do with step 11, which is the manual stuff.

JUDGE LEE: I see. So you're allocating all of these manual input to the category of initiating the process.

MR. SARTORI: *Yes, yes.*

JUDGE LEE: If there's any manual input outside of initiation, then it's not covered by the claim.

MR. SARTORI: *It's not covered by the claim and it does not anticipate the claim* [In context, the subject matter of the discussion was claims 1 and 10 of the '787].

Oral Hearing at 29-30 (emphasis added) (hereby attached to this motion as Exhibit D).

At the same hearing, Simplification argued that prior systems involving "manual point and clicking" could not meet the limitations of the claims. *Id.* at 27, ll. 4-6. Indeed, Simplification went so far as to acknowledge that the term "electronically" as recited in the claims means "no manual input"

> MR. SARTORI: . . . . *And yes, we are saying electronically means that there's no manual input. You have to -- we're saying you need to read it in light of the specification.*

Oral Hearing at 29 (emphasis added).

However, when pursuing alleged infringers, Simplification's understanding of the claims is quite different. For example, Simplification has indicated to this Court that the invention is in fact something less than fully automated (i.e., that manual input outside of initiation is permissible). Markman Hearing Transcript at 13 (Mr. Curtin: "But the presence of the word comprising means there can be other steps which may or may not be automatic. It allows for the presence of some manual data entry."). In defending its definition for the term automatically, Simplification stated that the "proposed construction ties the automatically, draws the line at the beginning of each function. Once you initiate the function, that step must be performed automatically." Markman Hearing Transcript at 25:17–21. In essence, Simplification argues that instead of looking at the system as a fully automated system for tax reporting, the Court should instead consider each element independently as an isolated automated event.

The specification offers no support for such an interpretation. Quite the opposite, the specification and figures indicate that the invention as a whole is "fully automated." For example, the opening paragraph of the detailed description recites:

> *Referring now to the accompanying drawings, wherein similar reference characters refer to similar reference parts throughout the drawings, FIGS. 1 and 2 depict the procedure used in the preferred embodiment for a method, an apparatus, and an article of manufacture for* <u>*fully-automated*</u> *tax reporting, payment, and refund.*

Col. 4, ll. 28-33 (emphasis added).

To be valid under §112, ¶2 Simplification's claims must set forth what Simplification regards as its invention and the claims must be sufficiently definite. Over the course of this litigation, Simplification has put forth a variety of arguments relating to the nature of the automation claimed in its patents. Because the claims lack any clarity

17

on this matter, the public is left to guess about whether the patents-in-suit claim an invention that is fully-automatic or something that is less than fully-automatic. Accordingly, unless the asserted claims are construed to require full automation, the Court should find that the claims of the patents-in-suit are indefinite under §112, ¶2.

> **2.** **Claims 15 – 18 of the '052 Patent and Claims 1 – 9 of the '787 Patent are Means-Plus-Function Claims Claiming Computer-Implemented Functions for which no Corresponding Structure is Provided and are Therefore Indefinite**

Means-plus-function claims must also satisfy the requirements of §112, ¶2. Simply disclosing a generic computer as the structure designated to perform a particular function does not limit the scope of the claim to the "corresponding structure, material, or acts" that perform the function as is required by §112, paragraphs 2 and 6. *Aristocrat Technologies*, 521 F.3d at 1336; *Finisar Corp. v. DirecTV Group, Inc.*, 523 F.3d 1323, 1341 (Fed. Cir. 2008); *Net Moneyin, Inc.*, 2008 WL 4614511 at *6. General purpose computers can be programmed to perform a variety of tasks in a variety of different ways. *Aristocrat Technologies*, 521 F.3d at 1336. Thus, an inventor claiming a computer-implemented invention and disclosing only a general purpose computer as the corresponding structure is attempting to invoke purely functional claiming. *Id.* Purely functional claims fail to disclose to the public how the functions at issue are performed. *See id.* at 1336. To avoid purely functional claiming and to satisfy §112 paragraphs 2 and 6, an inventor using means-plus-function language to claim a computer-implemented invention must disclose the algorithm utilized by the computer in performing the stated function. *Id.*; *WMS Gaming, Inc. v. International Game Technology*, 184 F.3d 1339, 1349 (Fed. Cir. 1999); *Net Moneyin, Inc.*, 2008 WL 4614511 at *6; *Finisar Corp.*, 523 F.3d at 1341.

