# EXHIBIT C

1

```
            IN THE UNITED STATES DISTRICT COURT
              FOR THE DISTRICT OF DELAWARE


SIMPLIFICATION, LLC,          )
                              )
           Plaintiff,         )
                              ) C.A. No. 03-355-JJF
v.                            ) C.A. No. 04-114-JJF
                              ) CONSOLIDATED
BLOCK FINANCIAL CORP.,        )
and H & R BLOCK DIGITAL       )
TAX SOLUTIONS, INC.,          )
                              )
           Defendants.        )



                 Thursday, June 5, 2008
                 2:47 p.m.
                 Courtroom 4B



                 844 King Street
                 Wilmington, Delaware


BEFORE:   THE HONORABLE JOSEPH J. FARNAN, JR.
          United States District Court Judge



APPEARANCES:


          MORRIS, NICHOLS, ARSHT & TUNNELL
          BY:  MARY B. GRAHAM, ESQ.
          BY:  JULIE HEANEY, ESQ.

                    -and-

          VENABLE, LLP
          BY:  PETER J. CURTIN, ESQ.
          BY:  DAVID FARNUM, ESQ.
          BY:  MICHELLE MARCUS, ESQ.
          BY:  MEAGHAN KENT, ESQ.

                    Counsel for the Plaintiff
```

2

1    APPEARANCES CONTINUED:

2

3        YOUNG, CONAWAY, STARGATT & TAYLOR, LLP

4        BY:  KAREN L. PASCALE, ESQ.

5            -and-

6        STANDLEY LAW GROUP, LLP
         BY:  JEFFREY S. STANDLEY, ESQ.
7        BY:  MARK R. ENGLE, ESQ.

8            Counsel for the Defendants

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

1   Honor.

2              Good afternoon, Your Honor.  My

3   name is Pete Curtin from Venable and I'm here on

4   behalf of Simplification, the plaintiff in this

5   case.  If it is appropriate, Your Honor, I would

6   like to hand up a copy of the slides I'll be

7   showing here today.  I have one for opposing

8   counsel as well.

9              THE COURT:  Sure.

10             MR. CURTIN:  Your Honor, there are

11  two patents at issue here in this case, and

12  their full names and their numbers are set forth

13  in the briefs in detail, but we call -- the

14  first patent is called the '052 patent.

15             And the '052 patent discloses and

16  claims a method and apparatus and a computer

17  readable medium for something called automatic

18  tax reporting.

19             The second patent is the '787

20  patent, and that's a continuation of the first,

21  it has an identical specification amount and the

22  '787 patent discloses and claims a method and

23  apparatus and a computer readable medium for

24  collecting tax data.

1              Like all patent cases, Your Honor,

2    this case began with an idea and it was an idea

3    that a lone inventor had back in 1996.  That

4    gentleman's name is David Miller and he's a tax

5    attorney himself.  And Mr. Miller was doing his

6    taxes in 1996 using a commercially available tax

7    preparation software when he had an idea.  And

8    the crux of this idea, Your Honor, was the

9    realization that a substantial amount of the tax

10    data you need to determine your tax liability

11    existed electronically.  So in that case, why

12    should he have to enter it all in manually.

13            His concept was why not reach out

14    electronically to the tax data provider, connect

15    electronically with that tax data provider, and

16    retrieve tax data to the extent you could from

17    that tax data provider electronically so that

18    that tax data could be processed and used to

19    help prepare an electronic tax return that then

20    may or may not be filed electronically.

21            Mr. Miller thought about that idea

22    for a while, investigated, felt it had some

23    merit, as far as he could ascertain, no one else

24    was doing it in 1997.

1              Mr. Miller filed the original

2      patent application in this case, and then he

3      later founded Simplification LLC which is his

4      own company, a one-man shop.  And here we are

5      today.

6              Because the initial patent

7      application was filed back in 1997, and that's

8      eleven years ago, but that is a lifetime ago in

9      the context of computers, technology and the

10     speed with which that advances, because back in

11     1997, no one was out there with a product

12     practicing this claimed invention.  Today, there

13     are a number of people who do.

14              Now, there are thirteen terms that

15     are in dispute, Your Honor, across the claims of

16     the two patents.  But in -- I understand that

17     the patents have already briefed these issues

18     extensively and we have limited time before the

19     Court today, so we're going to leave a lot of

20     the minor issues, Simplification is going to

21     leave a lot of the minor issues to the papers,

22     although we're happy to take any questions the

23     Court may have.

24              My presentation is going to focus

1    on four major disputes between the parties, four

2    core issues that if the Court resolves those

3    four issues, it takes care of -- it takes care

4    of most of the claim construction.

5                The first dispute, Your Honor, is

6    the dispute over the meaning of the term

7    automatic tax reporting.  And particularly, the

8    automatic piece of that.

9                That term is contained in the

10   preamble of all the claims of the '052 patent.

11   And Block's proposed construction of automatic

12   essentially would change that term to mean fully

13   automated.  And Simplification's response is no,

14   those terms have different plain meanings,

15   they're different and that is not what was

16   claimed in the patent.

17               The second major dispute, Your

18   Honor, deals with the meaning of the term

19   electronically, which is contained in all the

20   claims of both patents.  Block's proposed

21   construction which essentially defines

22   electronically to mean automatically, and to do

23   that, they rely on excerpts of arguments taken

24   from a hearing in the reexamination before the

8

1    patent office.  And those arguments are taken

2    out of context, Your Honor, because

3    Simplification's arguments regarding

4    electronically were all made in the context of

5    two claims in one of the patents.  In fact, two

6    limitations in Claims 1 and 10 of the '787

7    patent and Block argues that that definition

8    should be imported across all of the claims in

9    both patents and that's inappropriate.

10            Simplification says no,

11   electronically means electronically, automatic

12   means automatic and you shouldn't have a

13   construction of electronic that renders

14   automatic superfluous.

15            The third core dispute has to do

16   with the construction of the means plus function

17   limitations because a number of the claims in

18   both patents are within this means plus function

19   format.  I'm sure as the Court is aware to

20   conclude a means plus function first you have to

21   identify the function involved and then you have

22   to identify the corresponding structure in the

23   specification that performs that function.

24            Now, Block's argument, Your Honor,

1    is that the Court cannot construe those claim

2    terms because the specification does not

3    disclose enough structure to support those claim

4    limitations.  And of course the upshot of that

5    argument, Your Honor, is the patents would then

6    be invalid or the patent claims would be

7    invalid.  Simplification says no, the

8    specification discloses more than enough

9    structure under the law to support those claim

10    limitations and Block cannot meet its clear and

11    convincing burden of proof to show otherwise.

12         The fourth major dispute, Your

13    Honor, focuses on the definition of electronic

14    tax return which appears in the claims of the

15    '052 patent.  And that really centers on what

16    exactly Block means by including the word

17    completed in its proposed construction.

18         So those are the four major issues

19    my presentation is going to deal with today.

20    And I'm going to address the first two issues,

21    the construction of automatic tax reporting and

22    electronically at the same time because as the

23    Court will see, the arguments and issues

24    overlap.

1    With that, we'll move to the

2    slides.

3    There are four global problems,

4    Your Honor, with Block's proposed claim

5    constructions of automatic tax reporting and

6    electronically.  The first problem, Your Honor,

7    is that their definition of automatic reads the

8    term comprising out of the claims.

9    As the Court is aware, comprising

10    is a standard term of art in the patent world as

11    a transitional term between the preamble and the

12    body of the claim.  All of these claims are

13    written with the term comprising in it, but

14    Block's construction of fully automated would

15    eliminate comprising, it would render it a

16    nullity.  And they never adequately acknowledge

17    and address that problem.

18    The second global problem with

19    Block's proposed construction is that they

20    ignore the difference between fully automated

21    and automatic.  Those claims have different

22    claim meaning both to individuals in ordinary

23    life.  They have different meanings to a person

24    of ordinary skill in the art and as you'll see,

1    they have different meanings to the Federal

2    Circuit.

3              The third problem is the Block

4    misuses the record of oral argument before the

5    Board of Patent Appeals.  For its construction

6    of automatic and electronically, Your Honor,

7    that is Block's case.  It takes that transcript

8    which was a thirty-five-page transcript, roughly

9    forty-five minutes of oral argument where

10   Simplification's counsel is sitting across the

11   table from three administrative patent judges

12   being peppered with questions, comes from three

13   years of examination.

14             As I highlighted in the

15   introduction, they take some of those statements

16   out of context.  And it turns out, Your Honor,

17   that transcript read as a whole in light of the

18   whole record as it must be is a slender read and

19   it cannot bear the weight that Block gives it.

20             The fourth and final global

21   problem of Block's construction is that they

22   radically depart from the plain meaning of the

23   terms.  Automatic is not fully automated.

24   Electronically is not automatic.  And that

1    departure, Your Honor, is unjustified because

2    there is not record support to overcome,

3    sufficient to overcome the heavy presumption in

4    favor of plain meaning.

5              Next slide, please.

6              To comprising point, Your Honor,

7    first.  All of the claims of the patents include

8    the word comprising.  And comprising has a clear

9    and well-established legal effect.  It means

10   essentially including but not limited to.  In

11   other words, at least the following limitations

12   must be performed, but there are perhaps more,

13   other limitations are also possible.  And the

14   presence of other steps don't take the process

15   outside the scope of the claim.

16             The use of comprising in the

17   preamble of these claims after automatic tax

18   return -- or automatic tax reporting, pardon me,

19   expressly allows for additional intervening

20   steps that are not recited and we see the

21   Georgia-Pacific case for that and others in our

22   briefs.

23             Of course, then, as I said, this

24   allows for additional steps which even if --

1  even though all of the recited steps, and there

2  may be a misunderstanding between Block and

3  Simplification here, Your Honor, because as we

4  have said in our briefs and as Dr. Sartori said

5  to the patent office, if you recited steps in

6  the claims of the '052 patent with automation in

7  them, it must be performed automatically.  We

8  acknowledge that.

9           But the presence of the word

10  comprising means there can be other steps which

11  may or may not be automatic.  It allows for the

12  presence of some manual data entry.  It allows

13  you to circle back around in the process, get

14  one piece of tax data, your W-2 data, for

15  example, from the IRS and maybe you have to go

16  contact the bank to get a 1099 form for

17  dividends or your mortgage broker to get your

18  1098, you can go back and circle around and pull

19  that information down and that's all within the

20  steps of the process.

21           And also if there is in the course

22  of that some manual data entry, perhaps for

23  example your mortgage broker or your charities

24  aren't tied up to that program, they don't make

1    it available electronically for downloading, you

2    do some manual data entry, the presence of those

3    manual steps along with the electronic and

4    automatically performed steps do not by them --

5    do not take that process outside the scope of

6    the claims.  And that's because of the presence

7    of the word comprising.

8              The Federal Circuit recognizes

9    this issue, Your Honor, in a case, and they

10   discuss this in a case that Simplification

11   actually cited to the Board of Patent Appeals at

12   the hearing that we're talking about.  Here is a

13   quote from that case, this is CollegeNet versus

14   ApplyYourself, Inc.  While Claim 1 does not

15   expressly provide for human intervention, the

16   use of comprising suggests that additional

17   unrecited elements are not excluded.  Such

18   elements could include human actions to

19   expressly initiate the automatic storing or

20   inserting or to interrupt some functions.

21             I'll leave the detailed analysis

22   of that case to our briefs, Your Honor, but it's

23   important to note that the Federal Circuit in

24   CollegeNet rejected a proposed claim

1   construction for automatically that was put

2   forward by the defendant.  It's very similar to

3   Block's proposed fully automated construction in

4   that it would have precluded any manual

5   intervention at any point in the process.

6            And the Federal Circuit said no,

7   that is not the plain meaning of automatic and

8   also these are comprising claims.

9            At the oral hearing,

10  Simplification's counsel also explained the

11  effect of comprising to the patent judges.

12  Judge Moore said, "So you read these claims as

13  excluding all manual data entries?"

14            Mr. Sartori responds, "No, it

15  doesn't for the fact that it is comprising, so

16  it's open-ended.  So you could perhaps enter

17  other information automatically."

18            And I have an SIC there, Your

19  Honor, because as can happen sometimes in oral

20  argument because he must have misspoken because

21  that sentence only makes sense if instead of

22  automatically it is manually.  You can see that

23  even more clearly when you consider what he said

24  next.  Next slide.  When he goes on to further

1    explain.

2                For example, let's say you gave

3    some donations to Purple Heart last year in

4    2006.  And Purple Heart, you know, isn't set up

5    to do this electronic transmission.  You would

6    need to type up and enter your donations to go

7    on your scheduled itemized deductions.  That

8    would be within the software, within the scope

9    of the claim because it's comprising, but that

10   would not actually meet the elements of the

11   claims.

12               So Simplification's counsel

13   highlighted here exactly the point that I made

14   to the Court, that manual entry of Purple Heart

15   charitable contribution by itself doesn't meet

16   the scope of the claims, it wouldn't, for

17   example, infringe by itself but the presence of

18   that manual entry doesn't take that tax return,

19   that process outside the scope of the claims.

20               Next slide, please.

21               Moving on to the second point,

22   Your Honor, Block's proposed constructions

23   ignore the difference between fully automated

24   and automatic.  First, of course, there is the

1    core point that the language of the claims

2    define the invention.  And these claims recite

3    automatic tax reporting, not fully automated tax

4    reporting.

5              Now, it's certainly true as

6    Mr. Stanley is going to point out to you that

7    the term fully automated appears in the patent,

8    it appears in the title, it appears in the

9    background section.  It's mentioned a few times.

10   But the claims state automatic and that we

11   submit that is a conscious choice because fully

12   automated is not automatic, unless they have

13   different plain meanings.

14             That is underscored by how Block

15   chooses to distinguish the terms and also

16   underscored by examples from real life.

17   Automatic teller machines.  Automatic

18   dishwasher.  An autopilot on airplane.  All of

19   those are examples of devices and processes

20   where there is manual intervention both to

21   initiate it and throughout, it can respond with

22   prompts, you can interrupt the process.

23             When you're dealing with your

24   automatic teller machine, you're entering your

1    password, you're responding to prompts, what do

2    I want, here, there, give me my balance, give me

3    my checking, give me my money.  So you're

4    manually intervening throughout, but at the same

5    time everyone understands that is still an

6    automatic machine, a processing going on there

7    automatic even though it is not fully automated.

