IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

SIMPLIFICATION, LLC,                  :
                                      :
            Plaintiff,                :
                                      :
      v.                              :
                                      : Civil Action No. 03-355-JJF
BLOCK FINANCIAL CORPORATION,          : (CONSOLIDATED)
and H&R BLOCK DIGITAL TAX             :
SOLUTIONS, INC.,                      :
                                      :
            Defendants.               :
                                      :

---

Julie A. Petruzzelli, Esquire; Peter J. Curtin, Esquire; David M. Farnum, Esquire and Michelle M. Marcus, Esquire of VENABLE, LLP, Washington, D.C.
Mary B. Graham, Esquire and Julia Heaney, Esquire of MORRIS, NICHOLS, ARSHT & TUNNEL LLP, Wilmington, Delaware.

Attorneys for Plaintiff Simplification, LLC.

Jeffrey S. Standley, Esquire and F. Michael Speed, Jr., Esquire of STANDLEY LAW GROUP, LLP, Dublin, Ohio.
John W. Shaw, Esquire; Karen E. Keller, Esquire and Jeffery T. Castellano, Esquire of YOUNG CONAWAY STARGATT & TAYLOR, LLP, Wilmington, Delaware.

Attorneys for Defendants Block Financial Corporation and H&R Block Digital Tax Solutions, Inc.

---

**MEMORANDUM OPINION**

January 23, 2009
Wilmington, Delaware

Farnan, District Judge

This is a patent infringement case brought by Simplification, LLC ("Simplification") against Block Financial Corporation and H&R Block Digital Tax Solutions, Inc. (collectively, "Block") alleging infringement of United States Patent Nos. 6,202,052 ("the '052 patent") and 6,697,787 ("the '787 patent"), which pertain to fully automated tax reporting, payment, and refund. The parties briefed their respective positions on claim construction, and the Court conducted a <u>Markman</u> hearing on the disputed terms. This Memorandum Opinion provides constructions of the disputed terms.

## BACKGROUND

The patents-in-suit relate to the elimination of "many inconveniences associated with the filing of federal, state, local, and foreign income tax returns and the payment of any associated tax liability or receipt of tax refund . . . ." ('052 patent at 3:9-12.) This is achieved through the automation of the steps typically associated with the filing of a tax return. Thus, the asserted claims include, in various combinations, steps pertaining to (1) connecting electronically to the providers of tax data, (2) collecting electronically the tax data, (3) processing electronically the tax data, (3) preparing electronically an electronic tax return, (4) connecting electronically to taxing authorities, (5) filing electronically the electronic tax return, (6) connecting electronically to a

financial institution, and (7) paying or receiving a tax liability or refund respectively.  (See id. at 3:23-34.)  Here, the parties agree that the term "tax data" refers to "tax information relevant to a taxpayer's liability or tax reporting obligations," such as bank statements, mutual fund statements, brokerage account statements, and charity statements.  (See id. at 6:8-12; D.I. 80 at 10.)  The "taxing authority" is an institution such as the U.S. Internal Revenue Service.  (See '052 patent at 1:64-66.)

    Particularly relevant to the construction of the disputed terms is the prosecution history of the patents-in-suit, the key aspects of which are summarized as follows.  On March 8, 2003, Simplification initiated this action, alleging infringement of the '052 patent.  Just a few months later, on July 11, 2003, Block filed a petition with the United States Patent and Trademark Office ("USPTO") requesting reexamination of the '052 patent.  The petition was granted, and the Court stayed this action pending completion of the reexamination.  (D.I. 21.)[1] During the stay, the '787 patent issued as a continuation of the '052 patent.  Simplification then filed suit alleging

---

    [1] Unless otherwise noted, docket item numbers in this Memorandum Opinion refer to Civil Action No. 03-355-JJF, which is the action where the parties filed their claim construction briefs.  Civil Action Nos. 03-355-JJF and 04-114-JJF have been consolidated into Civil Action No. 03-355-JJF, as reflected in the caption of this Memorandum Opinion.

infringement of the '787 patent (D.I. 1 in 04-114-JJF), and Block immediately requested reexamination of the '787 patent as well. The examiner assigned to the reexaminations consolidated the two reexaminations and ultimately rejected a number of claims, including all those asserted in this action.

Pursuant to 35 U.S.C. §§ 134 and 306, Simplification appealed the rejections to the Board of Patent Appeals and Interferences ("BPAI"), which, after conducting an oral hearing, reversed all of the Examiner's rejections.  Though Simplification attempts to downplay the significance of this oral hearing, the Court finds it to be of critical importance in construing the disputed terms.  Indeed, as Simplification states in its Reply Claim Construction Brief, "[i]t is important to be mindful that this BPAI hearing capped more than three years of reexamination proceedings which produced a written file history more than a foot thick."  (D.I. 85 at 1.)  Similarly, as Block puts it, a statement before the BPAI is not merely "a random page of an obscure document in the prosecution history." (D.I. 84 at 8.) Rather, it is a statement "at the culmination of the reexamination process on the biggest stage at the Patent Office – an Oral Hearing before the Board of Patent Appeals and Interferences."  (Id.)

3

DISCUSSION

## I.   The Legal Principles of Claim Construction

Claim construction is a question of law.  Markman v.
Westview Instruments, Inc., 52 F.3d 967, 977-78 (Fed. Cir. 1995),
aff'd, 517 U.S. 370, 388-90, 116 S. Ct. 1384, 134 L. Ed. 2d 577
(1996).  When construing the claims of a patent, a court
considers the literal language of the claim, the patent
specification and the prosecution history.  Markman, 52 F.3d at
979.  Of these sources, the specification is "always highly
relevant to the claim construction analysis. Usually it is
dispositive; it is the single best guide to the meaning of a
disputed term."  Phillips v. AWH Corporation, 415 F.3d 1303,
1312-17 (Fed. Cir. 2005)(quoting Vitronics Corp. v. Conceptronic,
Inc., 90 F.3d 1576, 1582 (Fed. Cir. 1996)).  However, "[e]ven
when the specification describes only a single embodiment, the
claims of the patent will not be read restrictively unless the
patentee has demonstrated a clear intention to limit the claim
scope using 'words or expressions of manifest exclusion or
restriction.'"  Liebel-Flarsheim Co. v. Medrad, Inc., 358 F.3d
898, 906 (Fed. Cir. 2004)(quoting Teleflex, Inc. v. Ficosa N. Am.
Corp., 299 F.3d 1313, 1327 (Fed. Cir. 2002)).