18

In determining whether a means-plus-function claim satisfies §112, ¶6 it is irrelevant whether or not the patent's disclosure would enable one skilled in the art to make and use the invention. *Aristocrat Technologies*, at 1336; *Atmel Corp. v. Information Storage Devices, Inc.*, 198 F.3d 1374, 1380 (Fed. Cir. 1999). What is required by §112, ¶6 is disclosure of the structure that performs the claimed function. *Aristocrat Technologies*, 521 F.3d at 1336. The purpose of the §112, ¶6 disclosure requirement is not to enable, but to limit the scope of the claim to the structure disclosed and to any corresponding equivalents. *Aristocrat Technologies*, 521 F.3d at 1336. Thus, it is not enough for the patentee to argue that one of ordinary skill in the art would know what structures to use to accomplish the claimed function – the structures must be disclosed by the specification. *Id.*

Claims 15–18 of the '052 patent and claims 1–9 of the '787 patent are indefinite means-plus-function claims as they claim a computer-implemented invention but fail to disclose a corresponding structure. The means-plus-function claims of the patents-in-suit each utilize some or all of the following terminology: "means for collecting electronically," "means for connecting electronically," "means for filing electronically," "means for preparing electronically," and "means for processing electronically." Claim 15 of the '052 patent is illustrative and reads as follows:

> *15. An apparatus for automatic tax reporting by an electronic intermediary comprising:*
>
> *means for connecting electronically said electronic intermediary to a tax data provider;*
>
> *means for collecting electronically tax data from said tax data provider;*
>
> *means for processing electronically said tax data collected electronically from said tax data provider to obtain processed tax data;*

> *means for preparing electronically an electronic tax return using said processed tax data;*
>
> *means for connecting electronically said electronic intermediary to a taxing authority; and*
>
> *means for filing electronically said electronic tax return with said taxing authority.*

Simplification concedes that the corresponding structure for each of the claimed means-plus-function elements is "a general purpose computer programmed with code segments." Plaintiff's Opening Markman Brief (D.I. 80) at 25. That phrase is equivalent to stating that the claimed functions are performed by a computer programmed with a program. Under similar facts, the Federal Circuit has held that such vague disclosure is insufficient to satisfy the requirements of 35 U.S.C. §112, ¶ 6, reciting:

> . . . . *That description goes no farther than saying that the claimed functions are performed by a general purpose computer. The reference to "appropriate programming" imposes no limitation whatever, as any general purpose computer must be programmed. The term "appropriate programming" simply references a computer that is programmed so that it performs the function in question, which is to say that the function is performed by a computer that is capable of performing the function.*

*Aristocrat Technologies*, 521 F.3d at 1334.

Nowhere in the patents' specification or in the prosecution histories of the patents-in-suit does Simplification provide the algorithms utilized by the general purpose computers in performing the claimed functions. (Tinkel Decl. ¶40). The means-plus-function claims of the patents-in-suit are purely functional and thus, one skilled in the art would not be able to discern how the claimed functions are performed. Claims 15–18 of the '052 patent and claims 1–9 of the '787 patent do not satisfy the requirements of §112

paragraphs 2 and 6; the Court should find that claims 15–18 of the '052 patent and claims 1–9 of the '787 patent are indefinite and grant Block's Motion for Summary Judgment.

### D. BLOCK IS ENTITLED TO SUMMARY JUDGMENT THAT IT DOES NOT INFRINGE THE PATENTS-IN SUIT

Patent infringement analysis involves two steps. *Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 976 (Fed. Cir. 1995). First, the claims of the patent must be construed. *Id.* Second, the claims of the patent as construed by the Court must be applied to the accused product or process. *Id.* The first step of construing the claims of the patent is purely a legal question. *Advanced Medical Optics, Inc. v. Alcon, Inc.*, 361 F. Supp. 2d 404, 409 (D. Del. 2005). However the second step, applying the construed claims to the accused product or process, is a fact specific inquiry. *Id.* Summary judgment is appropriate in patent infringement suits when the movant shows that a reasonable jury could reach only one conclusion regarding infringement. *Id.*