8          And the dishwasher analogy, Your

9    Honor, that is contained in the briefs, and I'll

10   shorten that up for you to make a very basic

11   point, that if you have a method claim for a

12   method of automatically cleaning dishes after a

13   dinner party, comprising, and you have to use

14   the automatic dishwasher, you put in the dishes

15   you wash them, et cetera, if you wash the dishes

16   in an automatic dishwasher and you put those

17   dishes in the sink but you have some wine

18   glasses, they're fragile, you don't put them in

19   the automatic dishwasher, you wash those in the

20   sink by hand and put them away.

21         You may have a frying pan that's

22   crusted all over and you need to leave that soak

23   overnight.  The fact that you wash the frying

24   pan and the wine glasses by hand does not mean

1  that you did not clean the other dishes

2  automatically.  And the presence of that manual

3  washing of the wine glasses does not remove your

4  clean up process from the scope of the

5  comprising claim.  That's a core point.

6  The next slide, please.  The

7  Federal Circuit agrees, Your Honor, and they

8  have interpreted automatically to mean, "Once

9  initiated, the function is performed by a man,

10  without the need for manually performing the

11  function."

12  And as you'll see, Your Honor,

13  that parallel, that's almost exactly the

14  proposed construction of automatic

15  Simplification is offering in this case.  And,

16  again, that is the CollegeNet case which was

17  cited to the board.

18  Next slide, please.  The third

19  point, Your Honor, that is the board transcript

20  does not truly support Block's position.

21  Block's arguments for automatic tax reporting

22  and for electronically ignore what I'll call the

23  inherent imprecision of oral argument.  By that

24  I mean, Your Honor not that any word is

1      necessarily imprecise, but it's a process.

2                  People when you're speaking to

3      each other, the judge and the counsel, there may

4      be a question and answer, you're trying to

5      understand each other.  When someone is talking,

6      you don't necessarily recite the full preamble

7      in all the context of your statement the way you

8      might do if you're an attorney crafting your

9      brief, it's just a different process and

10     sometimes in the course of oral argument people

11     can get a little lost, get a little confused and

12     it's hard to gauge the tenor of an oral record

13     by the polled record, that's why it's important

14     to read statements taken from an oral argument

15     in context, in the context of the full hearing

16     and to read that full hearing transcript in the

17     context of the record as a whole.

18                  And Block's cites in support of

19     their position, Your Honor, are either taken out

20     of context with regarding to electronically or

21     clarified or countered elsewhere in the

22     transcript.

23                  The next side, please.  The first

24     point, Your Honor, is that every passage Block

1    cites about electronically refers to Claims 1

2    and 10 of the '787 patent, and in particular it

3    refers to two limitations of those claims,

4    connecting electronically and collecting

5    electronically.

6              In those statements Simplification

7    wasn't purporting to define electronically by

8    itself and that's clear from a reading of the

9    transcript as a whole.  And even in its

10   briefing, Your Honor, Block admits this context.

11             Often in their brief they'll put

12   in the brackets referring to Claims 1 and 10 of

13   the '787 patent and sometimes it's expressed in

14   the statements and yet they ignore that context.

15             I'm going to give you a couple of

16   examples here now and I'm sure Mr. Stanley is

17   going to show you a number of other cites from

18   the transcript in his presentation.

19             Let's look at this one which comes

20   from page 29 of the oral hearing and Block

21   highlights this passage so much, they cited it

22   two or three times in their brief.  Here is part

23   of it, in the '787 we have two independent

24   Claims 1 and 10 which do not recite automatic.

1   We're focusing on Claims 1 and 10.  And there

2   are two reasons that I said previously that the

3   Beamer article does not teach it, those claims.

4   One is they're connecting electronically.  And

5   yes, we are saying electronically means that

6   there's no manual input.  You have to -- we're

7   saying you need to read it in light of the

8   specification.

9           Here is specific reference to the

10  connecting electronically limitation in 1 and 10

11  of the '787 patent.  Next slide, please.

12          Then going on on that page, Judge

13  Lee says, Yeah, but why does that exclude any

14  kind of manual input?  I mean that's the crux of

15  the issue.  Yes, for Claims 1 and 10 of the '787

16  patent.  Because, Your Honor, that was the

17  issue, these are the only two claims in the

18  patent that did not -- in the two patents that

19  did not have the word automatic in them.  The

20  only two independent claims.

21          And the issue that Simplification

22  was going back and forth with the patent judges

23  on were okay, we understand what you're saying

24  about automatic, but in the absence of

23

1    automatic, how do these claims survive the prior

2    art?  And Simplification's response was that the

3    connecting electronically and the collecting

4    electronically steps must be performed

5    automatically.  It says you just say it does,

6    but I don't get it.  In the context of the step

7    which refers to that recitation of collecting

8    electronically refers to step 12 of the patent.

9    Again, Claims 1 and 10 of the '787 patent,

10   collecting electronically.

11              Next slide.

12              Now, Block argues that there is

13   no -- in its briefs that there is no reason to

14   limit the scope of these statements to Claims 1

15   and 10 of the '787 patent, but as I think I've

16   already given you heads up, Your Honor, there

17   are plenty of good reasons to do so.  These are

18   the only independent claims that do not include

19   the term automatic, therefore, the focus of the

20   discussion was how Claims 1 and 10 survived the

21   prior art in the absence of automatic.

22              They do not represent, therefore,

23   a clear and unambiguous disavowal of the plain

24   meaning of the term electronically itself which

24

1    is what is required in the law to move beyond

2    the plain meaning based on the prosecution

3    history.  And it certainly doesn't represent a

4    clear and unambiguous disavowal of the plain

5    meaning of electronically throughout all the

6    claims of both patents.

7                    Next slide, please.

8                    Moving on to the automatic issue,

9    Your Honor, for automatic tax reporting.

10   Block's -- the passages Block cites about

11   automatic are clarified or countered by other

12   passages in that same hearing record showing

13   that automatic is given its plain meaning.

14                   Here is a quote from page 14 of

15   that transcript.  And automatic is not defined

16   anywhere in the specification, so it must be

17   given its ordinary meaning per the Phillips

18   case.

19                   Next slide, please.

20                   It's also useful to understand,

21   Your Honor, and you can see this from the

22   transcript early on from that hearing,

23   Simplification submitted about eight dictionary

24   definitions of automatic and those dictionary

1   definitions are all basically consistent and we

2   presented a number of them in our briefs in

3   support of our proposed claim construction, but

4   the very fact that Simplification submitted

5   eight dictionary definitions shows that they

6   weren't trying to present any one special or

7   unusual definition of automatic, they were just

8   trying to show what the plain meaning of the

9   term is.

10          And Simplification also cited

11   CollegeNet's definition of automatically as

12   well.  And we have discussed already, one

13   initiated the function is performed by a machine

14   without the need for the function to be

15   performed manually.  You see, that definition

16   and the dictionary definitions and

17   Simplification's proposed construction ties the

18   automatically, draws the line at the beginning

19   of each function.  Once you initiate the

20   function, that step must be performed

21   automatically.

22          Not some kind of -- they don't

23   draw the line anywhere else.

24          Next slide, please.

1              Therefore, Your Honor, there is --

2    the transcript of the record of the board

3    hearing read as a whole shows there is no clear

4    and unambiguous disavowal of the claim scope or

5    of the plain meanings of the claim except as

6    noted, there is no clear and unambiguous

7    disavowal of automatic, there is no clear and

8    unambiguous disavowal of the term electronically

9    by itself and certainly not of the term

10   comprising.

11             And Block, Your Honor, in their

12   briefs, they acknowledge that there are

13   inconsistencies in this transcript as they must.

14   And at footnote six of their opening brief,

15   Block says yes, there are inconsistencies, but

16   it argues that the statements it cites about

17   automatically and electronically nullify the

18   statements about the comprising and the Purple

19   Heart example.

20             Well, Your Honor, that's just not

21   so.  First of all, we submit you can minimize

22   the inconsistency by interpreting those passages

23   as Simplification urges by limiting the

24   arguments about electronically to Claims 1 and

1   10 of the '787 patent, two of those claim

2   limitations, and by understanding that by

3   talking about automatic, Simplification meant

4   the plain meaning of automatic, not fully

5   automated.

6       But even if Block's interpretation

7   of those passages is correct, Your Honor, and

8   one set does nullify the other set, then what

9   you have got is a wash, you have an ambiguous

10  transcript that is not helpful for claim

11  interpretation because the law is clear that an

12  ambiguous prosecution history cannot limit the

13  claims, it doesn't provide a basis to depart

14  from the plain meaning of claim language.

15      And for that we rely on the

16  Athletic Alternatives case and the Inverness

17  Medical cited in our briefs.

18      In sum, Your Honor, this board

19  hearing transcript is a prime example of the

20  reason behind the caution the Federal Circuit

21  issued about the use of the prosecution history

22  in the Phillips case.  And what the Federal

23  Circuit said sitting on en banc, Because the

24  prosecution history represents an ongoing

1   negotiation between the PTO and the applicant,

2   rather than the final product of the

3   negotiation, which is the specification of the

4   patent itself, it often lacks the clarity of the

5   specification and thus is less useful for claim

6   construction purposes.

7            And here, Your Honor, we're

8   dealing with a situation where at best, the best

9   case scenario for Block is a situation where

10  this hearing transcript in the reexamination

11  history is ambiguous, it's a nullity, it's a

12  wash.  Certainly interpreting those passages as

13  Block would have you do, certainly the

14  transcript lacks clarity and therefore provides

15  no basis to depart from the plain meaning of the

16  claims.

17           The fourth key point, Your Honor,

18  is that Block's proposed construction radically

19  departs from the plain meaning of the claim

20  terms.  Automatic is not fully automated.

21  Electronically is not automatic.  And Block's

22  construction of electronically would render

23  automatic superfluous.  And we'll go on to show

24  you why here.

1          Next slide.  It's also important

2     to note that Block's proposed constructions

3     ignore the specification of the patents.

4     Block's constructions are inconsistent with the

5     disclosure in the specification which as we'll

6     show you distinguishes between automatic and

7     fully automated in terms of the examples they

8     disclose in the specification, and the treatment

9     of electronically throughout the patent.  And as

10    you know, the law is clear that the

11    specification is often regarded as the best

12    guide for claim construction.

13          Next slide.  The specification

14    never expressly defines automatic, therefore

15    under the Phillips' case there is a heavy

16    presumption that you employ the plain meaning of

17    the term.  However, the specification makes it

18    clear that automatic tax reporting, that

19    preamble term, need not be fully automated.

20    They're not the same things.

21          First of all, Your Honor, the

22    patents acknowledge that not all tax data will

23    be available electronically.  We have got cites

24    for that, for those two passages.  And what it

1    says there, Your Honor, is it talks about -- it

2    mentions, it says substantially all tax data is

3    available electronically.  And it says later on

4    that it's possible to eliminate virtually all

5    copies of intermediate paper copies.  There is

6    nothing there that says all the tax data will or

7    must be available electronically.

8              Secondly, Your Honor, and I think

9    even more significantly, the specification

10   expressly notes that the processing and

11   preparing steps can be implemented using current

12   technology, the technology that was available in

13   1997.  And, in fact, they cull out a specific

14   example of that commercially available tax

15   software, and the specification it calls out

16   TurboTax as an example of the commercially

17   available tax software that could implement the

18   processing and preparing steps of the invention.

19             And in Block's brief, opening

20   brief, they concede that quote a standard tax

21   program like TurboTax can perform the processing

22   electronically step.

23             Well, let's take a look at that,

24   Your Honor.  One thing that is absolutely clear,

1    and this is shown, it's both a matter of public

2    record and a matter of fact, but it's shown from

3    the screen shots from the 1997 version of

4    TurboTax that we attached to your belief, that

5    in 1997 TurboTax was an automatic program, it

6    acted automatically, but it was not fully

7    automated.  TurboTax walked users through the

8    preparation process giving them the option of

9    using the easy step process or forms method.

10   I'll show you now if I can figure out how to

11   switch over to the Elmo, I'll try to make this a

12   little more legible for the Court.

13           This is a copy of one of the

14   screen shots that we attached to our brief and

15   I'll try to zoom in so we can read it.  This is

16   a screen shot from early in the program where

17   they are describing to the taxpayer how it's

18   going to work.  And you see up there, Your

19   Honor, it says easy step interview approach.

20   Easy step interview guides you through your tax

21   return.  It asks you questions about your tax

22   situation, enters your data on the proper tax

23   forms, and offers relevant tax advice and

24   suggestions.

1            But here is an important point,

2     Your Honor.  It then says your calculations are

3     automatically updated as you add or change data.

4     So you see behind the scenes the computer

5     program is automatically processing that data

6     and automatically working in response to your

7     prompt and responds to your information, but

8     there is intervention to initiate each

9     processing step.

10            Under the forms method approach,

11     Your Honor, again it says basically you're on

12     your own, but it still has the taxpayer move

13     from one form to -- one tax form to the other,

14     entering information in the fields that apply to

15     their tax situation.

16            Again, both of those steps require

17     considerable manual intervention.  And I'll try

18     to get better with the Elmo for the next one.

19            So therefore -- next slide, please

20     -- Block's fully automated construction would

21     exclude an example of the preferred embodiment

22     set forth in the specification allowing for the

23     use of 1997 technology similar to TurboTax for

24     processing the said tax data and for preparing

1  electronically the tax return, the processing

2  and preparing steps.

3              And as you know, Your Honor, the

4  law is clear that a claim construction that

5  excludes the preferred embodiment quote is

6  rarely if ever correct and requires highly

7  persuasive evidentiary support.  And they cite

8  the Vitronics case for that one.

9              Next slide, please.  Moving on to

10  electronically.  There is no special meaning

11  given to the term electronically in the patent

12  specification.  Therefore, of course, there is a

13  presumption towards plain meaning.  And, in

14  fact, the specification taken as a whole makes

15  it clear that electronic and electronically

16  refer to states, states of being.