A court may consider extrinsic evidence, including expert
and inventor testimony, dictionaries, and learned treatises, in
order to assist it in understanding the underlying technology,

the meaning of terms to one skilled in the art and how the invention works. Phillips, 415 F.3d at 1318-19; Markman, 52 F.3d at 979-80. However, extrinsic evidence is considered less reliable and less useful in claim construction than the patent and its prosecution history. Phillips, 415 F.3d at 1318-19 (discussing "flaws" inherent in extrinsic evidence and noting that extrinsic evidence "is unlikely to result in a reliable interpretation of a patent claim scope unless considered in the context of intrinsic evidence").

In addition to these fundamental claim construction principles, a court should also interpret the language in a claim by applying the ordinary and accustomed meaning of the words in the claim. Envirotech Corp. v. Al George, Inc., 730 F.2d 753, 759 (Fed. Cir. 1984). If the patent inventor clearly supplies a different meaning, however, then the claim should be interpreted according to the meaning supplied by the inventor. Markman, 52 F.3d at 980 (noting that patentee is free to be his own lexicographer, but emphasizing that any special definitions given to words must be clearly set forth in patent). If possible, claims should be construed to uphold validity. In re Yamamoto, 740 F.2d 1569, 1571 (Fed. Cir. 1984).

## II.  The Meaning of the Disputed Terms

Simplification asserts that Block infringes claims 1-2 and 6-20 of the '052 patent and claims 1-18 of the '787 patent. The

5

following claim is illustrative of the asserted claims:

> 1. A method for automatic tax reporting by an
> electronic intermediary comprising:
>
>> connecting electronically said electronic
>> intermediary to a tax data provider;
>>
>> collecting electronically tax data from said tax data
>> provider;
>>
>> processing electronically said tax data collected
>> electronically from said tax data provider to obtain
>> processed tax data;
>>
>> preparing electronically an electronic tax return
>> using said processed tax data;
>>
>> connecting electronically said electronic
>> intermediary to a taxing authority; and
>>
>> filing electronically said electronic tax return with
>> said taxing authority.

('052 patent at 8:17-32.)

The primary dispute between the parties pertains to the meaning of "automatic tax reporting."  Briefly, Block contends that statements made during the BPAI hearing mandate that this term be construed to mean that the "electronic tax return" be prepared without manual intervention from the user apart from "limited manual input prior to initiating the automated process." (D.I. 79 at 11, 13.)  Simplification, on the other hand, contends that the term should be construed to mean "that each recited step in the claimed method may be performed without manual intervention once initiated but not that the entire claimed method (or the entire tax return) <u>must</u> be completed from start to finish entirely without stopping or manual intervention . . . ." (D.I. 80 at 14.)  The parties have a similar dispute with regard

6

to the meaning of the claim term "electronically" and other claim terms that include the word "electronically."  In general, Block contends that, in light of statements made by Simplification during the BPAI hearing, these terms should be construed in a manner similar to "automatic tax reporting."  Because two asserted claims recite only an "electronically" limitation and not an "automatic tax reporting" limitation, the dispute over the meaning of these terms appears to be as significant to the parties as their dispute over "automatic tax reporting."

An additional core dispute between the parties concerns the construction of a number of means-plus-function terms.  For these terms, Simplification contends that the corresponding structure in the specification is a "data processing system comprising a general purpose computer programmed with code segments to operate the general-purpose computer . . . ." (See, e.g., D.I. 80 at 24.) Block, however, contends that in light of recent Federal Circuit authority, this structure is inadequate and that the claims are indefinite.

For the reasons that follow, the Court construes the disputed terms as follows:

## A.   "Automatic Tax Reporting"

| Simplification's Construction | Block's Construction |
|---|---|
| Determining and/or reporting tax liability, or satisfying tax reporting obligations, via a process in which one or more functions, once initiated, are completed without manual intervention. | Preparing a tax return on a computer automatically without manual intervention from the user. |

The essence of Block's proposed construction appears to be that manual intervention in the preparation of the tax return is allowed only during an <u>unclaimed</u> initialization step that precedes the initiation of the <u>claimed</u> tax preparation method. Figure 1 of the specification portrays this initialization step in a flow chart as a box labeled "Provide information on the tax data providers." The text of the specification refers to this initialization procedure as "step 11" and provides a detailed description of what it may include. (<u>See</u> '052 patent at 4:34-5:49.) Simplification urges the Court to adopt a broader construction of "automatic tax reporting." Specifically, Simplification contends that the term simply refers to a process in which "<u>at least one</u> piece of tax data is handled automatically in accordance with the steps recited in the claims." (D.I. 85 at 11 (emphasis added).) Thus, Simplification's construction would allow for manual intervention at any point in the process. During the <u>Markman</u> hearing, Simplification clarified that their construction would permit one to "circle back around in the

8

process" and do additional manual data entry as necessary "throughout" the process. (See, e.g, D.I. 101 at 13:9-14:7, 17:14-18:7.) Put yet another way, Simplification contends that Block is inappropriately asking the Court to redefine the term "automatic" to mean "fully automated." (Id. at 7:5-16, 16:21-17:13.)