To literally infringe a patent, an accused product or process must possess every limitation set forth in the patent's claim and it must do so exactly. *Id.* When the claim at issue is a means-plus-function claim, the claim is literally infringed when the accused structure is the same as the disclosed structure or the structure is a §112, ¶6 equivalent. A §112, ¶6 equivalent is a structure that "performs the identical function in substantially the same way, with substantially the same result." *Id.*

To infringe a patent under the doctrine of equivalents, an accused product or process must possess all of the limitations of the claim either literally or equivalently. *Id.* The doctrine of equivalents must be applied on an element-by-element basis. *Id.* Only insubstantial differences can exist between the accused product or process and the claim limitation if infringement under the doctrine of equivalents is to be found. *Id.* The test

21

generally applied is whether the accused device "performs substantially the same function in substantially the same way to achieve substantially the same result." *Id.* Means-plus-function claims can be infringed under the doctrine of equivalents and the same general test applies. *Id.*

REDACTED

REDACTED



REDACTED

DB01:2649304.1
062255.1001

REDACTED



REDACTED

DB01:2649304.1

062255.1001

## E.  BLOCK IS ENTITLED TO SUMMARY JUDGMENT THAT IT HAS NOT WILLFULLY INFRINGED THE PATENTS-IN-SUIT

Enhanced damages should not be awarded in a patent infringement case absent a showing that infringement was willful. *In re Seagate Technology, LLC*, 497 F.3d 1360, 1368 (Fed. Cir. 2007). To prove willfulness, a patentee must show that the infringer's actions were objectively reckless. *Id.* at 1371. Objective recklessness cannot be shown unless the patentee establishes by clear and convincing evidence that the infringer acted despite an objectively high likelihood that its actions constituted infringement of a valid patent. *Id.*

Simplification is unable to prove that Block has been objectively reckless. To find that Block has willfully infringed that patents-in-suit Simplification must be able to establish by clear and convincing evidence that Block has acted despite an objectively high likelihood that its actions constituted infringement of a valid patent. The '052 and the '787 patents remain in reexamination. This is so because the prior art in the latest Office Actions convinced a Primary Examiner and a co-signing Technology Center Director at the Patent Office that substantive prosecution of the patents-in-suit should be reopened and all of the asserted claims should be freshly rejected. *See* MPEP § 1214.04 ("If the examiner has specific knowledge of the existence of a particular reference or references which indicate nonpatentability of any of the appealed claims as to which the examiner was reversed, he or she should submit the matter to the Technology Center (TC) Director for authorization to reopen prosecution under 37 CFR 1.198 for the purpose of entering the new rejection."). The USPTO has yet to render a decision as to the validity of the patents-in-suit: it cannot be said that Block had reason to believe its actions infringed a valid patent. Because Block has not acted despite an objectively high

likelihood that its actions constitute infringement of a valid patent, Block cannot be found to have willfully infringed the patents-in-suit.

## V.    **CONCLUSION**

For the reasons stated above, it is respectfully submitted that the Court should find that the claims of the patents-in-suit are non-enabling, the claims of the '052 patent and the claims of the '787 patent are indefinite under §112, ¶2, that Block has not acted willfully, and that Block has not infringed the patents-in-suit.

YOUNG CONAWAY STARGATT & TAYLOR, LLP

*/s/ Karen E. Keller*

_____

John W. Shaw (#3362)
Karen L. Pascale (#2903)
Karen E. Keller (#4489)
Jeffrey T. Castellano (#4837)
The Brandywine Building
1000 West Street, 17th Floor
Wilmington, DE 19801
(302) 571-6600
kkeller@ycst.com

OF COUNSEL:
Jeffrey S. Standley
F. Michael Speed, Jr.
Mark R. Engle
STANDLEY LAW GROUP LLP
495 Metro Place South, Suite 210
Dublin, OH 43017
(614) 792-5555

*Attorneys for Defendants,*
*Block Financial Corporation and*
*H&R Block Digital Tax Solutions, Inc.*

Dated:  October 31, 2008

DB01:2649304.1                                         062255.1001