17              And we spent two pages laying out

18  those quotes in our opening brief and I'm not

19  going to try to do it here for Your Honor, but

20  we believe that is very clear from the

21  specification.  And, in fact, Block's proposed

22  construction of electronic link and

23  automatically is consistent with not only with

24  the specification, but with the parties' agreed

upon claim constructions of the terms electronic

link and electronic intermediary which the

parties agree and the construction is made clear

are simply electronic devices.

Next slide. Simplification's

constructions of automatic tax reporting and

electronically by contrast comport with the

plain meaning of the patents in the prosecution

history. They acknowledge the presence of the

word comprising in the claims, recognize the

choice of the claim language automatic, and

they're consistent with the hearing transcript

taken as a whole.

Next slide. Said specification

does not define automatic. The plain meaning of

automatic we submit is via a process in which

one or more functions once initiated are

completed without manual intervention. And the

Court will recognize that from the CollegeNet

case.

Next slide. We also note that the

plain meaning construction of automatic matches

dictionary definitions which we submitted in our

brief and we note that Block so far has

1   submitted none to the contrary, it mirrors the

2   definition in the CollegeNet case which was

3   presented to the patent office.  And it gives

4   the term comprising its full effect because it

5   draws the automatic line at each step of the

6   process.  Each of the recited steps.  Pardon me,

7   let me clarify that.  At each of the recited

8   steps once initiated must proceed automatically.

9   It still allows for the presence of other steps

10  which may or may not be automatic.

11          Next slide.  Therefore, Your

12  Honor, Simplification's proposed construction of

13  automatic tax reporting is determining and/or

14  reporting tax liability, or satisfying tax

15  reporting obligations via a process in which one

16  or more functions, once initiated, are completed

17  without manual intervention.

18          Next slide.  Back to

19  electronically.  We submit the plain meaning of

20  electronically is by way of devices, circuits or

21  systems utilizing electronic devices.

22          Next slide.  This plain meaning

23  construction of electronically is consistent

24  with the specification in the way it treats

1    electronically.  It matches the dictionary

2    definition, again, that we have submitted and it

3    gives all of the claim language its full effect.

4    It does not render automatic in the '052 patent

5    claims superfluous and it's consistent with

6    those agreed upon claim constructions for other

7    terms that I pointed out to you.

8              At this point, Your Honor, we'll

9    move on to the third core dispute between the

10   parties, the construction of the means plus

11   function limitation.

12             Next slide, please.  Next slide.

13   To construe a means plus function limitation,

14   Your Honor, the Court must first define the

15   function of that claim limitation, and then

16   identify the corresponding structure in the

17   specification to perform that function.

18             The disputes between the parties

19   over what exact function applies to these

20   different limitations really hinges, Your Honor,

21   on the construction of the term electronically,

22   because all of these means plus function

23   limitations have electronically in them.  Means

24   for connecting electronically, connecting

1    electronically, preparing electronically, filing

2    electronically, so you can see the functional

3    issues hinge on the construction of

4    electronically.  So we're not going to go back

5    over that, we'll rely on our briefs and to my

6    prior argument.

7              However, the structural issues,

8    that's what we need to focus on, because Block

9    argues that the Court cannot construe the means

10   plus function limitation because there is not

11   sufficient structure disclosed in the

12   specification.  And the upshot of that is the

13   patent claims would be invalid.

14             However, these claims are presumed

15   valid under 35 USC, and, therefore, Block has

16   the burden of proof on this issue by clear and

17   convincing evidence if it is arguing to the

18   Court that there is insufficient structure in

19   the patents to support these claim limitations,

20   they must show it by clear and convincing

21   evidence.  And that's the Budde versus

22   Harley-Davidson case, Federal Circuit 2001.

23             Next slide, please.

24             Specifically, the means for

1    collecting electronically, I'll skim over this

2    corresponding structure that's identified in our

3    brief.  The corresponding structure identified

4    in the specification includes a data processing

5    system with a general purpose computer program

6    with code segments to operate that computer

7    causing it to connect electronically to

8    establish a physical or logical coupling via an

9    electronic link.

10             And the specification also lists

11    examples of electronic links, including a modem,

12    a computer readable medium and an electronic

13    data network.

14             This structure, Your Honor, is

15    sufficient to support the claimed limitation,

16    means for connecting electronically.

17             Next slide.  It's also important

18    to recognize, Your Honor, that structures and

19    means for connecting two devices electronically

20    were well-known in 1997.  That's something you

21    could almost take judicial notice of.  The

22    electronic data networks like the internet,

23    there were modems, there were automatic teller

24    machines that were networked.  There is really

1    no dispute, people of ordinary skill in the art

2    understood how to connect devices electronically

3    eleven years ago.

4           And the law is also clear, Your

5    Honor, this is an important point, because a

6    detailed description of structure is unnecessary

7    when the structure to perform the claimed

8    function is well-known in the prior art, or

9    well-known in the art.  And that's the S3 versus

10   nVidia case.  And I'm going to read the quote

11   actually from that case, Your Honor.  The law is

12   clear, the patent document need not include

13   subject matter that is known in the field of the

14   invention and is in the prior art.  The patents

15   are written for persons experienced in the field

16   of the invention, told otherwise would require

17   every patent document to include a technical

18   treatis beyond the skilled reader.  And that's

19   not the law, Your Honor.

20          Next slide, please.  However, to

21   address a point that Block first raised in its

22   opposition brief, Your Honor, Block raises in

23   its opposition brief the idea that the means for

24   connecting electronically and collecting

1    electronically do not satisfy the requirements

2    under the Aristocrat Technologies and the Harris

3    case because it's a computer implemented

4    invention using software and they don't set

5    forth an algorithm.

6              Well, Your Honor, to assess that

7    argument it's critical to understand what an

8    algorithm is.  It's not source code.  You don't

9    have to write out your whole computer program

10   and put it in a patent.  Instead, under the law

11   an algorithm is simply a step wise description

12   of the process you would use to perform that

13   function.  And it doesn't have to be every

14   single little step, but it has to be a

15   sufficient description of a step wise process to

16   show a person of ordinary skill in the art how

17   you intend to perform -- it gives structure for

18   how you're supposed to perform the claimed

19   function.  That's why, for example, block

20   diagrams with arrows and circles and boxes can

21   be sufficient structure to support a means plus

22   function claim.

23             The means for connecting

24   electronically is supported by sufficient

```
 1   structure, and because it discloses steps for

 2   connecting electronically.  And I will point

 3   Your Honor to those steps in the patent.  It

 4   begins in column four of the patent and goes

 5   down to column five lines 65 and it's a

 6   discussion of steps 11 and 12.

 7            Step 12, let's get this over to

 8   the Elmo here.  And this is towards the bottom

 9   of column five, Your Honor, discussing step 12,

10   which I believe the parties agree includes both

11   the connecting electronically and collecting

12   electronically parts of the process.

13            In step 12, the electronic

14   intermediary electronically collects tax data

15   from the tax data providers using electronic

16   links.  And it goes on to describe how that

17   happens.

18            At the bottom of the paragraph it

19   says Figure 2 is illustrative and the electronic

20   intermediary 21 can connect electronically with

21   and collect tax data electronically from, see

22   both step connecting and collecting, from other

23   tax data providers as discussed above in step

24   11.
```

1        So let's see what they say about

2   that in step 11.  It refers back, and by doing

3   this, Your Honor, it specifically refers to and

4   identifies the process of step 11 as being a

5   piece of the algorithm you use to accomplish

6   step 12, connecting and collecting

7   electronically.

8        And, Your Honor, starting -- let

9   me go a little higher up.  In step 11 this is

10  from column four of the patent, in step 11 the

11  taxpayer 20 provides the electronic intermediary

12  21 with information on tax data providers.

13        Going down the column a bit.  The

14  information provided by the taxpayer to the

15  electronic intermediary may include

16  identification, that's personal identifying

17  information such as a Social Security number.

18        Also alternatively, the taxpayer

19  could specifically identify the tax data

20  providers and could include information on how

21  to contact tax data providers electronically.

22        Additionally, the taxpayer can

23  provide the electronic intermediary with

24  authorization to contact and receive information

1    from the tax data providers.  That's the link to

2    step 12 there, connecting and collecting.

3              In sum, Your Honor, let's look and

4    see what's been disclosed here.  The taxpayer

5    provides identifying information to the

6    electronic intermediary, and that can be an

7    identifying information about themselves,

8    identification of the tax data providers,

9    account numbers, et cetera.

10             The electronic intermediary takes

11   that information, reaches out and contacts the

12   tax data provider and connects with the tax data

13   provider.  And those, Your Honor, are steps, the

14   steps disclosed in the patent, the algorithm for

15   performing the connecting electronically step,

16   and that provides under the law and under the

17   standards of Aristocrat and Harris, the

18   algorithm that's required, the structure that's

19   required to support the means plus function

20   limitation.

21             And that's particularly true

22   because you have to consider that in the context

23   of all the physical structures disclosed and the

24   fact that this was well-known in the art how to

1    do these things.
2            Means for collecting
3    electronically.  Again, Your Honor, we have a
4    similar structure here, data processing system,
5    general purpose computer, program of code
6    segments, causing it to gather tax data by an
7    electronic link.  We're back up at step 12, and
8    the specification lists examples of electronic
9    links including a modem, a computer readable
10    medium and an electronic data network.
11            Next slide.  And that, Your Honor,
12    is sufficient structure to support the means for
13    collecting electronically limitation of the
14    patents.  Particularly when you consider that
15    structures and means for collecting data
16    electronically were well-known in 1997, and an
17    example that resonates in the legal community,
18    Your Honor, is Westlaw and Lexis, these are data
19    services that were available back in 1997, and
20    you reach out from your computer, your
21    electronic intermediary to a main server, you
22    look for data, you connect with them, you look
23    for data, you grab data and download cases and
24    retrieve them back.  This gives a legal point

1      that a detail description of structure is not

2      necessary when the structure to perform that

3      function is well-known in the art.

4               Next slide.  Similarly, Your

5      Honor, as noted before and given a very similar

6      to what I have shown you already on the Elmo

7      with columns four and five of the patent, the

8      specification discloses steps for collecting

9      electronically.  And that provides in any

10     algorithm that Block requires be required under

11     Aristocrat and Harris.

12               In this case, for this step it's

13     the taxpayer provides identifying information as

14     I have discussed, the electronic intermediary

15     contacts and connects with the tax data

16     provider, the electronic intermediary collects

17     tax data from the tax data provider and pulls it

18     back.  That's the step wise process, a step wise

19     description of a process used to perform the

20     claimed function.  And that tells a person of

21     skill in the art what they're supposed to do.

22     That provides the structure required to support

23     this claim limitation.

24               Next slide, please.  Moving on to

means for processing electronically.  Again, we
have got the corresponding structure identified
there, data processing system with a computer
program with code segments causing it to perform
such systematic operations to do the processing.

Importantly here, Your Honor, the
patent specifically discloses that the
processing step could be performed by 1997 tax
preparation software similar to TurboTax.  We
have got a cite for that.

So the specification has culled
out not only that commercially available
products can do this processing, but it's
identified one, TurboTax.

Next slide.  This is significant,
Your Honor, because a specific reference to a
commercially available product as an example of
corresponding structure is sufficient to
overcome a claim of indefiniteness.  And that's
black letter law.  And we cite Budde versus
Harley-Davidson for that, which in that case
Your Honor, one of the means plus function
limitations involved was a sensing means.  It
was a case involving fuel injectors for

1    motorcycle engines.  And it was a sensing means.

2            And the patent specification

3    referred to as commercially available vacuum

4    sensor.  They said that's fine, because that

5    tells a person of ordinary skill in the art what

6    you use to perform that function.

7            Here this patent is identified

8    commercially available tax preparation software

9    similar to TurboTax, so one of skill in the art

10    knows what to look for.

11            And also the Radio Systems case,

12    Your Honor, in which the specification noted

13    that circuitry for starting and stopping signals

14    was commercially available.  And that was

15    sufficient disclosure to support a means plus

16    function limitation for that.

17            Moving on to preparing

18    electronically, Your Honor, means for preparing

19    electronically, the argument there is

20    essentially the same.  You have a data

21    processing system with a computer and code

22    segments to operate it which prepares an

23    electronic tax return.  But again, the patent

24    discloses the preparing step could be performed

1   by 1997 tax preparation software similar to

2   TurboTax.  And again, we point to the Budde case

3   and the Radio Systems case.  That specific

4   reference to commercially available products

5   defeats Block's argument that there is

6   insufficient structure to support that step.

7          The last means plus function

8   limitation, same slide, is means for filing

9   electronically.  There, Your Honor, we have

10  corresponding structure of course being the

11  general purpose computer program with code

12  segments to operate it causing it to submit an

13  electronic tax return to a taxing authority

14  through an electronic link.

15         We have talked about examples of

16  the electronic link.  And here the patent also

17  discloses, Your Honor, that electronic filing

18  with the IRS was available in 1997.  And also

19  I'll point out it also identifies commercially

20  available tax preparation software such as

21  TurboTax which could, in fact, perform the type

22  of E-filing.

23         The next slide.  Your Honor, the

24  specific reference, and we'll go back to the

49

1    Budde case and Radio Systems case and say look,

2    the specific reference to the fact the IRS

3    E-filing tax system was available on the market,

4    because it wasn't commercially available because

5    the IRS wasn't charging people, people weren't

6    buying it, but they were using it and it was out

7    there.  And the patent points to it as an

8    example of how E-filing was done.  And that is

9    sufficient structure to defeat a claim of

10   indefiniteness because it tells a person of

11   ordinary art what structure gets the job done.

12                Next slide please.  The next and

13   final major contention between the parties, Your

14   Honor, is the electronic tax return.  Next

15   slide.

16                Simplification's proposed

17   construction of electronic tax return, Your

18   Honor, is a statement of tax liability or tax

19   related information in a form prescribed by a

20   taxing authority in an electronic format.

21                Block's proposed construction is a

22   completed computerized tax return ready for

23   submission to a governmental taxing agency.

24                There are a couple of issues with

1    that, Your Honor.  First of all, it is not clear

2    to us exactly what Blocks means by a computer,

3    secondly when they say completed, that raises a

4    lot of questions, Your Honor.  What do they mean

5    by completed?  Do they mean it has to be signed?

6    Do they mean it needs an electronic signature?

7    Do they need mean there can be no manual

8    intervention at the point of filing because that

9    is certainly what their proposed constructions

10   of preparing and filing electronically suggest.