After reviewing the intrinsic evidence, the Court agrees with Block that the claims are limited to a tax preparation system that, outside of manual intervention during the initialization process, is "fully automated." Beginning with the specification, the Court notes that the patent distinguishes the prior art on the basis of it not being "fully automated." Indeed, the specification explains that despite certain technological advances, "the potential for fully-automated tax reporting has not yet been realized . . . ." ('052 patent at 2:16-18.) Likewise, the specification explains that the "objects and advantages of the present invention" are achieved through a "fully-automated" tax reporting system. (Id. at 3:21-24 (emphasis added); see also id. at 4:28-33 (explaining that the figures in the specification portraying the "preferred embodiment" correspond to a "fully-automated" tax reporting system).) Similarly, the patent explains that "few technological, legal, or practical obstacles exist for the fully automated preparation and filing of federal and state tax returns . . . ." (Id. at 2:11-15

9

(emphasis added).)   Thus, the patent characterizes the invention as a "fully automated" system.   In fact, although the Court affords this little weight, it is notable that the '052 parent patent is entitled "<u>Fully-Automated</u> System For Tax Reporting, Payment And Refund."

The substance and structure of the specification comports with the raw textual evidence set forth above.   To the extent the patent describes manual intervention in the tax preparation process, it is only during an extended description of "step 11" of the method, which is the first step of the disclosed tax preparation process and that pertains to initialization of the process and the provision of information regarding tax data providers.   (<u>See</u> <u>id.</u> at 4:34-5:48.)   In describing this process, the specification explains that the taxpayer can provide information regarding "special tax cases," such as whether the taxpayer has charitable contributions.   (<u>Id.</u> at 4:63-5:2.)   The specification further describes an alternative embodiment where, during "step 11," a "tax return preparer ensures that the electronic intermediary receives the appropriate information required . . . ," including information pertaining to "special tax cases."   (<u>Id.</u> at 5:43-49.)   Such manual intervention is not described as being part of subsequent steps in the automated tax preparation process.   On the contrary, in discussing "step 12," the patent unambiguously explains that "the invention <u>eliminates</u>

10

the current requirement that a taxpayer manually collect the tax data, <u>eliminates</u> the current requirement that a taxpayer manually enter such tax data onto a tax return or into a computer, and <u>eliminates</u> the need for all, or virtually all, intermediate hard copies of tax data, thereby saving paper, time, and cost." (<u>Id.</u> at 6:23-29 (emphasis added).)   Thus, the specification contemplates that during "step 11" the taxpayer and/or tax preparer, in addition to providing rudimentary information such as a social security numbers, will anticipate "special tax cases" so that during "step 12" manual entry of tax data is "eliminat[ed]."   In the Court's view, this description does not embrace the notion of "circling back around" to do manual input as the need arises, but is more consistent with the construction advocated for by Block.

To the extent the specification could be understood differently, such interpretations are laid to rest by the prosecution history.   Indeed, during the BPAI hearing, counsel for Simplification argued as follows:

| JUDGE LEE: | The tax preparer ensures that information is collected to determine whether the taxpayer has a special tax case. |
| MR. SARTORI: | Oh, on column 5.  Okay, I got you.  I'm sorry. |
| JUDGE LEE: | Can you explain that? |
| MR. SARTORI: | Sure. |
| JUDGE LEE: | That sounds like manual intervention. |
| MR. SARTORI: | That is manual intervention.  And that has to do with step 11, which is the |

|  | manual step required to initiate it, to initiate the automatic process.  That's taken from column 5, line 45, what you've been focusing on, sir, Your Honor.  And that has to do with step 11, which is the manual stuff. |
|---|---|
| JUDGE LEE: | I see.  <u>So you're allocating all of these manual input to the category of initiating the process</u>. |
| MR. SARTORI: | <u>Yes, Yes</u>. |
| JUDGE LEE: | <u>If there's any manual input outside of initiation, then it's not covered by the claim</u>. |
| MR. SARTORI: | <u>It's not covered by the claim and it does not anticipate the claim</u>. |

(D.I. 79, Exh. F at 30:7-24 (emphasis added).)

This Court is aware that to disavow claim scope during prosecution a patentee must clearly and unambiguously express surrender of subject matter, and the Court is thus cautious in concluding that a patentee has disavowed claim scope.  <u>See, e.g.</u>, <u>Sepracor Inc. v. Dey, L.P.</u>, No. 06-113-JJF, 2008 U.S. Dist. LEXIS 102728, at *17-*18 (D. Del. Dec. 18, 2008); <u>Honeywell Int'l, Inc.</u> <u>v. Nikon Corp.</u>, No. 04-1337-JJF, 2008 U.S. Dist. LEXIS 99199 (D. Del. Dec. 9, 2008).  However, in the Court's view, the above exchange represents a clear and unambiguous disavowal of claim scope.  Furthermore, the Court has reviewed the entirety of the BPAI hearing transcript and concludes that this disavowal is not, as Simplification contends, merely taken out of context.  Indeed, many other statements during the BPAI hearing confirm the disclaimer.  For instance, at one point the following exchange occurred:

| JUDGE MEDLEY: | So "automatic," what does that – what is your position?  What does that mean? |
| MR. SARTORI: | It should mean acting or operating in a manner that is essentially independent of external input or control. |
| JUDGE MEDLEY: | So not manual. |
| MR. SARTORI: | Not manual, yes. |
| JUDGE MEDLEY: | So if you have any kind of manual input from start to end, then, it's no good. |
| MR. SARTORI: | It's no good in the sense of the comprising language, and no good in the sense of the limitations we have in the claims must be performed automatically. |

(D.I. 79, Exh. F at 15:8-18.)[2]  Counsel for Simplification went

on to explain that "step 11" was the point where some data had to

be input manually, and that this was the "feature of the

invention . . . not recited in the claims."  (Id. at 15:21-26

(emphasis added).)

Likewise, Simplification analogized its invention to an

automatic dishwasher during the BPAI hearing.  In so doing,

Simplification explained that "once you start that dishwasher or

that washing machine, it's going to town," that it was

"automatic," and that there would be no need to "add the water"

or "tell it when to start the rinse cycle." (Id. at 16:13-18,

17:11-14.)  Later in the hearing, Simplification explained that

---

[2] Simplification argues that Block is misunderstanding this
exchange and contends that in referring to the open-ended
transitional phrase "comprising," it was clearly advocating for a
broader understanding of the claims.  (D.I. 85 at 9-10.)
However, the Court disagrees, and finds that although the term
"comprising" was mentioned, Simplification's position was quite
clear that "any kind of manual input from start to end" was "no
good."