11   And those are dealt with in the briefs.  But if

12   that's the issue, if that's what Block means by

13   completed, then Block is wrong.

14              Next slide.  An electronic tax

15   return because the specification expressly notes

16   that you could prepare an electronic tax return

17   using circa 1997 tax preparation software.  And

18   back in 1997, Your Honor, and you can see this

19   in the screen shots that we attached to our

20   brief, commercially available tax preparation

21   software like TurboTax had the capacity to

22   electronically file with the IRS.  But when

23   people were E-filing federal tax returns back

24   then, the IRS didn't accept an electronic

1    signature.  The taxpayer had to after you hit

2    the button to send your tax return in, Your

3    Honor, taxpayers had to print out an IRS form,

4    8453-OL, you to had fill out that form putting

5    in a control number that you got back from the

6    Internal Revenue Service, you had to sign that

7    form and submit it to the IRS and the IRS did

8    not consider that tax form complete until they

9    received the signed form.

10            So in sum, Simplification says the

11   correct construction of the claim term

12   electronic tax return cannot require preparation

13   or completion beyond what could be done in 1997.

14            Back to the beginning, please.  In

15   conclusion, Your Honor, Block's proposed claim

16   constructions must fail for a number of reasons

17   that I have pointed out to you.  Particularly,

18   Your Honor, they must fail because the

19   transcript of the hearing before the Board of

20   Patent Appeals simply does not show what Block

21   says it shows.

22            Those passages do not mean what

23   Block says they mean.  As I said, they're either

24   taken out of context with regard to

52

1    electronically or they're countered by others

2    which show that Simplification was just arguing

3    for the plain meaning of automatic, not for

4    fully automated.

5              Secondly, Your Honor, the record

6    as a whole supports Simplification's proposed

7    constructions.  By that I mean the hearing

8    transcript read as a whole, the hearing

9    transcript read in light of the re-examination

10   history and the file history and the

11   specification and the plain language of the

12   patent.

13             Third, as regards to a means plus

14   function limitation, there is sufficient

15   structure disclosed in the specification to

16   support those limitations.  There are

17   algorithms.  There are commercially available

18   products disclosed.  And Block cannot meet its

19   clear and convincing burden of proof to show

20   otherwise.

21             And finally, the electronic tax

22   return, that construction cannot require more

23   than what was possible to do in 1997.

24             Thank you very much for your time,

1    Your Honor.  At this point I'll reserve my

2    remaining time for any rebuttal.

3              THE COURT:  Thank you.  We'll have

4    a short recess before we have you present.

5              (A brief recess was taken.)

6              THE COURT:  All right.  Be seated.

7    Ready to proceed?

8              MR. STANDLEY:  Your Honor, my name

9    is Jeff Standley.  I'm here on behalf of the

10   defendants today.  Along with me, Mark Engle and

11   Karen Pascale.  It's our pleasure to be here.

12             Your Honor, we have a slide

13   presentation we would like to present and if it

14   meets with your approval, I would like to give a

15   copy to the Court and to opposing counsel.

16             THE COURT:  Yes.  Thank you.

17             MR. STANDLEY:  It's only thick,

18   Your Honor, because we have -- we put the

19   exhibits in the back.  The presentation I assure

20   you is not that long.

21             THE COURT:  All right.

22             MR. STANDLEY:  All right.  Your

23   Honor, we'll begin with our first slide.  Your

24   Honor, we thought that it would benefit the

54

1       Court to understand a little bit about the

2       evolution of tax preparation and how it has come

3       along in past years.

4               Originally tax returns were

5       completed by hand.  We're all familiar with

6       this, sitting around the kitchen table filling

7       these things out.

8               Then the process progressed

9       somewhat.  And you had tax preparation companies

10      like H & R Block that assisted people with their

11      tax returns using a computer.

12              The next one is, the next

13      progression was tax returns prepared on your

14      home computer.  The data was still manually

15      entered with your own fingertips through the

16      keyboard and the computer would perform the

17      calculations and generate a completed return

18      ready for submission to the IRS.

19              The next step in the evolution was

20      tax returns were prepared on a computer at home,

21      data was manually entered, the computer

22      performed the calculations and generated a

23      completed return.  Instead of mailing, the tax

24      return was then capable of being transmitted

1    online to the IRS through something known as

2    electronic filing.

3              More recently, we have been able

4    to import data from banks, companies such as

5    that into personal financial software which

6    could be imported into the tax return software

7    to generate a return.

8              And this gets into the so-called

9    Beamer references, which the patent office

10   relied upon in the reexamination to reject the

11   claims of the Simplification patents.

12             I will say that the Beamer

13   references did involve some manual pointing and

14   clicking, so there was some manual work that had

15   to be done with those.

16             The patent itself, Your Honor,

17   refers to increasing levels of automation in tax

18   preparation.  At column one it refers to an

19   increasing amount of data necessary to compute

20   income tax liability and that data was

21   increasingly becoming available electronically.

22             In column one, lines 39 to 49, it

23   refers to how tax return preparation had become

24   increasingly automated.  Mentioned the TurboTax

56

1    program which we've heard about today.

2                Also in column one at lines 50 to

3    63, there are a few legal interpretational

4    issues with regard to determining tax liability

5    for most taxpayers.  In other words, I think

6    what this is driving at is many taxpayers in the

7    country do not have complex tax returns.

8                Finally, taxing authorities such

9    as the IRS have begun accepting electronic

10   returns and that's also mentioned in column one

11   of the patent.

12               It's very important in the context

13   of this case that we have an appreciation for

14   what was this invention supposed to do.  And I

15   think that's highlighted in several places, five

16   or six to be exact, in both patents, each

17   patent.  It's highlighted by the description

18   that is fully automated, and right there in

19   column two are a couple of instances out of the

20   patent where it refers to this invention being

21   fully automated, talking about how historically

22   fully automated tax prep was not available.

23               It is also interesting that the

24   title of the patent is fully automated.  There

57

1    is several references to being fully automated.

2              I think what is probably more

3    important is that aside from the manual entry of

4    initiating the software that's described in step

5    11, which we're going to get into in the patent

6    in a few moments, aside from that initiation,

7    the initial step, the patent is silent as to any

8    other manual initiation going on.  I think

9    that's another indication, in other words, what

10   isn't said is another indication of the fact

11   that this is a fully automated system.

12             In column three in the summary of

13   the invention, another reference to what the

14   invention is.  It's the object and advantages of

15   the present invention are achieved by a method,

16   an apparatus, and an article of manufacture for

17   fully-automated reporting of tax refund.

18             And then here is a figure taken

19   out of the patent, and this is Figure 1, and it

20   just goes through the procedures that are in

21   this patent.

22             Before I get too deep into this,

23   Your Honor, I want to point out that if you take

24   a look at these patents, I know you have, there

1    are two figures.  I don't know about you, but I

2    refer to these figures as stick figures.  There

3    is no meat on these bones.  They're a skeleton.

4    You can see the general idea of what the

5    inventor had in mind, but you don't see any

6    substance there.

7              And this is going to be a

8    continuing problem as we get further into --

9    especially into the means plus function claims.

10   But this is about as detailed as it gets.

11             What troubles Block about this

12   sort of a drawing is that Block above probably

13   all others in the world knows the complexities

14   of what is involved in tax prep and collecting

15   of tax data.  And it's an extremely complicated

16   process.  And we truly question whether the

17   inventor in this situation grasp that.

18             But anyway, during the initiation

19   procedure, step 11 is the only step that's

20   mentioned in the patent where the user manually

21   inputs information.  And just very quickly, what

22   is that information they're manually inputting?

23   This is setup information, Your Honor.  This is

24   your name, your address, maybe where you bank.

1    Maybe the name of your employer, where we can

2    get your W-2.  Maybe the account number of the

3    bank or something like that where this data

4    could be automatically obtained.

5              And then it goes through the

6    various steps.  Step 12, the electronic

7    intermediary is described as data processing

8    system comprising a general purpose computer and

9    a computer program.  Electronically collects the

10   tax data from each tax data provider that has

11   tax data pertaining to the taxpayer using the

12   electronic links.

13             It may sound apparent from what

14   we're talking about.  What we're highlighting

15   there is there isn't any mention from steps 12

16   down to step 15, there is no mention in this

17   patent of anything being done manually.  Once

18   you get the initiation setup started, from there

19   you go out and you collect the data

20   automatically, it's imported automatically.

21             And here is the other stick figure

22   or drawing that's in the patent, and links 32,

23   33, 34, 35, 36 and 37 shown in those drawings

24   are all culled out in the patent as electronic

1    links.

2                There is no detail of how those

3    electronic links are set up.  You're just told

4    that they're there.  And then you have these

5    blocks out on each end where the person is to

6    get -- excuse me, the electronic intermediary is

7    to get the data.

8                With the electronic collection of

9    tax data in step 12, this is taken right out of

10   the patent, column six, lines 23 to 27, the

11   invention I'm quoting eliminates the current

12   requirement that a taxpayer manually collect the

13   tax data, eliminates the current requirement

14   that a taxpayer manually enter such tax data

15   onto a tax return or into a computer.  I think

16   eliminates is a strong word.

17                Step 13.  The electronic

18   intermediary processes the tax data obtained

19   electronically from the tax data providers in

20   step 12.  The information processed in step 13

21   is obtained in the steps 11 and 12, this is

22   referred to in column six of the patent.

23                And then finally step 14, the

24   electronic intermediary, perhaps the electronic

1    tax returns using the processed tax data from

2    step 13.   The reason we highlighted processed

3    tax data is we think it's clear that processed

4    tax data comes from the prior step which is

5    again an automatic fully electronic step.

6                In the first patent, you have the

7    fact that you can file the electronic tax return

8    in step 15, the second patent doesn't include

9    that in the independent claims, the first patent

10   does.

11               Read in light of specification,

12   the invention is a fully automated system.   The

13   title of the parent patent recites fully

14   automated.   The summary of the invention says

15   the invention is fully automated.   None of the

16   embodiments disclose any manual input from step

17   12 on through the process of the patent.   And

18   the prosecution history supports a fully

19   automated invention.

20               The patent claims should not be

21   construed one way in order to obtain their

22   allowance and in a different way against accused

23   infringers.   And this is a case that I'm sure

24   the Court is very familiar with, the Computer

1    Docking Station versus Dell case.

2              Your Honor, earlier today

3    Mr. Curtin referred to the context of the oral

4    hearing in Washington.  And he said that Block

5    had taken things out of context.

6              There are two things about the

7    context that we want the Court to see.  The

8    first thing about the context is the entire

9    structure of the patent being fully automated.

10   It's all over this patent saying it's fully

11   automated.  In that context we haven't gotten it

12   wrong, we haven't taken it -- but at that board

13   hearing, the context was this, the reexamination

14   authority at the patent office had stricken both

15   patents, both patents were dead, they were gone.

16             The context of that hearing was

17   Simplification was fighting for its life, its

18   patent life.  Had the board not seen it

19   Simplification's way, these patents would be

20   dead and invalid and not in existence today.

21   That's the context of that board hearing and

22   that's why we think that board hearing was so

23   crucial.

24             There were some statements made up

1    at the beginning of the board hearing where you

2    see this going on between the inventor, the

3    inventor's attorney and the board, and as you

4    see that negotiation heating up in the

5    transcript, you start to get further toward the

6    end and you see where the inventor made

7    statements that through his attorney that he had

8    to make in order to defeat the prior art and get

9    this thing back into issuance and out of the way

10   of the prior art.

11            So the history of the

12   reexamination on April 8, 2003, Simplification

13   sues Block for patent infringement of the '052

14   patent.  On July 11, '03, Block requested

15   reexamination of the '052 patent.  In October of

16   '03, the reexamination was granted on the '052

17   patent.  And then in February of 2004, the

18   continuation patent, that is the also the

19   subject of this case, it issued at the patent

20   office.

21            On February 24, 2004,

22   Simplification sues Block on that continuation

23   '787 patent.  On March 15, 2004, Block requests

24   a reexamination of the '787 patent.  And in June

1    of 2004, the reexamination was granted, the

2    request was granted on the '787 patent.

3              In June of '05, the examiner

4    issues a final rejection for all asserted claims

5    of the '052 patent.  So the reexamination had

6    wound its way through, it took some time, final

7    rejection was issued.

8              In January of '06, the examiner

9    issued a final rejection of all asserted claims

10   of the continuation patent.

11             And the primary basis for the

12   prior art rejections was the Beamer reference,

13   which you'll hear more about here momentarily.

14             So in the Beamer reference, which

15   by the way, Your Honor, predated the application

16   by Simplification of some ten years, we've

17   highlighted a section there out of the Beamer

18   reference and I quote, one day in the not too

19   distant future, Jan and Jim Smithwick will have

20   their employers transmit their salaries

21   electronically directly into their personal bank

22   accounts.  They will be able to download their

23   bank records into their personal financial

24   software.  That program can -- it says lien -- I

1    think it meant then pass the information to a

2    tax preparation program.  Jan and Jim will then

3    send the electronic version of their tax return

4    to their accountant via modem and the accountant

5    can electronically file the tax return with the

6    IRS.  All of this will be accomplished without

7    the Smithwick's having to re-enter any data,

8    without the use of a pocket calculator and

9    without the necessity of any paper.

10                I think what's important here is

11   this is ten year before Simplification's patent

12   filing.  And even when Simplification comes out

13   with their filing ten years later, there is no

14   meat on those bones.  You still have just the

15   skeleton figures, the Figure 1 and 2, not much

16   more than you see right here in this Beamer

17   reference.

18                Also in the Beamer reference, I

19   quote, MoneyLine allows you to communicate

20   directly with your bank's computer system.  Many

21   transactions can be directly fed by the bank's

22   computer into Dollar & Sense accounts, capital

23   D, capital S.  This reduces the drudgery of

24   retyping data, increases accuracy and gives

1   convenient access to bank information at any

2   time, not just when the statement arrives.  This

3   is a powerful example of how easily information

4   can be transferred between dissimilar computers,

5   let alone dissimilar programs.

6               So with that background, the

7   examiner in the reexamination proceeding said in

8   an office action dated January 18, 2006, at page

9   15, and I quote, "The tax preparation software,

10  e.g., MacInTax, can electronically connect to

11  and download relevant financial information from

12  a bank via a home accounting program, e.g.,

13  Dollars & Sense.  This downloaded information is

14  used to assist in completing one's tax return.