"[s]tep 11 talks about the manual part of it," and that "once it receives the information, it automatically goes through all the steps in the process." (Id. at 21:14-20 (emphasis added).) In the Court's view, none of these statements comports with the meaning of "automatic tax reporting" that Simplification now advocates for.

Simplification raises two main arguments in support of its construction. First, Simplification contends that by using the open-ended transitional phrase "comprising," the claims allow manual input that Block's construction improperly forecloses. (D.I.80 at 13-14.) Second, Simplification relies on the Federal Circuit's decision in CollegeNet, Inc. v. ApplyYourself, Inc., 418 F.3d 1225, 1235 (Fed. Cir. 2005), where the term "automatically" was interpreted to mean "once initiated the function is performed by a machine, without the need for manually performing the function." Though these arguments would normally have force, Simplification's statements during the BPAI hearing change the situation dramatically. Furthermore, this case is not resolved by a straightforward application of CollegeNet, as Simplification contends, because in CollegeNet the specification and prosecution history both supported the proposed construction. See id. at 1235-36. As explained above, the Court finds that this is not the case here, especially when it comes to the prosecution history.

14

Accordingly, the Court concludes that "automatic tax reporting" means, as Block essentially contends, "preparing a tax return on a computer without manual intervention from the user." Though the Court effectively adopts Block's construction, the Court declines to include in its construction the word "automatically," as Block proposes. In the Court's view, this word is redundant to the phrase "without manual intervention from the user."

On the other hand, though Simplification criticizes Block's construction for using the word "computer" (see D.I. 85 at 5 n.2), the Court concludes that this word clarifies the meaning of "automatic." See CollegeNet, Inc. v. ApplyYourself, Inc., 418 F.3d 1225, 1235 (Fed. Cir. 2005) (defining "automatically," in part, to include the limitation of being "performed by a machine"). Furthermore, it is consistent with the agreed upon definition set forth in the specification for "electronic intermediary," which, in the claims and specification, is the component that carries out "automatic tax reporting." (See D.I. 79 at 5; '052 patent 4:39-42 ("The term 'electronic intermediary' refers to a data processing system comprising a general purpose computer and a computer program . . . for performing the invention.").) Indeed, in the claims, "automatic tax reporting" is always done "by an electronic intermediary." Thus, the Court's construction has the added benefit of properly

15

interpreting the disputed claim term not as "a single element in isolation," but within the context of the entire claim.  See Pause Tech. LLC v. TiVo Inc., 419 F.3d 1326, 1331-33 (Fed. Cir. 2005) (construing the term "circular storage buffer" to require the storage of data at repeating physical addresses based on additional claim language calling for a processor to "write over" old data).

###    B.    "Electronically"

| Simplification's Construction | Block's Construction |
|---|---|
| By way of devices, circuits, or systems utilizing electron devices. | Performed on a computer automatically without manual intervention from the user. |

The dispute between the parties boils down to whether the term "electronically" should be construed in a manner similar to "automatic tax reporting."  Based on statements Simplification made during the BPAI hearing, Block contends that it should. Simplification, on the other hand, asks for a broader construction based on a definition from the IEEE Standard Dictionary of Electrical and Electronics Terms.

The Court concludes, as Block contends, that the prosecution history mandates that the term "electronically" be understood in a manner similar to "automatic tax reporting."  Indeed, during the BPAI hearing, the Board explained to counsel for Simplification that "when I look through your arguments, it seems like you're equating electronic, automatic, and no manual input

all to be the same.  I could put equal signs in between."  (D.I.
79, Exh. F at 24:15-18.)  Simplification did not dispute this
assertion, but unequivocally confirmed it as follows:

> JUDGE MEDLEY:  But you don't claim automatic
> everywhere.
>
> MR. SARTORI:  We do not claim– that's right.  We do
> not claim – I'm sorry.  I'm sorry.
>
> JUDGE MEDLEY:  So electronic – see, that's why I'm kind
> of having a problem.  Because I read
> your brief –
>
> MR. SARTORI:  I thought you were on the '052 for a
> second.  You're on the '787.  I'm sorry,
>
> JUDGE MEDLEY:  But you do.  You sort of mix the issues.
> I read what you say, and it seems like
> you're saying automatic is electronic,
> is not entering manually information.
> You're equating all three.
>
> MR. SARTORI:  That's right.  In the context of the
> '052 patent, which recites "automatic"
> in all the claims, "automatic" needs to
> be given its ordinary meaning and
> weight.  In those ones, I think it's
> clear with regard to the Beamer
> reference.
>
> In the '787 we have two independent
> claims, 1 and 10, which do not recite
> "automatic."  The rest of the
> independent claims recite "automatic."
> And so those ones, I think it's clear
> that the Beamer doesn't teach it.  We're
> focusing on claims 1 and 10.
>
> And there are two reasons that I said
> previously that the Beamer article does
> not teach it.  One is they're connecting
> electronically.  And yes, we are saying
> electronically means that there's no
> manual input.  You have to – we're
> saying you need to read it in light of
> the specification.

(Id. at 28:9-29:5 (emphasis added).)  Thus, during the BPAI
hearing Simplification expressly stated that "electronically

means that there's no manual input" and that this followed from a
reading of the claims "in light of the specification."  As above,
the Court finds this to be a clear and unmistakable disavowal of
claim scope, which, rather than being taken out of context, is
buttressed by subsequent statements that Simplification made to
the BPAI.  Specifically, the transcript of the BPAI hearing
reveals that the Board was, in fact, reluctant to accept
Simplification's assertion that "electronically means that
there's no manual input."  Thus, following the exchange above,
the, Board continued to question Simplification on the issue:

| | |
|---|---|
| JUDGE LEE: | Isn't the way you're interpreting it contrary to just logic or common sense? You know, simply saying this is made of wool doesn't mean it doesn't have other components. |
| MR. SARTORI: | I'm sorry.  You lost me, sir. |
| JUDGE LEE: | Saying something is electronic doesn't necessarily exclude any kind of manual contribution. |
| MR. SARTORI: | The claim recites connecting electronically to a tax data provider, and then collecting electronically from a tax data provider.  And that needs to be done electronically.  The - |
| JUDGE LEE: | Yeah.  But why does that exclude any kind of manual input?  I mean, that's crux to the issue. |
| MR. SARTORI: | Yes, for Claims 1 and 10 of the '787 patent. |
| JUDGE LEE: | You just say that it does, but I don't get it. |
| MR. SARTORI: | In the context of the step which refers to - that recitation of collecting electronically refers to step 12 of the patent.  And there it talks about, as I said before, the invention eliminates |