15  Use of software executed by a computer to

16  perform tax computations for preparing a tax

17  return is indicative of electronic and automatic

18  performance of these computations.  In other

19  words, a computer is an electronic device that

20  automates such computations as opposed to

21  performing the calculations completely manually

22  by a human."

23              Simplification responded on

24  November 30, 2005 at their appeal brief for the

1    '052 patent and on August 22, 2006, their appeal

2    brief was filed for the '787 patent.  On May 7,

3    2007, the oral hearing on both asserted patents

4    was conducted before the Board of Patent Appeals

5    and Interferences.

6              Your Honor, at this point,

7    although I'm sure the Court is well aware, we

8    think it's important for the record to put in a

9    little bit of law on the issue of prosecution

10   disclaimer.  The Purdue Pharma versus Endo

11   Pharms case, a patentee may limit the meaning of

12   a claim term by making a clear and unmistakable

13   disavowal of scope during the prosecution.

14             And then the Dell case we

15   mentioned earlier.  I quote, "A patentee could

16   do so, for example, by clearly characterizing

17   the invention in a way to try to overcome

18   rejections based on prior art."

19             And then we have the Omega

20   Engineering versus Raytek case.  And I quote,

21   "As a basic principle of claim interpretation,

22   prosecution disclaimer promotes the public

23   notice function of the intrinsic evidence and

24   protects the public's reliance on definitive

68

1     statements made during prosecution."

2               So prosecution disclaimer does not

3     depend on whether an applicant distinguishes

4     their invention in multiple ways.  A disavowal

5     if clear and unambiguous can lie in a single

6     distinction among many.  And for that you can

7     see the Andersen versus Fiber Composites.

8               Also in Norian versus Stryker,

9     there is a quote, "We have not allowed patentees

10    to assert that claims should be interpreted as

11    if they had surrendered only what they had to."

12              In the Laitram versus Morehouse

13    case, Moreover, the fact that the USPTO does not

14    rely on the distinction does not erase an

15    applicant's clear disavowal of the claim scope

16    taken out of that case.

17              Simplification asserts that

18    collecting electronically requires no manual

19    input in its appeal briefs.  This is a section

20    taken out of their appeals brief where they're

21    talking about the Beamer reference.  And I

22    quote.  "To move the data from the text file

23    into the locations on the MacInTax electronic

24    tax form, Beamer teaches that the taxpayer must

1    manually select the data -- and they underline

2    the words "manually select" -- continuing -- the

3    data from the Dollars & Sense year-end financial

4    report (which was converted into ASCII text by

5    the MacInTax Converter) and manually point --

6    again, the "manually point" are in bold and

7    underlined -- to where the data should be

8    entered on the MacInTax electronic tax form.

9              Beamer -- excuse me, there is a

10   reference to Beamer, and then it continues, all

11   of this manual input, again, manual input is

12   underlined, must be done by the taxpayer prior

13   to the MacInTax software performing any tax

14   computations for preparing a tax return.

15             Hence, Beamer fails to teach that

16   tax data collected electronically is not

17   manually entered onto the electronic tax return

18   and into the taxpayer's computer.  Thus, Beamer

19   fails to teach "means for collecting

20   electronically tax data from said tax data

21   provider", and/or the method step of "collecting

22   electronically tax data from said tax data from

23   said tax data provider."

24             And that ends our quote from that

1    appeals brief.

2              So a representative claim taken

3    out of the '787 patent is Claim 10 and you can

4    see where we've highlighted connecting

5    electronically in the first claim element.  In

6    the next claim element, go ahead, again, taking

7    their comments made in the reply brief, they

8    once again say that Beamer fails to teach or

9    suggest collecting electronically tax data from

10   the tax data provider.

11             I'm quoting from Simplification's

12   '787 reply brief.  "The automatic step of/means

13   for collecting electronically tax data from said

14   tax data provider."

15             And then down below it refers to,

16   Beamer, however, teaches that manual input --

17   and once again, it's underlined -- manual input

18   must be done by the taxpayer prior to the

19   MacInTax software performing any tax

20   computations for preparing a tax return, which

21   is distinguishable from the automatic step

22   recited in the claims.

23             So, therefore, collecting

24   electronically, that step is automatic in our

1   view and must be performed without manual input.

2   This was argued even as to Claims 1 and 10 of

3   the '787 patent, claims that do not recite the

4   term automatic anywhere.

5              At the oral hearing in

6   distinguishing its invention over the prior art

7   of record, Simplification made two key

8   admissions.  One, that electronically equals no

9   manual input.  And two, after step 11, if there

10  is any manual input, it's not covered by the

11  claims and it does not anticipate the claims.

12             Simplification specifically

13  disclaimed any manual input for the term

14  electronically at the hearing.  Mr. Sartori was

15  asked, or excuse me, commented, and I quote,

16  "And there are two reasons that I said

17  previously that the Beamer article does not

18  teach it.  One is they're connecting

19  electronically.  And yes, we are saying

20  electronically means that there's no manual

21  input.  You have to -- we're saying you need to

22  read it in light of the specification?

23             At another place, Simplification

24  specifically disclaimed all manual input outside

1    of initiation.  Mr. Sartori said at the hearing

2    and I quote, "That is manual intervention.  And

3    that has to do with step 11, which is the manual

4    step required to initiate it, to initiate the

5    automatic process.  That's taken from column 5,

6    line 45, what you've been focusing on, sir, Your

7    Honor.  And that has to do with step 11, which

8    is the manual stuff."

9                    Judge Lee said, "I see.  So you're

10   allocating all of these manual input to the

11   category of initiating the process."

12                   Mr. Sartori, "Yes, yes."

13                   Judge Lee, "If there's any manual

14   input outside of initiation, then it's not

15   covered by the claim."

16                   Mr. Sartori, "It's not covered by

17   the claim and it does not anticipate the claim."

18                   So with all of this backdrop, we

19   have a section taken out of the chart which is

20   their Figure 1, Claim 11 -- excuse me, step 11

21   is the unclaimed manual initiation step and then

22   you see steps 12, 13 and 14.  Step 12 they're

23   connecting electronically to a tax data

24   provider.  They're connecting electronically the

73

1    tax data from a tax data provider.  In step 13

2    we're processing that tax data they provided.

3    And then in step 14 they're preparing

4    electronically an electronic tax return using

5    the processed tax data.

6              And we've highlighted on the left

7    there that's our addition in step 12, 13 and 14

8    that there is no manual input allowed, there is

9    no manual input even discussed with respect to

10   those steps in the patent.

11             Your Honor, we found a case, it's

12   a relatively recent case which we think is

13   directly on point here, this is Ormco,

14   O-R-M-C-O, versus Align Tech, or Align

15   Technologies.  Similar kind of fact pattern in

16   the sense that there was a lot of discussion in

17   the patent about this software program being

18   fully automatic.  It was an orthodontics

19   invention where an orthodontist would start this

20   program, and it would provide the optimum

21   finished positioning for the teeth of the person

22   who the orthodontist was working on.

23             And the Court said in there, and I

24   quote, From the beginning of the common

1    specification of the Ormco patents, it is clear

2    that the inventor's primary basis for

3    distinguishing their invention was its high

4    level of automation and the design of custom

5    orthodontic appliances as compared to the prior

6    art.

7              Continuing in that same case, the

8    Ormco case, the Court is quoted as saying we are

9    mindful of the prosecution that we must not

10   incorporate into the claims limitations only

11   found in the specification.

12              We are not doing the here, nor did

13   the district court.  We are interpreting the

14   claims in light of the specification.  The

15   situation here involves specifications that in

16   all respects tell us what the claims mean

17   buttressed by statements made during prosecution

18   in order to overcome a rejection over prior art.

19   Accordingly to attribute to the claims a meaning

20   broader than any indicated in the patent and

21   their prosecution history would be to ignore the

22   totality of the facts of the case and exalt

23   slogans over real meaning.

24              Simplification's arguments in our

1   view, Your Honor, you are unavailing.  First,

2   the clear disavowal in the prosecution history

3   are not ambiguous and they weren't taken out of

4   context.

5                Second the claim term comprising

6   does not shield the patents from a clear

7   disavowal of claim scope.  I think this is an

8   important point.  Simplification keeps wanting

9   to come back to the word comprising saying it's

10  open ended.  You know what, I agree with that.

11  The problem is when you as the inventor, when

12  you take that word and you squash it by telling

13  the Court -- excuse me, telling the patent

14  office, clear disavowal of claim scope, you can

15  overpower the word comprising which is exactly

16  what they did with their disavowals in the

17  proceedings at the patent office.

18                Third, it makes no difference

19  whether the board relied on the arguments or

20  not, surrendered claim scope is still

21  surrendered claim scope.  Once surrendered, they

22  can't recapture it.  Frankly the term

23  electronically cannot mean one thing in one

24  claim step and another thing in another claim

76

1    step.  It has to have the same meaning

2    throughout.

3            Then we get to the means plus

4    function claims and that we are arguing do not

5    possess sufficient structure to meet the

6    requirements of 112, paragraph 6 of the code.

7    We think the Aristocrat case, very recent case

8    out of the Federal Circuit decided just several

9    weeks ago says, and I quote, the point of the

10   requirement that the patentee disclose

11   particular structure in the specification and

12   that the scope of the patent claims be limited

13   to that structure and its equivalents is to

14   avoid pure functional claiming.  Close quote.

15           For a computer implemented means

16   plus function step, the Federal Circuit has

17   repeatedly held there must be an algorithm.  It

18   must be disclosed to meet the requirements.

19   Simplification failed to show and cannot show a

20   single algorithm for carrying out the claimed

21   functions in the specification.  The limited

22   structure cited by Simplification is not an

23   algorithm.

24           Here is an example in step 14 of

1    Figure 1, means for preparing electronically is

2    defined entirely by box 14 according to

3    Simplification.

4            Well, in that little box with no

5    meat on it, they're trying to say everything we

6    need to know to satisfy 112, paragraph 6, we

7    disagree with that.

8            You can see here is a

9    representative claim, this is Claim 1 of the

10   '787, the fourth element of that claim refers to

11   the means for preparing electronically, an

12   electronic tax return.  If you look in the prior

13   -- if you look in the prior element, means for

14   processing electronically, and then the prior

15   element to that, element two of that claim,

16   Claim 1 of the '787, means for collecting

17   electronically, and then the first point means

18   for connecting electronically, these are all

19   functional statements, and they have little if

20   any structural support that we can find in the

21   patent.

22           In Figure 2, they point to Box 21

23   of that figure, but it does not provide the

24   needed algorithm.  It's even less helpful than

78

Figure 1.

Here is the chart of the relative claim terms which I won't go through.  We'll skip through this.

And, Your Honor, what I want to say with respect to the means plus function claims is to ask the Court to consider this. Why does the CAFC want an algorithm in the claims?  Why is that important?  And what must it talk about?

And as I was listening to Simplification's arguments earlier today, I thought of the following things that are not answered by their patents.  And it's very frustrating that it's not in there anywhere.

Take, for example, means for connecting.  And we see these statements that well, it could be a modem, it could be this, it could be that.  Where is the algorithm or instructions for connecting to the tax data providers who are left to believe that this is just a piece of cake, that there is nothing complicated to it.

Here is some specific questions

1   that aren't answered by the patent.  In what

2   format do you connect?  Are we all to believe

3   that everyone in the world runs the same format?

4   Of course they don't.

5            What network platform are you

6   going to use?  There are no instructions in this

7   patent telling us what platform they are going

8   to use to go out and get the data.

9            The tax data providers will be

10  using their own internal network systems.  If we

11  go to your employer, if we go to your bank,

12  they're going to have their own internal network

13  systems.  They're likely to be very different

14  from the next business down the street and the

15  next business down the street.

16            How does the system of

17  Simplification's patents manage that problem?

18  There is no algorithm given for how they're

19  going to handle that problem.  But it gets worse

20  for them, and that's in the means for

21  collecting.  So somehow they've managed to

22  connect to these desperate systems, and now

23  they're getting a data stream that's coming down

24  the pike.  Where in this patent does it say

1    anything about how you collect that data?  And

2    here is some real world problems that they have

3    that they haven't solved and it's not in the

4    patent anywhere.

5              And that is once the connections

6    are established and the data is being received,

7    where is the algorithm for putting the data in

8    the appropriate places in the form?  You got a

9    tax form, you're getting the stream of data,

10   it's coming in, it's saying your mortgage

11   interest last year was X, your wages were Y,

12   your charitable deductions were Z, where does it

13   put X, Y and Z?  And there is no algorithm to

14   tell us where it puts that data that's coming

15   in.  We're left to kind of assume that it

16   magically found its way into the right places in

17   the tax forms.

18             There is no algorithm to show us

19   how that all works.  It's complicated.  Having

20   represented Block, I can tell you it's a very

21   complicated problem.

22             There is a statement made in the

23   oral hearing that was brought up today by

24   Simplification about the Purple Heart charity,

1   and that caught my eye, because the Purple Heart

2   charity was mentioned at the oral hearing as

3   though you could go out and get your charitable

4   deductions, you could get that manually, you

5   wouldn't have to get that necessarily fully

6   electronically, fully automatically.  But it's

7   interesting that that was said at the oral

8   hearing because at column four, lines 65 over to

9   the top of column five of the patents, and I'm

10  reasonably sure it's exactly the same in both

11  patents because the specifications are the same

12  in both patents, it says, for example, the

13  taxpayer could be asked about whether the

14  taxpayer has donated money or other items to

15  charity, i.e., Purple Heart.  That's my comment

16  about Purple Heart.  Purple Heart is not

17  mentioned in here.

18          And I continue the quote.  If the

19  taxpayer has donated the electronic intermediary

20  then notes that these charities need to be

21  electronically contacted for collection of tax

22  data, so the patent says one thing and at the

23  oral hearing there was something else said.

24          The patent says if you want your

1    charitable deductions, you go out electronically

2    and get those.  But at the oral hearing, they

3    said you can contact Purple Heart and if they

4    can't get it to you electronically, you can put

5    it in manually.  But nowhere is that found in

6    the patent.  It's just not in the patent

7    anywhere.