> the current requirement that a taxpayer
> manually collect the tax data, and that
> the taxpayer – it eliminates the current
> requirement that the taxpayer manually
> enter the tax data onto the tax return
> or into the computer. And by collecting
> electronically, you're eliminating those
> requirements. And to the extent that
> Beamer makes you do those things, or the
> system requires you do those things, it
> doesn't anticipate the claim.

(Id. at 29:9-30:3).

Understanding the Board's motivation behind these lines of
questions is helpful to capture the significance of these
exchanges. Specifically, from the outset of the hearing, the
Board's questions reveal that it was concerned because, although
Simplification had distinguished its invention from the prior art
on the basis of the prior art requiring manual entry,
Simplification had nevertheless pursued claims that recited only
an "electronically" limitation and not an "automatic" limitation.
(See id. at 5:22-23 ("But not all of your claims require
automatic collecting. I see quite a few that don't require
automatic collection.")) Faced with these questions,
Simplification took the position, set forth above, that
"electronically" should be understood similarly to "automatic."
The Court concurs with that position. Indeed, the evidence set
forth above in support of the Court's construction for "automatic
tax reporting" is not just limited to understanding the meaning
of "automatic" but shows, as Block contends, that the invention

19

as a whole is directed to fully-automated tax reporting.  In
these circumstances, the evidence in the specification and
prosecution history supporting the Court's construction of
"automatic tax reporting" is relevant to and informs the
construction of "electronically" also.  (See supra Part II.A.)
Accordingly, the Court concludes, as Block contends, that the
term "electronically" means "performed on a computer without
manual intervention from the user."

In support of their proposed construction, Simplification
points to a dictionary definition from The IEEE Standard
Dictionary of Electrical and Electronics Terms, which defines
"electronic" to mean "[o]f or pertaining to devices, circuits, or
systems utilizing electron devices."  (D.I. 80, Exh. D.)  This
dictionary, in turn, defines "electron device" to be "[a] device
in which conduction is principally by electrons moving through a
vacuum, gas, or semiconductor."  (Id.)  In the Court's view,
these definitions are vague, overbroad, and poorly suited to the
context of the patents-in-suit.  Indeed, the patent defines the
"electronic intermediary" that carries out the steps of the
claimed invention to be, in part, a "general purpose computer and
a computer program."  ('052 patent at 4:39-42.)  If anything,
this suggests that the term "electronic" is connected to the use
of a computer.  The Court finds nothing in the specification or

20

prosecution history supporting an expansive construction based on the term "electron device."

Simplification further relies on the doctrine of claim differentiation for the position that the term "electronically" must be understood differently than the term "automatically." (See D.I. 85 at 17-18.)  However, claim construction positions based on claim differentiation are rebuttable, taking a secondary role if an alternate construction is dictated by the written description or prosecution history.  See Regents of the Univ. of Cal. v. DakoCytomation Cal., Inc., 517 F.3d 1364, 1375 (Fed. Cir. 2008).  For the reasons set forth above, the Court concludes that, in this case, the prosecution history and specification trump claim differentiation.

Finally, Simplification notes that the specification explains that certain steps of the claimed method could be performed using certain prior art software that does not provide a fully automated tax preparation system, such as TurboTax.  (See D.I. 85 at 15-16, 23-24.)  Based on this, Simplification contends, one of skill in the art would understand that the invention of the patents-in-suit, like the prior art, requires "manual intervention and input at several points," such that Block's construction of "electronically" should be rejected. (Id. at 15.)  The full portion of the specification relied upon by Simplification is as follows:

21

> In the present invention, step 13 can be implemented
> using a computer program similar to the computer
> programs currently available in the market place, such
> as TurboTax, which is a registered trademark of Intuit,
> Inc.   Although step 13 can be implemented with current
> technology, the current technology requires that the
> tax data and other information relevant to the taxpayer
> be inputted manually.   With the present invention, this
> information is obtained as described above in steps 11
> and 12.

('052 patent at 6:33-41.)   In the Court's view, this passage does

not embrace the use of prior art methods that required manual

input.   On the contrary, this passage disparages prior art

software specifically on the basis of it requiring manual input

and explains that this is overcome in the "present invention."

To the extent this passage suggests that certain steps of the

claimed method could be done using software "similar" to prior

art software, such statements appear to be only for the purpose

of setting the stage for distinguishing such art.   Accordingly,

after reviewing the portion of the specification relied upon by

Simplification, the Court is reluctant to place much weight on

references to prior art software in the specification.

### C.   Other Claim Terms That Use The Word "Electronically"

The parties dispute the meaning of a number of terms that

use the word "electronically" as a modifier.   The parties each

propose constructions that incorporate their proposed

construction for the word "electronically."   For the reasons set

forth above, the Court will construe these terms in accordance

with Block's proposed construction of "electronically."   Below,

the Court resolves the remaining disputes the parties have over
the meaning of these terms.