8              So with comments made at the oral

9    hearing which we think are very clear,

10   unambiguous, disavowal of claim scope, when you

11   look at the prior art, where the prior art was,

12   you look at how some automation was already

13   there, you look at how manual inputting was

14   already there, and how does Simplification get a

15   patent here?

16             The only way they could get the

17   patent to get around Beamer, to get around

18   TurboTax, to get around all those products that

19   were out there before, the only way they could

20   do it is to say we're fully automated, we did

21   the whole thing in a fully automated fashion.

22             So starting with the very first

23   words of the title of their patent, fully

24   automated, we think this Court needs to hold

1    them, Your Honor, to what they said all through

2    the process which was full automation, and

3    except for one reference to a Purple Heart

4    charity in an oral hearing that doesn't comport

5    with what the patent says, other than that one

6    tiny mention, there is no mention anywhere that

7    once you set this thing up that there is any

8    manual intervention, it's all automatic from

9    that point.

10                    Thank you, Your Honor.   We

11   appreciate your attention.

12                    THE COURT:   Let me ask you a

13   question.   And I didn't want to interrupt you, I

14   wanted you to get through the full presentation.

15                    When I was reading your papers, I

16   understand the fully automated argument, and I

17   know that you want to stay away from claim

18   interpretation becoming or being done in the

19   context of infringement, infringing, but I can't

20   help but when I listened to you today and when I

21   was reading your brief to think about that, and

22   like schedules and, you know, your typical tax

23   documents that you prepare, and then the

24   integration with required information.

 1          You believe it's possible to have

 2    a fully automated program.

 3          MR. STANDLEY:  In the future, yes,

 4    I do believe that will happen.

 5          THE COURT:  And that's what I

 6    think you were saying.  But do you think there

 7    is one today?

 8          MR. STANDLEY:  We know of none.

 9          THE COURT:  And --

10          MR. STANDLEY:  It's an extremely

11    complex problem, Your Honor.  We have tried at

12    Block, Block has tried to do this, has failed.

13    It's a very complicated problem.

14          THE COURT:  Just give me a little

15    more about that so I have an understanding, like

16    -- and I know you have tried already to give me

17    some explanation, but what would you say in the

18    integration of the -- let's say a person or

19    small business's financial information and other

20    necessary information against the required

21    information by the government, is the biggest

22    problem.  Do you understand what I'm saying?

23          MR. STANDLEY:  I think you're

24    saying, Your Honor, that what we may keep in our

85

1    own personal finances that doesn't exactly

2    equate to what the IRS requires us to put on the

3    tax form.

4              THE COURT:  Yes.

5              MR. STANDLEY:  You're right, we

6    don't typically keep our daily lives organized

7    like a form 1040, and how it requires us to

8    input tax data.  But that's -- that is an issue,

9    sure, but it's one of actually probably one of

10   the more minor issues.

11             There are serious problems with

12   connecting to bank networks, with connecting to

13   state and local taxing authority networks,

14   connecting to a charity and their network, just

15   think of those three alone.  Every door that you

16   knock on, they have a different system.  It's

17   mind boggling how you get this stuff, this data

18   to be able to -- how you get your system, one

19   single system, a tax intermediary, how you get

20   it to talk to dozen if not hundreds of different

21   suppliers running different systems.  That's the

22   first problem.

23             The second problem is assume you

24   can pull that off, which you may be able to pull

86

```
1    it off on a very, very small level, small basis,

2    maybe one or two here and there that you can

3    sweet talk into allowing you into their facility

4    to try to see their code and see if it works,

5    but let's say you can do that with a few, now

6    you have got a problem, once the data is coming

7    down the pipeline, what do you do with that

8    data?  That's the next problem.  You have got to

9    import that somehow into a tax return, not as

10   easy as one might think how that's done.

11            Certainly we have instances out

12   there where some things like that maybe have

13   occurred, but when you're talking about a tax

14   form and you're talking about no errors, because

15   you can get into a lot of legal troubles if

16   there are errors in that tax return, it's an

17   extremely complex problem.

18            THE COURT:  I'm trying to stay

19   away from infringing, but tell me what it is

20   that -- tell me the extent that Block is able to

21   prepare an automated return.

22            MR. STANDLEY:  Well, we have never

23   succeeded at it in this sense.  What we have

24   been able to do is we have been able to make a
```

1    connection to certain W-2 providers, I don't

2    have the exact number, Your Honor, but I'm

3    almost certain it's less than ten, and on a

4    trial basis, which went on for a few years, I'm

5    not telling you anything I haven't told

6    Mr. Curtin from Simplification, for a few years

7    we tried this to get the data from just a W-2,

8    nothing more, to import into a tax form

9    automatically without any manual intervention by

10   the user.  We also tried it with 1099s and

11   1098s, which I think are mortgage interest and

12   interest earned.

13           We have a few examples where we

14   were able to make the electronic connection and

15   then ran into problems with respect to getting

16   it to fill out the tax form properly.

17   Ultimately the experiment failed, we shut it

18   down.

19           But I do want to stress this, that

20   during those few years where we tried this, and

21   the Court is ultimately going to hear evidence

22   about how many times someone tried to use it and

23   how many times they were successful and how many

24   times it failed, we'll have all that before the

1    Court, but none of them ever did it the way this

2    patent, these two patents describe it in the

3    sense that not a single time were we able to

4    fully automate the process.

5              We had a vision to try to do that,

6    but it never worked.  We were never able to get

7    a fully automated tax form completed.  It would

8    be nice to take all people and error

9    possibilities out of doing tax returns.  It

10   might make them simpler, but what we found out

11   is it's a huge problem.  But even in those

12   instances where we were able to successfully get

13   someone's W-2 data imported into an electronic

14   tax return, we still had a lot of manual

15   intervention that occurred after the initiation

16   step.

17             THE COURT:  All right.  Thank you.

18   I appreciate it.

19             MR. CURTIN:  Thank you very much,

20   Your Honor.  May it please the Court, I think I

21   have just a few minutes to make a couple of

22   brief points.  And also I realized Your Honor

23   after I sat back down that while I passed up

24   copies of the slides and then handed those to

1    opposing counsel as well, I had not provided the

2    Court with copies of the Elmo pages that we had

3    shown with the highlighting.  And if the Court

4    would be interested in that, we can certainly

5    provide copies to you for your files and

6    opposing counsel when we're done if that's okay.

7                 Well, there are a few points, Your

8    Honor, I want to address and I believe I can do

9    this relatively quickly.  The first thing that

10   is important I think that struck me based on

11   Mr. Standley's presentation, Your Honor, was

12   that Block has spent an awful lot of time

13   talking about the requirement that the recited

14   claim limitations be performed automatically,

15   and we don't dispute that.

16                 Block acknowledges in its

17   presentation repeatedly that those arguments

18   about electronically were made in the context of

19   Claims 1 and 10 of the '787 patent, and

20   Mr. Standley's argument for why that has to be

21   imported into all the other claims is because he

22   argues the word electronically must mean the

23   same thing in all claims.

24                 Well, Your Honor, that's just not

1    so when you consider that we're talking about

2    the very special definition point that Block is

3    relying on.  It was not focused on

4    electronically in and of itself, it was focused

5    on connecting electronically and collecting

6    electronically in the context of those two

7    claims, those two claim limitations.

8              So Block's argument because they

9    say it as to one you say it as to all goes

10   completely contrary to the point they're

11   completely relying on which is the patentee

12   can't adopt a special definition for a

13   particular claim term for a special context to

14   justify the claim meaning.

15             In that respect the context of

16   what we're talking about there is critical.

17             Now, there are a couple of points

18   I want to mention to Your Honor, and I'm going

19   to use the Elmo to illustrate.

20             The first point, Your Honor, is

21   Mr. Standley spends a considerable amount of

22   time in his presentation poo-pooing figures one

23   and two of the patents, which are what he calls

24   stick figures.

1          Well, that may very well be what

2     Mr. Standley calls them, but what they're called

3     are flow charts.  They're called diagrams.

4     They're the diagrams that are standard in

5     describing software programs.  If you look to a

6     patent that talks about software, if you look to

7     a patent that has computer information, you're

8     going to find diagrams, you're going to find

9     flow charts.  And for one of ordinary skill in

10    the art, of course they are not highly detailed.

11    The law does not require that you set forth the

12    source code, but at the same time it puts the

13    meat on the bone in the sense that it lays out

14    the steps that the software is to follow.

15          And these are amplified, Your

16    Honor, these individual boxes that say collect

17    tax data, process tax data, prepare tax data are

18    amplified by the description and steps

19    Simplification has spent considerable time on,

20    and it is certainly just not the case that as

21    Mr. Standley said, that we're relying on say box

22    14, prepare electronic tax returns.  In fact, I

23    spent considerable time with Your Honor

24    discussing the structure in the patent that does

1      show how to do that including the fact that they

2      call out commercially available software, which

3      under the law is sufficient structure for

4      processing tax returns.

5              I also, Your Honor, I want to

6      address Mr. Standley's contention that with

7      regard to the definition to fully automated

8      point that you must construe the claims as being

9      fully automated because he says there is no

10     manual intervention described in the patent

11     after step 11.

12              Well, Your Honor, that is simply

13     not the case.  And we showed that that's not the

14     case in my initial presentation.  But I'll

15     emphasize a couple of points.  First all, we saw

16     the preference from step 12 back to 7, it talks

17     about that they act on that to go out and

18     connect to and collect the data.

19              But most specifically, let's go

20     back to column six, but a different part of

21     column six than Mr. Standley was looking at.

22     These are cites, Your Honor, that I gave you in

23     my earlier presentation.  I want to cull out

24     this language for you.  Mr. Standley says, of

1    course, after step 11 there is no manual

2    intervention described.  Here we are.  In step

3    13, the electronic intermediary processes the

4    tax data obtained electronically from the fact

5    data provided in step 12.  In the present

6    invention, step 13 can be implemented using a

7    computer program similar to the computer

8    programs currently available in the marketplace

9    such as TurboTax which is a registered trademark

10    of Intuit, Inc.

11              And it goes on, Your Honor.  Then

12    let's go down a little bit, a little farther

13    down the column, this is all in column six of

14    the patent, particularly I'm reading -- I was

15    reading column six lines 33 to 36, and now at

16    column six lines 54 to 56.

17              Similar to step 13, step 14 can be

18    implemented using current technology.  The

19    reference back to TurboTax.  That structure,

20    Your Honor, that structure under the law, that's

21    a commercially available product.  That tells

22    you what you need to do.  It points the person

23    of skill in the art what they need to do to

24    perform that step.  And as I showed Your Honor

1    in great detail, that 1997 technology, that

2    TurboTax software, for example, was not a fully

3    automated piece of software, that step is not

4    fully automated.

5              Processing and preparing are not

6    fully automated given those references certainly

7    and that's clear from that description of the

8    specification.  Manual intervention throughout,

9    the program responds to that manual intervention

10   by automatically processing and automatically

11   preparing the tax return, but it is simply not

12   fully automated.

13             And let's turn back to a passage

14   of the specification that Mr. Standley culled

15   out on one of his slides, talking about what

16   this invention was intended to do.  And he talks

17   about how it says the invention eliminates the

18   current requirement, but let's look at that

19   language a little more closely.  Hence with the

20   electronic collection of tax data as in step 12,

21   the invention eliminates the current requirement

22   that a taxpayer manually collect the tax data,

23   not all tax data, it's the tax data, the tax

24   data that is capable of being electronically

1    collected under step 12 which as I described to

2    Your Honor, nothing in the patent suggest that

3    all the tax data in the world is available and

4    capable of being collected electronically.

5           It eliminates the current

6    requirement that the taxpayer manually enter

7    such tax data to a tax return or into a

8    computer, there you go.  Again, such tax data,

9    the tax data that was collected electronically.

10   It is not saying that it's all the tax data you

11   will need to do your tax return, necessarily.

12          For a person with a simple return

13   who just needs a W-2, probably all of it is

14   available electronically to be gathered.  For

15   many taxpayers it will not be.  The patent

16   recognizes that.

17          That is also supported, Your

18   Honor, by the structure of the claims

19   themselves.  I beg the Court's indulgence for a

20   moment, I seem to have lost the claims.

21          Let's look at Claim 1 of the '052

22   patent, Your Honor, and this is in column eight

23   of the patent.  And it talks about the method

24   and this is, of course, the actual language of

1    the claims that define the invention.  A method

2    for automatic tax reporting by an electronic

3    intermediary comprising, connecting

4    electronically said electronic intermediary to a

5    tax data provider.  One or more is what A means

6    under the patent law.

7              Collecting electronically tax

8    data, again not all tax data, from said tax data

9    provider, processing electronically said tax

10   data collected electronically from said tax data

11   provider to obtain processed tax data.

12             Again, you're electronically

13   processing the tax data that you collected from

14   the tax data provider.  It does not say all the

15   tax data necessary for the return.

16             Preparing electronically an

17   electronic tax return using said processed tax

18   data, which ties back to said collected tax

19   data.  There is nothing in the structure of the

20   claims, Your Honor, that requires that all the

21   tax data used to prepare the tax return be

22   collected electronically according to the

23   recited -- according to the recited steps, just

24   that one or more pieces of tax data be collected

1   electronically and handled according to the

2   steps set forth in order to satisfy the

3   limitations of the claim.

4           And that actually, Your Honor, is

5   not inconsistent with another point I wanted to

6   address that Mr. Standley made regarding I think

7   the only passage Mr. Standley pulled up from the

8   hearing transcript that I had not already

9   discussed with Your Honor.  It comes at page 30.

10          If there is any manual input

11  outside of initiation, then it's not covered by

12  the claim.  Mr. Sartori, it's not covered by the

13  claim and it does not anticipate the claim.

14          Mr. Standley uses that to argue on

15  a process basis that after -- that this response

16  should be used to say a process basis,

17  Simplification is saying from the start of the

18  process forward there can be no manual

19  intervention.

20          It's equally appropriate, Your

21  Honor, to say, Mr. Sartori, if there is any

22  manual input outside of initiation of the

23  particular steps of the particular function,

24  then it's not covered by the claim.  Mr. Sartori

1    would agree, it's not covered by the claim.  It

2    does not meet the claim limitation and it does

3    not anticipate the claim.  He's talking about

4    validity points, he's focusing on what the prior

5    art has shown.