### 1. "Connecting Electronically"

| Simplification's Construction | Block's Construction |
|---|---|
| Physically or logically coupling by way of devices, circuits, or systems utilizing electron devices. | The act of establishing communication between computerized devices automatically without manual intervention from the user. |

Neither party offers a great deal of assistance as to the
meaning of "connecting" in the term "connecting electronically."
Block relies on general purpose and technical dictionary
definitions that are either undated or appear to postdate the
filing of the patents-in-suit. (See D.I. 79 at 21-22.)
Simplification points out correctly that the specification
explains that electronic connections are established over
"electronic links." (D.I. 80 at 19.) Thus, Simplification
offers a construction that it contends comports with a "[n]on-
limiting" list of "electronic links" provided in the
specification. (Id. at 20; see also '052 patent at 5:67-6:6
(listing, for example, modem, Internet, and computer-readable
medium as "electronic links").) Notably, the parties have agreed
on the meaning of "electronic link," jointly defining it to be
"an electronic means of communicating digital information
bidirectionally." (D.I. 79 at 5.) In the Court's view, Block's
proposed construction of "connecting electronically," which

23

focuses on the establishment of "communication," aligns most naturally with this agreed upon definition.  The Court further notes that Simplification's definition demands only "physical" coupling by way of an "electron device."  As above, the Court finds this definition to be overbroad.  Accordingly, the Court concludes that "connecting electronically" means, as Block contends, "establishing communication between computerized devices without manual intervention from the user."

### 2. "Collecting Electronically"

| Simplification's Construction | Block's Construction |
| --- | --- |
| Gathering by way of devices, circuits, or systems utilizing electron devices. | The act of gathering data automatically without manual intervention from the user. |

Other than the dispute over the interpretation of the term "electronically," the parties only disagreement is about whether the term "collecting" should refer to "gathering data" (Block's position) or simply "gathering" (Simplification's position).  The Court's review of the claims reveals that the term "collecting electronically" is used exclusively in conjunction with the term "tax data."  Accordingly, the Court concludes that the word "data" need not be included in the construction of "collecting electronically."  Unlike the claim term "automatic tax reporting," where the Court looked to surrounding claim language to help construe the word "automatic," the Court finds no need to resort to surrounding claim language to clarify the meaning of

24

the disputed term.  The Court will thus construe the term "collecting electronically" to mean "gathering without manual intervention from the user."

### 3.   "Processing Electronically"

| Simplification's Construction | Block's Construction |
|---|---|
| Systematic performance of operations, such as data manipulation, merging, sorting, and computing accomplished by way of devices, circuits, or systems utilizing electron devices. | The act of performing the appropriate computations (e.g., addition, subtraction, multiplication, and division) automatically without manual intervention from the user. |

The parties offer competing constructions for the word "processing" in the term "processing electronically." Simplification offers a definition from the IEEE Standard Dictionary of Electronic Terms.  (See D.I. 80, Exh. D.)  Block, on the other hand, points to the portion of the specification that describes how the "electronic intermediary process the tax data," which explains that this includes "appropriate tax computations" such as "addition, subtraction, multiplication, and division . . . ."  ('052 patent at 6:42-47.)  Simplification contends that this definition is inappropriate because it limits the claims to examples in the specification.  However, Block's proposed construction is, in fact, quite broad, referring only to "appropriate computations."  Furthermore, it is inherently non-limiting, explicitly stating that listed operations are only exemplary.  The Court further favors Block's construction

because, rather than being based on a dictionary that the Court has found inappropriate for other disputed terms, it is based on evidence in the specification.  Accordingly, the Court concludes that "processing electronically" means, as Block contends, "performing the appropriate computations (e.g., addition, subtraction, multiplication, and division) without manual intervention from the user."

### 4.  "Preparing Electronically"

| Simplification's Construction | Block's Construction |
| --- | --- |
| Preparing an electronic tax return by way of devices, circuits, or systems utilizing electron devices. | The act of completing automatically without manual intervention from the user. |

Outside of the dispute over the meaning of "electronically," the parties dispute whether the word "preparing" in this claim term should be understood to imply "completeness" (Block's position) or not (Simplification's position).  Block notes that the specification explains that "[i]n step 15, the electronic intermediary electronically files the electronic tax returns prepared in step 14 with the taxing authorities."  ('052 patent at 6:63-64.)  According to Block, because tax returns that were "prepared" in step 14 may then be filed with the taxing authority in step 15, those tax returns must have been "completed" during the "preparing" step.  Block further contends that, in normal usage, "if one asks an accountant to prepare a tax return, then

26

the accountant understands that the tax form (e.g., IRS Form 1040) is to be completed." (D.I. 79 at 26.)

Simplification's briefing on this term appears focused on the meaning of the word "electronically."[3] Nevertheless, as part of this argument, Simplification notes that the specification explains that "step 14" – the tax return preparation step – could be implemented using prior art technology, such as TurboTax software. (D.I. 85 at 23-24.) Such prior art software, Simplification explains, required the taxpayer to print, sign and submit an original signature even when e-filing. Likewise, Simplification explains that even when using prior art software, the taxpayer still needed to complete an IRS Form 8453-OL and that the IRS did not consider a tax return to be completed until it received that signed form. (Id.) Thus, because the specification supposedly embraces the use of prior art techniques for "preparing" a tax return, and because these techniques clearly did not yield a truly completed tax return, Simplification apparently contends that it would be inconsistent

---

[3] The parties do not appear to hotly contest the issue of whether the term "preparing" should imply "completeness." Indeed, Simplification asserts that it is "unclear whether the parties' competing definitions of 'preparing' as 'preparing' or 'the act of competing' reflect a substantive difference," and then devotes the remainder of its briefing to the issue of how the term "electronically" should be construed. (See D.I. 85 at 23-24.)

with the specification to construe "preparing" to imply "completeness."

However, as explained above, the Court concludes that, at most, the specification explains that certain steps can be completed using software "similar" to prior art software. <u>See</u> <u>supra</u> Part II.B. On the whole, the specification and prosecution history distinguish the invention from prior art software, particularly on the basis of the prior art requiring manual involvement by the taxpayer. Block's proposed construction, which calls for the tax return to actually be "completed" through the process of "preparing" the tax return, is much more in line with the idea of the fully-automated tax preparation system that is presented in the specification and prosecution history of the patents-in-suit. Indeed, should the process of "preparing" a tax return result in only a partially completed tax return, manual intervention by the taxpayer would be required. But, as set forth above, Simplification relegated such manual input to the unclaimed initiation procedure described in the specification as "Step 11." Put another way, allowing for manual intervention following the preparation of a partially completed tax return would be akin to "start[ing] the rinse cycle" or "add[ing] the water" in an automatic dishwasher, which are the sort of actions Simplification specifically explained were not required in the present invention. (D.I. 79, Exh. F at 16:13-18, 17:11-14.)