6              And you have to at least of course

7    consider this statement in context with a

8    statement we showed you earlier, which is

9    expressly to the contrary of Block's

10   interpretation.  Judge Moore plainly ask the

11   question.  So you read these claims as excluding

12   all manual data entries?

13             No, it doesn't for the fact that

14   it's comprising, so it's open ended.

15             Even if you construe that part of

16   Claim 30 in the way -- pardon, that part of page

17   30 in the way that Block urges, Your Honor, and

18   we submit there are certainly other reasonable

19   interpretations, given that view of the

20   transcript as a whole, it runs flatly head on in

21   what was said on Claim 8.  It's a wash, because

22   it's not as if that was a concession that was

23   necessary in the prior art, in fact this is

24   important for you to consider in the context of

1        -- I mean, I guess Block's interpretation is not

2        necessary for Simplification to have won

3        issuance over the prior art.

4                And Mr. Standley is certainly

5        correct that disavowal, the board doesn't have

6        to have relied on it, but it's worth noting in

7        the context of briefs in which Simplification

8        has said that we were clinging to these

9        interpretations, and Block has said we are

10       clinging to these interpretations like a life

11       boat, that these issues never appeared in the

12       decision of the board.

13               The board doesn't analyze

14       automatic, the board doesn't analyze

15       electronically.  The decision of the board that

16       allowed these patents to issue over the prior

17       art hinges on the definition of the tax data.

18       They say that Beamer and the other references do

19       not disclose the collection of tax data.  So

20       that was the issue.  And that's worth noting to

21       kind of better get the flavor of the issue.

22               And one other point, Your Honor, I

23       would like to also hit the Ormco case now if we

24       could.  I have some slides here.  Mr. Standley

1    talked about Ormco to a considerable extent.

2              In Ormco, the Federal Circuit

3    found that statements in the specification and

4    prosecution history limited the claims to prior

5    automatic positioning without manual

6    intervention after the process was started.  And

7    that is correct.  But Block's reliance on Ormco

8    is misplaced because here is a quote from Ormco

9    that the Federal Circuit found important.

10   Nowhere does the specification suggest or even

11   allow for human adjustment of the

12   computer-calculated tooth finish positions.

13             Next slide, please.  By contrast,

14   Your Honor, Simplification's statements in the

15   specification emphasize, for example, that

16   software incorporating some manual intervention

17   and manual entry falls within the scope of the

18   patent.  And also substantially hits the all tax

19   data and virtually all hard copies language that

20   I showed you.  Therefore, Simplification's

21   patents and the specification in

22   Simplification's patents tell a different story

23   than the specification of the patents issued at

24   Ormco.

1          So again, this Ormco case will not

2     bear the weight that Block assigns it.

3          One last point, Your Honor.  And I

4     wanted to address the issues Mr. Standley raised

5     about the means plus functions claims.  And I

6     hit this already to some extent.

7          Mr. Standley says there is just no

8     structure disclosed in the specification.  And

9     that is simply not so.  As I have shown before,

10    the specification makes it clear that the steps

11    in the process are not all fully automated,

12    calling out commercially available software

13    including TurboTax, in that same context that

14    calls out structure, that calls out structure

15    for preparing and for the processing steps, the

16    disclosure of the IRS E-filing in addition to

17    TurboTax calls out structure for the filing

18    steps.

19          And for collecting and connecting

20    electronically, Your Honor, the specification

21    sets out a step wise process for what needs to

22    be done.

23          Now, Mr. Standley says, well,

24    there are a lots of problems still, a lot of

1    details that aren't addressed by these patents,

2    and that's certainly true.  And those details

3    are important to the commercial implementation

4    of the product.  And while this is as you said,

5    Your Honor, we're not talking about commercial

6    embodiments here, we're not talking about the

7    accused product, it's not necessarily relevant

8    to claim construction.  Block did have terrible

9    trouble trying to do this, but contrary to what

10   Mr. Standley said, to the extent this may be

11   relevant to the Court's understanding of the

12   environment, what he calls a trial program, we

13   call -- we seem to see from the documents we can

14   decipher on a large number of commercial sales

15   and the documents to the extent we can decipher

16   them show that there were hundreds of thousands

17   of downloaded, tens of hundreds of thousands

18   that were successful.  To the extent we can

19   tell, to the extent we can decipher Block's

20   documents, we are going to have depositions on

21   that relatively soon to figure that out.  But

22   the law simply does not require that the patent

23   disclosed every single, every single detail

24   necessary for implementation, so these details

1    are important to commercial implementation of

2    it, but you don't have to hit every step in the

3    algorithm and that is clear.  In fact, there is

4    no way a patentee could know what CitiBank would

5    require for format or what Fidelity would

6    require or what Block would require, that is

7    just not realistic and that's not the law.

8              In fact, the specifications of the

9    Miller patents present far more detail than the

10   patents that were at issue and that were found

11   to be invalid in the Aristocrat and Harris case.

12             In the Aristocrat case, for

13   example, Your Honor, there was an improvement

14   for slot machines and a specification to look at

15   the opinion, the specification essentially said

16   a computer will do this, a particular feature,

17   and that's it.

18             So that's a very different

19   situation, again, than what we're facing here

20   with Simplification and with these patents.

21             And with that, Your Honor, I will

22   make one more -- one final point.  With the

23   definition of automatic, Your Honor, and the

24   parties' proposed constructions, it seems to me

1    that the parties agree on some of the language,

2    no manual intervention after initiation, the

3    question is where you draw the line.

4              The -- and Block attempts to draw

5    the line with a fully automated definition that

6    requires that the taxpayer enter his name and

7    enter some identifying information at the very

8    beginning of the process, hit a button and then

9    lean back in his chair and he doesn't have to do

10   anything until the tax refund check hits his

11   bank account.

12             Well, Your Honor, that is not what

13   is claimed in these patents.  That is not what

14   is described in the specification.  That may be

15   fully automated, but that is not automatic.

16             And that is also a process, Your

17   Honor, that as Mr. Standley implicitly

18   acknowledged was not available in 1997 and was

19   not performed by the software that the

20   specification calls out.  It's not in the patent

21   record, it's not required and it's not

22   consistent with either reality or with the

23   patents in this case.

24             Thank you, Your Honor.

1      THE COURT:  All right.  Let me ask

2  you a question.  Actually I don't remember doing

3  a tax return, I think my wife has always done

4  them, but I have watched the process.  And she

5  gets in an office and tons of information is

6  spread out, and then there is a sheet of paper

7  that the accountant has her fill out, just about

8  what information is there.

9      And then she starts putting it on

10  some sort of a disk that the accountant gave

11  her.  Is that when it's supposed to kick in as

12  automatic?

13      Well, give me your best estimate

14  of when all the stuff that wasn't available

15  already on the monthly P & Ls becomes automatic.

16      MR. CURTIN:  Very well, Your

17  Honor.  Just one moment.  Let me get the patent

18  claim.

19      THE COURT:  If it's not fully

20  automated.

21      MR. CURTIN:  Your Honor, to the

22  extent I understand the question, I mean, is

23  your question, Your Honor, whether or not what

24  you're describing --

1          THE COURT:  Here is my question,

2     make it even simpler.  I'm trying to stay away

3     from infringement analysis, but I'm trying to

4     understand automatic on your side of the case.

5          I see people tweaking the

6     documents, the data, and the end result product

7     going to the government throughout the process.

8     You're telling me that there is this striking

9     point when it becomes automatic.  I'm trying to

10    get some general idea when what you're calling

11    automatic kicks in.

12          Your friends on the other side

13    say, listen, you tried to invent something that

14    was fully automatic and it doesn't really exist,

15    but that's what you are describing that the tax

16    data is supposedly electronically available

17    kicked you in, that contradicts the idea of

18    sitting in this room with all these papers

19    around you, but you seem to have an idea of when

20    automatic begins.

21          MR. CURTIN:  Yes, Your Honor.  And

22    I think first of all in answering your question,

23    it's important to understand --

24          THE COURT:  I'm only talking about

1    tax data.

2              MR. CURTIN:  With tax data.  Well,

3    tax data is defined in the patent as being

4    information that is relevant to determining your

5    tax liability, and they have examples like W-2

6    data, the information on our 1099s, the

7    information on your 1098s, those are all

8    examples given in the patent, and being examples

9    of the sort of tax data that could be made

10   available electronically and collected

11   electronically from the various tax data

12   providers, such as the IRS and banks.

13              An accountant sitting down with

14   the taxpayer figuring out what all the data is,

15   you know, like boiling down the bank statements,

16   boiling down all the stuff, as you say, tweaking

17   the figures, that's not recited in the steps of

18   the patent, that is sort of -- that's

19   preliminary.  That's figuring out other

20   information in a much more complex situation

21   that may or may not ever ultimately end up being

22   within the scope of these claims.

23              Because to get within the scope of

24   these claims, Your Honor, it's automatic tax

1    reporting by an electronic intermediary.   In

2    other words, by a computer.   I don't want to

3    limit that too much, but that's an example.   And

4    I think a data processing network comprising a

5    computer, when you sit down to the computer and

6    it says connecting electronically said

7    electronic intermediary to a tax data provider,

8    I'll put this up on the Elmo, what the heck.

9              Connecting electronically said

10   electronic intermediary to said tax data

11   provider, that's one of the functions, that's

12   one of the recited steps in the claims, Your

13   Honor.   And Simplification acknowledges as they

14   said to the Board of Patent Appeals, and as we

15   said in our briefs, that those recited steps

16   individually, those functions must each be

17   performed automatically after initiation.

18             So you enter in your data, your

19   information, you sit down at your computer, you

20   enter in your information, you hit the button

21   and the computer goes out to connect

22   electronically with the tax data provider, say

23   the IRS, okay, you have hit the button, you have

24   initiated that step, and then that's when the

1    automatic kicks in.  Like the dishwasher that

2    operates after you push the button, like the ATM

3    that give us your account balance and that says

4    yes, I want it, it goes out and connects,

5    automatically kicks in, because it's

6    automatically connected as part of step 12.  It

7    has the information it needs and it collects

8    that data, and it does so automatically.

9                And that's Block's examples in its

10   briefs about getting an E-mail with your W-2,

11   that's why that doesn't infringe the claims,

12   because you still have to take that tax data

13   manually and type it in.

14                And then so the collecting

15   electronically step again, that step occurs

16   automatically.  Again, the processing

17   electronically step, it makes computations with

18   that collected tax data and you see this, and it

19   computes with it in response to that data, but

20   also it can be an iterative process, it ask you

21   questions and that's why the comprising language

22   is important because it don't foreclose the

23   concept of as the specification discloses, a tax

24   preparation software asking you questions, what

1    do you need, what kind of data do you have,

2    what's your tax situation, and you answer those

3    questions and you hit the button, you click the

4    mouse, and then you have given your input, you

5    have initiated it and automatic kicks in, it

6    processes electronically your responses, that's

7    the difference between automatic and fully

8    automated, because there are some intervening

9    manual steps which comprising allows for.

10          And then, you know, once the

11    programs process that tax data, it's prepared

12    electronically in an electronic tax return using

13    the data in there, and the invention, it

14    performs that automatically, and that you're not

15    telling it, you know, set up the form to look

16    this way, put this data here and here, at least

17    within the recited steps of the invention,

18    recited steps in the claim, it does that

19    automatically, but it does it in response to you

20    saying okay, give me the tax return.

21          And with the filing steps

22    similarly, Your Honor, the automatic kicks in

23    after you hit the button, you say okay, now I'm

24    filing, I'm ready to file, you know, you may

1    have -- for example, you put in yes, I'm done,

2    here is the account, some of the dependent

3    claims talk about getting a refund or paying

4    your taxes and you can arrange to do that

5    electronically as well, you have to put in your

6    bank account information, you may have to input

7    that information, here is my account information

8    to --

9              THE COURT:  But that doesn't

10   interfere with the trigger of automatic?

11             MR. CURTIN:  That doesn't, Your

12   Honor, because after that, because you do that

13   before you hit the button to say okay file, and

14   then you have initiated that step and the filing

15   occurs, and then it's automatic because the

16   machine does it.  The computer to use an example

17   does it.

18             Just like after you're dealing

19   with the automatic teller machine and it ask

20   you, as an example, of automatic versus fully

21   automated, it ask you, if it's fully automated,

22   you're not making input, you're not doing

23   things, but if it's automatic, the ATM ask you,

24   okay, what do you want?  Would you like your

1    account balance?  Yes.  You made some input

2    there.  Do you want checking or savings?  Yes,

3    it gives you the balance.

4            Do you want money?  Yes.  And then

5    it gives you the money that you asked for.  You

6    have to type in those inputs.  But in each step

7    after those inputs, the machine did it

8    automatically, that's when the automatic kicks

9    in.

10           And in this patent, the automatic

11   kicks in after the initiation of every listed

12   step, every listed claim element.  I'm pointing

13   specifically at Claim 1 of the '052 patent.

14           But the difference between

15   automatic which is what's claimed there and

16   fully automated which is what Block argues is

17   the comprising language that allows for

18   intervening -- so comprising is consistent with

19   automatic because it allows for -- it allows for

20   the presence of the intervening steps.

21           The automatic doesn't kick in back

22   at the very beginning where the taxpayer after

23   that can lean back in the chair and not do

24   anything more until the refund comes in, the

1  automatic kicks in -- sorry if that was a long

2  answer, Your Honor.

3                  THE COURT:  No, it's -- I'm just

4  wondering, so I own this house at the lake with

5  my brother-in-law, and I work for DuPont, and

6  DuPont issues me a W-2, and I don't have any

7  health care or anything like that, and I can get

8  that electronically; right?

9                  MR. CURTIN:  I'll assume so, Your

10 Honor, for the question.

11                 THE COURT:  Let's just assume for

12 the question that DuPont issues it and it kicks

13 out electronically, and it can be moved right to

14 my computer.  And I don't have any major health

15 deductions.  I don't have any health accounts.

16 So I'm pretty setup to push the button to send

17 it to the IRS.  I'm trying to make that part

18 real simple.