Accordingly, the Court concludes that "preparing electronically"
means, as Block contends, "completing without manual intervention
from the user."

### 5. "Filing Electronically"

| Simplification's Construction | Block's Construction |
| --- | --- |
| Submitting or transmitting to a taxing authority by way of devices, circuits, or systems utilizing electron devices. | The act of entering a legal document into the public record by means of a computer automatically without manual intervention from the user. |

With regard to the meaning of "filing," Block relies on a
definition from Merriam-Webster's Online Dictionary. (D.I. 79 at
29.) Simplification, on the other hand, notes that in describing
the process of filing the tax return ("Step 15" in the
specification), the specification explains that the "electronic
intermediary" "transmits the electronic forms to the taxing
authorities." ('052 patent at 6:66-67.)

The Court concludes that Block's dictionary definition is
not suitable. First, as Simplification notes, tax return
information is confidential. 26 U.S.C. § 6103 ("Returns and
return information shall be confidential . . . ."). Thus,
construing "filing" to include entering into the "public record"
would be inappropriate in the context of the patents-in-suit.
Second, the Court's review of the claims reveals that the term
"filing electronically" is used exclusively in conjunction with
the term "tax return." Thus, as with the term "collecting

electronically," see supra Part II.C.2, the Court sees no need to include the vague term "legal document" in its construction of "filing." Accordingly, the Court shall construe "filing" to mean, as Simplification contends, "submitting or transmitting to a taxing authority," a definition that is well supported by the specification's description of the electronic filing process. The Court shall further construe the term "filing electronically" to mean "submitting or transmitting to a taxing authority by means of a computer without manual intervention from the user."

### D.    "Electronic Tax Return"

| Simplification's Construction | Block's Construction |
|---|---|
| A statement of tax liability or tax-related information in a form prescribed by a taxing authority, in an electronic format. | A completed computerized tax return ready for submission to a governmental tax agency. |

The parties main dispute is whether the term "electronic tax return" should be understood to refer to a "completed" document. Block contends that the essential utility of the patents-in-suit is that they "automatically complete one's tax return." (D.I. 84 at 14.) Construing the claims in a manner that does not clearly require this, Block contends, would allow the claims to "drift" into the partially automated systems that Simplification distinguished during prosecution. Block also raises the same arguments it raised in support of its position that the term "preparing" should, in the context of the patents-in-suit, be

equated with "completing." <u>See</u> <u>supra</u> Part II.C.4.
Simplification's proposed construction does not include a
"completeness" requirement.  Rather, Simplification focuses on
the meaning of "tax return," and proposes a construction based on
definitions contained in U.S. Treasury Regulations.  (<u>See</u> D.I. 80
at 31.)

     For the reasons set forth above, the Court agrees with Block
that, given the intrinsic evidence, the term "electronic tax
return" should be construed to refer to a "complete" document.
However, Block's construction fails to elucidate the meaning of
"tax return."  Though it is unclear whether the parties have
genuine differences over the definition of "tax return," the
Court will nevertheless adopt Simplification's proposed
construction, which Block does not appear to dispute.  Because a
general definition of "tax return" is not provided in the
intrinsic record, the Court concludes that it is not
inappropriate to, as Simplification contends, look to U.S.
Treasury Regulations for assistance in construing certain terms
of the patents-in-suit.  Indeed, with regard to "electronic tax
returns," the specification explains that they are prepared with
"respect to the particular taxing authorities," and lists the IRS
From 1040 and Form 1040EZ as examples.  Thus, adopting a general
definition of "tax return" based on a description provided by a
key "taxing authority" is, in the Court's view, in line with the

specification.  Accordingly, the Court will construe "electronic tax return" to mean "a completed computerized statement of tax liability or tax-related information ready for submission to a governmental tax agency."

### E.    Means Plus Function Terms

The parties agree that a number of claim terms should be construed as means-plus-function terms pursuant to 35 U.S.C. § 112(6).  These terms correspond to the terms construed in Part II.C <u>supra</u> preceded by the words "means for," which is the language traditionally used to identify means-plus-function terms.  When construing such means-plus-function terms, a court must first determine the function that is being performed, "staying true to the claim language and the limitations expressly recited by the claims."  <u>Omega Eng'g v. Raytek Corp.</u>, 334 F.3d 1314, 1322 (Fed. Cir. 2003).  Second, a court must determine what structure, material, or acts provided in the written description correspond to the function performed.  <u>Id.</u>  A claim governed by § 112(6) does not encompass every structure, material, or act that can possibly perform the specified function.  <u>Laitram Corp. v. Rexnord</u>, 939 F.2d 1533, 1535 (Fed. Cir. 1991).  Rather, the limitation must be construed to cover the "corresponding structure, material, or acts described in the specification and equivalents thereof."  35 U.S.C. § 112(6); <u>Odetics, Inc. v. Storage Tech. Corp.</u>, 185 F.3d 1259, 1266-67 (Fed. Cir. 1999).

The claim limitation covers only the structure, material, or acts necessary to perform the function.  <u>Omega Eng'g</u>, 334 F.3d at 1322.

With regard to the first step of the process, the parties both propose functions for the means-plus-function terms that track their proposed constructions for the terms construed in Part II.C of this Memorandum Opinion.  The Court shall take this approach as well and identify functions that track the constructions set forth in Part II.C of this Memorandum Opinion.

As to the second step of the process, which, in this case, is determinative, the parties have sharply diverging views.  Simplification contends that the corresponding structure is "a data processing system comprising a general purpose computer programmed with code segments to operate the general purpose computer."  (<u>See, e.g.</u>, D.I. 85 at 27.)  Block, on the other hand, contends that in light of the Federal Circuit's recent decision in <u>Aristocrat Techs. Austl. PTY Ltd. v. Int'l Game Tech.</u>, 521 F.3d 1328 (Fed. Cir. 2008), such structure is insufficient and that the claims are indefinite.