19                 Well, I got this house at the lake

20 with my brother-in-law and, you know, we each

21 take two weeks, we rent it, we have rental

22 income coming in, it's an old house so we do a

23 lot of repairs and we have to issue 1099s to the

24 people that come and paint it and the people

114

1    that do the sidewalks and the grounds and

2    everything.   None of that is electronic except

3    payment out because I have a program to my

4    accountant that mirrors my account for the

5    house.

6                      MR. CURTIN:   I think I'm with you.

7                      THE COURT:   At what point am I

8    automatic under the patent?

9                      MR. CURTIN:   Well, there -- there

10   are a couple of different questions there, Your

11   Honor, and I'll attempt to answer them both to

12   the extent that I understand them.

13                   One question is when are you

14   acting -- or when is something occurring

15   automatically as Simplification would construe

16   that term under the patent.   That is different

17   from when or if whatever you happen to be doing

18   falls within the scope of the claims.

19                   In terms of the meaning, purely

20   the meaning of automatic, I would say that when

21   -- you mentioned paying electronically, when you

22   hit the button --

23                      THE COURT:   You pay the mortgage

24   electronically, and every month you pay your

1     expenses on that lake house through an account,

2     and your accountant has already set up a program

3     that records all those payments.  And, in fact,

4     at the end of the tax year is able to issue as I

5     understand it in today's world, they issue 1099s

6     for people that do work for you.

7                 MR. CURTIN:  Yes, Your Honor.

8                 THE COURT:  So it's able to do

9     that.  But is that -- is that all under the

10    automatic idea of the patent?

11                MR. CURTIN:  Well, Your Honor, I'm

12    not sure if any of that would necessarily fall

13    within the scope of the claims, but just to

14    focus on the automatic issue, I think what

15    you're describing, Your Honor, the answer is if

16    you're clicking buttons to make individual

17    payments like I, for example, do electronic

18    banking sometimes and I go to my account and

19    they will allow to you make payments

20    electronically from your account, you enter in

21    the information, you have already set it up with

22    who the payee is, you enter in the amount of the

23    payment and the date you want to have it paid,

24    so those are the --

```
 1              THE COURT:  You do it all by wire
 2     transfer.
 3              MR. CURTIN:  You hit the button
 4     and the bank is telling you on X date we will
 5     send this much money from your account, that's
 6     happening automatically after you have initiated
 7     it.
 8              THE COURT:  And I can have a
 9     program that if I put it under a certain
10     notation it will treat it as an expense on my
11     program for the end of the year.
12              MR. CURTIN:  Well, then that tax
13     program is doing that automatically, Your Honor.
14              THE COURT:  Does that infringe the
15     patent?
16              MR. CURTIN:  Based on the
17     description you have said, Your Honor, I don't
18     think so, because the patent is focusing on
19     automatic tax reporting, not on the details of
20     individual accounting.
21              THE COURT:  So then when I --
22     automatic only kicks in for purposes of
23     infringement when I push the button to send it
24     to the IRS.
```

1          MR. CURTIN:  Well, Your Honor,

2    that depends on the claim.  I mean, taking this

3    out of the context if I can, because I think

4    it's important to be clear on this, of the

5    example we're working with, the claims of the

6    '052 patent, all except Claim 20 do have a

7    filing step, so certainly to the extent -- I

8    know you're not doing an infringement analysis

9    here, but to the extent you're talking about

10   falling within the scope of the claims, yes, you

11   do have to file with the IRS to fall within

12   Claims 1 and 19.  I think Claim 20 does not have

13   a filing step, that's a separate kind of claim.

14          But that -- but then what you do

15   is you have to look at each element of course to

16   see whether with regard to whatever transaction

17   we're talking about, you have connected

18   electronically your computer to the tax data

19   provider, collected tax data electronically, and

20   that's different than just your bank account

21   information, or a payment you made to a -- and

22   that's something the process actually makes

23   clear, that's different from a given payment you

24   might make to a creditor.

1          Whether it's processed

2     electronically to turn it into a tax-return, to

3     compute your liability and to prepare it

4     electronically to turn it into a tax return, all

5     those steps have to be met in order to meet the

6     requirement of the patent claims.  And all those

7     steps -- so that's a little different.

8               It's not possible for me really to

9     answer the question whether what you have

10    described falls within the scope, would infringe

11    the patent or falls within the scope of the

12    patent, because you have to look at the patent

13    as a whole.

14               We don't want to fall into the

15    mistake that I think Block makes in their

16    presentation of looking at a particular claim

17    term in isolation.  And that's the falsity of

18    some of their analogies and their briefing,

19    their Claim 20 scenario about the person who

20    gets a W-2 by E-mail, or their scenario about

21    the accountant using a calculator could somehow

22    infringe the claims.  Just not so because the

23    fact that electronically has a certain plain

24    meaning, so it's doing that electronically in

1    the broadest sense of the term doesn't mean it

2    meets the claim language.

3            You have to connect --

4            THE COURT:   I think what we're

5    saying, for instance, is when the vendor who

6    repaired the roof at the lake house transmits by

7    E-mail the statement for that work, that they

8    say that that's within the claims, I think.

9            MR. CURTIN:   Well, I would certain

10   --

11           THE COURT:   It's electronically

12   generated.   It's a tax data collection, because

13   I'm collecting an expense item.   Is that what

14   you think?

15           MR. STANDLEY:   Well, Your Honor --

16           THE COURT:   I don't want to

17   characterize your argument.

18           MR. STANDLEY:   That's fine.   Your

19   Honor, the example you gave of an E-mail coming

20   in from the man who repairs the roof, because

21   it's in the form of an E-mail, the person

22   preparing the tax return is going to have to

23   take it from site and input it with their

24   fingers through the keyboard into the program,

1   so we're saying that is not automatic because

2   the person is having to manually input that

3   roofer's invoice.

4           MR. CURTIN:  On that point, Your

5   Honor, Simplification would agree, and that

6   actually parallels an argument that was made

7   before the Board of Patent Appeals that that is

8   not being performed automatically.

9           So I believe in that particular

10  example, that is not something that -- that

11  likely is not something that itself would fall

12  within the scope of the claims.

13          MR. STANDLEY:  Your Honor, I do

14  believe that Mr. Sartori answered your question

15  when he spoke to the Board of Patent Appeals,

16  and I believe I have an answer, if I may display

17  it.

18          THE COURT:  Sure.  Did you want to

19  add anything else?

20          MR. CURTIN:  No, Your Honor.  I'm

21  done.

22          THE COURT:  All right.  Thank you.

23          MR. STANDLEY:  I apologize for our

24  personal mark ups.

1              THE COURT:  Looks like you're

2       working that testimony there.

3              MR. STANDLEY:  Judge Medley said

4       so why is that not manual?  I'm quoting from the

5       Board of Patent Appeals oral hearing, continuing

6       the quote, they have to click on a mouse.  They

7       have to input numbers, let's say my account

8       number.  That's manual, according to what you're

9       saying is manual.  Mr. Sartori on behalf of

10      Simplification responded and he said, We

11      completely agree with that.  That is manual.

12      And that is step 11 in the patent.  Step 11

13      talks about the manual part of it.  It is the

14      engaging part.  It's the initiation, the

15      starting of it.  You need to tell the software

16      what your account number is, what your pass code

17      is.  And then once it receives the

18      information -- and, Your Honor, this is very

19      important --  it automatically goes through not

20      one, not two, it says all the steps in the

21      process.  It goes out to the tax data provider,

22      collects the tax data, processes the tax data

23      and prepares the electronic tax return.

24              Your Honor, you asked, how can you

1    prepare an electronic tax return unless you have

2    gone out and gotten all of that information your

3    wife has assembled on her table top as she's

4    doing your taxes, the scenario you describe,

5    this patent is talking about taking all that

6    paper off your wife's desk, getting rid of it

7    and going out and getting it all from the tax

8    data providers sufficient to prepare the

9    electronic tax return.

10                And we just don't know of anyone

11   doing that.  But that's what's patented here.

12   That is the idea.  And I think Mr. Sartori very

13   clearly states, it goes automatically through

14   all the steps in the process once you get the

15   account numbers, once you get that setup phase

16   done, then you just flip the switch and away it

17   goes.

18                MR. CURTIN:  If I could, Your

19   Honor?

20                THE COURT:  Sure.

21                MR. CURTIN:  I want to make one

22   more point in connection with this language and

23   I don't have the highlighted or marked up

24   version like Mr. Standley does, but I think it's

1    important to also read this passage in light of

2    the rest of the patent specification, where it's

3    true here, he says, you initiate, you tell the

4    software, you give it your account number and

5    then it goes out and it connects to the tax data

6    provider, collects that tax data, processes that

7    tax data and prepares the electronic tax return.

8                But look at that in the context of

9    the specification, Your Honor.  The

10   specification makes it clear that there could --

11   in fact, that's one of the diagrams that we

12   talked about, there can be many, many tax data

13   providers, so you have to do this, many tax

14   payers would have to do this again and again and

15   again.

16               This statement does not mean that

17   bingo, the tax return is prepared and it is done

18   and it is ready to be filed because that is

19   omitted, it doesn't mean the tax return is all

20   done, it means that you have -- after you tell

21   -- after you identify a tax data provider and

22   you hit the button, it reaches out

23   automatically, connects to the tax data

24   provider, collects that data back, like a

1    simplest example is a W-2 with the IRS, it

2    collects your W-2 data back, and then it takes

3    that information and it processes it like a tax

4    preparation program does.  It puts it in the

5    right places and does the computations necessary

6    to help prepare the tax return, but your tax

7    return is not necessarily done.

8              And the specification makes it

9    clear, you may have to do this over and over

10   again for different tax data providers.  If you

11   look at the definitions in the steps for

12   preparing the electronic tax return, they're

13   talking about a process, Your Honor, not the end

14   result.  The end result comes in when you have a

15   finished tax return, whatever, and I know we're

16   disputing this, and it's getting late, I don't

17   want to misspeak, Block is talking about

18   completed tax return, but whenever the tax

19   return is ready for filing in whatever state it

20   is, then you hit the button to file.  But this

21   does not mean and it does not say that after you

22   initiate the process in step 11 there is no more

23   manual intervention.

24             See, automatically goes through

1    the steps in the process.  The individual -- and

2    we have already said that those steps, the

3    recited steps in the claims must be performed

4    automatically.  That does not preclude the

5    possibility of all -- any kind of manual

6    intervention.  It doesn't preclude the need to

7    circle back and do it again.  It doesn't

8    preclude the possibility of intervening steps or

9    for all the reasons we talked about today,

10   column six the references to --

11              THE COURT:  When I read your

12   papers and looked at this, I understood clearly

13   your argument in the context of what I'll call a

14   W-2 filer.  Block raised this testimony in some

15   arguments about -- that puts in your mind folks

16   that aren't necessarily schedule filers, but in

17   any given year of a tax year might be an

18   enhanced W-2 filer.

19              And then when you go to the

20   specifications and you try to read them with

21   that kind of an understanding as opposed to the

22   W-2 filer, that's when you start to have a

23   little difficulty in both your arguments, fully

24   automated and automatic, and the concept of

```
1     electronically.
2                   But you have been helpful in
3     answering the questions and your arguments
4     today.  And a lot of people saying just give us
5     ten percent of what you made, we would all be
6     out of business here.
7                   MR. CURTIN:  That's true, Your
8     Honor.
9                   THE COURT:  Isn't that the flat
10    tax, ten percent, or fifteen percent.  But I
11    appreciate your arguments.  You have been
12    helpful.
13                  MR. CURTIN:  Thank you, Your
14    Honor.
15                  THE COURT:  Thank you.
16                  MR. STANDLEY:  Thank you.
17                  MR. CURTIN:  Your Honor, if I
18    could, one question on another issue if I may.
19    If it would be possible for the Court to clarify
20    for my understanding, because I am not Delaware
21    counsel, the Court's policy or practice
22    regarding depositions, party depositions.  Is it
23    the case that in the absence of agreement
24    between the parties otherwise, is it typically
```

1    held in the forum or do you normally do things

2    differently?

3                    THE COURT:   If there is a dispute,

4    it would typically be the practice to tell them

5    to hold it in the jurisdiction here.

6                    MR. CURTIN:   Thank you, Your

7    Honor.

8                    THE COURT:   Are you having a

9    dispute?

10                   MR. CURTIN:   I don't know yet.

11                   MR. STANDLEY:   Your Honor, we have

12   an executive who is going to be giving testimony

13   and it's very difficult for him to leave Kansas

14   City.  He's going to give the testimony, but we

15   would like to do these depositions in Kansas

16   City.  And I have been doing this for twenty

17   years and the parties always tend to agree that

18   his depositions will be at his office and mine

19   will be at my office.

20                   THE COURT:   Typically that's what

21   happens between parties.  You know, when you're

22   sitting on this side of the bench, if you try to

23   parse it to each case, you would have no

24   consistent theme that would be fair.  So when

1    parties can't operate under the normal practice

2    of noticing, in other words, if it's in Kansas

3    City, you notice there or notice here, the only

4    rule that you can have that kind of works, if

5    you have an argument, then it's in Delaware.

6              It's not a great solution, but it

7    is consistent, one of my kid says, consistent

8    and dumb, but you know, that's all we can do.

9              MS. GRAHAM:  Must be a teenager.

10             THE COURT:  Exactly.  But adults,

11   they're even doing it now.  You know, it's hard

12   to work these out, you don't want to go to

13   Kansas City.  I have been to Kansas City.  They

14   have great steaks at The Stockyard.

15             MR. CURTIN:  I know the food is

16   fantastic.  It's something the parties are

17   continuing to discuss.

18             THE COURT:  Try to work it out.

19   If not, then you got to revert to that default

20   position of Delaware.

21             MR. CURTIN:  Thank you.

22             THE COURT:  Thank you.

23             (Court adjourned at 5:23 p.m.)

24

129

1    State of Delaware        )
                              )
2    New Castle County        )


4                   CERTIFICATE OF REPORTER

6         I, Dale C. Hawkins, Registered Merit
     Reporter and Notary Public, do hereby certify that
7    the foregoing record is a true and accurate
     transcript of my stenographic notes taken on June 5,
8    2008, in the above-captioned matter.

9         IN WITNESS WHEREOF, I have hereunto set my
     hand and seal this 15th day of June, 2008, at
10   Wilmington.

11                  _____
12                      Dale C. Hawkins, RMR

13

14

15

16

17

18

19

20

21

22

23

24