In <u>Aristocrat</u>, the patent-in-suit pertained to a method of making slot machines more exciting by allowing players to define winning opportunities.  <u>Aristocrat</u>, 521 F.3d at 1330.  The patent claim at issue recited a "game control means" for performing three functions related to carrying out the invention.  <u>Id.</u> at

33

1331. Much like Simplification, the plaintiff in Aristocrat argued that the corresponding structure was "a standard microprocessor-based gaming machine with 'appropriate programming.'" Id. In finding the claims indefinite, the Federal Circuit explained that "[i]n cases involving a computer-implemented invention in which the inventor has invoked means-plus-function claiming, [it] has consistently required that the structure disclosed in the specification be more than simply a general purpose computer or microprocessor." Id. at 1333. Because "general purpose computers can be programmed to perform very different tasks in very different ways," the Federal Circuit explained, "simply disclosing a computer as the structure designated to perform a particular function does not limit the scope of the claim to 'the corresponding structure, material, or acts' that perform the function, as required by section 112 paragraph 6." Id.; see also Finisar Corp. v. DirecTV Group, Inc., 523 F.3d 1323, 1340-41 (Fed. Cir. 2008) ("Simply reciting 'software' without providing some detail about the means to accomplish the function is not enough."); Net Moneyin, Inc. v. Verisign, Inc., 545 F.3d 1359, 1367 (Fed. Cir. 2008) ("[A] means-plus-function claim element for which the only disclosed structure is a general purpose computer is invalid if the specification fails to disclose an algorithm for performing the claimed function."). In light of this guidance, the Court finds

34

that Simplification's proposed corresponding structure, which includes nothing more than a "general purpose computer" and "code segments," is inadequate.

In these circumstances, the Court has undertaken to carefully review the patents-in-suit to determine if anything more detailed is disclosed that could meaningfully serve as the corresponding structure for the means-plus-function limitations. Specifically, the Court has, as the Federal Circuit instructed, reviewed the patents-in-suit to determine if a specific algorithm is disclosed for "transform[ing] the general purpose microprocessor to a special purpose computer programmed to perform the disclosed algorithm." Aristocrat, 521 F.3d at 1338. The Court finds nothing adequate.

The claim term "means for connecting electronically" provides an illustration of the lack of structure in the specification. At the Markman hearing, Simplification attempted to identify corresponding structure for the term as follows:

> In sum, Your Honor, let's look and see what's been disclosed here. The taxpayer provides identifying information to the electronic intermediary, and that can be an identifying information about themselves, identification of the tax data providers, account numbers, et cetera.
>
> The electronic intermediary takes that information, reaches out and contacts the tax data provider and connects with the tax data provider. And those, Your Honor, are steps, the steps disclosed in the patent, the algorithm for performing the connecting electronically step, and that provides under the law and under the standards of Aristocrat and Harris, the

>   algorithm that's required, the structure that's
>   required to support the means plus function limitation.

(D.I. 101 at 43:3-20.)  In the Court's view, this description

offers little more than a restatement of the claim language, not

a description of a particular algorithm corresponding to the term

"connecting electronically."  Though Simplification correctly

notes that the specification refers to the collection of personal

identification and information on tax data providers, the Court

finds no description of an algorithm explaining how such

information is actually used to perform the function associated

with the "connecting electronically" limitation or, for that

matter, any other means-plus-function terms.  It is manifest that

personal identification and/or information on tax data providers

will be used in the claimed invention to, among other things,

"connect electronically."  However, observation of this fact does

nothing to explain how the "general purpose computer" mentioned

in the specification may be transformed into the "special

purpose" computer that performs the algorithm corresponding to

either the "connecting electronically" limitation or any of the

other means-plus-function terms.  Likewise, though the

specification states that the Internet could be searched for tax

data, or, alternatively, that "the taxpayer could specifically

identify the tax data providers and could include information on

how to contact the tax data providers electronically . . . ,"

('052 patent at 4:51-60), the Court concludes that such

36

statements, and others like it, do not meaningfully advance the disclosure beyond the phrase "general purpose computer," which, as explained above, is insufficient.

For some of the means-plus-function terms, Simplification relies on district court and Federal Circuit authority that supposedly stands for the proposition that a reference to an exemplary commercially available product can serve as corresponding structure for a means-plus-function limitation. See, e.g., Budde v. Harley-Davidson, Inc., 250 F.3d 1369, 1382 (Fed. Cir. 2001) (holding that characterizing a "vacuum sensor as a 'commercially available unit'" would apprise one of skill in the art of structure capable of performing the function of the claim limitation); Radio Sys. Corp. v. Tri-Tronics, No. 05-cv-243, 2007 U.S. Dist. LEXIS 17315, at *11 (E.D. Tenn. Mar. 9, 2007) ("[A] structure included in a specification need not be described in detail to show that it performs the claimed function when that structure is well known in the art."). Relying on this authority, Simplification contends that the patent's references to TurboTax software provide the necessary corresponding structure.

However, the specification offers no detail regarding the underlying algorithms used by TurboTax to perform the recited means-plus-function steps. In these circumstances, additional evidence is necessary to confirm that one of skill in the art

would understand the references to TurboTax as disclosing particular algorithms, and, more importantly, what those algorithms are.  But no such evidence has been provided.  As it stands, the Court finds itself unable to fashion a meaningful construction based on the specification's naked references to TurboTax.  Furthermore, even if such evidence were provided, the Court would be reluctant to conclude that aspects of the TurboTax software package could serve as corresponding structure.  As noted above, though the specification explains that certain steps can be implemented using programs "similar" to TurboTax, the key reference in the specification to such software largely disparages it on the basis of requiring manual input.  ('052 patent at 6:31-41.)  Where the patent's reference to prior art software is, at best, equivocal, the Court is unenthusiastic about relying on it for corresponding structure.

## CONCLUSION

For the reasons discussed, the Court has construed the disputed terms and/or phrases of the '052 and '787 patents as provided herein.  An Order consistent with this Memorandum Opinion will be entered setting forth the meanings of the disputed terms and/or phrases in the '052 and '787 patents.